UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No. 21-cr-24 (EGS) |
| | : | |
| ROBERT GIESWEIN, | : | |
| | : | |
| Defendant. | : | |

## UNITED STATES' REPLY TO DEFENDANT'S OPPOSITION TO MOTION TO CONTINUE AND TO EXCLUDE TIME UNDER THE SPEEDY TRIAL ACT

The United States of America, by and through its attorney the Acting United States Attorney for the District of Columbia, respectfully submits this reply to the defendant's opposition to its motion to continue and to exclude time under the speedy trial act, ECF No. 15 ("Opposition"). In short, to comply with its discovery obligations, the government must process and make available to the defense a vast quantity of materials, and that quantity is not limited solely to what the FBI collected in its investigation into Mr. Gieswein's activities. It must sift through and make available to the defense a vast quantity of materials collected in connection with the Capitol attack overall, which is likely the most complex investigation ever prosecuted by the Department of Justice. Thus, although Mr. Gieswein is charged as a single defendant, the complexity of the government's discovery obligations is analogous to those in the most complex conspiracy cases.

## ARGUMENT

The defendant acknowledges that the scope of discovery in a criminal case may lead to exclusion of time under the Speedy Trial Act, but he claims that because he is charged alone, "considerably less delay" may be tolerated. Opposition at 6-7. The defendant's focus on the charges, however, is misplaced. In deciding this motion, the Court should focus on the volume of potentially discoverable materials. Hundreds of individuals attacked the Capitol on January 6.

The amount of evidence generated at the scene of the crime is vast and interconnected, and the government continues to uncover more and more of it.  "Completing" discovery in this case is not a simple matter of producing just those items the government obtained directly through its investigation of this defendant, as his motion seems to suggest.  *See* Opposition at 5 ("But the Speedy Trial Act does not authorize exclusion of time in this case based upon the considerations that are not specific to this case.")  The government contends that the volume of evidence collected from the vast police response to the Capitol, as well as that collected from other defendants and witnesses *is* specific to Mr. Gieswein's case, even if that evidence was not collected in the course of the FBI's investigation into his specific conduct.  The defendant did not operate in isolation, and the evidence relating to him does not exist in isolation either.

For example, many of the hundreds of people who unlawfully entered the Capitol on January 6 held out their cell phones, apparently filming and photographing the events as they transpired.  Many of those individuals have been apprehended and their cellular telephones seized and searched.  Some subset of those phones likely were carried by people near the defendant charged in this case and may have captured information that could be of value to the government or the defense, such as an expression relating to intent.  For an assault charge, an alternative angle could show evidence that one party or another was an aggressor.  Merely identifying which phones may contain important evidence related to this specific defendant will be a hugely time-consuming task before even beginning to sift through the evidence on the devices themselves.  Additionally, once that evidence is identified, the government cannot simply turn over the entire contents of someone's cell phone without first reviewing the contents to ensure that it is not producing someone's private information to a complete stranger.  *Cf. Riley v. California*, 573

2

U.S. 373, 396-97 (2014) ("A phone not only contains in digital form many sensitive records previously found in the home; it also contains a broad array of private information never found in a home in any form[.]").  This is just one example of the possible interconnectedness of the discovery materials across the Capitol Attack cases, but it captures why the government is approaching the discovery in these matters holistically.

A second example is body-worn camera footage from the Metropolitan Police Department and potentially other law enforcement agencies.  As noted in the government's original motion, it has collected over 15,000 hours of surveillance and body-worn camera footage from multiple law enforcement agencies.  ECF No. 11 at 3.  Those hours of video are being reviewed—and indeed that review has already yielded body-worn camera footage that captured the defendant—but ensuring that every moment of that footage that captures Mr. Gieswein (or something potentially relevant to Mr. Gieswein's case) will take time.  The defendant "acknowledges the efforts that the government is making to develop a comprehensive plan" to deal with this voluminous discovery.  Opposition at 5.  The 15,000 hours of surveillance and body-worn camera footage would exist as material that must be sorted through and produced in discovery regardless of how many people the government arrested or when it arrested them.  It was generated as a direct result of the size and scope of unlawful and violent activity on January 6, 2021—activity in which the defendant was a willing participant.  The same is true of the over 210,000 tips received by the FBI, of which a substantial portion include video, photos, or social media.  ECF No. 11 at 3.

