UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CASE NO. 21-cr-24 (EGS) |
| v. : | |
| : | |
| ROBERT GIESWEIN, : | |
| : | |
| Defendant. : | |

**RESPONSE TO MINUTE ORDER REGARDING ACCESS TO VIDEO EXHIBITS**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby responds to the Court's July 1, 2021 Minute Order, directing the parties to respond to Petitioners' request to access to materials Petitioners refer to as "Video Exhibits," ECF No. 23 ("Application"). Petitioners represent 16 news organizations, which have moved this Court to disclose the videos pursuant to the procedure outlined by the Chief Judge in Standing Order 21-28 (BAH). Specifically, Petitioners request access to "several Capitol surveillance footage clips depicting Defendant" that undersigned counsel discussed in the government's Opposition to Defendant's Motion for Hearing and Revocation of Detention Order, ECF No. 19. *See* Application, ¶ 4.

The Press Coalition's request should be denied as to the Capitol surveillance footage because no videos from Capitol surveillance cameras were submitted to the Court for its consideration.[1] As a result, the videos have never been the subject of any judicial decision, and

---

[1] The government does not object to the release, consistent with the procedures described in Standing Order 21-28 (BAH), of videos it submitted for this Court's consideration ahead of the hearing. *See* Notice of Hearing Exhibits, ECF No. 24. The Application at issue, however, only requests the Capitol surveillance footage.

1

thus they are not a "judicial record" to which any public right of access might attach.

   I.   **Background**

The relevant background to the Press Coalition's Application for Access to Video Exhibits is as follows. On January 19, 2021, the defendant was arrested in the District of Colorado. The government requested the defendant's pretrial detention. Following a hearing before a Magistrate Judge in that district, the defendant was ordered detained and transported to the District of Columbia.

On April 15, 2021, at the government's request and with Mr. Gieswein's consent (*See* ECF No. 10 and Minute Order dated April 15, 2021), the Court issued a minute order entering a Protective Order in this case. The Minute Order adopted the terms in the proposed Protective Order submitted by the government. *See* ECF No. 10-1. The Protective Order allows the government to designate certain materials provided in discovery as "Sensitive" or "Highly Sensitive," and expressly recognizes that "[s]urveillance camera footage from the U.S. Capitol Police's extensive system of cameras on U.S. Capitol grounds" is among the "[e]xamples of materials that the United States may [so] designate." ECF No. 10-1 at 1. Among other things, the protective order prevents the dissemination of materials designated as Sensitive or Highly Sensitive "to any persons other than Defendant, the legal defense team, or the person to whom the Sensitive or Highly Sensitive information solely and directly pertains or his/her counsel, without agreement of the United States or prior authorization from the Court" (*id.* at 2). After the Court entered the protective order, the government provided surveillance footage to Mr. Gieswein's counsel from the U.S. Capitol Police's closed-circuit video system that it designated as Highly Sensitive.

On June 8, 2021, the defendant filed a Motion for Release from Custody. The government

filed its memorandum in opposition thereto on June 15, 2021. That memorandum included, among other things, still screenshots from Capitol surveillance videos. The underlying videos had been provided to the defendant in discovery and labeled as "highly sensitive" pursuant to the protective order.

On June 22, 2021, the Press Coalition filed the instant Application for access to the videos underlying the still screenshots from Capitol surveillance videos. *See* Application, ¶¶ 4-5. That Application is without merit and should be denied because the video footage at issue was never provided to the Court.

## II. Argument

### A. The Press Coalition May Not Seek Disclosure of the Capitol Surveillance Videos Underlying Still Photographs Submitted in a Pleading.

The D.C. Circuit has consistently employed the six-factor "*Hubbard* test"[2] when determining whether the common-law right of access to judicial records requires those records to be made available to the public for copying and inspection. Applied in the general context of video exhibits admitted into evidence in court hearings involving defendants charged with criminal offenses related to the January 6, 2021 breach of the U.S. Capitol, and absent order of the court, that test generally weighs in favor of allowing public access to these exhibits.

[2] The *Hubbard* test balances the following factors: "(1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings." *Leopold v. United States*, 964 F.3d 1121, 1131 (D.C. Cir. 2020) (quoting *MetLife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 665 (D.C. Cir. 2017)).

