# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Case No. 21-cr-24-EGS-1 |
| ROBERT GIESWEIN, | |
| Defendant. | |

## REPLY MEMORANDUM IN FURTHER SUPPORT OF THE
## PRESS COALITION'S APPLICATION FOR ACCESS TO VIDEO EXHIBITS

The Press Coalition respectfully submits this reply memorandum in further support of its Application for access to video recordings of the riot at the United States Capitol on January 6, 2021, which have been referenced in Government filings and submitted to the Court in this matter. After the Coalition submitted its Application, and in advance of the detention hearing, the Government provided four video exhibits to the Court. Notice of Hr'g Exhibits, Dkt. 25. The Government and Defendant do not object to release of these four videos. *See* Resp. to Minute Order Regarding Access to Video Exhibits ("Resp.") at 1, 6, Dkt. 26. Given that lack of opposition, the Court should order the Government to release these four video exhibits to the Press Coalition immediately, without any restriction on copying or further distributing them.

The Government opposes the release of U.S. Capitol surveillance footage referenced in its filings (the "CCTV Videos"), however, on the grounds that these CCTV Videos (1) were not submitted to the Court and (2) are designated "Sensitive or Highly Sensitive" pursuant to the Protective Order in this case. *Id.* at 1.[1] Because the CCTV Videos are nevertheless judicial records subject to a presumption of access, and in light of the increasing proliferation of public

---

[1] According to the Government's Response, the Defendant agrees the CCTV Videos are not judicial records. *Id.* at 6.

access to Capitol surveillance footage with no objection from the Government, the Court should provide access, without restriction, to these CCTV Videos as well.

## ARGUMENT

**I.    The CCTV Videos Are Judicial Records.**

As the D.C. Circuit explained in *MetLife, Inc. v. Financial Stability Oversight Council*, "whether something is a judicial record depends on the role it plays in the adjudicatory process." 865 F.3d 661, 666 (D.C. Cir. 2017) (Garland, J.) (citations and internal marks omitted). The Government's position here is that the CCTV Videos are not judicial records because the Court never received copies of the videos, but the record makes clear that the CCTV Videos played a significant role in the adjudicatory process even without having been filed.[2]

In its opposition to Defendant's request for release from pretrial detention, the Government included screenshots from the CCTV Videos depicting Defendant "carrying a bat and pepper spray" into the U.S. Capitol building, "spray[ing] his aerosol canister at officers," and after other rioters blocked and lifted a metal door near the crypt to the building, "encourag[ing] his follow rioters to join the advance." Gov't's Opp. to Def's Mot. for Hearing & Revocation of Detention Order at 7-10, Dkt. 19. The Government also included several screenshots from the CCTV Videos in its filing. *Id.* Additionally, at the July 1 hearing on Defendant's motion, on which the Court has not yet ruled, the Court commented, "what you see on the videos of images is something out of John Wick. . . . [I]t's terrifying to look at some of the images in the videos. You know, they are horrific." July 1, 2021 Hr'g Tr. at 41:21-42:1.

---

[2] *But see* Minute Order of July 6, 2021, *In re Application for Access to Certain Sealed Video Exhibits*, 21-mc-82-ABJ (finding, in another Capitol riot case, that videos the Government referenced in filings but did not submit as exhibits are not judicial records); Order, *In re Application for Access to Certain Sealed Video Exhibits*, 21-mc-81-TSC, Dkt. 6 (same).

2

As the D.C. Circuit has noted, "a public need" for records arises when they are "referenced in the public filings of the parties." *EEOC v. Nat'l Children's Ctr.*, 98 F.3d 1406, 1411 (D.C. Cir. 1996) (citing *United States v. Hubbard*, 650 F.2d 293, 318 (D.C. Cir. 1980)). Here, the Government specifically referenced the CCTV Videos in its filings, and the Court is presently considering the Government's depictions and descriptions of the CCTV Videos in deciding whether to grant Defendants' request for pretrial release. The "public need" for these videos is therefore especially strong.

The D.C. Circuit's decision in *SEC v. AIG* further clarifies this point. There, AIG entered into a consent decree with the SEC requiring AIG to retain an independent consultant to assess the company's policies and procedures and produce confidential reports for the company and the agency. 712 F.3d 1, 3 (D.C. Cir. 2013). A journalist subsequently sought access to the consultant's reports, and the D.C. Circuit held that the reports "are not judicial records subject to the right of access because the district court made no decisions about them or that otherwise relied on them." *Id.* at 3-4. The D.C. Circuit observed that "the reports' contents do not record, explain, or justify the [district] court's decision in any way—nor could they," and thus concluded that "[d]isclosure of the reports would do nothing to further judicial accountability," which is a core purpose of the common law access right. *Id.* at 4.

