## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Crim. Action No. 21-24-1 (EGS) |
| ROBERT GIESWEIN, | |
| Defendant. | |

### OPPOSITION OF MR. GIESWEIN TO GOVERNMENT'S JULY 29 ORAL MOTION TO EXCLUDE TIME UNDER THE SPEEDY TRIAL ACT

At the Court's direction, Robert Gieswein, through undersigned counsel, respectfully offers in writing the grounds for his continued objection to further tolling of his constitutional and statutory rights to a speedy trial.

### BACKGROUND

Mr. Gieswein has been in continuous custody since January 18, 2021, the date that he surrendered to authorities in Colorado upon learning of a warrant for his arrest.[1] Nine days later, on January 27, and before his initial proceedings in Colorado had even concluded, the grand jury returned an indictment. Rule 5 Documents, ECF No. 5 at 19-22 (Docket in U.S. Dist. Colorado Case No. 1:21-mj-00010-STV). The indictment charges Mr. Gieswein with one count of obstruction of an official proceeding, three counts of assault with a dangerous weapon, one count of aiding and abetting the destruction of government property, and one count of entering and

---

[1] Federal agents executed the warrant on January 19. Arrest Warrant Return, ECF No. 5 at 1.

remaining in a restricted building or grounds with a deadly or dangerous weapon. Indictment, ECF No. 3.

On January 29, the United States Magistrate Judge presiding in the District of Colorado ordered that Mr. Gieswein remain detained and committed him to this district. Rule 5 Documents, ECF No. 5 at 18-22. This Court recently denied a motion to revoke that order. Order, ECF No. 28; Memorandum Opinion, ECF No. 29.

Two months after his arrest, federal authorities finally delivered Mr. Gieswein to the District of Columbia, and he had his initial appearance on March 29. Minute Entry, Mar. 29, 2021. He is being held at the District of Columbia Correctional Treatment Facility ("CTF"). At the April 15 arraignment, he entered a plea of not guilty, and requested a jury trial.

At every juncture, the government has sought tolling of Speedy Trial Act "clock," which requires that trial commence no later than 70 days from the day the defendant first appears in the trial jurisdiction. Speedy Trial Act, 18 U.S.C. § 3161 et seq. Each time, the government has relied primarily on the difficulty it is having getting its arms around the vast amount of evidence that it continues to collect regarding the events of January 6. *See, e.g.*, Gov't Mot., ECF No. 11 (filed April 14, 2021) (seeking to exclude 60 days under the Speedy Trial Act). Each time, Mr. Gieswein has opposed the tolling of the Speedy Trial Act. *See, e.g.*, Mem. in Opposition, ECF No. 15. To date, the Court has granted all of the government's

requests, most recently in May. *See e.g.* Minute Entry, May 19, 2021 (tolling the time between May 19 and July 29).

Shortly before the July 29 status hearing, the government filed– in this case and others – a generic Notice Regarding Status of Discovery, ECF No. 26, attaching a Memorandum Regarding Status of Discovery, (hereinafter "Discovery Mem."), ECF No. 26-1. The Memorandum demonstrated that the government still had not overcome most of the discovery problems it has previously identified. Discovery Mem., ECF No. 26-1. In communication with undersigned counsel, counsel for the government has also indicated that if trial goes forward within 70 days of July 29, as the Speedy Trial Act would normally require, the government cannot guarantee that it can meet its discovery obligations to Mr. Gieswein.

At the July 29, 2021 status hearing, the United States asked the Court to toll the Speedy Trial Act yet again, relying on the discovery complications it identified in its Discovery Memorandum. To the best of counsel's recollection, the government did not specify at the hearing how long of a tolling it is seeking. However, based on communications with the counsel for the government before the hearing, undersigned counsel believes that the government is seeking at least at least 30 days' tolling of the Act..

Also at the July 29 hearing, the Court indicated that anticipated re-impositions of mask requirements in Washington, DC, and in the federal courthouse (both of

which have now been realized), made it unlikely that the Court would convene a trial before early 2022.

