**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | |
| **v.** : | Crim. No. 21-cr-00024 (EGS) |
| : | |
| **ROBERT GIESWEIN** : | |
| : | |
| **Defendant.** : | |

**UNITED STATES' MOTION FOR RECONSIDERATION OF ORDER REQUIRING GOVERNMENT TO FUND DEFENSE DISCOVERY VENDOR BY SEPTEMBER 10, 2021**

At a status hearing on August 12, 2021, the Court ordered the United States to "fund" an entity, company, or program to facilitate the receipt and analysis of discovery in the above-captioned case and asked the parties to submit a written proposed order to this effect. As described in the United States' Memorandum Regarding Status of Discovery as of August 23, 2021 (the "Status Memorandum") (ECF No. 40), incorporated herein by reference, we have developed and begun implementing a plan to use two primary platforms to process and produce discoverable voluminous materials: one for documents (e.g., items such as law enforcement investigation files and business records) and one for digital materials (e.g., video footage). These two platforms are two separate information repositories hosted by unrelated vendors. We understand the Court's order as requiring the United States to modify its contracts with each of the vendors to ensure that this defendant will have access to the same discovery platforms and functionality the government is using to process and produce discovery for the purpose of receiving and reviewing discoverable materials. Further, we note that the materials to which the Court's order is relevant are comprised of previously described voluminous sets of data that the government collected in its investigation of the Capitol Breach cases, among which may be

interspersed information the defense may consider exculpatory.  As previously noted, the government has already provided to the defense a significant amount of materials collected by the FBI and other agencies that are directly relevant to the charges against him.

For the reasons stated below, the government requests that the Court reconsider the requirement to modify the contracts at issue by September 10, 2021, and is instead requests that we report on our progress to the Court at the hearing already scheduled for September 17. For the reasons set forth in the Status Memorandum and below, we expect to have made substantial progress, and possibly complete progress, by that date.  However, as the government is already wholly motivated to modify its contracts as soon as possible, a deadline can only have one possible effect -- to undermine our goal to expeditiously provide all Capitol Breach defense teams *meaningful* access to the platforms at issue.

As an initial matter, and as we articulated at the August 11 status hearing, we do not object to the Court's order to the extent that it requires the government to fund the hosting of relevant discovery platforms for the defense, with equivalent functionality to our own.  As we stated at the hearing, the Court's order is consistent with efforts that were already being undertaken by the government in consultation with Federal Public Defender ("FPD") leadership and electronic discovery experts, including Sean Broderick, the National Litigation Support Administrator for the Administrative Office of the U.S. Courts, Defender Services Office.  Specifically, we were already engaged in frequent and productive discussions to ensure that Federal Public Defender offices nationwide working on Capitol Breach cases, counsel that are appointed under the Criminal Justice Act, and retained counsel for people who are financially unable to obtain these services will have access to the same discovery platforms and

functionality the government is using to process and produce discovery for the purpose of receiving and reviewing discoverable materials.

The government files this motion because the deadline proposed by the Court is unnecessary and potentially detrimental. First, as set forth in Status Memorandum, our continual diligent efforts to carry out the Court's order are clear. The government has already agreed with FPD to fund the hosting of a defense Relativity workspace for receipt of discoverable documents, and to fund the hosting of an instance of evidence.com for the receipt of voluminous digital media – for all Capitol Breach defendants.

Second, we are moving with all due haste to ensure that the defendant is provided the discovery he is owed and is brought to trial consistent the Speedy Trial Act. As explained below, no deadline is required to further motivate the government to complete these discussions as rapidly as possible, but a deadline could inadvertently undermine the goal we *all* have – to expeditiously provide *all* Capitol Breach defense teams *meaningful* access to each platform. We must ensure that any contract modifications meet our intended goal.

A. The Relativity Platform

We believe that to ensure defendants have meaningful access to the defense Relativity workspace, FPD will require additional support for the workspace we have already agreed to fund. As the Court is aware, "Even if the discovery is produced in an optimal way, defense counsel may still need expert assistance, such as litigation support personnel, paralegals, or database vendors, to convert e-discovery into a format they can use and to decide what processing, software, and expertise is needed to assess the [Electronically Stored Information]." *See Criminal e-Discovery: A Pocket Guide for Judges*, Chapter II (Common Issues in Criminal e-Discovery), at 12. The *Pocket Guide* serves as a supplement to the federal judiciary's bench

book. We are engaging in frequent and productive discussions with FPD in the effort to resolve contractual and technical details related to the implementation of an adequate support plan.  For example, the Relativity workspace must be adequately supported by people with the requisite technical expertise to assist users and perform searches and for users who may be unfamiliar with how to access or use a database.  Further, the workspace must have sufficient functionality to meet needs that are specific to defense cases.  We are making rapid progress in these discussions, with the goal of ensuring that any contract modification is adequate to meet the needs of hundreds of cases.

Moreover, as we set forth in our Status Memorandum, the failure to fund a Relativity workspace by September 10th will not in any way hinder our current discovery plan.  Until the defense Relativity workspace is operational and defense accounts are established, we will continue to make discovery productions from voluminous sets of data via other available methods.  For example, we are currently using our Relativity platform to process materials related to allegations of police misconduct and plan to make those reports available within approximately the next two weeks.  Capitol Breach prosecution teams will disseminate these materials in their individual cases via alternative means, e.g., cloud-based file sharing, as soon as they become available.  We are prioritizing these materials and Metropolitan Police Department ("MPD") use-of-force investigation files precisely because many defendants have requested them.  These individual productions will *also* be added to the defense workspace, so that they are available to the defense as soon as their workspace is accessible.

Further, as we explain in our Status Memorandum, even if the defense had access to a Relativity database on September 10th, the materials we could produce to it would be limited.  We are currently in the process of populating our *own* Relativity database with hundreds of

4

thousands of documents that still must be meaningfully organized and processed before they can be produced, and this process takes time. These processes are not wholly automated. To the contrary, they require both technical expertise and manual assistance. These processes are also necessary to avoid production of unorganized data dumps, unreadable files, and unusable databases; or a failure of the government to take adequate steps to prevent both victims and defendants' private information from being shared with hundreds of defendants.

B. The Evidence.Com Platform

As explained in our Status Memorandum, based on our on-going discussions, FPD very recently obtained a trial instance of evidence.com. The government is moving expeditiously to fund that instance going forward, and to provide the necessary licensing services. We expect to meet this goal in the very near future, and possibly even before the deadline imposed by the Court. Should this plan not come to fruition for any reason, it will be based on a fact or facts currently unknown to the government. Holding the government to this arbitrary deadline will not change that outcome.

**CONCLUSION**

In sum, while we appreciate that the Court would like to see faster progress in the production of voluminous materials, the government is already working as hard as possible to facilitate the production of such materials. We expect to have made considerable if not complete progress by September 10, 2021, and any failure to do so will be the result of currently unknown facts or to the need for on-going discussions about technical and contractual details required to ensure that defense access is meaningful.

Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney
DC Bar No. 415793

By:     /s/ *Emily A. Miller*
EMILY A. MILLER
Capitol Breach Discovery Coordinator
DC Bar No. 462077
555 Fourth Street, N.W., Room 5826
Washington, DC 20530
Emily.Miller2@usdoj.gov
(202) 252-6988

By:     /s/ *Erik M. Kenerson*
ERIK M. KENERSON
Assistant United States Attorney
OH Bar No. 82960
555 Fourth Street, N.W., Room 11-909
Washington, DC 20530
Erik.Kenerson@usdoj.gov
(202) 252-7201