The above examples are only examples, but they demonstrate why this Court should consider the Capitol Attack cases in their entirety when determining a time frame for trial that

3

would best balance the interests of the public and the defendants in a speedy trial with the time needed for defendants to prepare their defense.    18 U.S.C. §§ 3161(h)(7)(A), (h)(7)(B)(i)(ii) and (iv); *see, e.g., United States v. Bikundi*, 926 F.3d 761, 777-78 (D.C. Cir. 2019) (Upholding ends-of-justice continuances totaling 18 months in two co-defendant health care fraud and money laundering conspiracy case, in part because the District Court found a need to "permit defense counsel and the government time to both produce discovery and review discovery").

Finally, under the Court's latest standing order regarding the ongoing public health emergency arising from COVID-19 pandemic, most jury trials remain continued through August 31, 2021. United States District Court for the District of Columbia Standing Order 21-10.  Only a limited number of jury trials, which can be conducted consistent with the Court's health and safety protocols, are permitted to go forward.  *Id.*   Additionally, the Court has already filled some of the limited number of trial slots available on the master trial calendar, which is being utilized to prioritize the trials of detained defendants, some of whom have had their trials postponed for over a year since the pandemic began.   For all of the reasons cited by the Court in the standing order, the time between now and at least the next sixty days should be excluded for this case as a result of the ongoing public health emergency, as well.

The defendant's detention status should not affect the Court's consideration of this motion at this early stage of the case, where the government is only seeking a 60-day continuance and to toll the Speedy-Trial clock for the duration of that continuance.   In noting this, the government does not minimize the toll that pretrial detention takes on any defendant, Mr. Gieswein included. But the government's requested relief is narrowly tailored and is of the type specifically contemplated by the Speedy Trial Act.   The government's requested finding now does not seek to designate the case complex in perpetuity, nor does not bind the Court or parties for any future

continuance requests. Moreover, the government is aware of the need to move expeditiously where a defendant is detained, and the Court has many options as its disposal to ensure that this case moves forward as quickly as possible, including scheduling more frequent status conferences and/or requiring the filing of status reports between hearings that may be set further apart.

Indeed, the government is already taking steps to move this prosecution forward quickly, and it acknowledges its burden of producing discovery in a timely manner. The government has provided a substantial amount of initial discovery and plans to continue to provide discovery on a rolling basis. The defendant acknowledges that the most recent production was of "significant size." Opposition at 6. The government can represent that another discovery production is forthcoming soon. The government *is* marshalling as many of its resources as possible to ensure that this defendant receives discovery in a timely fashion, and that resource-marshaling includes building the discovery apparatus that the defendant acknowledged in his motion. But the facts as laid out in the government's original motion, as well as this reply, amply support the government's requested finding that the ends of justice served by a 60-day continuance outweigh the rights of the defendant and the public in a speedy trial.

WHEREFORE, the government respectfully requests that this Court grant the motion for a 60-day continuance of the above-captioned proceeding, and that the Court exclude the time within which trial must commence under the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, on the basis that the ends of justice served by taking such actions outweigh the best interest of the public and the defendant in a speedy trial pursuant to the factors described in 18 U.S.C. § 3161(h)(7)(A), (B)(i), (ii), and (iv).

Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney
DC Bar No. 415793

By:    /s/ *Erik M. Kenerson*
Erik M. Kenerson
Assistant United States Attorney
Ohio Bar No. 82960
555 Fourth Street, N.W., Room 11-909
Washington, DC  20530
Erik.Kenerson@usdoj.gov
(202) 252-7201