*Hubbard* is not determinative with respect to Capitol surveillance videos sought in the Application, however, where the materials at issue are not "judicial records." Those videos, from which photographic stills were included as exhibits, were not provided to the Court for review, nor were they played or admitted during the hearing on the defendant's detention, which took place on July 1, 2021. Entering a screenshot as an exhibit does not make the entire video from which the screenshot was taken an exhibit. Thus, the videos requested by the Press Coalition are not "judicial records" to which any right of public access might attach. *Grove Fresh Distribs. v. Everfresh Juice Co.*, 24 F.3d 893, 898 (7th Cir. 1994) ("the media's right of access does not extend to information gathered through discovery that is not part of the public record[.]"); *see also, e.g.*, *United States v. Bundy*, No.: 2:16-cr-046-GMN-PAL, 2016 U.S. Dist. LEXIS 166626, at *9 (D. Nev. Nov. 30, 2016) ("[T]he U.S. Supreme Court has long held that there is no common law or First Amendment public right of access to *discovery* information, let alone any presumption of a right to access. . . . The qualified First Amendment right of access to judicial proceeding and documents simply does not extend to discovery materials."); *In re Special Proceedings*, 291 F. Supp. 2d 44, 48 (D.R.I. 2003) ("the media have a presumptive common-law right of access to judicial records but not to potential evidence possessed by the parties") (citations omitted). Indeed, Judge Berman Jackson recently denied in part an application filed by the Press Coalition under similar circumstances—where the government had submitted screenshots of two videos in support of a detention motion but had not provided the underlying video footage to the Court. *See United States v. Sibick, et. al.*, No. 21-cr-291 (ABJ), Minute Order entered July 6, 2021.[3]

---

[3] The application was granted without government objection as to two videos that were in fact submitted to the Court, denied as moot as to one video that was publicly available, and denied as to the two videos where the government had submitted screenshots, but not the underlying

As the D.C. Circuit recently explained, although "third parties may intervene in cases for the limited purpose of seeking access to materials that have been shielded from public view either by seal or by a protective order[,]" they "may seek disclosure only of 'public records,' which, in the context of court proceedings, are called 'judicial records.'" *League of Women Voters of the U.S. v. Newby*, 963 F.3d 130, 132 (D.C. Cir. 2020). However, materials provided in discovery but never submitted to a court are not judicial records. *See, e.g.*, *United States v. Kravetz*, 706 F.3d 47, 55 (1st Cir. 2013) ("[T]he courts of appeals have uniformly held that the public has no common law or constitutional right of access to materials that are gained through civil discovery but neither introduced as evidence at trial nor submitted to the court as documentation in support of motions or trial papers."). As the Eleventh Circuit has explained, "documents collected during discovery are not 'judicial records.' Discovery, whether civil or criminal, is essentially a private process because the litigants and the courts assume that the sole purpose of discovery is to assist trial preparation." *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986). Thus, because the Press Coalition has no right of access to materials provided by the government in criminal discovery but never submitted to the court, there is no legal basis for its request for unspecified videos to be released to the public in this case.

The *Hubbard* analysis is thus inapplicable to the Capitol surveillance videos sought by the Press Coalition, where the materials at issue are not "judicial records." Furthermore, the footage sought is subject to a Protective Order that prevents its dissemination "to any persons other than Defendant, the legal defense team, or the person to whom the Sensitive or Highly Sensitive information solely and directly pertains or his/her counsel, without agreement of the United States

---

video.

or prior authorization from the Court" (ECF No. 10-1 at 2). Accordingly, there is no right of the public or press to access the Capitol surveillance footage at issue in the Application.

Finally, in lieu of filing a written response, counsel for Mr. Gieswein has authorized the undersigned to state that Mr. Gieswein agrees that no member of the public has a right to view discovery materials that are not entered into the judicial record, such as videos that have not been submitted to this Court, even though they may be the source for screenshots that were submitted to the Court. With regard to the videos the government submitted for the Court's consideration ahead of the July 1, 2021 hearing, Mr. Gieswein takes no position regarding their release, and defers to the Court.

WHEREFORE, the Government asks that the Press Coalition's Application for Access to Video Exhibits be denied.

                                        Respectfully submitted,

                                        CHANNING D. PHILLIPS
                                        Acting United States Attorney
                                        DC Bar No. 415793

By:    /s/ *Erik M. Kenerson*
         Erik M. Kenerson
         Assistant United States Attorney
         OH Bar 82960
         U.S. Attorney's Office
         555 4th Street, N.W.
         Washington, D.C. 20530
         202-252-7201
         Erik.Kenerson@usdoj.gov