Here, however, the CCTV Videos plainly <u>are</u> playing a role in the adjudicatory process, at this very moment. The Government described and included screenshots of the CCTV Videos in its filings, and the Court is currently considering the Government's evidence against Defendant, including the video descriptions and screenshots, in deciding whether to release Defendant from custody and, if so, under what conditions. Disclosure of the CCTV Videos would therefore <u>greatly</u> advance judicial and prosecutorial accountability in this case, as

members of the public could evaluate for themselves whether the Government accurately characterized and screenshotted the CCTV Videos and whether the Court is correctly analyzing those characterizations and screenshots.  That is the precise interest in accountability that the Supreme Court advanced in *Press-Enterprise Co. v. Superior Court*, where it held that the First Amendment right of access applies to preliminary hearings in criminal cases, and it observed that "the absence of a jury, long recognized as an inestimable safeguard against the corrupt or overzealous prosecutor and against the compliant, biased, or eccentric judge, makes the importance of public access to a preliminary hearing *even more* significant."  478 U.S. 1, 12-13 (1986) (emphasis added and citation and internal marks omitted).[3]

      The Government further asserts that the CCTV Videos are "discovery materials," citing inapposite decisions denying access to materials that were exchanged in a purely "private process."  Resp. at 5 (quoting *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986)). Those cases looked to case law holding that judicial records are "materials on which a court relies in determining the litigants' substantive rights" and determined that discovery materials did not qualify.  *See United States v. Kravetz*, 706 F.3d 47, 55 (1st Cir. 2013) (citations omitted). Here, however, the Government described and included screenshots of the CCTV Videos in support of its argument that Defendant remains a threat to the public and his substantive right to release from detention should be limited.

---

[3] *See also In re Globe Newspaper Co.*, 729 F.2d 47, 52 (1st Cir. 1984) ("The same policy concerns that the Supreme Court identified when it found that the public has a First Amendment right of access to criminal trials . . . operate in pretrial proceedings.  The decision to release on bail an accused who subsequently flees the jurisdiction may effectively end the trial before it has begun; the decision to hold an accused without bail deprives of his liberty a citizen who has not yet been convicted of a crime.  In either case, the bail decision is one of major importance to the administration of justice, and openness will help to assure the public that the decision is properly reached.").

In similar circumstances other Circuits have recognized that unfiled materials integral to the decision-making process can qualify as judicial records. The Third Circuit, for instance, has stated that "[t]he status of a document as a judicial record . . . depends on whether a document has been filed with the court, *or otherwise somehow incorporated or integrated into a district court's adjudicatory proceedings*. While filing clearly establishes such status, a document may still be construed as a judicial record, *absent filing*, if a court interprets . . . that document." *In re Cendant Corp.*, 260 F.3d 183, 192 (3d Cir. 2001) (emphases added). The Eleventh Circuit has likewise explained that it has "never held . . . that filing is *required* in order to turn a document into a judicial record—especially when that document may help a court to resolve the merits of an action." *Comm'r, Ala. Dep't of Corr. v. Advance Local Media, LLC*, 918 F.3d 1161, 1167-68 (11th Cir. 2019) (emphasis in original).

Here, the CCTV Videos are playing a significant role in this case. They therefore likewise qualify as judicial records and are subject to the public's right of access.

**II.     The Government Cannot Overcome The Right Of Access To These CCTV Videos.**

Because the CCTV Videos are judicial records, they are subject to the powerful presumption of public access under the First Amendment and the common law. *See Press-Enter. Co.*, 478 U.S. at 12-13 (holding that First Amendment right of access applies to preliminary hearings in criminal cases); *United States v. Jackson*, 2021 U.S. Dist. LEXIS 49841, at *13-14 (D.D.C. Mar. 17, 2021) (ordering release of video exhibits submitted at a detention hearing in another Capitol riot case after concluding they are judicial records subject to the "strong presumption in favor of public access" under the common law). The Government has not overcome this presumption, and the Court should release the CCTV Videos accordingly.