The defense objected to the government's oral motion to toll the Speedy Trial Act, asserting that Mr. Gieswein is entitled to both discovery as guaranteed by the Constitution and Rules of Criminal Procedure, and a speedy trial as guaranteed by the Constitution and the Speedy Trial Act. The Court ordered the defense to brief its grounds for opposing tolling, and suggested that the parties confer about trial dates in early 2022.

## LEGAL BACKGROUND

The Speedy Trial Act generally requires trials to commence within 70 days of the filing of an indictment, or the appearance of the defendant "before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1). "The time limits of the Speedy Trial Act begin to run automatically rather than upon request," *New York v. Hill*, 528 U.S. 110, 117 n.2 (2000), and "a defendant may not prospectively waive the application of the Act." *Zedner v. United States*, 547 U.S. 489, 500 (2006).

However, it also provides that certain "periods of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence[.]." § 3161(h). One such excludable period is:

4

(7)(A) Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial . . .

§ 3161(h)(7)(A). The Act goes on to set out several factors "among others, which a judge shall consider in determining whether to grant a continuance" on "ends of justice" grounds pursuant to § 3161(h)(7)(A). These include:

(i) Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice.

(ii) Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.

. . .

(iv) Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

§ 3161(h)(7)(B). Finally, this portion of the Speedy Trial Act states that "[n]o continuance under subparagraph (A) of this paragraph shall be granted because of general congestion of the court's calendar, or lack of diligent preparation or failure to

obtain available witnesses on the part of the attorney for the Government." § 3161(h)(7)(C).

Before granting an ends-of-justice continuance under the Speedy Trial Act, the Court must determine whether "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). As the Supreme Court has explained, this balancing of interests must be individualized: the ends-of-justice provision "gives the district court discretion – within limits and subject to specific procedures – to accommodate limited delays for *case-specific* needs." *Zedner*, 547 U.S. at 499 (emphasis added).

## THE GOVERNMENT HAS NOT ESTABLISHED THAT THE ENDS OF JUSTICE REQUIRE TOLLING THE SPEEDY TRIAL ACT AGAIN

**I.    The government has not offered adequate grounds for its request to toll the Speedy Trial Act.**

The government's Discovery Memorandum does not provide sufficient grounds for continuing Mr. Gieswein's trial.

First, the government has failed to establish that it has been sufficiently diligent in devising a way to deal with the mountain of evidence it reports having collected. It states that it established a Capitol Breach Discovery Team "[s]hortly after the Capitol Breach," but does not state when exactly it did this. Discovery Mem., ECF No. 26-1 at 5. It describes the process for seeking the help of an outside contractor, but provides no detail on when it began drafting the statement of work, soliciting bids, or whether it imposed any contractual efforts to curtail the timeline.

6

*Id.* at 6. It notes that it has started transferring data to the contractor ultimately selected, Deloitte Financial Advisory Services, LLP ("Deloitte"), but does not state when it started, or, more importantly, when it is projected to end. *Id.* It offers only vague assurances that its review progress is "under way." *Id.* at 7 ("We are implementing and continuing to develop processes and procedures for ensuring that voluminous materials have been and will continue to be systematically reviewed for information that, inter alia, may be material to the defense . . ."). It also fails to report on the number of people it has devoted to this project and whether it has hired additional staff.

Relatedly, the government's filing omits that it was not until June 30 that it sought permission to provide grand jury material to Deloitte even though its employees are not "government personnel." *See* Application for Order, in *In re Capitol Breach Grand Jury Investigations With the District of Columbia*, 1:21-GJ-20-BAH, ECF No. 1 (filed June 30, 2021) (arguing that Deloitte employees "should be viewed as 'government personnel' authorized to access grand jury materials for the purpose of assisting prosecutors in the performance of their duties within the meaning of Rule 6(e)(3)(A)(ii)"). And the Discovery Memorandum omits that Judge Howell denied the request, which undoubtedly will dimmish the usefulness of the plan to administer much of the review and production of evidence through Deloitte. Order, in1:21-GJ-20-BAH, ECF No. 5 (filed July 16, 2021).