In objecting to public access, the Government principally – and incorrectly – asserts that the Protective Order in this case "prevents [the] dissemination" of the CCTV Videos because they are designated as "Sensitive or Highly Sensitive." *See* Resp. at 5-6. The Government ignores, however, that in several other riot prosecutions, it expressly agreed to the release of Capitol surveillance footage. *See, e.g.*, *Jackson*, 2021 U.S. Dist. LEXIS 49841, at *2 (noting the Government took no position on a Press Coalition member's request for release of Capitol surveillance videos shown at a detention hearing); Minute Order of Apr. 28, 2021, *In re Application of Press Coalition for Certain Sealed Video Exhibits*, No. 21-mc-34-TFH (D.D.C. Apr. 28, 2021), Dkt. 8 (noting that the Government withdrew its objection to release of Capitol surveillance videos in *United States v. Tanios*); *see also* Diego Mendoza, *Bodycam video shows man stealing badge, radio from Officer Fanone during Capitol riot melee*, WUSA9 (July 6, 2021), https://www.wusa9.com/article/news/national/capitolriots/watch-capitol-rioters-allegedly-assault-law-enforcement-thomas-sibick-bruno-cua-michaelfanone/65-c558e7ae-eb60-4afe-88d4-c16f09d357f5 (publishing surveillance footage shown in *United States v. Cua*, 21-mc-74-EGS and released to the Press Coalition); Ryan J. Reilly (@ryanjreilly), Twitter (July 20, 2021), https://twitter.com/ryanjreilly/status/1417540426169556993 (publishing a clip of Capitol surveillance footage released without objection in *United States v. Morss*, 21-cr-40-TNM-5).[4]

The extensive availability of surveillance footage recorded during the January 6 riots, and the Government's description and screenshots of these particular CCTV Videos in its filing

---

[4] Indeed, the Government itself has disseminated Capitol surveillance footage in requesting help identifying riot suspects, and in President Trump's second Impeachment trial. *See* U.S. Capitol Violence, FBI, https://www.fbi.gov/wanted/capitol-violence; *See full video of how insurrection at Capitol unfolded*, CNN (Feb. 10, 2021), https://www.cnn.com/videos/politics/2021/02/10/security-footage-capitol-riot-plaskett-timeline-impeachment-trial-two-vpx.cnn (Capitol security video shown at 12:30, 17:30, 21:40, 22:50, 33:40, 34:34).

further undermines the argument for withholding the CCTV Videos, as the D.C. Circuit made clear in *Washington Post v. Robinson*, 935 F.2d 282 (D.C. Cir. 1991).  There, the Post sought access to the plea agreement of a district employee who cooperated with an investigation into Mayor Marion Barry, and the government argued that the record should remain sealed because it "was part of an ongoing criminal investigation that might be compromised or that might embarrass innocent parties if publicized," because "release of the agreement may [have made] it difficult to secure the cooperation of other witnesses," and because "the safety of [the cooperator] and his family would have been placed at risk." *Id*. at 283-85, 291 (citation, internal marks, and alterations omitted).  The D.C. Circuit rejected these speculative concerns, reasoning that the substantial amount of already-public information about the investigation and the cooperator's involvement, including information reported by the press, meant that unsealing the plea agreement "could hardly have posed any *additional* threat to the ongoing criminal investigation." *Id*. at 292 (emphasis added).

      Because the Government cannot possibly show that continuing to withhold the CCTV Videos "is essential to preserve higher values and is narrowly tailored to serve that interest," it cannot overcome the First Amendment presumption of access to those records. *Dhiab v. Trump*, 852 F.3d 1087, 1102 (D.C. Cir. 2017) (Williams, J., concurring).  And because the Government failed to respond to the Press Coalition's argument that the *Hubbard* factors weigh in favor of access to these records, choosing instead to insist that the *Hubbard* test is "inapplicable," *see* Resp. at 5, the Government has conceded the Press Coalition's argument on that point. *See Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("It is well understood in this Circuit that when a [party] files an opposition to a dispositive motion and addresses only certain arguments raised by the [movant], a court may treat those

7

arguments that the [party] failed to address as conceded."), *aff'd*, 98 F. App'x 8 (D.C. Cir. 2004). The Court should therefore grant the Press Coalition's Application and promptly provide public access to the CCTV Videos.

## CONCLUSION

For the foregoing reasons, the Press Coalition respectfully requests that the Court order the Government to release all of the requested videos, without restriction, within 72 hours.

Dated:  July 26, 2021        Respectfully submitted,

BALLARD SPAHR LLP

/s/ *Charles D. Tobin*
Charles D. Tobin (#455593)
Maxwell S. Mishkin (#1031356)
Lauren Russell (#1697195)
1909 K Street, NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2200 | Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
russelll@ballarspahr.com

*Counsel for the Press Coalition*