Second, the government has failed to identify what, if any, steps it is taking to prioritize the production of evidence to those who are detained in connection with January 6 charges. The government focuses on the fact that "over 500 individuals" have been charged. Discovery Mem., ECF 26-1, at 2. But far fewer than this are detained. One *Buzzfeed* reporter tracking January 6 cases reported on July 26 that only between 66 and 71 of the January 6 defendants were in custody.[2] And this number accounts for several new arrests; detentions in this District resulting from the arrests made in early 2021 – like Mr. Gieswein's – reportedly totaled as few as 39 through early June.[3] That is, according to these reporters, six months into Mr. Gieswein's detention, fewer than 10% of the 500+ defendants on which the government focuses in its filing were detained, and only slightly greater percentage are today. A failure on the part of the government to devote its most significant January 6 prosecution resources to identifying evidence related to this narrow

---

[2] Zoe Tillman, a senior reporter for *Buzzfeed News* who regularly reports on January 6 cases, noted the following on Twitter on July 26: "My stats as of this morning on the status of Jan. 6 defendants: - 66 in custody (a few are new arrests waiting for a detention hearing) - 478* allowed to go home, with varying conditions - 5 unknown (dockets aren't updated yet). . . *This number includes people whose cases already resolved via plea deals and whose cases aren't pending anymore (Chris Kelly had charges dismissed + Joseph Barnes, who died), but reflects overall how many people have been allowed to go home compared to the total # arrested)[.]" Zoe Tillman, *Twitter* (July 26, 2021), *available at* https://twitter.com/ZoeTillman/status/1419670639762362374?s=20 (last visited 8/1/21).

[3] Scott MacFarlane, Rick Yarborough and Jeff Piper, "Insurrection Cases Raise Profile and Concerns about DC Jail," *NBC News Washington* (June 10, 2021), https://www.nbcwashington.com/investigations/insurrection-cases-raise-profile-and-concerns-about-dc-jail/2698060/ (last visited 8/2/21)

universe of cases would be inexcusable. Yet, the government makes no claim to giving any particular attention to this group of people.

In a similar vein, although the government filed this update in Mr. Gieswein's case, it identifies nothing particular about his case that is getting in the way of prompt production of the evidence related to his activities at the Capitol. It also fails to specify whether *any* additional evidence relating to Mr. Gieswein has been identified in the universe of data the Discovery Memorandum describes to date (apart from what the government has already produced to the defense without the benefit of the Deloitte database in several productions through June 17).

Third, the government asserts that the need to redact personal identifying information is causing delays, asserting that the government "cannot allow personal contact information for Congressional members, staffers, and responding police officers – targets and victims of these crimes – whose phones may have connected to the Capitol's DAS network to inadvertently be produced." *Id.* at 8. But it elsewhere states that it has already identified tools to "identify standard categories" of this kind of information and redact it. *Id.* at 7. Further, there is an extensive Protective Order in place. April 15, 2021 Minute Order (incorporating by reference the terms of the Protective Order presented in ECF No. 10-1). Defense counsel, officers of the Court, can be expected to abide by these orders. As such, the planned redactions seem superfluous.

Fourth, the government's Memorandum fails to provide any projection for when it will solve its discovery problems. In another case, the government has reportedly offered only that it will not be able to meet its obligations "before January 2022."[4] Here, the defense is unsure of how long a continuance the government seeks. And the generic Discovery Memorandum offers no concrete estimate. This ambiguity about when discovery will be available provides the Court with no grounds to find that the government's request is reasonable.

Finally, the government fails to acknowledge that many of the problems it identifies are of its own making, and that their solution is within the government's power. The fact that so much data is at issue arises at least in part from the fact that the government has chosen to charge so many people, to charge them all now, and to resolve so few cases.[5] The latter no doubt reflects the government's choice of charges, and the nature of its plea offers. For example, the government resolved even felony

---

[4] *See* Matthew Russell Lee, "In Jan 6 Case of Hale-Cusanelli DOJ Asks Trial Delay Into 2022 But Nov 9 Picked," *Inner City Press* (July 30, 2021), *available at* http://www.innercitypress.com/ddc58ahaleicp073021.html (last visited 8/2/21) (reporting on status hearing in *United States v. Hale-Cusanelli*, 1:21-cr-00037-TNM-1, and that prosecutor in that case asserted the government cannot meet discovery obligations to that defendant before January of 2022, which writer had also reported on Twitter while listening to the hearing); Julie Kelly, *Twitter* (July 30, 2021), *available at* https://twitter.com/julie_kelly2/status/1421193609961934850 (stating same, as writer was listening to status hearing in *United States v. Hale-Cusanelli*).

[5] *See* Dina Temple-Raston & Tim Mak, "The Justice Department is Struggling to Bring Capitol Riot Cases to Trial: Here's Why," *NPR* (July 27, 2021), *available at* https://www.npr.org/2021/07/27/1013500073/the-justice-department-is-struggling-to-bring-capitol-riot-cases-to-trial-heres- (last visited 8/1/21) ("Twenty-five people have pleaded guilty so far, which leaves a good 550 more cases left to resolve.").

assault charges (and many misdemeanor assault charges) arising from 2020 protests around the federal courthouse in Portland with deferred dispositions.[6] But, reportedly, it is refusing to even consider such dispositions in any misdemeanor cases arising from the events of January 6.[7] These decisions are the government's prerogative, and whether they reflect unduly disparate treatment is a matter for another day. But today, the Court must decide whether to continue to grant the government unlimited leeway when these choices impinge on individual constitutional rights, particularly those of detained defendants.

There is no question that anyone who violated the law at the Capitol on January 6 is responsible for his or her own actions. That so many people may have

---

[6] *See, e.g.* U*nited States v. Giovanni Terrence Bondurant*, 3:20-mj-00160 (D. Or), ECF No. 24 (government motion to dismiss with prejudice); *id.* ECF No. 22 (defense counsel declaration noting that parties had reached agreement in January 2021 providing that  if Mr. Bondurant complies with the terms of pretrial release for six months the government will dismiss the case.); Aruna Viswanatha and Sadie Gurman, "Almost Half of Federal Cases Against Portland Rioters Have Been Dismissed," *Wall    Street    Journal* (April    15,    2021),    *available    at* https://www.wsj.com/articles/almost-half-of-federal-cases-against-portland-rioters-have-been-dismissed-11618501979 ("Of 96 cases the U.S. attorney's office in Portland filed last year charging protesters with federal crimes, including assaulting federal officers, civil disorder, and failing to obey, prosecutors have dropped 47 of them, government documents show. Ten people have pleaded guilty to related charges and two were ordered detained pending trial. None have gone to trial.").

[7] *See* Dina Temple-Raston & Tim Mak, "The Justice Department is Struggling to Bring Capitol Riot Cases to Trial: Here's Why," *supra*, note 5 ("Four defense attorneys, interviewed by NPR said that they were told by federal prosecutors that deferred prosecution agreements for Jan. 6 defendants were a nonstarter, even for the lowest-level charges. Justice officials, they said, told prosecutors working the cases that they were not authorized to offer them.").

violated the law is not the fault of the United States Attorney's Office, as the Court suggested at the hearing on July 29. However, the government *does* control how it proceeds with its prosecutions. It enjoys significant discretion in the management of its caseload, and it should exercise that discretion in a way that prioritizes individuals' constitutional rights to review the evidence in their cases, and to speedy trials. Indeed, it is not uncommon for the government to forego its ideal enforcement strategy in order to reconcile the demands of individual rights; the government does it every single day.

But so far in the January 6 cases, and this one in particular, the government continues to ask the Court to elevate its prosecutorial preference for bringing a multitude of cases over individual constitutional speedy trial and evidentiary rights. The Court should decline to do so. Indeed, if the government will not do what is necessary to ensure that Mr. Gieswein is both provided with the discovery he is due and brought to trial within a reasonably speedy time-frame, then the Constitution, the Speedy Trial Act, and Rules of Criminal Procedure demand that the Court force the government to do so, or dismiss this case.

## II. The reimposition of mask mandates in the District of Columbia and the courthouse are not grounds to toll the Speedy Trial Act further.

On July 29, the Court noted that increasing concerns about the Delta variant of the coronavirus were likely to lead to renewed mask mandates in the District and the E. Barrett Prettyman United States Courthouse ("the courthouse"), which they now have. *See* Standing Order No. 21-45 (BAH).

12

Notwithstanding the reimposition of mask mandates, the courthouse is still scheduled to fully re-open on September 1, 2021. *See* Standing Order No. 21-44. It is already open to judges, court staff, jurors, attorneys and parties, among others. *Id.* Notwithstanding continuing concerns about the coronavirus, in recent months, criminal jury trials have gone forward both in this district and other districts, including the nearby Alexandria Division of the Eastern District. Although the Delta variant presents a newer and different degree of risk, the point of the renewed mask mandates is to provide additional protection to address that risk. Moreover, more than 60% of D.C. residents have received at least one vaccine dose.[8] At this time, it appears premature to conclude that a jury trial cannot go forward safely and fairly until January of 2022.

III. **Mr. Gieswein's detention magnifies the concerns raised by the government's continuing requests to delay trial.**

For much of Mr. Gieswein's time at CTF, he was forced to remain in his cell, by himself, for 23 hours of every day. Although conditions have improved since June, he still must remain in his cell for about 18 hours of every day, and is only allowed outside for a two to three hours a week. He is housed with others charged with offenses stemming from January 6, and separately from the rest of the jail's population. Others in his unit have complained of beatings and other unfair treatment. *See, e.g.*, Def. Mot. for Release from Custody, ECF No. 23 at 2 n.4, *United*

---

[8] *Vaccination Data*, Gov't for the District of Columbia (July 26, 2021), https://coronavirus.dc.gov/data/vaccination (last visited Aug. 2, 2021).

13

*States v. Samsel*, 1:21-mj-00188-ZMF (May 24, 2021) (alleging that a prison guard assaulted the defendant, who sustained significant injuries from the attack).

These circumstances magnify the cost to delaying Mr. Gieswein's trial reflected in the Sixth Amendment and Speedy Trial Act. Judge Bates acknowledged this in a memorandum opinion explaining his decisions to release a January 6 defendant, Federico Guillermo Klein ("Klein"), and to grant the government's motion to exclude time. Specifically, although Judge Bates granted the government's request to exclude some time, he noted that "the speedy trial analysis would be quite different were Klein to remain detained pretrial." Mem. Op., *United States v. Federico Guillermo Klein*, 1:21-cr-236- JDB (Apr. 12, 2021), ECF No. 29 at 26-27 n.11. On the other side of the coin, Judge McFadden recently refused the government's request to delay until January 2022 the trial of January 6 defendant, Timothy Hale-Cusanelli, despite the government's avowed struggle to produce discovery, citing the fact that the defendant was detained.[9]

---

[9] See Matthew Russell Lee, "In Jan 6 Case of Hale-Cusanelli DOJ Asks Trial Delay Into 2022 But Nov 9 Picked," *supra,* note 4; July 30, 2021 Minute Entry in *United States v. Hale-Cusanelli*, 1:21-cr-00037-TNM-1 (noting that Court tolled time under the Speedy Trial Act only from July 30 to August 24, and scheduled a jury trial for November 9).

## CONCLUSION

For these reasons, and in light of the record as a whole, Mr. Gieswein respectfully requests that the Court deny the government's motion to exclude time under the Speedy Trial Act.

If the Court grants the government's motion to exclude additional time, in the alternative, Mr. Gieswein respectfully requests that the Court nevertheless schedule a trial, schedule a status hearing roughly 30 days after the upcoming August 11 hearing on the government's motion, and order that, before that next status hearing, the government must provide the Court and the defense with a more concrete projection of when it will be able to meet its discovery obligations to Mr. Gieswein.

Respectfully submitted on August 2, 2021.

**ROBERT GIESWEIN**
by Counsel:

Geremy C. Kamens
Federal Public Defender

by:_____s/_____
Ann Mason Rigby
DC Bar No. 491902
Assistant Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314
Telephone: (703) 600-0869
Facsimile: (703) 600-0880
ann_rigby@fd.org