1           UNITED STATES DISTRICT AND BANKRUPTCY COURTS
                     FOR THE DISTRICT OF COLUMBIA
2

3   UNITED STATES OF AMERICA        Criminal No.  21-CR-00024

4          v.                       Washington, D.C.

5   ROBERT GIESWEIN,                July 1, 2021

6            Defendant.             4:00 p.m.

7   ------------------------/

8               TRANSCRIPT OF MOTIONS HEARING
            BEFORE THE HONORABLE EMMET G. SULLIVAN
9               UNITED STATES DISTRICT JUDGE

10  APPEARANCES:

11  For the Government:     United States Attorney's Office
                           By: ERIK KENERSON, ESQUIRE
12                         555 Fourth Street, NW
                           Washington, D.C.  20530
13

14

15  For the Defendant:     Federal Public Defender
                           By: ANN MASON RIGBY, ESQUIRE
16                         1650 King Street, NW
                           Suite 500
17                         Alexandria, Virginia 22314

18

19

20  Court Reporter         Lisa K. Bankins RMR FCRR RDR
                           United States District Court
                           District of Columbia
21                         333 Constitution Avenue, NW
                           Washington, D.C. 20001
22

23

24  Proceedings recorded by mechanical stenography,
    transcript produced by notereading.
25

```
 1                    P R O C E E D I N G S
 2              THE CLERK:  This is Criminal Case 21-024, United
 3      States of America versus Robert Gieswein.  Will parties on
 4      the line please identify yourselves for the record?  And
 5      we'll start with government counsel, please.
 6              MR. KENERSON:  Good afternoon, Your Honor.  This
 7      is Erik Kenerson on behalf of the United States.
 8              THE COURT:  Good afternoon, counsel.
 9              MS. RIGBY:  Good afternoon, Your Honor.  Ann
10      Mason Rigby on behalf of Mr. Gieswein who is present by
11      video, Your Honor, and consents to proceed by video.
12              I want to let the Court know I'm also here with
13      Maya Livingood, who is a lawyer from Cleary Gottlieb who
14      is essentially appended to our Public Defender's Office
15      and is out of view, but I'm here with.
16              THE COURT:  All right.  Counsel, good afternoon
17      to you both.
18              Mr. Gieswein, how are you today, sir?
19              THE DEFENDANT:  Very good, Your Honor.  Good
20      afternoon.
21              THE COURT:  Good.  Good.  Where are you, in
22      Northern Neck or D.C. Jail?
23              THE DEFENDANT:  The D.C. DOC Jail.
24              THE COURT:  Okay.  D.C. Jail.
25              Okay.  All right, counsel.  Sorry to keep you
```

1    waiting.  There may be some media attorneys on the line

2    and that's fine.  There was an inquiry early as to whether

3    or not the Court was requiring or requesting the media

4    attorneys to be present to respond to any questions that

5    come up about a release of any videos.  And I asked Mark

6    to tell them that, you know, the media is always welcome

7    in my court, but I'm not requiring or requesting them to

8    be available.  But, you know, the First Amendment is alive

9    and well in my court.  There may be a question.  I can't

10   think of any right now.

11           Actually, since I've just raised that issue, let

12   me just inquire of defense counsel and the government's

13   attorney and I'm sorry that we just notified you today,

14   but we did the best we could do under the circumstances.

15   Are there objections to the media's request for release of

16   the tapes?  And I'll hear from government counsel first.

17           MR. KENERSON:  Thank you, Your Honor.

18           With regard to the specific motion filed by

19   Press Coalition in this case, the government does object.

20   My understanding of what the press counsel's request is is

21   that they are requesting video exhibits where the

22   government has submitted to chambers only still shots.

23   Their motions refer specifically to CCTV footage.  We have

24   not submitted to chambers any actual videos from CCTV.

25   Only in fact still shots.  So to that effect, the videos

1   themselves underlying those still shots would not be

2   judicial records and the Hubbard factors and the common

3   law right of access would not apply.  So we would object.

4        THE COURT:  Let me do this.  I want to be fair

5   to both sides.  I can hear from defense counsel if you

6   really have a burning desire to say anything.  But if not,

7   I think in fairness, I should give both sides a chance to

8   respond in writing.  I think that's the fair thing to do.

9        So how much time does the government need?  It's

10  a very interesting issue that's raised here.  And I really

11  don't need -- I don't want to cut you off, Ms. Rigby.  If

12  you feel as though, you know, you really must respond, go

13  right ahead.  I don't want to overlook you.  But if you

14  want the time, I'm happy to give you both the time.  I

15  just did this and I told my law clerk at the time I said

16  it may well be, they don't have any objections, but if

17  they do, I'll give them more time.

18       So having said all that, counsel, do you want to

19  say anything or do you want to quit while you're ahead?

20       MS. RIGBY:  I'll quit while I'm ahead, Your

21  Honor.  I take it from the government that they object and

22  I assume they would welcome the chance to brief it.

23       THE COURT:  All right.  Maybe what I should do

24  is this.  Have the government respond first and then have

25  defense counsel respond to the government's submission

1    which raises the second question.

2          There's an upcoming holiday here.  So what's

3    fair and reasonable under the circumstances?  I don't want

4    to interfere with anyone's plans to -- if you're fortunate

5    enough to be away, good for you.  I'm not going to

6    interfere with anyone's plans to be away.

7          MR. KENERSON:  Your Honor, I'm actually not

8    fortunate enough to be away, but --

9          THE COURT:  All right.  Then can you respond on

10   the 4th then?  Okay?  No, no.  I'm not going to do that to

11   you.

12         MR. KENERSON:  If we could have a week from

13   Monday, which would be the 12th.

14         THE COURT:  That's fine, counsel.  That would be

15   the 12th.  I don't have a calendar.  I think that's the

16   12th.  And a week thereafter for defense counsel?

17         MS. RIGBY:  That would be fine, Your Honor.

18         THE COURT:  All right.  And for the media

19   attorneys -- and we'll issue a minute order also.  And for

20   the media attorneys, I'm going to be fair to them as well

21   and give them a week after defense counsel has responded

22   to respond to the submissions by the government and

23   defense counsel.  I don't need to hear from the media

24   attorneys today.  Again it's always a pleasure to have

25   them here.  But, you know, they can put their thoughts in

1  writing.

2          All right.  So let me -- focusing on the issues

3  before the Court -- I read everything.  These are very

4  interesting, compelling issues.  They are very important

5  issues, too.  So let me just attempt to identify the two

6  major issues before the Court.  The Court does have a few

7  questions I'd like to get answers to before I give

8  everyone a brief opportunity to focus on your principal

9  points, keeping in mind I read everything.

10         And all of us -- all the judges are inundated

11  with these motions for detention and the motions for

12  release.  We talk a lot among ourselves.  These are

13  complicated issues and we're all trying to reach the right

14  decision for the right reasons.

15         Before the Court as the Court understands it is

16  whether -- first of all, whether it's a reasonable

17  presumption in favor of -- a rebuttable presumption in

18  favor of detention in this case.  If there is a rebuttable

19  presumption, whether Mr. Gieswein has -- am I pronouncing

20  your surname correctly, sir?

21         THE DEFENDANT:  Yes, sir.  Gieswein.

22         THE COURT:  All right.  Whether Mr. Gieswein has

23  met his burden of production rebutting that presumption.

24         Secondly, if Mr. Gieswein has rebutted the

25  presumption, do the Section 3142(g) factors weigh in favor

1    of a finding that the proposed conditions of release will

2    reasonably assure the appearance of Mr. Gieswein as

3    required and the safety of any other person in the

4    community?

5            Now if there's no rebuttable presumption in

6    favor of detention in this case whether Mr. Gieswein is

7    subject to detention under 18 U.S. Code, Subsection F

8    because he is charged with a "crime of violence."  If

9    there is a crime of violence, do the Section 3142(g)

10   factors weigh in favor of a finding that the proposed

11   conditions of release will reasonably assure the

12   appearance of Mr. Gieswein as required and the safety of

13   any other person and the community.

14           Now let me just get to my questions.  I just

15   have a few that I really want to get answers to.  But then

16   I'll give counsel an opportunity to focus on their

17   principal arguments.  This is not a large desk that I'm

18   working from.  So I'm doing the best I can.  So bear with

19   me.

20           All right.  For the government first, regarding

21   whether there is a rebuttable presumption, is the

22   government aware of any circuit level case authority

23   directly addressing whether an aiding and abetting offense

24   is the same as committing a substantive offense listed in

25   18 U.S. Code, 3142(e)(3)?

1          MR. KENERSON:  Thank you, Your Honor.

2          So the government is not aware of any additional

3    authority to what we posted in our surreply.  I'm not

4    aware of a circuit level court having to address this

5    particular question.  Although, of course, we cited to

6    numerous circuit level cases and higher that there is

7    effectively no distinction between an aider and abettor

8    and the principal.  But we're not aware of case law

9    addressing this particular issue.

10          THE COURT:  That's what I thought.  Thank you.

11          Regarding whether the aerosol spray is a

12    dangerous weapon, how does the government respond to Mr.

13    Gieswein's argument that the aerosol spray only appeared

14    to cause "mild symptoms"?

15          MR. KENERSON:  I think the -- that there is --

16    first, the question is whether its use in such a way that

17    it's capable of causing serious bodily injury, not whether

18    it did in fact cause serious bodily injury.  I think

19    that's the question the Court has to look at.

20          Additionally, since the principal briefing in

21    this case, there's been a decision from the Court of

22    Appeals -- excuse me -- the D.C. Circuit, unpublished

23    decision -- I want to be clear about that.  It's an

24    unpublished decision from D.C. Circuit.  United States

25    against Quaglin.  Q-U-A-G-L-I-N.  And I'm looking for the

1     case number to cite to the Court here right now.  It's

2     21-3028 out of the D.C. Circuit filed on June 24, 2021.

3     The slip opinion at page 2 cites the multiple cases from

4     the other circuit -- from other circuits upholding that 18

5     U.S.C., 111(b) is categorically a crime of violence.  And

6     that was upholding that 111(b) was a crime of violence in

7     that particular case upholding the court's detention

8     decision.

9            THE COURT:  All right.  I'm sorry.  What is the

10    surname of the defendant in that case?

11           MR. KENERSON:  Quaglin.  Q-U-A-G-L-I-N.

12           THE COURT:  All right.  Great.  Thank you,

13    counsel.

14           Does the government concede that the Woodland

15    Wild Dogs is not a "militia," but rather a "group of

16    friends" as Mr. Gieswein argues?

17           MR. KENERSON:  I think that there is -- so I

18    don't know that concede is the right way to put it.  So I

19    am not sure to say that they are not in fact a militia,

20    though that term isn't really defined anywhere.  But we

21    are not -- we're not pressing in light of the evidence put

22    forth by the defense the idea that his association with

23    Woodland Wild Dogs is and of itself a reason for the -- in

24    favor of detention.

25           THE COURT:  All right.  So the Court need not

1    reach and address that issue then.  Correct?

2              MR. KENERSON:  Correct.

3              THE COURT:  Correct.

4              For defense counsel, regarding whether there is

5    a rebuttable -- thank you, counsel.  Regarding whether

6    there is a rebuttal presumption, is defense counsel aware

7    of any circuit authority directly addressing whether an

8    aiding and abetting offense is the same as committing a

9    substantive offense listed in 18 U.S. Code, 3142(e)(3)?

10             MS. RIGBY:  No, Your Honor.  I'm not aware of

11   any binding authority on that point.  And I would note

12   that the cases that the government cites in its brief and

13   I think the government would concede are not directly on

14   point and really just stand for the legal principle that

15   an aider and abettor as a matter of law, essentially as a

16   legal fiction is considered equally culpable and may be

17   punished equally.

18             The Rosemond case says those who provide aid to

19   persons committing federal crimes are themselves

20   committing a crime.  We don't dispute that.  The

21   Richardson case from the Sixth Circuit says that aiding

22   and abetting is an alternative theory of liability.  We

23   don't dispute that.  The Kegler case in the D.C. Circuit

24   says that an aider and abettor can be charged with having

25   done the acts themselves.  That is not the same as saying

1    that he has committed the acts themselves.  The Colon case

2    in the Eleventh Circuit says --

3              THE COURT:  I'm sorry.  What's the critical

4    difference between the language there, can be charged

5    versus has committed?  Well, he can't be charged unless

6    it's the government's theory that he's committed.

7    Correct?

8              MS. RIGBY:  He can be charged with a crime and

9    the crime is committing the act of aiding and abetting.

10   Committing is an act.  It's a verb.  You must -- it is an

11   action.  To commit aiding and abetting, right, you must

12   have a certain state of mind and you must actively do

13   something to bring about the offense.  It is its own

14   crime.

15             The cases the government cites are all about

16   liability.  The courts have decided -- well, Congress has

17   decided that one who aids and abets may be punished the

18   same as one who commits.  That does not make them the same

19   thing.  One who aids and abets is not the one who does it.

20   They are distinct.  And so every case the government

21   cites, Your Honor, simply stands for that proposition.

22   That's the long way of saying there is nothing binding

23   saying that for purposes of the B.R.A. which is all about

24   action and what you did and the facts of what you did -- I

25   think you're muted, Your Honor.  I'm sorry.

1          THE COURT:  I'll give you another version of the

2    dangerous weapon question, the aerosol question.  And with

3    respect to the aerosol spray and the government's

4    contention it was a dangerous weapon, is it not

5    significant that the government has produced evidence that

6    the spray indeed hit an officer and caused harm?  That's

7    one part.  That's one question.  Or that it is commonly

8    understood that any type of aerosol spray to the eyes is

9    likely to be harmful?

10          MS. RIGBY:  Your Honor, what would -- briefly,

11   no.  What would be significant is if the government had

12   produced evidence that the officer had suffered extreme

13   pain or permanent disability or any of the other factors

14   that are described in Section 113 that incorporate the

15   other statute.  I can't recall what it is, Your Honor.

16   But the definition that the government has adopted that is

17   set forth in Owens, which happens to be very similar to

18   the definition of substantial bodily harm in the

19   guidelines.

20          The cases the government cites highlight this,

21   Your Honor.  In those cases which are -- they are

22   guideline cases.  So they are inapposite but in that way,

23   but they do highlight that the government must come forth

24   with evidence of serious injury, not just injury.

25          What we have here is an officer saying that I

1    had trouble breathing and stinging eyes.  In the cases the

2    government cites, the witnesses offered a great deal of

3    more evidence about how much pain they experienced.  I

4    think the witness in the Neal case said she felt like a

5    match was up her nose.  She couldn't breathe.

6            Moreover, Your Honor --

7            THE COURT:  Was that a post-trial argument?

8            MS. RIGBY:  It was a sentencing guideline

9    argument, Your Honor --

10            THE COURT:  So the jury had a chance to -- I

11    don't recall whether that was a plea or not.  So the jury

12    had a chance to consider the evidence then.

13            MS. RIGBY:  I don't recall that either, Your

14    Honor.  But the government here is relying on the one

15    police officer.  And in the Neal case, it was a great deal

16    more evidence before the court.  And in that case, the

17    person who had been sprayed also had suffered injury for

18    many weeks and had prescriptions prescribed to her and the

19    same was the case in the Bartalata case, which I'm sure I

20    am mispronouncing.

21            Both of those people who were sprayed went to

22    the doctor.  Both got prescriptions.  Both were dealing

23    with this for weeks and that was all established through

24    testimony.

25            And the Court just doesn't have that here and

1    frankly, there is no suggestion that we're going to have
2    that.  I think the officer said he didn't seek any medical
3    treatment for this.  So those cases highlight the degree
4    of harm is critical in deciding whether something
5    qualifies as a --
6             THE COURT:  I guess my question is shouldn't
7    that be a jury triable question to be resolved whether or
8    not there was harm?  I think the statute says harm.  I
9    don't think it says significant harm, does it?  Correct me
10   if I'm wrong now.
11            MS. RIGBY:  I think the case law definition of
12   dangerous weapon that has been accepted I think both the
13   government and I cited it in the Chansley case requires
14   either that the weapon is inherently dangerous or that the
15   weapon is capable of causing -- the theory is bodily harm
16   I think is the --
17            THE COURT:  Right.
18            MS. RIGBY:  And the courts have borrowed -- to
19   define that term, courts have borrowed from Section 113,
20   which happens to be very similar to the guideline
21   argument.
22            THE COURT:  All right.  Thank you.
23            MS. RIGBY:  And, Your Honor, of course, you are
24   right.  That is a jury issue.  It highlights that it's a
25   factual issue.  And our point in our motion is that

1    there's not strong evidence of that here so far and that,

2    of course, is a factor for the Court to weigh under 3142.

3    And I don't want to get too far ahead of the Court's

4    question, but --

5                   THE COURT:  No, no.  Let me stop you there.  Not

6    strong evidence.  But is that a question that should be

7    addressed at the MJOA stage though as opposed to now?

8                   MS. RIGBY:  I would say both, Your Honor.  I

9    think the strength of the evidence on the element that is

10   making this an aggravated assault charge weighs heavily in

11   the Court's determination of how serious the charges are,

12   how serious this conduct was and how that should be

13   weighed against the likelihood that he will be convicted

14   of these and all of the other factors of 3142.

15                  THE COURT:  All right.  Thank you, counsel.

16                  Mr. Gieswein appears to argue that his conduct

17   subsequent to January the 6th demonstrates that he does

18   not pose a continuing threat.  How do you explain the

19   government's evidence that Mr. Gieswein told officers --

20   and it appears that he volunteered this information --

21   told police officers after he turned himself in that, one,

22   he thought he did nothing wrong and, two, he supported a

23   military takeover to restore the Constitution?

24                  MS. RIGBY:  Thank you, Your Honor.

25                  Well, first, I would note that as the Court just

1    did that this was after turning himself in which I think

2    is a strong factor.

3              THE COURT:  And he did voluntarily turn himself

4    in.  I think that's undisputed I think.

5              MS. RIGBY:  Yes.  You are right, Your Honor.

6    Your Honor, I don't know the full context exactly what Mr.

7    Gieswein meant there.  I don't think anybody does.  It is

8    a recorded statement.  I'm not disputing the statement

9    that I didn't do anything wrong.  That one is recorded.

10   The other is not.  I think that's important.  I don't know

11   if it's a reference to he did nothing wrong in turning

12   himself in, didn't understand why he was being detained.

13             And I would say, Your Honor, that's not evidence

14   of what he thinks now all these months later now that he's

15   been charged, now that he's got a lawyer, now that he's

16   heard the breakdown of all the evidence, now that he's

17   seen how his case may compare with others.  I don't think

18   we have evidence of Mr. Gieswein's view right now.

19             THE COURT:  And he's under no obligation to say

20   anything either.

21             MS. RIGBY:  Right.

22             THE COURT:  Some people have demonstrated

23   remorse, et cetera, and that's their decision.

24             And I want to emphasize, Mr. Gieswein, if I ask

25   any questions that prompt you to blurt out an answer,

1    don't do it.  Tell me you want to talk to your attorney

2    because you don't have an obligation to say anything at

3    all, Mr. Gieswein.  You understand that, don't you, sir?

4              THE DEFENDANT:  Thank you, Your Honor.  Yes, I

5    do.

6              THE COURT:  All right.  But, look, just raise

7    your hand.  If at some point you need to talk to your

8    attorney, raise your hand.  I'll see you and Mark will put

9    you in a breakout room.

10             I'm sorry, counsel.  I interrupted your train of

11   thought.  I'm sorry.

12             THE DEFENDANT:  I appreciate that.  Thank you.

13             THE COURT:  Sure.

14             MS. RIGBY:  And I do appreciate that, too, Your

15   Honor.  I think that was a point I made in my reply.  I

16   feel very strongly that somebody in Mr. Gieswein's

17   position, especially when everything is taken as a

18   concession should save any of that for later if it's

19   coming.

20             Your Honor, I think this is a good moment to

21   note what I think is an especially important factor in our

22   proposed conditions.  What Mr. Gieswein may have said on

23   January 16th or 17th has to be compared to what he is

24   likely to think if he is released to the custody of our

25   third party custodian who is here if the Court would like

1    to address her and her husband, Your Honor.

2          I can proffer to the Court that I have spoken

3    with both of them including the third party custodian's

4    husband who is a police officer.  I can tell you he

5    absolutely, although he respects the First Amendment right

6    to protest, has strong feelings, negative feelings about

7    what happened at the Capitol on January 6th.  I can

8    proffer to you that he does not approve of any assault of

9    any officer, law enforcement officer and he believes

10   strongly that there is a right and wrong way to protest.

11         And if the Court has any concern about Mr.

12   Gieswein's view on any issue, I can assure the Court that

13   there will be -- that he will be in an environment if he

14   is released that will counteract any of the kinds of

15   continuing beliefs that I know the Court reads about in

16   the news.  Whatever he thought on January 6th is not going

17   to be reinforced if in fact he did think he did nothing

18   wrong.  Right?  I'm not conceding that.

19         THE COURT:  Right.

20         MS. RIGBY:  And if in fact he has any continuing

21   beliefs that anything he did there was appropriate or

22   anything illegal was appropriate, that will not be

23   reinforced.  I think the opposite is the case.

24         THE COURT:  All right.  I think it's fair to say

25   that -- and if it's unfair, I want you to tell me,

1    Ms. Rigby -- that many of the events of January the 6th

2    followed statements by many that an election had been

3    stolen, that it's time to stop the count, that it's time

4    to march to the Capitol, et cetera, et cetera, et cetera.

5    And there are all sorts of statements that were made.

6            So the question the Court has is that if Mr.

7    Gieswein said in the past that he supported a military

8    takeover to restore the Constitution, you know, what would

9    preclude him from doing the same thing when the conspiracy

10   theorists again start talking about the election was

11   stolen and the former president will be in office in

12   August and if not, then, you know, whatever, whatever,

13   whatever?  I mean it's conjectural, it's hypothetical.

14   But he did participate in some events, you know, arguably

15   to restore the Constitution in his words.  So that's a

16   concern the Court has.  I understand what you're saying

17   about his brother-in-law.  And it's great that he's got a

18   responsible brother-in-law, who is a police officer.  Is

19   that correct?

20           MS. RIGBY:  He is a police officer.  Just to

21   correct the record, he's the husband of his godmother.  So

22   he views him as an uncle.

23           THE COURT:  All right.  Okay.  Great.

24           MS. RIGBY:  Yes, Your Honor.  And I'm sorry I

25   didn't return to that because the Court had raised that

1    earlier.

2             First, that is not a recorded statement.  I

3    don't know if he actually said that or if he did, what

4    exactly he said.  Secondly, I'm a little unclear what he

5    might have meant.  But to me, at most it sounds like

6    something that he wishes that other people would do.  Not

7    himself.  I mean he's talking about the military taking

8    over, he's not in the military.  That's not a statement

9    about his own intention.  That's a statement about wishes

10   and desires.  And what would preclude him, Your Honor,

11   would be the conditions that we're proposing.

12            Again let's just take as a hypothesis that he

13   thought that or whatever he thought in January.  He wasn't

14   under the custody of a nurse and a police officer in

15   Oklahoma.  He wasn't under any curfew.  He wasn't required

16   to stay in the state he was in.  He wasn't monitored by an

17   ankle monitor.  Nobody was monitoring his electronic

18   communications.  It's apples and oranges, Your Honor.  And

19   he has absolutely no history of violating court orders --

20            THE COURT:  That's troubling in so many of these

21   cases.  People, they come to court with unblemished

22   records.  You know, never been arrested.  You know, never

23   paid a fine over 50 bucks.  You know, most are working.

24   Mr. Gieswein was employed I believe at the time of his

25   arrest.  Correct or not?

1          MS. RIGBY:  He was un -- did you say employed?

2          THE COURT:  Employed.  Yes.

3          MS. RIGBY:  He had been laid off as a result of

4     the Coronavirus, Your Honor.

5          THE COURT:  Right.  Right.  But he had been

6     employed up to that point.

7          MS. RIGBY:  Right.  Right.  Right.  And if he

8     were released, he can go back to work.  There's no

9     Coronavirus to stress him out like -- I shouldn't say no

10    Coronavirus.  We know that's not true.  But conditions are

11    certainly different in that respect, too, Your Honor.

12         You know, the government makes the point I think

13    that the Court is getting at or attempts to argue that

14    proof of good history shows that his beliefs are so

15    strong, strong enough to persuade him to use violence

16    again and again and again and that's patently false, Your

17    Honor.

18         First, we still don't have any evidence of what

19    Mr. Gieswein had in mind or if he had any intent to

20    disrupt anything or whatever on January 6th.  But putting

21    that aside, whatever he believed on January 6th, he

22    shortly believed before January 6th.  You cannot conclude

23    that those beliefs alone are what make him dangerous.

24         Whatever beliefs he had he must have had for a

25    long time and yet, he never committed any violence

1        whatsoever.  During this year or whatever you want to call

2        it before January 6th, never violent.  Carried firearms

3        that he's legally allowed to own before January 6th.

4        Never violent.  Went to rallies for President Trump before

5        January 6th.  Never violent.  Hangs out with friends with

6        guns all the time.  Never violent.  His friend group

7        sometimes he referred to as a militia, whatever that means

8        and I appreciate that that's an ambiguous term, we're all

9        agreeing on that.  Yet no history of violence.

10                   He apparently was hanging out with this Three

11       Percenter group for sometime in 2018.  Long time ago.  I

12       appreciate we're not making a big deal out of that.  But

13       again the point is no history of violence.  The logical

14       conclusion is that this man is not violent.  A logical

15       conclusion is that there was something on January 6th that

16       was different.

17                   THE COURT:  Would a non-violent person walk into

18       the United States Capitol armed with a baseball bat and

19       harmful aerosol spray?  I mean I've heard some of these

20       comments made by people who I believe are irresponsible

21       about, oh, that was just typical tourist activity that

22       day.  Well, that's just nonsense.  There are stronger

23       words for that, but I won't use them.  But what about

24       that, walking into the Capitol with a baseball bat and

25       aerosol spray?

1          MS. RIGBY:  Your Honor, I would -- first of all,

2     we're not pressing that this is a person who was --

3          THE COURT:  I'm sorry.  You are not pressing

4     what?

5          MS. RIGBY:  We're not arguing that if the

6     government's charges are true this is a case of somebody

7     walking in as a tourist.  Okay?

8          THE COURT:  Right.

9          MS. RIGBY:  Your Honor, I would distinguish

10    between the word "violent" and or being violent and

11    engaging in violence.  If what the government says is

12    true, then Mr. Gieswein committed assault on January 6th.

13    The question before the Court is he incorrigibly violent?

14    Is that a characteristic that cannot be controlled?  And I

15    think that's why you have to look at his history including

16    the history of doing -- that I just went through and I

17    won't reiterate and you have to look at what he did after

18    January 6th.  There are so many people including many that

19    the Court has detained that bragged to their friends and

20    openly on the Internet about how great it was and some of

21    them long after January 6th.  We don't have that with Mr.

22    Gieswein.

23          There are people who we have evidence were, you

24    know, posting threats long before January 6th ever

25    happened.  We don't have that with Mr. Gieswein.

1          These are what inform the Court that he is not

2     violent.  That there is not a basis to conclude that he is

3     violent even if the Court concludes that there's

4     substantial evidence that he engaged in violence on

5     January 6th.

6          And further, you have to look at the condition

7     we're proposing.  Nothing like that was in place before

8     January 6th.

9          THE COURT:  Good argument.  So -- don't get too

10    carried away.  I didn't say I agreed with everything.  But

11    you made a good argument and I expected you would.

12         But here's a question I'm going to ask and, you

13    know, you probably have objections.  But I got to ask it

14    anyway.  And maybe there's another way I can phrase it.

15    And again, Mr. Gieswein, I don't want you to say anything.

16         So what I'll do is -- I want to rephrase this

17    question in this light, although this is probably

18    objectionable as well because Mr. Gieswein doesn't have to

19    present any evidence or say anything.  Anyway, let me

20    just -- instead of arguing with myself, let me just ask

21    the question.

22         Is there any rational explanation for why the

23    FBI was unable to locate the baseball bat, clothing Mr.

24    Gieswein wore on January the 6th?  You know, this was

25    during the execution of the search warrant.  They didn't

1    find anything.  Or why Mr. Gieswein's phone was never

2    recovered despite the government's argument that AT&T

3    records show it was used up to and including January 16th?

4              And, you know what, counsel, I'm inviting any

5    objections you have.  I would not hold that against you.

6    I mean recognizing he doesn't have to say anything.  He

7    doesn't have to produce any evidence.  But I would be

8    remiss if I didn't ask the question.

9              I tried to turn it around as opposed to saying

10   does he have an explanation which may prompt him to say

11   something.  I don't want him to say anything.  I should

12   look at the competent evidence.  That's what I should look

13   at if there is any.  But also recognizing that you don't

14   have to present anything.

15             MS. RIGBY:  Your Honor, I don't know the answers

16   to those questions.  The only thing I will note that I

17   think is in the record is that Mr. Gieswein was camping

18   and I can represent that he sometimes stayed with his

19   mother and sometimes stayed with his on-and-off-again

20   girlfriend.

21             THE COURT:  All right.  Okay.  Fair enough.  All

22   right.  So it would not be -- it would not be error for

23   the Court to say there is no evidence explaining why and

24   then proceed with the Court's questions.  So that's

25   truthful I think at this point in time.  Maybe there will

1     be evidence if the case goes to trial or whatever.

2            All right.  I've taken a lot of time with five

3     or six brief questions.  I could do one of two things,

4     give the government a chance to respond or give defense

5     counsel a chance to emphasize any principal points she

6     wishes to make and then give the government a chance to

7     respond to everything.  I don't have any strong feelings

8     either way, counsel.  What's your pleasure?

9            MS. RIGBY:  Well --

10           THE COURT:  I guess my question is to the AUSA.

11    Yes?

12           MR. KENERSON:  Thank you.

13           I think the government wants to do what will be

14    most helpful to the Court to decide this issue.  So, you

15    know, if the Court wants to hear from defense counsel and

16    then we will respond, happy to do that.  If the Court

17    wants us to respond now, we're happy to do that as well.

18           THE COURT:  Well, okay.  So, Ms. Rigby, you're

19    not going to be repetitious.  Why don't you go ahead and

20    respond to those brief questions and then I'll give

21    defense counsel a fair opportunity to emphasize any

22    principal points.  We've covered a lot of points already.

23    But why don't I -- I want to be fair to the government as

24    well and give you a chance to respond to counsel's

25    representations and arguments.

1          MR. KENERSON:  Thank you, Your Honor.

2          So I think just a couple of representations --

3    responses with respect to Ms. Rigby's arguments about

4    aiding and abetting as it relates to whether there's a

5    rebuttable presumption under the act.  And again I know

6    the Court has read everything.  So I'm going to try not to

7    belabor points that have already been made in writing.

8    But one of the things that she said was that the Kegler

9    decision from the D.C. Circuit, which is cited in the

10   government's surreply at page 2 basically just says that

11   the aider and abettor can be charged with having done the

12   acts himself.

13         Earlier in that same quote, what the D.C.

14   Circuit says is that "the acts of the perpetrator become

15   the acts of the aider and abettor."  And then it goes on

16   to say that the acts of the latter can be charged with

17   having done the acts himself.  I think that would support

18   the government's reading of the statute that Congress

19   intended the bail statute to cover aiding and abetting

20   offenses.

21         One other point on that as well.  I think

22   defense counsel had said that aiding and abetting is a

23   separate crime.  I think her argument was that the, you

24   know, the act of aiding and abetting is itself a crime.

25   In fact, the case law has been pretty clear that aiding

1       and abetting is not a separate crime.  It's simply a

2       theory of liability and that at least in the charging

3       front, one can be charged as a principal and the

4       government can convict under an aiding and abetting

5       theory.  I think that the -- it's pretty clear that it's

6       not a separate crime.  That is solely a theory of

7       liability.  And that the -- I'm not going to repeat the

8       kind of statutory interpretation arguments that the

9       government made, but I think that in light of that case

10      law, the government's statutory interpretation is laid out

11      in the surreply as to why the Court should find Congress

12      intended the bail statute to cover aiding and abetting

13      offenses is correct.

14              With respect to the significance or

15      insignificance of whether this caused pain or caused

16      extreme pain, I think the Court kind of hit on something

17      and Ms. Rigby in her response as well.  In some of these

18      other cases, no, we do not have a statement from the

19      officer about burning through the nose or anything or

20      going to get medical attention or anything like that.  But

21      I think as Ms. Rigby said, one of the tests that the Court

22      has to look at here is whether the weapon used is capable

23      of causing extreme pain or any of the things laid out in

24      the statute.  And I think that the case law cited by the

25      government does establish that pepper spray is capable of

1    doing that sort of thing regardless of whether it in fact

2    did so in this case.

3            And the Court I think also needs to take into

4    account as it looks at both the dangerousness of the

5    defendant's conduct mostly that this was done in a crowded

6    area both inside and outside with a lot of people around,

7    a lot of whom were not wearing any protection.  So his

8    actions put at risk not only the officers at least one of

9    whom he struck, but it put at risk everyone around him

10   that day and it was capable of causing extreme pain.  And

11   I think defense counsel's arguments go only to the weight

12   of the evidence there.  I think the Court asked the

13   question about whether this is something better addressed

14   or that should be addressed either by a jury or at the

15   Rule 29 stage of the proceedings in terms of whether there

16   is probable cause to believe that the defendant committed

17   three separate assaults with a dangerous weapon.  That

18   question has been conclusively established by the grand

19   jury.  So there has been probable cause found by the grand

20   jury to believe that the defendant's assaults were

21   committed with a dangerous weapon.  And the Court can't go

22   behind that for purposes of whether there's probable cause

23   to proceed.  Any arguments the defense counsel is making

24   is solely on the weight that the Court should give that

25   evidence.  And for the reasons we have stated, we think

1    that the evidence is strong that the spray that the

2    defendant used was capable of causing harm.

3            THE COURT:  Can I ask you a question?  If I'm

4    wrong, Ms. Rigby tell me.  I thought defense counsel had

5    made an argument that the Court should somehow or another

6    conduct an independent consideration of the evidence to

7    determine probable cause.  Did I correctly state your

8    argument?

9            MS. RIGBY:  I did, Your Honor.  And the

10   government's surreply cited the King case that I think Mr.

11   Kenerson is referring to.

12           THE COURT:  Right.

13           MS. RIGBY:  I agree with Mr. Kenerson that other

14   district courts have relied on King in these cases for the

15   proposition that an indictment is conclusive evidence of

16   probable cause.

17           THE COURT:  Right.

18           MS. RIGBY:  But I would note that the King case

19   was not a 3142 case and neither was the Supreme Court case

20   it relied on.  In both of those cases, the defendant was

21   attempting to challenge the indictment in various ways

22   long past the bond issue.  And I would say that the

23   B.R.A., the 3142 is all about facts.  And it makes perfect

24   sense that Congress would have left to a district court

25   judge the determination of whether there clearly is

1    probable cause consistent with the fact that the act

2    overall gives the Court or it requires the Court to

3    consider the weight of the evidence.  I think if Congress

4    had meant to indicate that an indictment was conclusive

5    proof of probable cause, it would have worded the statute

6    differently to say indicted or there is probable cause.

7    So I take the government's point that other courts have

8    relied on King, but I don't think King stands for that

9    proposition.

10              THE COURT:  All right.  Thank you.  Thank you,

11   counsel.  Go right ahead, counsel.

12              MR. KENERSON:  Thank you, Your Honor.

13              And so just turning for a moment to the argument

14   about what the defendant said after turning himself in, I

15   think the Court put it well in a different context.  You

16   know, with respect to he believes he did nothing wrong,

17   that is what he said upon turning himself into the

18   officers and then again in the transport and there is

19   no -- the Court has no evidence before it that he believes

20   anything differently at this point.  I understand he's not

21   required to present any evidence.  We're not trying to put

22   that expectation on him, but there is no other evidence in

23   the record at this point contradicting that.

24              And Ms. Rigby made an argument about the

25   defendant's statement about wanting the military to

1    restore the Constitution and certainly, he's referring to

2    on its words the military and he's not a member of the

3    military.  But the import of that statement I think in

4    light of the defendant's actions on the 6th, his

5    statements on the 5th about politicians needing to get out

6    of office and having sold the country to the Rothschilds

7    and the Rockefellers, evidence of belief that the

8    Constitution in his mind is not currently in effect,

9    that's why he believes that the Constitution needs to be

10   restored, that the military needs to restore the

11   Constitution and the actions that the defendant took on

12   the 6th itself are the actions of a person who believes

13   that force is necessary to affect whatever change he

14   believes to be done.  And there's no indication that he

15   has changed his view in that regard.  He certainly held

16   that view at the time he was arrested and made the

17   statement Ms. Rigby is referencing to FBI agents.

18            And, of course, the fact that this wasn't

19   recorded was because he had invoked his rights the day

20   before.  They were solely transporting him.  They had no

21   intention to interview him which is why they didn't have

22   recording equipment set up.  But they, of course,

23   documented it in a 302 which has been provided to counsel.

24            Now with regard to the conditions, I think the

25   Court hit the nail on the head that there are a number and

1    this is understandably something that courts across this

2    courthouse are dealing with, but a number of people who

3    come before courts with no prior history with law

4    enforcement.  And what is particularly interesting about

5    Mr. Gieswein here is that he professes in his papers that

6    he has revered police officers, that he is going to be

7    staying with a police officer and but what he is charged

8    with doing is on three different occasions assaulting

9    police officers in the course of trying to get done what

10   he believes needed to be done.

11          That reverence of police officers that he's

12   professed to in the past did not stop him from rushing up

13   towards the Capitol, from pushing up against police bike

14   racks while they were trying to maintain a barrier, didn't

15   stop him from going up the stairs, it didn't stop him from

16   after spraying the police officers who are trying to hold

17   back crowds at the top of the stairs in the video that the

18   Court saw, didn't stop him from going further, didn't stop

19   him from going inside the Capitol through a broken window.

20   It didn't stop him from assaulting -- from spraying at

21   retreating police officers kind of inside the crypt and it

22   certainly didn't stop him from spraying a police officer

23   who was trying to effect an arrest of a fellow rioter.  So

24   I don't think that the Court should put as much stock as

25   Ms. Rigby would like the Court to in the conditions of

1   release imposed and certainly not where here this

2   defendant believed on the 6th and we have no evidence to

3   contradict that he still believes that in his view, the

4   Constitution needs to be restored, that there isn't

5   currently a working Constitution and he was willing to go

6   to the lengths that he went to over the course of at least

7   90 minutes on the 6th taking what the government submits

8   is violent action on the 6th to effect his change.  There

9   are no conditions or combination of conditions that can

10  prevent the defendant from doing something similar again.

11          THE COURT:  All right.  Thank you very much,

12  counsel.

13          Ms. Rigby, go right ahead.  And again, I'm

14  familiar with your arguments.  If you want to emphasize

15  some principal points, please be my guest.  If there are

16  any new points you wish to raise, go right ahead.

17          MS. RIGBY:  Well, Your Honor, I will -- if the

18  Court doesn't mind, I do want to respond to a few of the

19  government's arguments.

20          THE COURT:  Sure.  That's fine.  And it may well

21  be that I'll just limit argument to -- we've touched on

22  just about everything in this case, but I don't want to

23  short circuit any arguments you had prepared to make.

24  Look, believe me, I practiced law.  I know you've been

25  preparing.  Both sides.  So I'm not trying to cut you off

1    from making your arguments.  It's been a long day.  But
2    we're talking about somebody's liberty interest as well.
3            So you go right ahead and respond and then I'll
4    give you a chance to make whatever argument, whatever
5    principal -- raise whatever principal points you'd like to
6    in addition to what you are about to say.
7            MS. RIGBY:  Thank you.  I appreciate that, Your
8    Honor.
9            First, on the Kegler case and I take the
10   government's point about aiding and abetting not being a
11   separate crime and just being a theory of liability, but
12   that's sort of our point.  It's a theory of liability.  It
13   doesn't -- it is a theory of liability that is -- that
14   takes less conduct, that takes less committing than
15   actually committing a crime like a principal does.  And
16   when the Court is evaluating factors under 3142, there is
17   and there should be a strong emphasis on the different
18   facts there.
19           I agree with the government that the issue for
20   dangerous weapon is whether something is capable of
21   causing a particular level of pain.  But really it's --
22   the question is whether the use in question was capable of
23   causing that level of pain -- excuse me -- that level of
24   harm.
25           And I disagree with the way the government is

1    characterizing that here.  The spraying incidence that the

2    government is alleging took place either outside in open

3    air or in the large visitor center in the Capitol which I

4    visited.  I think that should be compared with the cases

5    the government cites in which sprays were used in the

6    course of robbery of a bank, of a teller would suggest it

7    was very up close and personal use inside and the other

8    case, Your Honor, was the robbery of a basically a bank

9    courier which also suggests that the use is probably

10   inside and in close quarters.  So the question is did

11   these particular uses carry the potential of causing

12   extreme bodily harm and that's what we argue.  It's not

13   well supported at least to date.

14            I've already addressed the grand jury issue.

15   King doesn't support that argument.

16            Your Honor, I just say again -- this is

17   repeating myself -- that the government --

18            THE COURT:  No, no.  Don't do that.  No.

19   Believe me, I'm listening carefully to your argument.

20            MS. RIGBY:  I appreciate that.  The conditions,

21   Your Honor, are what are very different now then what Mr.

22   Gieswein encountered on January 6th and I've emphasized

23   them, but I want to make sure I go through all of them.

24            THE COURT:  Sure.

25            MS. RIGBY:  I've emphasized the third party

1    custodian and her husband, the nature of their work, the

2    fact that they know Mr. Gieswein for a long time.  They

3    would not do this if they did not trust him to live with

4    them.

5            We did not put this in our papers, Your Honor,

6    but I've noticed that other courts have required

7    defendants to not return to D.C. for any reason other than

8    court hearings.  I absolutely would agree to that, Your

9    Honor.  We, of course, would --

10           THE COURT:  Is that legal?  No, no.  I know what

11   your answer is going to be.  No.  It's okay.

12           (The Court and Ms. Rigby spoke simultaneously.)

13           MS. RIGBY:  -- the Western District of Oklahoma,

14   the leading district without court or pretrial permission.

15   So I think that's another way of saying it.  Right?  And

16   that's fine.

17           THE COURT:  All right.  That's a better way of

18   saying don't come back to -- there's something offensive

19   that just makes me quiver.

20           MS. RIGBY:  You're right, Your Honor.  And we

21   are embracing it.  And it is -- and other courts should

22   not be concerned about future violation.

23           Location monitoring.  We talked about Internet

24   monitoring.

25           The social media ban that we had proposed would

1    also limit what a pretrial officer would even have to

2    monitor and we would embrace that, Your Honor.  It would

3    strengthen that condition.  I would certainly limit the

4    ability to plan anything --

5            THE COURT:  How does pretrial enforce that, that

6    he submit to computer monitoring and a bar from using

7    social media?  I mean he's in a house with three other

8    people.  You know, you can have a laptop.  You can have a

9    computer.  You can have a phone.  Is that really

10   enforceable?

11           MS. RIGBY:  I think so.  I think Ms. Schuck

12   could speak on that further.  But from what I understand

13   not every district has it.  But I believe it's been

14   confirmed that the Western District of Oklahoma actually

15   has software that they install on a defendant's phone or

16   computer and I've had this in other cases, Your Honor,

17   that literally monitors how they use it.

18           THE COURT:  That would be his phone and not, you

19   know, his brother-in-law's or his sister's phone.

20           MS. RIGBY:  And the third party custodian has

21   affirmed that she will assure that all other computers

22   have -- computers, laptops, tablets, cell phones,

23   whatever, are password protected.  In other cases, Your

24   Honor, families have promised to lock their own laptops up

25   in their rooms, particularly, if Mr. Gieswein were ever

1     alone.  So these are absolutely enforceable.

2            You could also enforce it without software.

3     That would be more work for the pretrial officer to

4     literally come and look at your history.  But it is

5     enforceable and the social media ban will make it even

6     more controlled.

7            THE COURT:  I mean this comes up in the context

8     of other cases.  The pornography cases are very disturbing

9     and I'm often troubled about what are we doing.  I mean if

10    you release someone and order that, how do you -- you

11    know, I'm not equating what he did with pornography at

12    all.  I'm not doing that.  I'm just using that as an

13    example.  It's troubling because you want to make sure

14    someone is not online in chat rooms.  I just don't know

15    how it's enforceable if you have other people living in a

16    house.  I don't know.  But, you know, I'm not trying to

17    put the burden -- actually, I guess I am trying to put the

18    burden on you to convince me that it, you know, it's a

19    legitimate condition that can be enforced.  I just have my

20    doubts about it.

21           MS. RIGBY:  Well, I think it's the combination

22    of the computer monitoring software that literally allows

23    the pretrial officer to check where you go.  And a third

24    party custodian with a lot on the line.  And we have I

25    think exceptional third party custodians in this case

1    including a sworn law enforcement officer who combined can

2    make sure that the Court's rules are followed.

3              THE COURT:  You know what, and just right before

4    you mentioned the third party custodian, I was just

5    thinking that oftentimes, we do modify the standard oath

6    that a third party custodian takes and we can add that

7    kind of language.  So you're right.  They are putting a

8    lot on the line.  And I always tell people, if you are a

9    third party custodian, you can go to jail if you don't do

10   A, B and C.  So that's -- I think that's the best answer

11   you can give.  Thank you.

12             MS. RIGBY:  And we also propose, Your Honor,

13   along the same lines that the third party custodian would

14   submit a report weekly confirming compliance with

15   conditions.  I think that's a way to keep the conditions

16   live and alive in everybody's minds.

17             And, you know, there are other factors apart

18   from the conditions that will produce a risk of a repeat

19   here, Your Honor.  In January, Mr. Gieswein had not worked

20   for many months despite a long history of working.  Work

21   fills time.  Work gives purpose.  He did not have that in

22   January.  He would have that if he were released.  In

23   fact, the third party custodians have said that if he

24   can't find work nearby and there should be lots of stuff

25   around, they have a large property and they can put him to

1   work there.

2           As I said earlier, I just think everything in

3   the world is less stressful than it was in January, Your

4   Honor --

5           THE COURT:  Let me go back to that kind of trick

6   question there.  Not trying to trick you.  But if I

7   understood you correctly, your client would agree not to

8   return to D.C. unless he receives permission from

9   pretrial.  Is that right or something like -- as opposed

10  to the Court ordering.  I'm concerned about ordering

11  somebody to stay out of D.C.

12          I mean I've done that for White House fence

13  jumpers, you know, for obvious reasons.  But you know

14  what, the conduct that the government complains of here is

15  more serious than the fence jumper.  So maybe I should

16  seriously consider it.  I mean, you know, this was an

17  attack on our democracy.  We haven't seen anything like

18  this in D.C. since the War of 1812.

19          MS. RIGBY:  Your Honor, he would agree with

20  that.

21          THE COURT:  I was trying to think of -- you

22  know, I saw a John Wick movie the other day.  You know,

23  what you see on the videos of images is something out of

24  John Wick.  And I'm sorry.  I'm not trying to malign the

25  actor.  But it's terrifying to look at some of the images

1    in the videos.  You know, they are horrific.  So I don't

2    know.  I guess it's one thing, but I don't want someone to

3    say, yeah, you didn't order it, but you forced him to

4    agree to it.  So I don't know.  What's your response to

5    that?

6              MS. RIGBY:  Mr. Gieswein would voluntarily agree

7    to that, Your Honor.  He also has limited means and I'm

8    sure he's going to be wanting to work in Oklahoma.

9              THE COURT:  All right.  Fair enough.  Fair

10   enough.

11             MS. RIGBY:  Your Honor, in January, Mr. Gieswein

12   had never been arrested.  He had never been detained for

13   six months.  He had never seen the FBI track over 500

14   people down and dig into their entire life stories.  Even

15   if he did not appreciate what could happen to him on

16   January 6th, he clearly does now, Your Honor, and that's

17   something that's different than January 6th.  It's

18   something for the Court to take into account.

19             In January, he was not in mental health

20   treatment of any kind despite the fact that he was under a

21   great deal of stress for several years according to all of

22   his friends and family.  If he were released, mental

23   health treatment would be available to help him with that

24   and that should generally does help everybody avoid any

25   further violations.

```
 1                THE COURT:  Let me ask you a question.  Is your
 2     client receiving treatment now for any mental health
 3     issues?  You don't have to explain on this record what the
 4     issues are.  But if he's in need of medication that he's
 5     not getting, then you need to reach out to Eric Glover and
 6     tell him that we talked, you and I talked and I want him
 7     examined to get the medication that he needs.  I mean I'm
 8     not -- don't read anything into that.  That don't read
 9     into it that he's going to remain there.  But he is there
10     right now.
11                And the bottom line is I doubt if I can make a
12     decision today.  I've tried to do everything to
13     accommodate him.  I gave him a hearing before the 2nd.  I
14     put everyone on an accelerated briefing schedule.  These
15     are complicated issues.  I'm going to need a little time
16     to write on this.
17                So but I'll put the burden on you.  You tell
18     Eric you talked to me.  He'll take it very seriously if
19     you call him anyway.  But tell him we had this discussion
20     on the record if your client is in need of some sort of
21     medication in that regard.  But you don't have to put
22     anything on the public record.
23                MS. RIGBY:  I appreciate that, Your Honor.  I
24     appreciate that.
25                THE COURT:  Sure.
```

1          MS. RIGBY:  Your Honor, I would ask the Court in

2     the interest of not dwelling on what's already in the

3     papers, I would like to address the presumption further

4     and certainly whether we've rebutted a presumption if the

5     Court finds --

6          THE COURT:  No.  Absolutely.  No.  Those are

7     burning issues.  Absolutely.  Please.

8          MS. RIGBY:  Okay.  Well, as I've said, the cases

9     the government focuses are on about a legal principle.

10    The B.R.A. is all about facts and the presumptions are,

11    too.  I don't think the government has dealt with the

12    statutory language sufficiently.  There is a difference

13    between committed and involved and I think we all agree on

14    that.  And what 3142(e)(3) says is that a defendant must

15    have committed a certain act.

16          But I disagree that 3142(e)(2) contrasts in a

17    way that makes the government's point.  We agree that

18    aiding and abetting -- that one can commit aiding and

19    abetting.  We are agreed that aiding and abetting can net

20    a sentence of life or can involve a minor.  But those do

21    not trigger a presumption under 3142(e)(1)(a) -- I'm

22    sorry -- (e)(2) unless other facts are also true.

23          In other words, when you look at the crimes in

24    (f)(1) -- I'm sorry.  If you look at the predicates in

25    (f)(1), that includes offenses of all kinds if certain

1    punishment could have been imposed or of all kinds if

2    minors were involved.  And only if a defendant admitted

3    one of those offenses and also did so while on pretrial

4    release and within the last five years does the

5    presumption of (e)(1)(2) apply.

6           So in those cases, the presumption is due solely

7    to what punishment a person had whether they violated on

8    pretrial and the timing, not the conduct at issue.

9           THE COURT:  Let me ask you this.  Would it be

10   error for the Court to assume that Mr. Gieswein has met

11   his burden of production to counter the presumption and

12   move on to consider the factors set forth in 3142(g)?

13          MS. RIGBY:  I don't believe it would be error,

14   Your Honor.  I think the Court could find that it simply

15   defines to decide this issue about whether aiding and

16   abetting qualifies as a presumption case and find that

17   it's sort of moot because regardless of that, Mr. Gieswein

18   has rebutted the presumption.

19          Here, he has rebutted it.  He's got no record of

20   violence.  He's got no record whatsoever.  Friends know

21   him well and said that he's never threatened violence,

22   never engaged in any violence.  He has a steady work

23   history suggesting that he's motivated to work until time

24   if he's released.  And his friends and family describe him

25   as hard working, compassionate and gentle.  He's worked

1    since he was 14.  He's the kind of worker who usually

2    wants extra tips.  He has used his own money to buy

3    clothes and shoes for residents at a nursing facility

4    where he worked.  He's helped his friend to avoid

5    homelessness.  This is more than sufficient, Your Honor,

6    to rebut any presumption that did apply and we do press

7    obviously that none does apply here.  There's more than

8    enough here for the Court to draw that conclusion.

9            THE COURT:  All right.

10           MS. RIGBY:  The Court's indulgence.  I'm just --

11           THE COURT:  No, no.  Go right ahead.

12           MS. RIGBY:  -- trying to see if there is

13   anything else the Court hasn't addressed.

14           THE COURT:  You know what, I just thought about

15   something.  I'm not sure whether it was the Supreme Court

16   or the D.C. Circuit that issued an opinion addressing the

17   propriety of the court assuming without deciding.  Does

18   that ring a bell to anyone?  Maybe it was some other

19   circuit.  I thought whatever decision there is out there,

20   the court frowned on that.

21           MS. RIGBY:  Your Honor, it does not sound

22   familiar.

23           THE COURT:  You know what, it may have been in

24   the context of Title VII.  You know, it will come to me.

25   We'll do some research and if I need counsel to comment on

 1    it, I'll let you know.  Maybe Mr. Kenerson knows what the

 2    Court is referring to.

 3              MR. KENERSON:  Unfortunately, I'm in the same

 4    posture as Ms. Rigby.  It doesn't ring a bell to me

 5    either.

 6              THE COURT:  It may have been in a civil context

 7    and I think it was the Supreme Court that did it.  But

 8    we'll figure it out.  If I need anyone to respond to it,

 9    I'll let you know.

10              I'm sorry.  Ms. Rigby, anything further?

11              MS. RIGBY:  Your Honor, just a summary, Your

12    Honor.

13              THE COURT:  I enjoy your argument, Ms. Rigby.

14              MS. RIGBY:  Well, thank you.  I could go on,

15    but --

16              THE COURT:  I know you can.  Go ahead and

17    summarize.

18              MS. RIGBY:  Mr. Gieswein should be released,

19    Your Honor.

20              THE COURT:  I know he does.  No one has ever

21    asked me -- actually, someone did ask me to go to jail.

22    He was on home detention and he said his girlfriend was

23    driving him nuts and for me to send him to D.C. Jail.  And

24    you know what I did, I didn't send him to D.C. Jail.  I

25    sent him back home to his girlfriend.

1          But you're right.  No one asks to go to jail.

2          MS. RIGBY:  I actually was attempting to

3    rephrase, Your Honor, and just make the statement that Mr.

4    Gieswein should be released.  The conditions we're

5    proposing combined will provide a positive environment,

6    positive influences, extreme restrictions on movement,

7    restrictions on communication, restrictions on even what

8    he's doing on the Internet and the monitoring we're

9    proposing are altogether sufficient to make sure there is

10   no repeat of January 6th which the Court should not expect

11   anyway.  There has not been a repeat of January 6th among

12   all the people that have been released.  But more

13   importantly, Mr. Gieswein's history and all the time that

14   he believed whatever he believed before January 6th and

15   did not do anything like this is more than enough for the

16   Court to conclude that he's not a danger and certainly,

17   certainly will not be a danger under the conditions that

18   we've proposed.

19          THE COURT:  All right.  Thank you, counsel.

20          All right.  Let me hear from government counsel.

21          MR. KENERSON:  Thank you, Your Honor.

22          So I understand the -- I agree with Ms. Rigby

23   that we have covered a lot of the ground that the

24   government would have covered otherwise.  But so I, of

25   course, would be happy to answer any question the Court

1    may have.  But I also do have a summary --

2              THE COURT:  No.  Go right ahead.  Please go

3    right ahead.

4              MR. KENERSON:  So there is not a lot in terms of

5    the essential facts of January 6th here that seem to be in

6    dispute, meaning what the defendant did on January 6th.

7    We don't hear a dispute from the defendant that he pepper

8    sprayed officers at the top of the stairs.  We don't hear

9    a dispute from the defendant they pepper sprayed officers

10   as they were retreating in the crypt of the Capitol or as

11   they attempted to arrest another rioter.  No dispute about

12   the pushing on the bike racks as they were trying to

13   control crowds in the West Plaza.  And there hasn't been

14   any dispute that after he pepper sprayed the officer in

15   the Capitol Visitors Center, that he was then rescued by

16   another rioter and fled.  Although he does -- I think

17   someone challenged in the papers that he took some swings

18   at that officer, he's also offered no alternative version.

19   Not that he is required to.  But in terms of what the

20   Court has in front of it, it has evidence that he took

21   swings at another officer.

22             And there's also no dispute that he carried a

23   bat outwardly through the streets of D.C. on January 6th

24   or the West Plaza and the Capitol despite having the

25   ability --

1          THE COURT:  Can I stop you for one second?  I'm

2     sorry.  I just answered my own question.  I think it was

3     the circuit court or Supreme Court that said that courts

4     should not assume jurisdiction and then resolve issues.

5     I'm pretty sure that's -- anyway, so I don't think I'll be

6     bothering both of you with anything because, of course,

7     the Court has jurisdiction here.  But I'm pretty sure that

8     was the Supreme Court decision.  Anyway, I'm sorry to

9     interrupt you, counsel.

10          MR. KENERSON:  No problem.  And thank you for

11     clarifying that as well, Your Honor.

12          So there is no dispute that he openly carried a

13     bat outwardly throughout the streets of D.C. or the West

14     Plaza or the Capitol.  And he doesn't dispute that the

15     accusations against him are serious or that the use of

16     aerosol spray against the officers on December 6th is

17     concerning.

18          Where the defendant disputes and where the

19     parties are -- what the Court is deciding is kind of what

20     conclusion to draw from this evidence as well as the

21     defendant's history and characteristics.  And one of the

22     things that stands out about the conduct on the 6th itself

23     is its prolonged nature.  This was not a case of kind of a

24     momentary lapse in judgment, even a particularly violent

25     momentary lapse in judgment.  This was a case where across

1    a time period of approximately 90 minutes starting from
2    the first push on the bike rack through the spray at the
3    top of the stairs, through the entering the building,
4    through being part of the crowd that confronted Officer
5    Goodman, through the spray in the crypt and through the
6    incident with the officer in the Capitol Visitors Center,
7    it goes from approximately 1:30 p.m. to approximately 3:00
8    p.m.  That's a time period of about 90 minutes where the
9    defendant is consistently resisting officers' commands, is
10   assaulting other officers, is advancing unlawfully on the
11   Capitol building while carrying this bat out in front of
12   him and while using the pepper spray against officers at
13   various different times.

14          One thing I would note about the bat, while Ms.
15   Rigby is correct that there is no allegation that the
16   defendant used the bat in the sense of pummeling someone
17   with that bat, one of the things that the officer noted in
18   the 302 that we attached to our opposition that the Court
19   has read is that he noticed the bat in the defendant's
20   backpack and was concerned about the presence of that bat.
21   And that was just after the defendant had put that bat
22   away in his backpack.

23          I think the presence of him carrying it out in
24   front of him in the way that the government has shown that
25   he did through the photographs in our submission, that

1   creates an extra aura of dangerousness for the officers

2   out there on that day even if he did not actually though

3   then go and use it to pummel him.

4          And while during that 90-minute plus time

5   period, not only did he show a willingness to use this

6   pepper spray and to kind of continue to act despite the

7   violence that's going on around him, his refusal to obey

8   the lawful orders of the police officers are at the very

9   least to see that they were trying to contain the crowd

10  and to continue advancing anyway suggests that he would

11  not comply with conditions of release either.

12         The actions that they don't reflect momentary

13  lapse in judgment or even a serious if momentary

14  deviations from someone's otherwise peaceful and

15  law-abiding principles is actions or the actions of

16  someone acting with determination to obstruct a lawful

17  proceeding and to obstruct ironically given that the

18  defendant appears to believe that or appeared at least to

19  believe on January 6th and the week thereafter that there

20  was no Constitution that needed to be restored, acting to

21  obstruct a constitutionally mandated process that is part

22  of the peaceful transition of power and a core part of our

23  democracy as the Court noted.

24         So that is I think what is so concerning about

25  the defendant's actions on the 6th itself and we certainly

1    don't run from the fact that he does not have a criminal

2    history.  We understand the submissions that the defendant

3    put into his pleading.  We don't ask to restrain someone's

4    liberty in those situations lightly.  We do think that

5    this is a case and many judges across this courthouse have

6    held that people can be held based on their actions on the

7    6th even with no previous history, even if there is the

8    possibility of a third party custodian and the like

9    because their actions on the 6th and their statements

10   afterwards are so concerning about the potential for

11   future violence.  Even if it is not a January 6th-type

12   event which as the Court noted is once in 200 years and

13   hopefully, that's the only time it happens for the next

14   200 to 500 years, there are many --

15        THE COURT:  I'm hoping it will never happen

16   again, period.

17        MR. KENERSON:  I was trying to go out past 200

18   years, with the 500.  But I agree with the Court.  That's

19   the point I was trying to make.  The Court made it better.

20   Hopefully, it will never happen again.  But there is still

21   the opportunity for engagement in political violence even

22   on a local level even if the opportunity presents itself

23   even if it's not as grandiose and doesn't result in the

24   sheer amount of video and people and terror as January 6th

25   did, that danger is still there.  It's still present and

1    was manifested in this defendant by the actions he took

2    based on his beliefs and what he thought needed to be done

3    on January 6th.

4              THE COURT:  But then -- and correct me if I'm

5    wrong then.  But the focus of the Court can't be

6    exclusively on what his intent was that day.  What's the

7    evidence to demonstrate that his actions would reoccur in

8    the future.  That's the proper way to look at it.  Right?

9              MR. KENERSON:  Certainly, the Court needs to be

10   looking in the future.  I completely agree with that.  I

11   think though that the Court does -- I think that the

12   actions of the defendant on the 6th are a large part,

13   though I agree not the only part of the Court's calculus.

14             And I think it was Judge Lamberth in the

15   Fairlamb case that talked a little bit about how the --

16   and we cited this in our opposition on what the import of

17   this -- of someone's actions on the 6th are and how the

18   import of someone's actions on the 6th can be taken into

19   account when a court is considering whether they are

20   likely to commit future offenses.

21             One of the things Judge Lamberth pointed to in

22   that case is just how anti-law enforcement it is to attack

23   a riot gear clad officer.

24             And if it really were just that the Court needs

25   to have some extrinsic evidence outside of what happened

1    on January 6th to hold someone, there really could never

2    be a case where we could hold someone with no prior

3    criminal history based on January 6th.  January 6th is

4    part of it, but -- and a large part of it.  But I also

5    think that what the Court needs to look at is that in

6    tandem with some of the other factors that the Court

7    brought up in its questioning of defense counsel, one of

8    which is his statement that he believes the Constitution

9    needs to be reinstated, one of which is his actions after

10   January 6th in getting rid of his clothes, his implements

11   from that day as well as the phone.  I mean there is no

12   explanation that has been proffered by either side as

13   consistent with anything other than he got rid of it.

14          And when defense counsel says we don't have

15   these communications that some other defendants have that

16   the government has been able to proffer, I certainly can't

17   say that there would have been such communications on the

18   phone, had we had the phone.  I'm not making that argument

19   to the Court.  But what I am saying is we don't have the

20   phone.  So we don't know.  And we don't have the phone as

21   a result of the defendant's actions in this case that he

22   took post January 6th.

23          And so I think all of that, his beliefs both

24   expressed before January 6th and after January 6th, his

25   actions after January 6th combined with his actions on the

1    6th itself is what makes for there being no conditions

2    that can satisfy the safety of the community.

3              THE COURT:  Thank you, counsel.

4              Ms. Rigby, very briefly.  I understand your

5    arguments.  Don't repeat them.  But if there is something

6    new you need to say, tell me.  But you've made your

7    points.

8              MS. RIGBY:  I'll try, Your Honor.  We're not

9    offering that lack of criminal history is the only reason

10   for release.

11             THE COURT:  Right.  No.  I got it.

12             MS. RIGBY:  The government has said several

13   times we haven't produced this or that.  We haven't

14   explained this or that.  Well, it's not our burden to

15   explain anything.  The government at this point doesn't

16   seem to be arguing that we would have overcome any

17   presumption even if one applied.  And regardless, the

18   burden of persuasion remains with the government entirely.

19             I don't think there's evidence before the Court

20   that --

21             THE COURT:  Well, what's the requisite

22   standard -- burden of persuasion requisite standard?

23   Preponderance?  Clear and convincing?

24             MS. RIGBY:  It is clear and convincing, Your

25   Honor.

1           THE COURT:  Right.  Right.

2           MS. RIGBY:  And to the Court's point, the

3    government has to show either that with evidence, clear

4    and convincing evidence that he is -- that Mr. Gieswein is

5    capable of similar conduct without the context of

6    January 6th and the conditions cannot control against that

7    or that the context is likely to re-arise and again that

8    the conditions can't constrain him.  And the government

9    has not done that.

10          The Fairlamb case -- you know, we all agree.

11   January 6th is a big factor here.  That's why we're all

12   here.  And Fairlamb as has every court has emphasized

13   exactly what happened on January 6th in the case of each

14   defendant in the government's allegations, right, and what

15   the evidence is.  I'm not conceding anything apart from

16   that.  But Mr. Fairlamb had an extensive criminal history

17   and the point Judge Lamberth was making was that the past

18   is important.  The past includes what happened on

19   January 6th.  But it also includes what happened before

20   that.  And we're getting awfully close sometimes to

21   sounding like we're going to detain people for their

22   beliefs.  And there is nothing to suggest that whatever

23   Mr. Gieswein believed on January 6th, he didn't believe

24   before then.

25          The government has not shown why he never did

1    anything like that before until the unique circumstances

2    of January 6th.  And certainly hasn't shown why the

3    extensive conditions we've proposed can't control against

4    that happening in the future.

5              THE COURT:  All right.  Thank you.

6              Mr. Gieswein, you have a brilliant lawyer.  The

7    government's attorney is brilliant as well.  All of you

8    have my attention, my undivided attention.  It's after

9    5:00 and I was going to spend as much time as necessary.

10   And I tried to accommodate your attorney's request by

11   doing as much as I could before the 2nd.  But I'm going to

12   have to write.  You have the right to appeal if you're not

13   successful.  And you know what, I haven't written

14   anything.  So I don't know whether you will be successful

15   or not.  It's going to take some time.

16             But I am mindful that you are incarcerated, you

17   know, and you didn't ask me to go to jail and I take that

18   matter very seriously.

19             So we will -- I will resolve the issue.  The

20   Court will resolve the issue just as soon as the Court

21   can.  And I'm not taking a long holiday this weekend.

22   I'll be working and reading more and we'll resolve the

23   issue.  If you are not successful, you can certainly

24   challenge that in the Court of Appeals and that's where

25   our system of justice works and that's the beauty of our

1    justice system.

2              I don't have anything else to say at this point.

3    I appreciate everyone's hard work.  And we'll issue a

4    minute order that addresses the media request.  I don't

5    think I have any other questions at this point.  I'll

6    huddle with my brain trust.  And if we have other

7    questions, we'll issue a minute order.  Just ask for a

8    very succinct response to a question.  But I don't think I

9    have any other questions at this point.

10             That's all I have to say.  I wish everyone a

11   good evening and good weekend.  And again, Mr. Gieswein,

12   you have my attention and the Court will give you a prompt

13   decision.

14             You know what I learned early on?  Never tell

15   anyone the date that you are going to give a decision by

16   because it's never going to happen that way.  And when it

17   doesn't happen, the phone is ringing off the hook.  All I

18   can tell you is that we'll give you a prompt decision.

19             You've got my attention.  You have a brilliant

20   lawyer.  And if I allowed her to make the arguments again,

21   she would make them again.  But I have heard her arguments

22   and she was very concise in her writing.  And I don't

23   think I have seen this lengthy a motion for

24   reconsideration and it's well drafted and the government

25   did an excellent job as well.

1          These are weighty issues.  All the judges are

2    consumed by all these issues and I don't think we're all

3    doing the same thing.  But, you know, the judges --

4    everyone has the judges' attention to these very weighty

5    matters.  So that's all I have to say, Mr. Gieswein.

6    We'll get -- yes, Ms. Rigby.  Go right ahead.

7          MS. RIGBY:  I swear I am not arguing further,

8    Your Honor.  I did want to thank you for hearing us

9    quickly and moving things on your calendar to make sure

10   that was --

11          THE COURT:  Sure.  That's the least I could do.

12   I knew when we put the schedule in place we could not --

13   you know, I was reading into the request and I thought he

14   was probably asking for a decision by July 2nd.  And you

15   know what, I'd do the same thing.  I can't do that.  I got

16   to write on this.  So we'll get a prompt decision out.

17   It's my pleasure, counsel.  We'll take this matter very

18   seriously.

19          All right.  I've run out of words to say.

20          THE DEFENDANT:  I want to say thank you, Your

21   Honor.

22          THE COURT:  All right, Mr. Gieswein.  And you

23   are welcome, sir.  All right.  Take care of yourself.

24          And don't forget, counsel.  Reach out to Mr.

25   Glover if your client is in need of any medication or

1    anything like that or if he needs someone to look in on

2    him to determine if he needs any medication or whatever.

3              MS. RIGBY:  Yes, sir.

4              THE COURT:  All right.  Okay.  Great.  Well,

5    look, everyone have a wonderful evening, weekend.  Take

6    care and be safe and be well.  Thank you, all.

7              (Proceedings concluded.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              <u>CERTIFICATE OF REPORTER</u>

2

3              I, Lisa K. Bankins, an Official Court Reporter

4    for the United States District and Bankruptcy Courts for

5    the District of Columbia, do hereby certify that I

6    reported, by machine shorthand, in my official capacity,

7    the proceedings had and testimony adduced upon the motions

8    hearing in the case of the United States of America versus

9    Robert Gieswein, Criminal 21-CR-00024, in said court on

10   the 1st day of July, 2021.

11

12             I further certify that the foregoing 61 pages

13   constitute the official transcript of said proceedings, as

14   taken from my machine shorthand notes, together with the

15   backup tape of said proceedings to the best of my ability.

16

17             In witness whereof, I have hereto subscribed my

18   name, this 8th day of July, 2021.

19

20

21                                  Lisa K. Bankins

22                                  Lisa K. Bankins
                                    Official Court Reporter
23

24

25

MR. KENERSON: [18]
2/6 3/17 5/7 5/12 8/1
8/15 9/11 9/17 10/2
26/12 27/1 31/12 47/3
48/21 49/4 50/10 53/17
54/9
MS. RIGBY: [60]   2/9
4/20 5/17 10/10 11/8
12/10 13/8 13/13 14/11
14/18 14/23 15/8 15/24
16/5 16/21 17/14 18/20
19/20 19/24 21/1 21/3
21/7 23/1 23/5 23/9
25/15 26/9 30/9 30/13
30/18 34/17 35/7 36/20
36/25 37/13 37/20 38/11
38/20 39/21 40/12 41/19
42/6 42/11 43/23 44/1
44/8 45/13 46/10 46/12
46/21 47/11 47/14 47/18
48/2 56/8 56/12 56/24
57/2 60/7 61/3
THE CLERK: [1]   2/2
THE COURT: [84]
THE DEFENDANT:  [6]
2/19 2/23 6/21 17/4
17/12 60/20

## 0

00024 [2]   1/3 62/9
024 [1]   2/2

## 1

111 [2]   9/5 9/6
113 [2]   12/14 14/19
12th [3]   5/13 5/15 5/16
14 [1]   46/1
1650 [1]   1/16
16th [2]   17/23 25/3
17th [1]   17/23
18 [4]   7/7 7/25 9/4
10/9
1812 [1]   41/18
1:30 [1]   51/7
1st [1]   62/10

## 2

200 [3]   53/12 53/14
53/17
20001 [1]   1/21
2018 [1]   22/11
2021 [4]   1/5 9/2 62/10
62/18
20530 [1]   1/12
21-024 [1]   2/2
21-3028 [1]   9/2
21-CR-00024 [2]   1/3
62/9
22314 [1]   1/17
24 [1]   9/2
29 [1]   29/15
2nd [3]   43/13 58/11

## 3

302 [2]   32/23 51/18
3028 [1]   9/2
3142 [13]   6/25 7/9 7/25
10/9 15/2 15/14 30/19
30/23 35/16 44/14 44/16
44/21 45/12
333 [1]   1/21
3:00 [1]   51/7

## 4

4:00 [1]   1/6
4th [1]   5/10

## 5

50 [1]   20/23
500 [4]   1/16 42/13
53/14 53/18
555 [1]   1/12
5:00 [1]   58/9
5th [1]   32/5

## 6

61 [1]   62/12
6th [58]   15/17 18/7
18/16 19/1 21/20 21/21
21/22 22/2 22/3 22/5
22/15 23/12 23/18 23/21
23/24 24/5 24/8 24/24
32/4 32/12 34/2 34/7
34/8 36/22 42/16 42/17
48/10 48/11 48/14 49/5
49/6 49/23 50/16 50/22
52/19 52/25 53/7 53/9
53/24 54/3 54/12 54/17
54/18 55/1 55/3 55/3
55/10 55/22 55/24 55/24
55/25 56/1 57/6 57/11
57/13 57/19 57/23 58/2

## 8

8th [1]   62/18

## 9

90 [3]   34/7 51/1 51/8
90-minute [1]   52/4

## A

abets [2]   11/17 11/19
abetting [17]   7/23 10/8
10/22 11/9 11/11 27/4
27/19 27/22 27/24 28/1
28/4 28/12 35/10 44/18
44/19 44/19 45/16
abettor [5]   8/7 10/15
10/24 27/11 27/15
abiding [1]   52/15
ability [3]   38/4 49/25
62/15
able [1]   55/16
about [47]   3/5 8/23
11/13 11/15 11/23 13/3

22/21 22/23 23/20 27/3
28/19 29/13 30/23 31/14
31/24 31/25 32/5 33/4
34/22 35/2 35/6 35/10
37/22 37/23 39/9 39/20
41/10 44/9 44/10 45/15
46/14 49/11 50/22 51/8
51/14 51/20 52/24 53/10
54/15
absolutely [6]   18/5
20/19 37/8 39/1 44/6
44/7
accelerated [1]   43/14
accepted [1]   14/12
access [1]   4/3
accommodate [2]   43/13
58/10
according [1]   42/21
account [3]   29/4 42/18
54/19
accusations [1]   50/15
across [3]   33/1 50/25
53/5
act [7]   11/9 11/10 27/5
27/24 31/1 44/15 52/6
acting [2]   52/16 52/20
action [3]   11/11 11/24
34/8
actions [19]   29/8 32/4
32/11 32/12 52/12 52/15
52/15 52/25 53/6 53/9
54/1 54/7 54/12 54/17
54/18 55/9 55/21 55/25
55/25
actively [1]   11/12
activity [1]   22/21
actor [1]   41/25
acts [7]   10/25 11/1
27/12 27/14 27/15 27/16
27/17
actual [1]   3/24
actually [9]   3/11 5/7
20/3 35/15 38/14 39/17
47/21 48/2 52/2
add [1]   40/6
addition [1]   35/6
additional [1]   8/2
Additionally [1]   8/20
address [4]   8/4 10/1
18/1 44/3
addressed [5]   15/7
29/13 29/14 36/14 46/13
addresses [1]   59/4
addressing [4]   7/23 8/9
10/7 46/16
adduced [1]   62/7
admitted [1]   45/2
adopted [1]   12/16
advancing [2]   51/10
52/10
aerosol [8]   8/11 8/13
12/2 12/3 12/8 22/19

**A**

aerosol... [2]   22/25
50/16
affect [1]   32/13
affirmed [1]   38/21
after [13]   5/21 15/21
16/1 23/17 23/23 31/14
33/16 49/14 51/21 55/9
55/24 55/25 58/8
afternoon [5]   2/6 2/8
2/9 2/16 2/20
afterwards [1]   53/10
again [20]   5/24 19/10
20/12 21/16 21/16 21/16
22/13 24/15 25/19 27/5
31/18 34/10 34/13 36/16
53/16 53/20 57/7 59/11
59/20 59/21
against [9]   8/25 15/13
25/5 33/13 50/15 50/16
51/12 57/6 58/3
agents [1]   32/17
aggravated [1]   15/10
ago [1]   22/11
agree [14]   30/13 35/19
37/8 41/7 41/19 42/4
42/6 44/13 44/17 48/22
53/18 54/10 54/13 57/10
agreed [2]   24/10 44/19
agreeing [1]   22/9
ahead [14]   4/13 4/19
4/20 15/3 26/19 31/11
34/13 34/16 35/3 46/11
47/16 49/2 49/3 60/6
aid [1]   10/18
aider [5]   8/7 10/15
10/24 27/11 27/15
aiding [17]   7/23 10/8
10/21 11/9 11/11 27/4
27/19 27/22 27/24 27/25
28/4 28/12 35/10 44/18
44/18 44/19 45/15
aids [2]   11/17 11/19
air [1]   36/3
Alexandria [1]   1/17
alive [2]   3/8 40/16
all [69]
allegation [1]   51/15
allegations [1]   57/14
alleging [1]   36/2
allowed [2]   22/3 59/20
allows [1]   39/22
alone [2]   21/23 39/1
along [1]   40/13
already [4]   26/22 27/7
36/14 44/2
also [17]   2/12 5/19
13/17 25/13 29/3 36/9
38/1 39/2 40/12 42/7
44/22 45/3 49/1 49/18
49/22 55/4 57/19
alternative [2]   10/22
49/18

although [4]   8/5 18/5
24/17 49/16
altogether [1]   48/9
always [3]   3/6 5/24
40/8
am [7]   6/19 9/19 13/20
39/17 55/19 58/16 60/7
ambiguous [1]   22/8
Amendment [2]   3/8 18/5
AMERICA [3]   1/3 2/3
62/8
among [2]   6/12 48/11
amount [1]   53/24
ankle [1]   20/17
ANN [2]   1/15 2/9
another [7]   12/1 24/14
30/5 37/15 49/11 49/16
49/21
answer [4]   16/25 37/11
40/10 48/25
answered [1]   50/2
answers [3]   6/7 7/15
25/15
anti [1]   54/22
anti-law [1]   54/22
any [53]   3/4 3/5 3/10
3/24 4/16 7/3 7/13 7/22
8/2 10/7 10/11 12/8
12/13 14/2 16/25 17/18
18/8 18/9 18/11 18/12
18/14 18/20 20/15 21/18
21/19 21/25 24/19 24/22
25/4 25/7 25/13 26/5
26/7 26/21 28/23 29/7
29/23 31/21 34/16 34/23
37/7 42/20 42/24 43/2
45/22 46/6 48/25 49/14
56/16 59/5 59/9 60/25
61/2
anybody [1]   16/7
anyone [3]   46/18 47/8
59/15
anyone's [2]   5/4 5/6
anything [32]   4/6 4/19
16/9 16/20 17/2 18/21
18/22 21/20 24/15 24/19
25/1 25/6 25/11 25/14
28/19 28/20 31/20 38/4
41/17 43/8 43/22 46/13
47/10 48/15 50/6 55/13
56/15 57/15 58/1 58/14
59/2 61/1
anyway [7]   24/14 24/19
43/19 48/11 50/5 50/8
52/10
anywhere [1]   9/20
apart [2]   40/17 57/15
apparently [1]   22/10
appeal [1]   58/12
Appeals [2]   8/22 58/24
appearance [2]   7/2 7/12
APPEARANCES [1]   1/10
appeared [2]   8/13 52/18
appears [3]   15/16 15/20

52/18
appended [1]   2/14
apples [2]   20/18
applied [1]   56/17
apply [4]   4/3 45/5 46/6
46/7
appreciate [10]   17/12
17/14 22/8 22/12 35/7
36/20 42/15 43/23 43/24
59/3
appropriate [2]   18/21
18/22
approve [1]   18/8
approximately [3]   51/1
51/7 51/7
are [74]
area [1]   29/6
arguably [1]   19/14
argue [3]   15/16 21/13
36/12
argues [1]   9/16
arguing [4]   23/5 24/20
56/16 60/7
argument [18]   8/13 13/7
13/9 14/21 24/9 24/11
25/2 27/23 30/5 30/8
31/13 31/24 34/21 35/4
36/15 36/19 47/13 55/18
arguments [13]   7/17
26/25 27/3 28/8 29/11
29/23 34/14 34/19 34/23
35/1 56/5 59/20 59/21
arise [1]   57/7
armed [1]   22/18
around [5]   25/9 29/6
29/9 40/25 52/7
arrest [3]   20/25 33/23
49/11
arrested [3]   20/22
32/16 42/12
as [67]
aside [1]   21/21
ask [13]   16/24 24/12
24/13 24/20 25/8 30/3
43/1 44/1 45/9 47/21
53/3 58/17 59/7
asked [3]   3/5 29/12
47/21
asking [1]   60/14
asks [1]   48/1
assault [3]   15/10 18/8
23/12
assaulting [3]   33/8
33/20 51/10
assaults [2]   29/17
29/20
association [1]   9/22
assume [3]   4/22 45/10
50/4
assuming [1]   46/17
assure [4]   7/2 7/11
18/12 38/21
attached [1]   51/18
attack [2]   41/17 54/22

**A**

attempt **[1]** 6/5
attempted **[1]** 49/11
attempting **[2]** 30/21
48/2
attempts **[1]** 21/13
attention **[6]** 28/20
58/8 58/8 59/12 59/19
60/4
attorney **[4]** 3/13 17/1
17/8 58/7
attorney's **[2]** 1/11
58/10
attorneys **[5]** 3/1 3/4
5/19 5/20 5/24
August **[1]** 19/12
aura **[1]** 52/1
AUSA **[1]** 26/10
authority **[4]** 7/22 8/3
10/7 10/11
available **[2]** 3/8 42/23
Avenue **[1]** 1/21
avoid **[2]** 42/24 46/4
aware **[6]** 7/22 8/2 8/4
8/8 10/6 10/10
away **[5]** 5/5 5/6 5/8
24/10 51/22
awfully **[1]** 57/20

**B**

B.R.A **[3]** 11/23 30/23
44/10
back **[5]** 21/8 33/17
37/18 41/5 47/25
back to **[1]** 37/18
backpack **[2]** 51/20
51/22
backup **[1]** 62/15
bail **[2]** 27/19 28/12
ban **[2]** 37/25 39/5
bank **[2]** 36/6 36/8
Bankins **[4]** 1/19 62/3
62/21 62/22
BANKRUPTCY **[2]** 1/1 62/4
bar **[1]** 38/6
barrier **[1]** 33/14
Bartalata **[1]** 13/19
baseball **[3]** 22/18
22/24 24/23
based **[3]** 53/6 54/2
55/3
basically **[2]** 27/10
36/8
basis **[1]** 24/2
bat **[12]** 22/18 22/24
24/23 49/23 50/13 51/1
51/14 51/16 51/17 51/19
51/20 51/21
be **[87]**
bear **[1]** 7/18
beauty **[1]** 58/25
because **[10]** 7/8 17/2
19/25 24/18 32/19 39/13

45/17 50/6 53/9 59/16
become **[1]** 27/14
been **[27]** 8/21 13/17
14/12 16/15 19/2 20/22
21/3 21/5 27/7 27/25
29/18 29/19 32/23 34/24
35/1 38/13 42/12 42/12
45/1 46/23 47/6 48/11
48/12 49/13 55/12 55/16
55/17
before **[25]** 1/8 6/3 6/6
6/7 6/15 13/16 21/22
22/2 22/3 22/4 23/13
23/24 24/7 31/19 32/20
33/3 40/3 43/13 48/14
55/24 56/19 57/19 57/24
58/1 58/11
behalf **[2]** 2/7 2/10
behind **[1]** 29/22
being **[6]** 16/12 23/10
35/10 35/11 51/4 56/1
belabor **[1]** 27/7
belief **[1]** 32/7
beliefs **[8]** 18/15 18/21
21/14 21/23 21/24 54/2
55/23 57/22
believe **[11]** 20/24
22/20 29/16 29/20 34/24
36/19 38/13 45/13 52/18
52/19 57/23
believed **[6]** 21/21
21/22 34/2 48/14 48/14
57/23
believes **[9]** 18/9 31/16
31/19 32/9 32/12 32/14
33/10 34/3 55/8
bell **[2]** 46/18 47/4
best **[4]** 3/14 7/18
40/10 62/15
better **[3]** 29/13 37/17
53/19
between **[4]** 8/7 11/4
23/10 44/13
big **[2]** 22/12 57/11
bike **[3]** 33/13 49/12
51/2
binding **[2]** 10/11 11/22
bit **[1]** 54/15
blurt **[1]** 16/25
bodily **[5]** 8/17 8/18
12/18 14/15 36/12
bond **[1]** 30/22
borrowed **[2]** 14/18
14/19
both **[16]** 2/17 4/5 4/7
4/14 13/21 13/22 13/22
14/12 15/8 18/3 29/4
29/6 30/20 34/25 50/6
55/23
bothering **[1]** 50/6
bottom **[1]** 43/11
bragged **[1]** 23/19
brain **[1]** 59/6
breakdown **[1]** 16/16

breakout **[1]** 17/9
breathe **[1]** 13/5
breathing **[1]** 13/1
brief **[5]** 4/22 6/8
10/12 26/3 26/20
briefing **[2]** 8/20 43/14
briefly **[2]** 12/10 56/4
brilliant **[3]** 58/6 58/7
59/19
bring **[1]** 11/13
broken **[1]** 33/19
brother **[3]** 19/17 19/18
38/19
brought **[1]** 55/7
bucks **[1]** 20/23
building **[2]** 51/3 51/11
burden **[8]** 6/23 39/17
39/18 43/17 45/11 56/14
56/18 56/22
burning **[3]** 4/6 28/19
44/7
buy **[1]** 46/2

**C**

calculus **[1]** 54/13
calendar **[2]** 5/15 60/9
call **[2]** 22/1 43/19
camping **[1]** 25/17
can **[41]** 4/5 5/9 5/25
7/18 10/24 11/4 11/8
18/2 18/4 18/7 18/12
21/8 24/14 25/18 27/11
27/16 28/3 28/4 30/3
34/9 38/8 38/8 38/9
39/19 40/1 40/6 40/9
40/11 40/25 43/11 44/18
44/19 44/20 47/16 50/1
53/6 54/18 56/2 58/21
58/23 59/18
can't **[10]** 3/9 11/5
12/15 29/21 40/24 54/5
55/16 57/8 58/3 60/15
cannot **[3]** 21/22 23/14
57/6
capable **[9]** 8/17 14/15
28/22 28/25 29/10 30/2
35/20 35/22 57/5
capacity **[1]** 62/6
Capitol **[13]** 18/7 19/4
22/18 22/24 33/13 33/19
36/3 49/10 49/15 49/24
50/14 51/6 51/11
care **[2]** 60/23 61/6
carefully **[1]** 36/19
carried **[4]** 22/2 24/10
49/22 50/12
carry **[1]** 36/11
carrying **[2]** 51/11
51/23
case **[49]** 2/2 3/19 6/18
7/6 7/22 8/8 8/21 9/1
9/7 9/10 10/18 10/21
10/23 11/1 11/20 13/4
13/15 13/16 13/19 13/19

## C

**case... [29]**   14/11
14/13 16/17 18/23 23/6
26/1 27/25 28/9 28/24
29/2 30/10 30/18 30/19
30/19 34/22 35/9 36/8
39/25 45/16 50/23 50/25
53/5 54/15 54/22 55/2
55/21 57/10 57/13 62/8
**cases [20]**   8/6 9/3
10/12 11/15 12/20 12/21
12/22 13/1 14/3 20/21
28/18 30/14 30/20 36/4
38/16 38/23 39/8 39/8
44/8 45/6
**categorically [1]**   9/5
**cause [2]**   8/14 8/18
29/16 29/19 29/22 30/7
30/16 31/1 31/5 31/6
**caused [3]**   12/6 28/15
28/15
**causing [8]**   8/17 14/15
28/23 29/10 30/2 35/21
35/23 36/11
**CCTV [2]**   3/23 3/24
**cell [1]**   38/22
**center [3]**   36/3 49/15
51/6
**certain [3]**   11/12 44/15
44/25
**certainly [14]**   21/11
32/1 32/15 33/22 34/1
38/3 44/4 48/16 48/17
52/25 54/9 55/16 58/2
58/23
**CERTIFICATE [1]**   61/8
**certify [2]**   62/5 62/12
**cetera [4]**   16/23 19/4
19/4 19/4
**challenge [2]**   30/21
58/24
**challenged [1]**   49/17
**chambers [2]**   3/22 3/24
**chance [9]**   4/7 4/22
13/10 13/12 26/4 26/5
26/6 26/24 35/4
**change [2]**   32/13 34/8
**changed [1]**   32/15
**Chansley [1]**   14/13
**characteristic [1]**
23/14
**characteristics [1]**
50/21
**characterizing [1]**
36/1
**charge [1]**   15/10
**charged [10]**   7/8 10/24
11/4 11/5 11/8 16/15
27/11 27/16 28/3 33/7
**charges [2]**   15/11 23/6
**charging [1]**   28/2
**chat [1]**   39/14
**check [1]**   39/23

**circuit [17]**   7/22 8/4
8/6 8/22 8/24 9/2 9/21
10/7 10/21 10/23 11/2
27/9 27/14 34/23 46/16
46/19 50/3
**circuits [1]**   9/4
**circumstances [3]**   3/14
5/3 58/1
**cite [1]**   9/1
**cited [6]**   8/5 14/13
27/9 28/24 30/10 54/16
**cites [7]**   9/3 10/12
11/15 11/21 12/20 13/2
36/5
**civil [1]**   47/6
**clad [1]**   54/23
**clarifying [1]**   50/11
**clear [6]**   8/23 27/25
28/5 56/23 56/24 57/3
**clearly [2]**   30/25 42/16
**Cleary [1]**   2/13
**clerk [1]**   4/15
**client [4]**   41/7 43/2
43/20 60/25
**close [3]**   36/7 36/10
57/20
**clothes [2]**   46/3 55/10
**clothing [1]**   24/23
**Coalition [1]**   3/19
**Code [3]**   7/7 7/25 10/9
**Colon [1]**   11/1
**COLUMBIA [3]**   1/1 1/20
62/5
**combination [2]**   34/9
39/21
**combined [3]**   40/1 48/5
55/25
**come [7]**   3/5 12/23
20/21 33/3 37/18 39/4
46/24
**comes [1]**   39/7
**coming [1]**   17/19
**commands [1]**   51/9
**comment [1]**   46/25
**comments [1]**   22/20
**commit [3]**   11/11 44/18
54/20
**commits [1]**   11/18
**committed [9]**   11/1 11/5
11/6 21/25 23/12 29/16
29/21 44/13 44/15
**committing [8]**   7/24
10/8 10/19 10/20 11/9
11/10 35/14 35/15
**common [1]**   4/2
**commonly [1]**   12/7
**communication [1]**   48/7
**communications [3]**
20/18 55/15 55/17
**community [3]**   7/4 7/13
56/2
**compare [1]**   16/17
**compared [2]**   17/23 36/4
**compassionate [1]**

**compelling [1]**   6/4
**competent [1]**   25/12
**complains [1]**   41/14
**completely [1]**   54/10
**compliance [1]**   40/14
**complicated [2]**   6/13
43/15
**comply [1]**   52/11
**computer [4]**   38/6 38/9
38/16 39/22
**computers [2]**   38/21
38/22
**concede [3]**   9/14 9/18
10/13
**conceding [2]**   18/18
57/15
**concern [2]**   18/11 19/16
**concerned [3]**   37/22
41/10 51/20
**concerning [3]**   50/17
52/24 53/10
**concession [1]**   17/18
**concise [1]**   59/22
**conclude [3]**   21/22 24/2
48/16
**concluded [1]**   61/7
**concludes [1]**   24/3
**conclusion [4]**   22/14
22/15 46/8 50/20
**conclusive [2]**   30/15
31/4
**conclusively [1]**   29/18
**condition [3]**   24/6 38/3
39/19
**conditions [20]**   7/1
7/11 17/22 20/11 21/10
32/24 33/25 34/9 34/9
36/20 40/15 40/15 40/18
48/4 48/17 52/11 56/1
57/6 57/8 58/3
**conduct [9]**   15/12 15/16
29/5 30/6 35/14 41/14
45/8 50/22 57/5
**confirmed [1]**   38/14
**confirming [1]**   40/14
**confronted [1]**   51/4
**Congress [5]**   11/16
27/18 28/11 30/24 31/3
**conjectural [1]**   19/13
**consents [1]**   2/11
**consider [4]**   13/12 31/3
41/16 45/12
**consideration [1]**   30/6
**considered [1]**   10/16
**considering [1]**   54/19
**consistent [2]**   31/1
55/13
**consistently [1]**   51/9
**conspiracy [1]**   19/9
**constitute [1]**   62/13
**Constitution [12]**   1/21
15/23 19/8 19/15 32/1
32/8 32/9 32/11 34/4

**C**

Constitution... **[3]**
34/5 52/20 55/8
constitutionally **[1]**
52/21
constrain **[1]** 57/8
consumed **[1]** 60/2
contain **[1]** 52/9
contention **[1]** 12/4
context **[7]** 16/6 31/15
39/7 46/24 47/6 57/5
57/7
continue **[2]** 52/6 52/10
continuing **[3]** 15/18
18/15 18/20
contradict **[1]** 34/3
contradicting **[1]**
31/23
contrasts **[1]** 44/16
control **[3]** 49/13 57/6
58/3
controlled **[2]** 23/14
39/6
convict **[1]** 28/4
convicted **[1]** 15/13
convince **[1]** 39/18
convincing **[3]** 56/23
56/24 57/4
core **[1]** 52/22
Coronavirus **[3]** 21/4
21/9 21/10
correct **[11]** 10/1 10/2
10/3 11/7 14/9 19/19
19/21 20/25 28/13 51/15
54/4
correctly **[3]** 6/20 30/7
41/7
could **[14]** 3/14 5/12
26/3 38/12 39/2 42/15
45/1 45/14 47/14 55/1
55/2 58/11 60/11 60/12
couldn't **[1]** 13/5
counsel **[41]** 2/5 2/8
2/16 2/25 3/12 3/16 4/5
4/18 4/25 5/14 5/16
5/21 5/23 7/16 9/13
10/4 10/5 10/6 15/15
17/10 25/4 26/5 26/8
26/15 26/21 27/22 29/23
30/4 31/11 31/11 32/23
34/12 46/25 48/19 48/20
50/9 55/7 55/14 56/3
60/17 60/24
counsel's **[3]** 3/20
26/24 29/11
count **[1]** 19/3
counter **[1]** 45/11
counteract **[1]** 18/14
country **[1]** 32/6
couple **[1]** 27/2
courier **[1]** 36/9
course **[11]** 8/5 14/23
15/2 32/18 32/22 33/9

34/6 36/6 37/9 48/25
50/6
court **[107]**
court's **[8]** 9/7 15/3
15/11 25/24 40/2 46/10
54/13 57/2
courthouse **[2]** 33/2
53/5
courts **[12]** 1/1 11/16
14/18 14/19 30/14 31/7
33/1 33/3 37/6 37/21
50/3 62/4
cover **[2]** 27/19 28/12
covered **[3]** 26/22 48/23
48/24
CR **[2]** 1/3 62/9
creates **[1]** 52/1
crime **[14]** 7/8 7/9 9/5
9/6 10/20 11/8 11/9
11/14 27/23 27/24 28/1
28/6 35/11 35/15
crimes **[2]** 10/19 44/23
criminal **[7]** 1/3 2/2
53/1 55/3 56/9 57/16
62/9
critical **[2]** 11/3 14/4
crowd **[2]** 51/4 52/9
crowded **[1]** 29/5
crowds **[2]** 33/17 49/13
crypt **[3]** 33/21 49/10
51/5
culpable **[1]** 10/16
curfew **[1]** 20/15
currently **[2]** 32/8 34/5
custodian **[9]** 17/25
37/1 38/20 39/24 40/4
40/6 40/9 40/13 53/8
custodian's **[1]** 18/3
custodians **[2]** 39/25
40/23
custody **[2]** 17/24 20/14
cut **[2]** 4/11 34/25

**D**

D.C **[21]** 1/4 1/12 1/21
2/22 2/23 2/24 8/22
8/24 9/2 10/23 27/9
27/13 37/7 41/8 41/11
41/18 46/16 47/23 47/24
49/23 50/13
danger **[3]** 48/16 48/17
53/25
dangerous **[9]** 8/12 12/2
12/4 14/12 14/14 21/23
29/17 29/21 35/20
dangerousness **[2]** 29/4
52/1
date **[2]** 36/13 59/15
day **[10]** 22/22 29/10
32/19 35/1 41/22 52/2
54/6 55/11 62/10 62/18
deal **[4]** 13/2 13/15
22/12 42/21
dealing **[2]** 13/22 33/2

dealt **[1]** 44/11
December **[1]** 50/16
December 6th **[1]** 50/16
decide **[2]** 26/14 45/15
decided **[2]** 11/16 11/17
deciding **[3]** 14/4 46/17
50/19
decision **[15]** 6/14 8/21
8/23 8/24 9/8 16/23
27/9 43/12 46/19 50/8
59/13 59/15 59/18 60/14
60/16
defendant **[24]** 1/6 1/15
9/10 29/16 30/2 30/20
31/14 32/11 34/2 34/10
44/14 45/2 49/6 49/7
49/9 50/18 51/9 51/16
51/21 52/18 53/2 54/1
54/12 57/14
defendant's **[9]** 29/5
29/20 31/25 32/4 38/15
50/21 51/19 52/25 55/21
defendants **[2]** 37/7
55/15
Defender **[1]** 1/15
Defender's **[1]** 2/14
defense **[18]** 3/12 4/5
4/25 5/16 5/21 5/23
9/22 10/4 10/6 26/4
26/15 26/21 27/22 29/11
29/23 30/4 55/7 55/14
define **[1]** 14/19
defined **[1]** 9/20
defines **[1]** 45/15
definition **[3]** 12/16
12/18 14/11
degree **[1]** 14/3
democracy **[2]** 41/17
52/23
demonstrate **[1]** 54/7
demonstrated **[1]** 16/22
demonstrates **[1]** 15/17
describe **[1]** 45/24
described **[1]** 12/14
desire **[1]** 4/6
desires **[1]** 20/10
desk **[1]** 7/17
despite **[5]** 25/2 40/20
42/20 49/24 52/6
detain **[1]** 57/21
detained **[3]** 16/12
23/19 42/12
detention **[7]** 6/11 6/18
7/6 7/7 9/7 9/24 47/22
determination **[3]**
15/11 30/25 52/16
determine **[2]** 30/7 61/2
deviations **[1]** 52/14
did **[41]** 3/14 4/15 8/18
11/24 11/24 15/22 16/1
16/3 16/11 18/17 18/17
18/21 19/14 20/3 21/1
23/17 29/2 30/7 30/9
31/16 33/12 36/10 37/3

# D

**did... [18]** 37/5 39/11 40/21 42/15 45/3 46/6 47/7 47/21 47/24 48/15 49/6 51/25 52/2 52/5 53/25 57/25 59/25 60/8
**didn't [18]** 14/2 16/9 16/12 19/25 24/10 24/25 25/8 32/21 33/14 33/15 33/18 33/18 33/20 33/22 42/3 47/24 57/23 58/17
**difference [2]** 11/4 44/12
**different [8]** 21/11 22/16 31/15 33/8 35/17 36/21 42/17 51/13
**differently [2]** 31/6 31/20
**dig [1]** 42/14
**directly [3]** 7/23 10/7 10/13
**disability [1]** 12/13
**disagree [2]** 35/25 44/16
**discussion [1]** 43/19
**dispute [10]** 10/20 10/23 49/6 49/7 49/9 49/11 49/14 49/22 50/12 50/14
**disputes [1]** 50/18
**disputing [1]** 16/8
**disrupt [1]** 21/20
**distinct [1]** 11/20
**distinction [1]** 8/7
**distinguish [1]** 23/9
**district [13]** 1/1 1/1 1/9 1/20 1/20 30/14 30/24 37/13 37/14 38/13 38/14 62/4 62/5
**disturbing [1]** 39/8
**do [41]** 3/14 4/4 4/8 4/17 4/18 4/19 4/23 5/10 6/25 7/9 11/12 12/23 15/18 16/9 17/1 17/5 17/14 20/6 24/16 26/3 26/13 26/16 26/17 28/18 34/18 36/18 37/3 39/10 40/5 40/9 43/12 44/20 46/6 46/25 48/15 49/1 53/4 60/11 60/15 60/15 62/5
**DOC [1]** 2/23
**doctor [1]** 13/22
**documented [1]** 32/23
**does [25]** 3/19 4/9 6/6 8/12 9/14 11/18 11/19 14/9 15/17 16/7 18/8 25/10 28/25 35/15 38/5 42/16 42/24 45/4 46/7 46/17 46/21 47/20 49/16 53/1 54/11
**doesn't [12]** 13/25 24/18 25/6 25/7 34/18

35/13 36/15 47/4 50/14 53/23 56/15 59/11
**Dogs [2]** 9/15 9/23
**doing [11]** 7/18 19/9 23/16 29/1 33/8 34/10 39/9 39/12 48/8 58/11 60/3
**don't [69]**
**done [10]** 10/25 27/11 27/17 29/5 32/14 33/9 33/10 41/12 54/2 57/9
**doubt [1]** 43/11
**doubts [1]** 39/20
**down [1]** 42/14
**drafted [1]** 59/24
**draw [2]** 46/8 50/20
**driving [1]** 47/23
**due [1]** 45/6
**during [3]** 22/1 24/25 52/4
**dwelling [1]** 44/2

# E

**each [1]** 57/13
**earlier [3]** 20/1 27/13 41/2
**early [2]** 3/2 59/14
**effect [4]** 3/25 32/8 33/23 34/8
**effectively [1]** 8/7
**either [10]** 13/13 14/14 16/20 26/8 29/14 36/2 47/5 52/11 55/12 57/3
**election [2]** 19/2 19/10
**electronic [1]** 20/17
**element [1]** 15/9
**Eleventh [1]** 11/2
**else [2]** 46/13 59/2
**embrace [1]** 38/2
**embracing [1]** 37/21
**EMMET [1]** 1/8
**emphasis [1]** 35/17
**emphasize [4]** 16/24 26/5 26/21 34/14
**emphasized [3]** 36/22 36/25 57/12
**employed [4]** 20/24 21/1 21/2 21/6
**encountered [1]** 36/22
**enforce [2]** 38/5 39/2
**enforceable [4]** 38/10 39/1 39/5 39/15
**enforced [1]** 39/19
**enforcement [4]** 18/9 33/4 40/1 54/22
**engaged [2]** 24/4 45/22
**engagement [1]** 53/21
**engaging [1]** 23/11
**enjoy [1]** 47/13
**enough [8]** 5/5 5/8 21/15 25/21 42/9 42/10 46/8 48/15
**entering [1]** 51/3
**entire [1]** 42/14

**entirely [1]** 56/18
**environment [2]** 18/13 48/5
**equally [2]** 10/16 10/17
**equating [1]** 39/11
**equipment [1]** 32/22
**Eric [2]** 43/5 43/18
**ERIK [2]** 1/11 2/7
**error [3]** 25/22 45/10 45/13
**especially [2]** 17/17 17/21
**ESQUIRE [2]** 1/11 1/15
**essential [1]** 49/5
**essentially [2]** 2/14 10/15
**establish [1]** 28/25
**established [2]** 13/23 29/18
**et [4]** 16/23 19/4 19/4 19/4
**evaluating [1]** 35/16
**even [15]** 24/3 38/1 39/5 42/14 48/7 50/24 52/2 52/13 53/7 53/7 53/11 53/21 53/22 53/23 56/17
**evening [2]** 59/11 61/5
**event [1]** 53/12
**events [2]** 19/1 19/14
**ever [3]** 23/24 38/25 47/20
**every [3]** 11/20 38/13 57/12
**everybody [1]** 42/24
**everybody's [1]** 40/16
**everyone [6]** 6/8 29/9 43/14 59/10 60/4 61/5
**everyone's [1]** 59/3
**everything [9]** 6/3 6/9 17/17 24/10 26/7 27/6 34/22 41/2 43/12
**evidence [41]** 9/21 12/5 12/12 12/24 13/3 13/12 13/16 15/1 15/6 15/9 15/19 16/13 16/16 16/18 21/18 23/23 24/4 24/19 25/7 25/12 25/23 26/1 29/12 29/25 30/1 30/6 30/15 31/3 31/19 31/21 31/22 32/7 34/2 49/20 50/20 54/7 54/25 56/19 57/3 57/4 57/15
**exactly [3]** 16/6 20/4 57/13
**examined [1]** 43/7
**example [1]** 39/13
**excellent [1]** 59/25
**exceptional [1]** 39/25
**exclusively [1]** 54/6
**excuse [2]** 8/22 35/23
**execution [1]** 24/25
**exhibits [1]** 3/21
**expect [1]** 48/10

**E**

expectation [1]   31/22
expected [1]   24/11
experienced [1]   13/3
explain [3]   15/18 43/3
56/15
explained [1]   56/14
explaining [1]   25/23
explanation [3]   24/22
25/10 55/12
expressed [1]   55/24
extensive [2]   57/16
58/3
extra [2]   46/2 52/1
extreme [6]   12/12 28/16
28/23 29/10 36/12 48/6
extrinsic [1]   54/25
eyes [2]   12/8 13/1

**F**

facility [1]   46/3
fact [13]   3/25 8/18
9/19 18/17 18/20 27/25
29/1 31/1 32/18 37/2
40/23 42/20 53/1
factor [4]   15/2 16/2
17/21 57/11
factors [9]   4/2 6/25
7/10 12/13 15/14 35/16
40/17 45/12 55/6
facts [6]   11/24 30/23
35/18 44/10 44/22 49/5
factual [1]   14/25
fair [10]   4/4 4/8 5/3
5/20 18/24 25/21 26/21
26/23 42/9 42/9
Fairlamb [4]   54/15
57/10 57/12 57/16
fairness [1]   4/7
false [1]   21/16
familiar [2]   34/14
46/22
families [1]   38/24
family [2]   42/22 45/24
far [2]   15/1 15/3
favor [6]   6/17 6/18
6/25 7/6 7/10 9/24
FBI [3]   24/23 32/17
42/13
FCRR [1]   1/19
federal [2]   1/15 10/19
feel [2]   4/12 17/16
feelings [3]   18/6 18/6
26/7
fellow [1]   33/23
felt [1]   13/4
fence [2]   41/12 41/15
few [3]   6/6 7/15 34/18
fiction [1]   10/16
figure [1]   47/8
filed [2]   3/18 9/2
fills [1]   40/21
find [5]   25/1 28/11

finding [2]   5/7 7/10
finds [1]   44/5
fine [6]   3/2 5/14 5/17
20/23 34/20 37/16
firearms [1]   22/2
first [13]   3/8 3/16
4/24 6/16 7/20 8/16
15/25 18/5 20/2 21/18
23/1 35/9 51/2
five [2]   26/2 45/4
fled [1]   49/16
focus [3]   6/8 7/16 54/5
focuses [1]   44/9
focusing [1]   6/2
followed [2]   19/2 40/2
footage [1]   3/23
force [1]   32/13
forced [1]   42/3
foregoing [1]   62/12
forget [1]   60/24
former [1]   19/11
forth [4]   9/22 12/17
12/23 45/12
fortunate [2]   5/4 5/8
found [1]   29/19
Fourth [1]   1/12
frankly [1]   14/1
friend [2]   22/6 46/4
friends [6]   9/16 22/5
23/19 42/22 45/20 45/24
front [4]   28/3 49/20
51/11 51/24
frowned [1]   46/20
full [1]   16/6
further [8]   24/6 33/18
38/12 42/25 44/3 47/10
60/7 62/12
future [6]   37/22 53/11
54/8 54/10 54/20 58/4

**G**

gave [1]   43/13
gear [1]   54/23
generally [1]   42/24
gentle [1]   45/25
get [11]   6/7 7/14 7/15
15/3 24/9 28/20 32/5
33/9 43/7 60/6 60/16
getting [4]   21/13 43/5
55/10 57/20
GIESWEIN [46]   1/5 2/3
2/10 2/18 6/19 6/21
6/22 6/24 7/2 7/6 7/12
9/16 15/16 15/19 16/7
16/24 17/3 17/22 19/7
20/24 21/19 23/12 23/22
23/25 24/15 24/18 24/24
25/17 33/5 36/22 37/2
38/25 40/19 42/6 42/11
45/10 45/17 47/18 48/4
57/4 57/23 58/6 59/11
60/5 60/22 62/9
Gieswein's [6]   8/13

girlfriend [3]   25/20
47/22 47/25
give [18]   4/7 4/14 4/17
5/21 6/7 7/16 12/1 26/4
26/4 26/6 26/20 26/24
29/24 35/4 40/11 59/12
59/15 59/18
given [1]   52/17
gives [2]   31/2 40/21
Glover [2]   43/5 60/25
go [25]   4/12 21/8 26/19
29/11 29/21 31/11 34/5
34/13 34/16 35/3 36/23
39/23 40/9 41/5 46/11
47/14 47/16 47/21 48/1
49/2 49/2 52/3 53/17
58/17 60/6
godmother [1]   19/21
goes [3]   26/1 27/15
51/7
going [25]   5/5 5/10
5/20 14/1 18/16 24/12
26/19 27/6 28/7 28/20
33/6 33/15 33/18 33/19
37/11 42/8 43/9 43/15
52/7 57/21 58/9 58/11
58/15 59/15 59/16
good [15]   2/6 2/8 2/9
2/16 2/19 2/19 2/21
2/21 5/5 17/20 21/14
24/9 24/11 59/11 59/11
Goodman [1]   51/5
got [10]   13/22 16/15
19/17 24/13 45/19 45/20
55/13 56/11 59/19 60/15
Gottlieb [1]   2/13
government [55]   1/11
2/5 3/16 3/19 3/22 4/9
4/21 4/24 5/22 7/20
7/22 8/2 8/12 9/14
10/12 10/13 11/15 11/20
12/5 12/11 12/16 12/20
12/23 13/2 13/14 14/13
21/12 23/11 26/4 26/6
26/13 26/23 28/4 28/9
28/25 34/7 35/19 35/25
36/2 36/5 36/17 41/14
44/9 44/11 48/20 48/24
51/24 55/16 56/12 56/15
56/18 57/3 57/8 57/25
59/24
government's [17]   3/12
4/25 11/6 12/3 15/19
23/6 25/2 27/10 27/18
28/10 30/10 31/7 34/19
35/10 44/17 57/14 58/7
grand [3]   29/18 29/19
36/14
grandiose [1]   53/23
great [8]   9/12 13/2
13/15 19/17 19/23 23/20
42/13 61/4

**G**

**ground [1]** 48/23
**group [3]** 9/15 22/6
22/11
**guess [4]** 14/6 26/10
39/17 42/2
**guest [1]** 34/15
**guideline [3]** 12/22
13/8 14/20
**guidelines [1]** 12/19
**guns [1]** 22/6

**H**

**had [35]** 12/11 12/12
13/1 13/10 13/12 13/17
13/17 13/18 19/2 19/25
21/3 21/5 21/19 21/19
21/24 21/24 27/22 30/4
31/4 32/19 32/20 34/23
37/25 38/16 40/19 42/12
42/12 42/13 43/19 45/7
51/21 55/18 55/18 57/16
62/7
**hand [2]** 17/7 17/8
**hanging [1]** 22/10
**Hangs [1]** 22/5
**happen [5]** 42/15 53/15
53/20 59/16 59/17
**happened [6]** 18/7 23/25
54/25 57/13 57/18 57/19
**happening [1]** 58/4
**happens [3]** 12/17 14/20
53/13
**happy [4]** 4/14 26/16
26/17 48/25
**hard [2]** 45/25 59/3
**harm [10]** 12/6 12/18
14/4 14/8 14/8 14/9
14/15 30/2 35/24 36/12
**harmful [2]** 12/9 22/19
**has [55]** 3/22 5/21 6/19
6/22 6/24 8/19 11/1
11/5 11/16 12/5 12/16
14/12 17/23 18/6 18/11
18/20 19/6 19/16 20/19
23/19 27/6 27/25 28/22
29/18 29/19 31/19 32/15
32/23 33/6 38/13 38/15
38/20 42/7 44/11 45/10
45/18 45/19 45/22 46/2
47/20 48/11 49/20 49/20
50/7 51/19 51/24 55/12
55/16 56/12 57/3 57/9
57/12 57/12 57/25 60/4
58/2
**hasn't [3]** 46/13 49/13
58/2
**have [98]**
**haven't [4]** 41/17 56/13
56/13 58/13
**having [7]** 4/18 8/4
10/24 27/11 27/17 32/6
49/24
**he [142]**

**he'll [1]** 43/18
**he [131]** 1/6 16/14
16/15 16/15 16/16 16/19
19/17 19/21 20/7 20/8
22/3 31/20 32/1 32/2
33/11 38/7 42/8 43/4
43/4 43/9 45/19 45/20
45/21 45/23 45/24 45/25
46/1 46/4 48/8 48/16
49/18
**head [1]** 32/25
**health [3]** 42/19 42/23
43/2
**hear [7]** 3/16 4/5 5/23
26/15 48/20 49/7 49/8
**heard [3]** 16/16 22/19
59/21
**hearing [4]** 1/8 43/13
60/8 62/8
**hearings [1]** 37/8
**heavily [1]** 15/10
**held [3]** 32/15 53/6
53/6
**help [2]** 42/23 42/24
**helped [1]** 46/4
**helpful [1]** 26/14
**her [10]** 13/5 13/18
18/1 18/1 27/23 28/17
37/1 59/20 59/21 59/22
**here [24]** 2/12 2/15
4/10 5/2 5/25 9/1 12/25
13/14 13/25 15/1 17/25
28/22 33/5 34/1 36/1
40/19 41/14 45/19 46/7
46/8 49/5 50/7 57/11
57/12
**here's [1]** 24/12
**hereby [1]** 62/5
**hereto [1]** 62/17
**higher [1]** 8/6
**highlight [3]** 12/20
12/23 14/3
**highlights [1]** 14/24
**him [44]** 19/9 19/22
20/10 21/9 21/15 21/23
25/10 25/11 29/9 31/22
32/20 32/21 33/12 33/15
33/15 33/18 33/19 33/20
33/22 37/3 40/25 42/3
42/15 42/23 43/6 43/6
43/13 43/13 43/19 43/19
45/21 45/24 47/23 47/23
47/24 47/25 50/15 51/12
51/23 51/24 52/3 52/7
57/8 61/2
**himself [9]** 15/21 16/1
16/3 16/12 20/7 27/12
27/17 31/14 31/17
**his [46]** 6/23 9/22
15/16 16/17 19/15 19/17
19/21 20/9 20/17 20/24
21/14 22/6 23/15 25/18
25/19 29/7 32/4 32/8
32/15 32/19 33/5 34/3

34/8 38/18 38/19 38/19
42/22 45/24 45/24 46/2
46/4 47/22 47/25 51/22
52/7 53/3 54/2 54/6
54/7 55/8 55/9 55/10
55/10 55/23 55/24 55/25
**history [17]** 20/19
21/14 22/9 22/13 23/15
23/16 33/3 39/4 40/20
45/23 48/13 50/21 53/2
53/7 55/3 56/9 57/16
**hit [3]** 12/6 28/16
32/25
**hold [4]** 25/5 33/16
55/1 55/2
**holiday [2]** 5/2 58/21
**home [2]** 47/22 47/25
**homelessness [1]** 46/5
**Honor [73]**
**HONORABLE [1]** 1/8
**hook [1]** 59/17
**hopefully [2]** 53/13
53/20
**hoping [1]** 53/15
**horrific [1]** 42/1
**house [3]** 38/7 39/16
41/12
**how [17]** 2/18 4/9 8/12
13/3 15/11 15/12 15/12
15/18 16/17 23/20 38/5
38/17 39/10 39/15 54/15
54/17 54/22
**Hubbard [1]** 4/2
**huddle [1]** 59/6
**husband [4]** 18/1 18/4
19/21 37/1
**hypothesis [1]** 20/12
**hypothetical [1]** 19/13

**I**

**I'd [2]** 6/7 60/15
**I'll [17]** 3/16 4/17
4/20 7/16 12/1 17/8
24/16 26/20 34/21 35/3
43/17 47/1 47/9 50/5
56/8 58/22 59/5
**I'm [62]** 2/12 2/15 3/7
3/13 4/14 4/20 5/5 5/7
5/10 5/20 7/17 7/18 8/3
8/25 9/9 10/10 11/3
11/25 13/19 14/10 16/8
17/10 17/11 18/18 19/24
20/4 23/3 24/12 25/4
27/6 28/7 30/3 34/13
34/25 36/19 39/9 39/11
39/12 39/12 39/16 41/10
41/24 41/24 42/7 43/7
43/15 44/21 44/24 46/10
46/15 47/3 47/10 50/1
50/5 50/7 50/8 53/15
54/4 55/18 57/15 58/11
58/21
**I've [12]** 3/11 22/19
26/2 36/14 36/22 36/25

# I

**I've... [6]** 37/6 38/16 41/12 43/12 44/8 60/19
**idea [1]** 9/22
**identify [2]** 2/4 6/5
**illegal [1]** 18/22
**images [2]** 41/23 41/25
**implements [1]** 55/10
**import [3]** 32/3 54/16 54/18
**important [4]** 6/4 16/10 17/21 57/18
**importantly [1]** 48/13
**imposed [2]** 34/1 45/1
**inapposite [1]** 12/22
**incarcerated [1]** 58/16
**incidence [1]** 36/1
**incident [1]** 51/6
**includes [3]** 44/25 57/18 57/19
**including [5]** 18/3 23/15 23/18 25/3 40/1
**incorporate [1]** 12/14
**incorrigibly [1]** 23/13
**indeed [1]** 12/6
**independent [1]** 30/6
**indicate [1]** 31/4
**indication [1]** 32/14
**indicted [1]** 31/6
**indictment [3]** 30/15 30/21 31/4
**indulgence [1]** 46/10
**influences [1]** 48/6
**inform [1]** 24/1
**information [1]** 15/20
**inherently [1]** 14/14
**injury [5]** 8/17 8/18 12/24 12/24 13/17
**inquire [1]** 3/12
**inquiry [1]** 3/2
**inside [5]** 29/6 33/19 33/21 36/7 36/10
**insignificance [1]** 28/15
**install [1]** 38/15
**instead [1]** 24/20
**intended [2]** 27/19 28/12
**intent [2]** 21/19 54/6
**intention [2]** 20/9 32/21
**interest [2]** 35/2 44/2
**interesting [3]** 4/10 6/4 33/4
**interfere [2]** 5/4 5/6
**Internet [3]** 23/20 37/23 48/8
**interpretation [2]** 28/8 28/10
**interrupt [1]** 50/9
**interrupted [1]** 17/10
**interview [1]** 32/21
**inundated [1]** 6/10
**inviting [1]** 25/4
**invoked [1]** 32/18
**involve [1]** 44/20
**involved [2]** 44/13 45/2
**ironically [1]** 52/17
**irresponsible [1]** 22/20
**is [224]**
**isn't [2]** 9/20 34/4
**issue [19]** 3/11 4/10 5/19 8/9 10/1 14/24 14/25 18/12 26/14 30/22 35/19 36/14 45/8 45/15 58/19 58/20 58/23 59/3 59/7
**issued [1]** 46/16
**issues [12]** 6/2 6/4 6/5 6/6 6/13 43/3 43/4 43/15 44/7 50/4 60/1 60/2
**it [106]**
**it's [44]** 4/9 5/24 6/16 8/17 8/23 9/1 11/6 11/10 14/24 16/11 17/18 18/24 18/25 19/3 19/3 19/13 19/13 19/17 20/18 28/1 28/5 28/5 35/1 35/12 35/21 36/12 37/11 38/13 39/13 39/15 39/18 39/21 41/25 42/2 42/17 45/17 53/23 53/25 56/14 58/8 58/15 59/16 59/24 60/17
**its [6]** 8/16 10/12 11/13 32/2 50/23 55/7
**itself [7]** 9/23 27/24 32/12 52/2 52/25 53/22 56/1

# J

**jail [9]** 2/22 2/23 2/24 40/9 47/21 47/23 47/24 48/1 58/17
**January [53]** 15/17 17/23 18/7 18/16 19/1 20/13 21/20 21/21 21/22 22/2 22/3 22/5 22/15 23/12 23/18 23/21 23/24 24/5 24/8 24/24 25/3 36/22 40/19 40/22 41/3 42/11 42/16 42/17 42/19 48/10 48/11 48/14 49/5 49/6 49/23 52/19 53/11 53/24 54/3 55/1 55/3 55/3 55/10 55/22 55/24 55/24 55/25 57/6 57/11 57/13 57/19 57/23 58/2
**January 16th [2]** 17/23 25/3
**January 6th [37]** 18/7 18/16 21/21 21/22 22/2 22/3 22/15 23/12 23/18 23/21 23/24 24/5 24/8 36/22 42/16 42/17 48/10
**inviting [1]** 48/14 49/5 49/6
**invoked [1]** 49/23 52/19 54/3 55/1
**involve [1]** 55/3 55/3 55/10 55/22
**involved [2]** 55/24 55/24 57/6 57/11
**ironically [1]** 57/13 57/19 57/23 58/2
**January 6th-type [1]** 53/11
**January the [1]** 24/24
**job [1]** 59/25
**John [2]** 41/22 41/24
**judge [5]** 1/9 30/25 54/14 54/21 57/17
**judges [4]** 6/10 53/5 60/1 60/3
**judges' [1]** 60/4
**judgment [3]** 50/24 50/25 52/13
**judicial [1]** 4/2
**July [4]** 1/5 60/14 62/10 62/18
**July 2nd [1]** 60/14
**jumper [1]** 41/15
**jumpers [1]** 41/13
**June [1]** 9/2
**June 24 [1]** 9/2
**jurisdiction [2]** 50/4 50/7
**jury [8]** 13/10 13/11 14/7 14/24 29/14 29/19 29/20 36/14
**just [43]** 3/11 3/12 3/13 4/15 6/5 7/14 7/14 10/14 12/24 13/25 15/25 17/6 19/20 20/12 22/21 22/22 23/16 24/20 24/20 27/2 27/10 31/13 34/21 34/22 35/11 36/16 37/19 39/12 39/14 39/19 40/3 40/4 41/2 46/10 46/14 47/11 48/3 50/2 51/21 54/22 54/24 58/20 59/7
**justice [2]** 58/25 59/1

# K

**keep [2]** 2/25 40/15
**keeping [1]** 6/9
**Kegler [3]** 10/23 27/8 35/9
**KENERSON [5]** 1/11 2/7 30/11 30/13 47/1
**kind [10]** 28/8 28/16 33/21 40/7 41/5 42/20 46/1 50/19 50/23 52/6
**kinds [3]** 18/14 44/25 45/1
**King [7]** 1/16 30/10 30/14 30/18 31/8 31/8 36/15
**knew [1]** 60/12
**know [65]**
**knows [1]** 47/1

# L

**lack [1]** 56/9

## L

**laid [3]** 21/3 28/10 28/23
**Lamberth [3]** 54/14 54/21 57/17
**language [3]** 11/4 40/7 44/12
**lapse [3]** 50/24 50/25 52/13
**laptop [1]** 38/8
**laptops [2]** 38/22 38/24
**large [5]** 7/17 36/3 40/25 54/12 55/4
**last [1]** 45/4
**later [2]** 16/14 17/18
**latter [1]** 27/16
**law [16]** 4/3 4/15 8/8 10/15 14/11 18/9 19/17 19/18 27/25 28/10 28/24 33/3 34/24 40/1 52/15 54/22
**law's [1]** 38/19
**law-abiding [1]** 52/15
**lawful [2]** 52/8 52/16
**lawyer [4]** 2/13 16/15 58/6 59/20
**leading [1]** 37/14
**learned [1]** 59/14
**least [7]** 28/2 29/8 34/6 36/13 52/9 52/18 60/11
**left [1]** 30/24
**legal [4]** 10/14 10/16 37/10 44/9
**legally [1]** 22/3
**legitimate [1]** 39/19
**lengths [1]** 34/6
**lengthy [1]** 59/23
**less [3]** 35/14 35/14 41/3
**let [15]** 2/12 3/11 4/4 6/2 6/5 7/14 15/5 24/19 24/20 41/5 43/1 45/9 47/1 47/9 48/20
**let's [1]** 20/12
**level [7]** 7/22 8/4 8/6 35/21 35/23 35/23 53/22
**liability [7]** 10/22 11/16 28/2 28/7 35/11 35/12 35/13
**liberty [2]** 35/2 53/4
**life [2]** 42/14 44/20
**light [4]** 9/21 24/17 28/9 32/4
**lightly [1]** 53/4
**like [18]** 6/7 13/4 17/25 20/5 21/9 24/7 28/20 33/25 35/5 35/15 41/9 41/17 44/3 48/15 53/8 57/21 58/1 61/1
**likelihood [1]** 15/13
**likely [4]** 12/9 17/24 54/20 57/7

**limit [3]** 34/21 38/1 38/3
**limited [1]** 42/7
**line [5]** 2/4 3/1 39/24 40/8 43/11
**lines [1]** 40/13
**Lisa [4]** 1/19 62/3 62/21 62/22
**listed [2]** 7/24 10/9
**listening [1]** 36/19
**literally [3]** 38/17 39/4 39/22
**little [3]** 20/4 43/15 54/15
**live [2]** 37/3 40/16
**living [1]** 39/15
**Livingood [1]** 2/13
**local [1]** 53/22
**locate [1]** 24/23
**Location [1]** 37/23
**lock [1]** 38/24
**logical [2]** 22/13 22/14
**long [10]** 11/22 21/25 22/11 23/21 23/24 30/22 35/1 37/2 40/20 58/21
**look [17]** 8/19 17/6 23/15 23/17 24/6 25/12 25/12 28/22 34/24 39/4 41/25 44/23 44/24 54/8 55/5 61/1 61/5
**looking [2]** 8/25 54/10
**looks [1]** 29/4
**lot [9]** 6/12 26/2 26/22 29/6 29/7 39/24 40/8 48/23 49/4
**lots [1]** 40/24

## M

**machine [2]** 62/6 62/14
**made [11]** 17/15 19/5 22/20 24/11 27/7 28/9 30/5 31/24 32/16 53/19 56/6
**maintain [1]** 33/14
**major [1]** 6/6
**make [16]** 11/18 21/23 26/6 34/23 35/4 36/23 39/5 39/13 40/2 43/11 48/3 48/9 53/19 59/20 59/21 60/9
**makes [5]** 21/12 30/23 37/19 44/17 56/1
**making [6]** 15/10 22/12 29/23 35/1 55/18 57/17
**malign [1]** 41/24
**man [1]** 22/14
**mandated [1]** 52/21
**manifested [1]** 54/1
**many [9]** 13/18 19/1 19/2 20/20 23/18 23/18 40/20 53/5 53/14
**march [1]** 19/4
**Mark [2]** 3/5 17/8
**MASON [2]** 1/15 2/10

**match [2]** 13/3 13/5
**matter [3]** 10/15 58/18 60/17
**matters [1]** 60/5
**may [12]** 3/1 3/9 4/16 10/16 11/17 16/17 17/22 25/10 34/20 46/23 47/6 49/1
**Maya [1]** 2/13
**maybe [6]** 4/23 24/14 25/25 41/15 46/18 47/1
**me [33]** 3/12 4/4 6/2 6/5 7/14 7/19 8/22 14/9 15/5 17/1 18/25 20/5 24/19 24/20 30/4 34/24 35/23 36/19 37/19 39/18 41/5 43/1 43/18 45/9 46/24 47/4 47/21 47/21 47/23 48/20 54/4 56/6 58/17
**mean [11]** 19/13 20/7 22/19 25/6 38/7 39/7 39/9 41/12 41/16 43/7 55/11
**meaning [1]** 49/6
**means [2]** 22/7 42/7
**meant [3]** 16/7 20/5 31/4
**mechanical [1]** 1/24
**media [10]** 3/1 3/3 3/6 5/18 5/20 5/23 37/25 38/7 39/5 59/4
**media's [1]** 3/15
**medical [2]** 14/2 28/20
**medication [5]** 43/4 43/7 43/21 60/25 61/2
**member [1]** 32/2
**mental [3]** 42/19 42/22 43/2
**mentioned [1]** 40/4
**met [2]** 6/23 45/10
**might [1]** 20/5
**mild [1]** 8/14
**military [8]** 15/23 19/7 20/7 20/8 31/25 32/2 32/3 32/10
**militia [3]** 9/15 9/19 22/7
**mind [5]** 6/9 11/12 21/19 32/8 34/18
**mindful [1]** 58/16
**minds [1]** 40/16
**minor [1]** 44/20
**minors [1]** 45/2
**minute [4]** 5/19 52/4 59/4 59/7
**minutes [3]** 34/7 51/1 51/8
**mispronouncing [1]** 13/20
**MJOA [1]** 15/7
**modify [1]** 40/5
**moment [2]** 17/20 31/13
**momentary [4]** 50/24

**M**

**momentary... [3]** 50/25
52/12 52/13
**Monday [1]** 5/13
**money [1]** 46/2
**monitor [2]** 20/17 38/2
**monitored [1]** 20/16
**monitoring [6]** 20/17
37/23 37/24 38/6 39/22
48/8
**monitors [1]** 38/17
**months [3]** 16/14 40/20
42/13
**moot [1]** 45/17
**more [11]** 4/17 13/3
13/16 39/3 39/6 41/15
46/5 46/7 48/12 48/15
58/22
**Moreover [1]** 13/6
**most [3]** 20/5 20/23
26/14
**mostly [1]** 29/5
**mother [1]** 25/19
**motion [3]** 3/18 14/25
59/23
**motions [5]** 1/8 3/23
6/11 6/11 62/7
**motivated [1]** 45/23
**move [1]** 45/12
**movement [1]** 48/6
**movie [1]** 41/22
**moving [1]** 60/9
**Mr [49]** 2/10 2/18 6/19
6/24 7/2 7/12 8/12 9/16
15/16 15/19 16/6 16/18
16/24 17/3 17/16 17/22
18/11 19/6 20/24 21/19
23/12 23/21 23/25 24/15
24/23 25/1 25/17 30/10
30/13 33/5 36/21 37/2
38/25 40/19 42/6 42/11
45/10 45/17 47/1 47/18
48/3 48/13 57/4 57/23
58/6 59/11 60/5 60/22
60/24
**Mr. [4]** 6/22 7/6 24/18
57/16
**Mr. Fairlamb [1]** 57/16
**Mr. Gieswein [3]** 6/22
7/6 24/18
**Ms [14]** 26/18 27/3
28/21 30/4 31/24 34/13
37/12 38/11 47/4 47/10
47/13 48/22 51/14 60/6
**Ms. [6]** 4/11 19/1 28/17
32/17 33/25 56/4
**Ms. Rigby [6]** 4/11 19/1
28/17 32/17 33/25 56/4
**much [6]** 4/9 13/3 33/24
34/11 58/9 58/11
**multiple [1]** 9/3
**must [7]** 4/12 11/10
11/11 11/12 12/23 21/24

**44/14**
**muted [1]** 11/25
**my [21]** 3/7 3/9 3/20
4/15 7/14 14/6 17/15
26/10 34/15 39/19 50/2
58/8 58/8 59/6 59/12
59/19 60/17 62/6 62/14
62/15 62/17
**myself [2]** 24/20 36/17

**N**

**nail [1]** 32/25
**name [1]** 62/18
**nature [2]** 37/1 50/23
**Neal [2]** 13/4 13/15
**nearby [1]** 40/24
**necessary [2]** 32/13
58/9
**Neck [1]** 2/22
**need [13]** 4/9 4/11 5/23
9/25 17/7 43/4 43/5
43/15 43/20 46/25 47/8
56/6 60/25
**needed [3]** 33/10 52/20
54/2
**needing [1]** 32/5
**needs [11]** 29/3 32/9
32/10 34/4 43/7 54/9
54/24 55/5 55/9 61/1
61/2
**negative [1]** 18/6
**neither [1]** 30/19
**net [1]** 44/19
**never [19]** 20/22 20/22
21/25 22/2 22/4 22/5
22/6 25/1 42/12 42/12
42/13 45/21 45/22 53/15
53/20 55/1 57/25 59/14
59/16
**new [2]** 34/16 56/6
**news [1]** 18/16
**next [1]** 53/13
**no [54]** 1/3 5/10 5/10
7/5 8/7 10/10 12/11
14/1 15/5 15/5 16/19
20/19 21/8 21/9 22/9
22/13 25/23 28/18 31/19
31/19 31/22 32/14 32/20
33/3 34/2 34/9 36/18
36/18 36/18 37/10 37/10
37/11 44/6 44/6 45/19
45/20 46/11 46/11 47/20
48/1 48/10 49/2 49/11
49/18 49/22 50/10 50/12
51/15 52/20 53/7 55/2
55/11 56/1 56/11
**Nobody [1]** 20/17
**non [1]** 22/17
**non-violent [1]** 22/17
**none [1]** 46/7
**nonsense [1]** 22/22
**Northern [1]** 2/22
**nose [2]** 13/5 28/19
**not [127]**

**note [6]** 10/11 15/25
17/24 23/16 30/18 51/14
**noted [3]** 51/17 52/23
53/12
**notereading [1]** 1/24
**notes [1]** 62/14
**nothing [7]** 11/22 15/22
16/11 18/17 24/7 31/16
57/22
**noticed [2]** 37/6 51/19
**notified [1]** 3/13
**now [18]** 3/10 7/5 7/14
9/1 14/10 15/7 16/14
16/14 16/15 16/15 16/16
16/18 26/17 32/24 36/21
42/16 43/2 43/10
**number [3]** 9/1 32/25
33/2
**numerous [1]** 8/6
**nurse [1]** 20/14
**nursing [1]** 46/3
**nuts [1]** 47/23
**NW [3]** 1/12 1/16 1/21

**O**

**oath [1]** 40/5
**obey [1]** 52/7
**object [3]** 3/19 4/3
4/21
**objectionable [1]**
24/18
**objections [4]** 3/15
4/16 24/13 25/5
**obligation [2]** 16/19
17/2
**obstruct [3]** 52/16
52/17 52/21
**obvious [1]** 41/13
**obviously [1]** 46/7
**occasions [1]** 33/8
**off [5]** 4/11 21/3 25/19
34/25 59/17
**offense [5]** 7/23 7/24
10/8 10/9 11/13
**offenses [5]** 27/20
28/13 44/25 45/3 54/20
**offensive [1]** 37/18
**offered [2]** 13/2 49/18
**offering [1]** 56/9
**office [4]** 1/11 2/14
19/11 32/6
**officer [25]** 12/6 12/12
12/25 13/15 14/2 18/4
18/9 18/9 19/18 19/20
20/14 28/19 33/7 33/22
38/1 39/3 39/23 40/1
49/14 49/18 49/21 51/4
51/6 51/17 54/23
**officers [16]** 15/19
15/21 29/8 31/18 33/6
33/9 33/11 33/16 33/21
49/8 49/9 50/16 51/10
51/12 52/1 52/8
**officers' [1]** 51/9

**O**

official [4]   62/3 62/6
   62/13 62/22
often [1]   39/9
oftentimes [1]   40/5
oh [1]   22/21
okay [10]   2/24 2/25
   5/10 19/23 23/7 25/21
   26/18 37/11 44/8 61/4
Oklahoma [4]   20/15
   37/13 38/14 42/8
once [1]   53/12
one [28]   11/17 11/18
   11/19 11/19 12/7 12/7
   13/14 15/21 16/9 26/3
   27/8 27/21 28/3 28/21
   29/8 42/2 44/18 45/3
   47/20 48/1 50/1 50/21
   51/14 51/17 54/21 55/7
   55/9 56/17
online [1]   39/14
only [11]   3/22 3/25
   8/13 25/16 29/8 29/11
   45/2 52/5 53/13 54/13
   56/9
open [1]   36/2
openly [2]   23/20 50/12
opinion [2]   9/3 46/16
opportunity [5]   6/8
   7/16 26/21 53/21 53/22
opposed [3]   15/7 25/9
   41/9
opposite [1]   18/23
opposition [2]   51/18
   54/16
oranges [1]   20/18
order [5]   5/19 39/10
   42/3 59/4 59/7
ordering [2]   41/10
   41/10
orders [2]   20/19 52/8
other [36]   7/3 7/13 9/4
   9/4 12/13 12/15 15/14
   16/10 20/6 27/21 28/18
   30/13 31/7 31/22 36/7
   37/6 37/7 37/21 38/7
   38/16 38/21 38/23 39/8
   39/15 40/17 41/22 44/22
   44/23 46/18 51/10 55/6
   55/13 55/15 59/5 59/6
   59/9
others [1]   16/17
otherwise [2]   48/24
   52/14
our [16]   2/14 8/3 14/25
   14/25 17/21 17/24 35/12
   37/5 41/17 51/18 51/25
   52/22 54/16 56/14 58/25
   58/25
ourselves [1]   6/12
out [23]   2/15 9/2 16/25
   21/9 22/5 22/10 22/12
   28/10 28/23 32/5 41/11

41/23 43/5 46/19 47/8
   50/22 50/11 51/23 52/2
   53/17 60/16 60/19 60/24
out like [1]   21/9
outside [3]   29/6 36/2
   54/25
outwardly [2]   49/23
   50/13
over [4]   20/8 20/23
   34/6 42/13
overall [1]   31/2
overcome [1]   56/16
overlook [1]   4/13
Owens [1]   12/17
own [6]   11/13 20/9 22/3
   38/24 46/2 50/2

**P**

p.m [3]   1/6 51/7 51/8
page [2]   9/3 27/10
pages [1]   62/12
paid [1]   20/23
pain [8]   12/13 13/3
   28/15 28/16 28/23 29/10
   35/21 35/23
papers [4]   33/5 37/5
   44/3 49/17
part [8]   12/7 51/4
   52/21 52/22 54/12 54/13
   55/4 55/4
participate [1]   19/14
particular [5]   8/5 8/9
   9/7 35/21 36/11
particularly [3]   33/4
   38/25 50/24
parties [2]   2/3 50/19
party [12]   17/25 18/3
   36/25 38/20 39/24 39/25
   40/4 40/6 40/9 40/13
   40/23 53/8
password [1]   38/23
past [6]   19/7 30/22
   33/12 53/17 57/17 57/18
patently [1]   21/16
peaceful [2]   52/14
   52/22
people [17]   13/21 16/22
   20/6 20/21 22/20 23/18
   23/23 29/6 33/2 38/8
   39/15 40/8 42/14 48/12
   53/6 53/24 57/21
pepper [6]   28/25 49/7
   49/9 49/14 51/12 52/6
Percenter [1]   22/11
perfect [1]   30/23
period [4]   51/1 51/8
   52/5 53/16
permanent [1]   12/13
permission [2]   37/14
   41/8
perpetrator [1]   27/14
person [7]   7/3 7/13
   13/17 22/17 23/2 32/12
   45/7

personal [1]   36/7
persons [1]   10/19
persuade [1]   21/15
persuasion [2]   56/18
   56/22
phone [11]   25/1 38/9
   38/15 38/18 38/19 55/11
   55/18 55/18 55/20 55/20
   59/17
phones [1]   38/22
photographs [1]   51/25
phrase [1]   24/14
place [3]   24/7 36/2
   60/12
plan [1]   38/4
plans [2]   5/4 5/6
Plaza [3]   49/13 49/24
   50/14
plea [1]   13/11
pleading [1]   53/3
please [5]   2/4 2/5
   34/15 44/7 49/2
pleasure [3]   5/24 26/8
   60/17
plus [1]   52/4
point [23]   10/11 10/14
   14/25 17/7 17/15 21/6
   21/12 22/13 25/25 27/21
   31/7 31/20 31/23 35/10
   35/12 44/17 53/19 56/15
   57/2 57/17 59/2 59/5
   59/9
pointed [1]   54/21
points [9]   6/9 26/5
   26/22 26/22 27/7 34/15
   34/16 35/5 56/7
police [15]   13/15 15/21
   18/4 19/18 19/20 20/14
   33/6 33/7 33/9 33/11
   33/13 33/16 33/21 33/22
   52/8
political [1]   53/21
politicians [1]   32/5
pornography [2]   39/8
   39/11
pose [1]   15/18
position [1]   17/17
positive [2]   48/5 48/6
possibility [1]   53/8
post [2]   13/7 55/22
post-trial [1]   13/7
posted [1]   8/3
posting [1]   23/24
posture [1]   47/4
potential [2]   36/11
   53/10
power [1]   52/22
practiced [1]   34/24
preclude [2]   19/9 20/10
predicates [1]   44/24
prepared [1]   34/23
preparing [1]   34/25
Preponderance [1]
   56/23

**P**

prescribed [1]   13/18
prescriptions [2]
13/18 13/22
presence [2]   51/20
51/23
present [6]   2/10 3/4
24/19 25/14 31/21 53/25
presents [1]   53/22
president [2]   19/11
22/4
press [3]   3/19 3/20
46/6
pressing [3]   9/21 23/2
23/3
presumption [19]   6/17
6/17 6/19 6/23 6/25 7/5
7/21 10/6 27/5 44/3
44/4 44/21 45/5 45/6
45/11 45/16 45/18 46/6
56/17
presumptions [1]   44/10
pretrial [8]   37/14 38/1
38/5 39/3 39/23 41/9
45/3 45/8
pretty [4]   27/25 28/5
50/5 50/7
prevent [1]   34/10
previous [1]   53/7
principal [11]   6/8 7/17
8/8 8/20 26/5 26/22
28/3 34/15 35/5 35/5
35/15
principle [2]   10/14
44/9
principles [1]   52/15
prior [2]   33/3 55/2
probable [8]   29/16
29/19 29/22 30/7 30/16
31/1 31/5 31/6
probably [4]   24/13
24/17 36/9 60/14
problem [1]   50/10
proceed [3]   2/11 25/24
29/23
proceeding [1]   52/17
proceedings [6]   1/24
29/15 61/7 62/7 62/13
62/15
process [1]   52/21
produce [2]   25/7 40/18
produced [4]   1/24 12/5
12/12 56/13
production [2]   6/23
45/11
professed [1]   33/12
professes [1]   33/5
proffer [3]   18/2 18/8
55/16
proffered [1]   55/12
prolonged [1]   50/23
promised [1]   38/24
prompt [5]   16/25 25/10

**Q**

pronouncing [1]   6/19
proof [2]   21/14 31/5
proper [1]   54/8
property [1]   40/25
propose [1]   40/12
proposed [6]   7/1 7/10
17/22 37/25 48/18 58/3
proposing [4]   20/11
24/7 48/5 48/9
proposition [3]   11/21
30/15 31/9
propriety [1]   46/17
protected [1]   38/23
protection [1]   29/7
protest [2]   18/6 18/10
provide [2]   10/18 48/5
provided [1]   32/23
public [3]   1/15 2/14
43/22
pummel [1]   52/3
pummeling [1]   51/16
punished [2]   10/17
11/17
punishment [2]   45/1
45/7
purpose [1]   40/21
purposes [2]   11/23
29/22
push [1]   51/2
pushing [2]   33/13 49/12
put [19]   5/25 9/18 9/21
17/8 29/8 29/9 31/15
31/21 33/24 37/5 39/17
39/17 40/25 43/14 43/17
43/21 51/21 53/3 60/12
putting [2]   21/20 40/7

**Q**

Q-U-A-G-L-I-N [2]   8/25
9/11
Quaglin [2]   8/25 9/11
qualifies [2]   14/5
45/16
quarters [1]   36/10
question [30]   3/9 5/1
8/5 8/16 8/19 12/2 12/2
12/7 14/6 14/7 15/4
15/6 19/6 23/13 24/12
24/17 24/21 25/8 26/10
29/13 29/18 30/3 35/22
35/22 36/10 41/6 43/1
48/25 50/2 59/8
questioning [1]   55/7
questions [11]   3/4 6/7
7/14 16/25 25/16 25/24
26/3 26/20 59/5 59/7
59/9
quickly [1]   60/9
quit [2]   4/19 4/20
quiver [1]   37/19
quote [1]   27/13

**R**

rack [1]   51/2
racks [2]   33/14 49/12
raise [4]   17/6 17/8
34/16 35/5
raised [3]   3/11 4/10
19/25
raises [1]   5/1
rallies [1]   22/4
rather [1]   9/15
rational [1]   24/22
RDR [1]   1/19
re [1]   57/7
re-arise [1]   57/7
reach [4]   6/13 10/1
43/5 60/24
read [6]   6/3 6/9 27/6
43/8 43/8 51/19
reading [3]   27/18 58/22
60/13
reads [1]   18/15
really [10]   4/6 4/10
4/12 7/15 9/20 10/14
35/21 38/9 54/24 55/1
reason [3]   9/23 37/7
56/9
reasonable [2]   5/3 6/16
reasonably [2]   7/2 7/11
reasons [3]   6/14 29/25
41/13
rebut [1]   46/6
rebuttable [6]   6/17
6/18 7/5 7/21 10/5 27/5
rebuttal [1]   10/6
rebutted [4]   6/24 44/4
45/18 45/19
rebutting [1]   6/23
recall [3]   12/15 13/11
13/13
receives [1]   41/8
receiving [1]   43/2
recognizing [2]   25/6
25/13
reconsideration [1]
59/24
record [9]   2/4 19/21
25/17 31/23 43/3 43/20
43/22 45/19 45/20
recorded [5]   1/24 16/8
16/9 20/2 32/19
recording [1]   32/22
records [3]   4/2 20/22
25/3
recovered [1]   25/2
refer [1]   3/23
reference [1]   16/11
referencing [1]   32/17
referred [1]   22/7
referring [3]   30/11
32/1 47/2
reflect [1]   52/12
refusal [1]   52/7
regard [4]   3/18 32/15

**R**

regard... [2]  32/24
43/21
regarding [4]  7/20 8/11
10/4 10/5
regardless [3]  29/1
45/17 56/17
reinforced [2]  18/17
18/23
reinstated [1]  55/9
reiterate [1]  23/17
relates [1]  27/4
release [10]  3/5 3/15
6/12 7/1 7/11 34/1
39/10 45/4 52/11 56/10
released [9]  17/24
18/14 21/8 40/22 42/22
45/24 47/18 48/4 48/12
relied [3]  30/14 30/20
31/8
relying [1]  13/14
remain [1]  43/9
remains [1]  56/18
remiss [1]  25/8
remorse [1]  16/23
reoccur [1]  54/7
repeat [5]  28/7 40/18
48/10 48/11 56/5
repeating [1]  36/17
repetitious [1]  26/19
rephrase [2]  24/16 48/3
reply [1]  17/15
report [1]  40/14
reported [1]  62/6
Reporter [4]  1/19 62/1
62/3 62/22
represent [1]  25/18
representations [2]
26/25 27/2
request [5]  3/15 3/20
58/10 59/4 60/13
requesting [3]  3/3 3/7
3/21
required [6]  7/3 7/12
20/15 31/21 37/6 49/19
requires [2]  14/13 31/2
requiring [2]  3/3 3/7
requisite [2]  56/21
56/22
rescued [1]  49/15
research [1]  46/25
residents [1]  46/3
resisting [1]  51/9
resolve [4]  50/4 58/19
58/20 58/22
resolved [1]  14/7
respect [5]  12/3 21/11
27/3 28/14 31/16
respects [1]  18/5
respond [17]  3/4 4/8
4/12 4/24 4/25 5/9 5/22
8/12 26/4 26/7 26/16
26/17 26/20 26/24 34/18

35/3 47/8
responded [1]  5/21
response [3]  28/17 42/4
59/8
responses [1]  27/3
responsible [1]  19/18
restore [5]  15/23 19/8
19/15 32/1 32/10
restored [3]  32/10 34/4
52/20
restrain [1]  53/3
restrictions [3]  48/6
48/7 48/7
result [3]  21/3 53/23
55/21
retreating [2]  33/21
49/10
return [3]  19/25 37/7
41/8
revered [1]  33/6
reverence [1]  33/11
Richardson [1]  10/21
rid [2]  55/10 55/13
RIGBY [20]  1/15 2/10
4/11 19/1 26/18 28/17
28/21 30/4 31/24 32/17
33/25 34/13 37/12 47/4
47/10 47/13 48/22 51/15
56/4 60/6
Rigby's [1]  27/3
right [77]
rights [1]  32/19
ring [2]  46/18 47/4
ringing [1]  59/17
riot [1]  54/23
rioter [3]  33/23 49/11
49/16
risk [3]  29/8 29/9
40/18
RMR [1]  1/19
robbery [2]  36/6 36/8
ROBERT [3]  1/5 2/3 62/9
Rockefellers [1]  32/7
room [1]  17/9
rooms [2]  38/25 39/14
Rosemond [1]  10/18
Rothschilds [1]  32/6
Rule [1]  29/15
rules [1]  40/2
run [2]  53/1 60/19
rushing [1]  33/12

**S**

safe [1]  61/6
safety [3]  7/3 7/12
56/2
said [23]  4/15 4/18
13/4 14/2 17/22 19/7
20/3 20/4 27/8 27/22
28/21 31/14 31/17 40/23
41/2 44/8 45/21 47/22
50/3 56/12 62/9 62/13
62/15
same [12]  7/24 10/8

10/25 11/18 11/18 13/19
19/3 27/13 40/13 47/3
60/3 60/15
satisfy [1]  56/2
save [1]  17/18
saw [2]  33/18 41/22
say [30]  4/6 4/19 9/19
15/8 16/13 16/19 17/2
18/24 21/1 21/9 24/10
24/15 24/19 25/6 25/10
25/11 25/23 27/16 30/22
31/6 35/6 36/16 42/3
55/17 56/6 59/2 59/10
60/5 60/19 60/20
saying [9]  10/25 11/22
11/23 12/25 19/16 25/9
37/15 37/18 55/19
says [11]  10/18 10/21
10/24 11/2 14/8 14/9
23/11 27/10 27/14 44/14
55/14
schedule [2]  43/14
60/12
Schuck [1]  38/11
search [1]  24/25
second [2]  5/1 50/1
Secondly [2]  6/24 20/4
Section [4]  6/25 7/9
12/14 14/19
see [4]  17/8 41/23
46/12 52/9
seek [1]  14/2
seem [2]  49/5 56/16
seen [4]  16/17 41/17
42/13 59/23
send [2]  47/23 47/24
sense [2]  30/24 51/16
sent [1]  47/25
sentence [1]  44/20
sentencing [1]  13/8
separate [5]  27/23 28/1
28/6 29/17 35/11
serious [8]  8/17 8/18
12/24 15/11 15/12 41/15
50/15 52/13
seriously [4]  41/16
43/18 58/18 60/18
set [3]  12/17 32/22
45/12
several [2]  42/21 56/12
she [7]  13/4 13/5 26/5
27/8 38/21 59/21 59/22
sheer [1]  53/24
shoes [1]  46/3
short [1]  34/23
shorthand [2]  62/6
62/14
shortly [1]  21/22
shots [3]  3/22 3/25 4/1
should [22]  4/7 4/23
15/6 15/12 17/18 25/11
25/12 28/11 29/14 29/24
30/5 33/24 35/17 36/4
37/21 40/24 41/15 42/24

**S**

should... [4]  47/18
48/4 48/10 50/4
shouldn't [2]  14/6 21/9
show [3]  25/3 52/5 57/3
shown [3]  51/24 57/25
58/2
shows [1]  21/14
side [1]  55/12
sides [3]  4/5 4/7 34/25
significance [1]  28/14
significant [3]  12/5
12/11 14/9
similar [4]  12/17 14/20
34/10 57/5
simply [3]  11/21 28/1
45/14
simultaneously [1]
37/12
since [4]  3/11 8/20
41/18 46/1
sir [6]  2/18 6/20 6/21
17/3 60/23 61/3
sister's [1]  38/19
situations [1]  53/4
six [2]  26/3 42/13
Sixth [1]  10/21
slip [1]  9/3
so [67]
social [3]  37/25 38/7
39/5
software [3]  38/15 39/2
39/22
sold [1]  32/6
solely [4]  28/6 29/24
32/20 45/6
some [17]  3/1 16/22
17/7 19/14 22/19 23/20
28/17 34/15 41/25 43/20
46/18 46/25 49/17 54/25
55/6 55/15 58/15
somebody [3]  17/16 23/6
41/11
somebody's [1]  35/2
somehow [1]  30/5
someone [10]  39/10
39/14 42/2 47/21 49/17
51/16 52/16 55/1 55/2
61/1
someone's [4]  52/14
53/3 54/17 54/18
something [17]  11/13
14/4 20/6 22/15 25/11
28/16 29/13 33/1 34/10
35/20 37/18 41/9 41/23
42/17 42/18 46/15 56/5
sometime [1]  22/11
sometimes [4]  22/7
25/18 25/19 57/20
soon [1]  58/20
sorry [15]  2/25 3/13
9/9 11/3 11/25 17/10
17/11 19/24 23/3 41/24

44/22 44/24 47/10 50/2
50/8
sort [4]  29/1 35/12
43/20 45/17
sorts [1]  19/5
sound [1]  46/21
sounding [1]  57/21
sounds [1]  20/5
speak [1]  38/12
specific [1]  3/18
specifically [1]  3/23
spend [1]  58/9
spoke [1]  37/12
spoken [1]  18/2
spray [14]  8/11 8/13
12/3 12/6 12/8 22/19
22/25 28/25 30/1 50/16
51/2 51/5 51/12 52/6
sprayed [5]  13/17 13/21
49/8 49/9 49/14
spraying [4]  33/16
33/20 33/22 36/1
sprays [1]  36/5
stage [2]  15/7 29/15
stairs [4]  33/15 33/17
49/8 51/3
stand [1]  10/14
standard [3]  40/5 56/22
56/22
stands [3]  11/21 31/8
50/22
start [2]  2/5 19/10
starting [1]  51/1
state [3]  11/12 20/16
30/7
stated [1]  29/25
statement [11]  16/8
16/8 20/2 20/8 20/9
28/18 31/25 32/3 32/17
48/3 55/8
statements [4]  19/2
19/5 32/5 53/9
STATES [11]  1/1 1/3 1/9
1/11 1/20 2/3 2/7 8/24
22/18 62/4 62/8
statute [7]  12/15 14/8
27/18 27/19 28/12 28/24
31/5
statutory [3]  28/8
28/10 44/12
stay [2]  20/16 41/11
stayed [2]  25/18 25/19
staying [1]  33/7
steady [1]  45/22
stenography [1]  1/24
still [8]  3/22 3/25 4/1
21/18 34/3 53/20 53/25
53/25
stinging [1]  13/1
stock [1]  33/24
stolen [1]  19/3 19/11
stop [10]  15/5 19/3
33/12 33/15 33/15 33/18
33/18 33/20 33/22 50/1

stories [1]  42/14
Street [2]  1/12 1/16
streets [3]  49/23 50/13
strength [1]  15/9
strengthen [1]  38/3
stress [2]  21/9 42/21
stressful [1]  41/3
strong [9]  15/1 15/6
16/2 18/6 21/15 21/15
26/7 30/1 35/17
stronger [1]  22/22
strongly [2]  17/16
18/10
struck [1]  29/9
stuff [1]  40/24
subject [1]  7/7
submission [2]  4/25
51/25
submissions [2]  5/22
53/2
submit [2]  38/6 40/14
submits [1]  34/7
submitted [2]  3/22 3/24
subscribed [1]  62/17
Subsection [1]  7/7
subsequent [1]  15/17
substantial [2]  12/18
24/4
substantive [2]  7/24
10/9
successful [3]  58/13
58/14 58/23
succinct [1]  59/8
such [2]  8/16 55/17
suffered [2]  12/12
13/17
sufficient [2]  46/5
48/9
sufficiently [1]  44/12
suggest [2]  36/6 57/22
suggesting [1]  45/23
suggestion [1]  14/1
suggests [2]  36/9 52/10
Suite [1]  1/16
SULLIVAN [1]  1/8
summarize [1]  47/17
summary [2]  47/11 49/1
support [2]  27/17 36/15
supported [3]  15/22
19/7 36/13
Supreme [5]  30/19 46/15
47/7 50/3 50/8
sure [16]  9/19 13/19
17/13 34/20 36/23 36/24
39/13 40/2 42/8 43/25
46/15 48/9 50/5 50/7
60/9 60/11
surname [2]  6/20 9/10
surreply [4]  8/3 27/10
28/11 30/10
swear [1]  60/7
swings [2]  49/17 49/21
sworn [1]  40/1
symptoms [1]  8/14

**S**

system [2]   58/25 59/1

**T**

tablets [1]   38/22
take [12]   4/21 20/12
29/3 31/7 35/9 42/18
43/18 58/15 58/17 60/17
60/23 61/5
taken [4]   17/17 26/2
54/18 62/14
takeover [2]   15/23 19/8
takes [3]   35/14 35/14
40/6
taking [3]   20/7 34/7
58/21
talk [3]   6/12 17/1 17/7
talked [5]   37/23 43/6
43/6 43/18 54/15
talking [3]   19/10 20/7
35/2
tandem [1]   55/6
tape [1]   62/15
tapes [1]   3/16
tell [12]   3/6 17/1 18/4
18/25 30/4 40/8 43/6
43/17 43/19 56/6 59/14
59/18
teller [1]   36/6
term [3]   9/20 14/19
22/8
terms [3]   29/15 49/4
49/19
terrifying [1]   41/25
terror [1]   53/24
testimony [2]   13/24
62/7
tests [1]   28/21
than [9]   35/14 37/7
41/3 41/15 42/17 46/5
46/7 48/15 55/13
thank [27]   3/17 8/1
8/10 9/12 10/5 14/22
15/15 15/24 17/4 17/12
26/12 27/1 31/10 31/10
31/12 34/11 35/7 40/11
47/14 48/19 48/21 50/10
56/3 58/5 60/8 60/20
61/6
that [446]
that's [49]   3/2 4/8
4/10 5/14 5/15 8/10
8/19 11/22 12/6 12/7
16/4 16/10 16/13 16/23
19/15 20/8 20/9 20/20
21/10 21/16 22/8 22/22
23/15 25/12 25/24 32/9
34/20 35/12 36/12 37/15
37/16 37/17 40/10 40/10
40/15 42/16 42/17 50/5
51/8 52/7 53/13 53/18
54/8 57/11 58/24 58/25
59/10 60/5 60/11

their [13]   3/23 5/25
7/16 16/23 31/19 37/1
38/24 38/25 42/14 53/6
53/9 53/9 57/21
them [15]   3/6 3/7 4/17
5/20 5/21 5/25 11/18
18/3 22/23 23/21 36/23
36/23 37/4 56/5 59/21
themselves [4]   4/1
10/19 10/25 11/1
then [23]   4/24 5/9 5/10
7/15 10/1 13/22 19/12
23/12 25/24 26/6 26/16
26/20 27/15 31/18 35/3
36/21 43/5 49/15 50/4
52/3 54/4 54/5 57/24
theorists [1]   19/10
theory [9]   10/22 11/6
14/15 28/2 28/5 28/6
35/11 35/12 35/13
there [73]
there's [14]   5/2 7/5
8/21 15/1 21/8 24/3
24/14 27/4 29/22 32/14
37/18 46/7 49/22 56/19
thereafter [2]   5/16
52/19
these [17]   6/3 6/11
6/12 15/14 16/14 20/20
22/19 24/1 28/17 30/14
36/11 39/1 43/14 55/15
60/1 60/2 60/4
they [37]   3/21 4/16
4/17 4/21 4/22 5/25 6/4
9/19 11/20 12/21 12/22
12/23 13/3 20/21 24/25
32/20 32/20 32/21 32/22
33/14 37/2 37/2 37/3
38/15 38/17 40/7 40/25
40/25 42/1 45/7 49/9
49/10 49/11 49/12 52/9
52/12 54/19
thing [9]   4/8 11/19
19/9 25/16 29/1 42/2
51/14 60/3 60/15
things [7]   26/3 27/8
28/23 50/22 51/17 54/21
60/9
think [85]
thinking [1]   40/5
thinks [1]   16/14
third [12]   17/25 18/3
36/25 38/20 39/23 39/25
40/4 40/6 40/9 40/13
40/23 53/8
this [79]
those [14]   4/1 10/18
12/21 13/21 14/3 21/23
25/16 26/20 30/20 44/6
44/20 45/3 45/6 53/4
though [6]   4/12 9/20
15/7 52/2 54/11 54/13
thought [11]   8/10 15/22
17/11 18/16 20/13 20/13

30/4 46/14 46/19 54/2
60/19
thoughts [1]   5/25
threat [1]   15/18
threatened [1]   45/21
threats [1]   23/24
three [4]   22/10 29/17
33/8 38/7
through [12]   13/23
23/16 28/19 33/19 36/23
49/23 51/2 51/3 51/4
51/5 51/5 51/25
throughout [1]   50/13
time [25]   4/9 4/14 4/14
4/15 4/17 19/3 19/3
20/24 21/25 22/6 22/11
25/25 26/2 32/16 37/2
40/21 43/15 45/23 48/13
51/1 51/8 52/4 53/13
58/9 58/15
times [2]   51/13 56/13
timing [1]   45/8
tips [1]   46/2
Title [1]   46/24
today [4]   2/18 3/13
5/24 43/12
together [1]   62/14
told [3]   4/15 15/19
15/21
too [6]   6/5 15/3 17/14
21/11 24/9 44/11
took [6]   32/11 36/2
49/17 49/20 54/1 55/22
top [3]   33/17 49/8 51/3
touched [1]   34/21
tourist [2]   22/21 23/7
towards [1]   33/13
track [1]   42/13
train [1]   17/10
transcript [3]   1/8 1/24
62/13
transition [1]   52/22
transport [1]   31/18
transporting [1]   32/20
treatment [4]   14/3
42/20 42/23 43/2
triable [1]   14/7
trial [2]   13/7 26/1
trick [2]   41/5 41/6
tried [3]   25/9 43/12
58/10
trigger [1]   44/21
trouble [1]   13/1
troubled [1]   39/9
troubling [2]   20/20
39/13
true [4]   21/10 23/6
23/12 44/22
Trump [1]   22/4
trust [2]   37/3 59/6
truthful [1]   25/25
try [2]   27/6 56/8
trying [17]   6/13 31/21
33/9 33/14 33/16 33/23

**T**

**trying... [11]** 34/25 39/16 39/17 41/6 41/21 41/24 46/12 49/12 52/9 53/17 53/19
**turn [2]** 16/3 25/9
**turned [1]** 15/21
**turning [5]** 16/1 16/11 31/13 31/14 31/17
**two [3]** 6/5 15/22 26/3
**type [2]** 12/8 53/11
**typical [1]** 22/21

**U**

**U.s [3]** 7/7 7/25 10/9
**U.S.C [1]** 9/5
**un [1]** 21/1
**unable [1]** 24/23
**unblemished [1]** 20/21
**uncle [1]** 19/22
**unclear [1]** 20/4
**under [13]** 3/14 5/3 7/7 15/2 16/19 20/14 20/15 27/5 28/4 35/16 42/20 44/21 48/17
**underlying [1]** 4/1
**understand [8]** 16/12 17/3 19/16 31/20 38/12 48/22 53/2 56/4
**understandably [1]** 33/1
**understanding [1]** 3/20
**understands [1]** 6/15
**understood [2]** 12/8 41/7
**undisputed [1]** 16/4
**undivided [1]** 58/8
**unfair [1]** 18/25
**Unfortunately [1]** 47/3
**unique [1]** 58/1
**UNITED [11]** 1/1 1/3 1/9 1/11 1/20 2/2 2/7 8/24 22/18 62/4 62/8
**unlawfully [1]** 51/10
**unless [3]** 11/5 41/8 44/22
**unpublished [2]** 8/22 8/24
**until [2]** 45/23 58/1
**up [12]** 3/5 13/5 21/6 25/3 32/22 33/12 33/13 33/15 36/7 38/24 39/7 55/7
**upcoming [1]** 5/2
**upholding [3]** 9/4 9/6 9/7
**upon [2]** 31/17 62/7
**us [3]** 6/10 26/17 60/8
**use [10]** 8/16 21/15 22/23 35/22 36/7 36/9 38/17 50/15 52/3 52/5
**used [6]** 25/3 28/22 30/2 36/5 46/2 51/16

**uses [1]** 36/11
**using [3]** 38/6 39/12 51/12
**usually [1]** 46/1

**V**

**various [2]** 30/21 51/13
**verb [1]** 11/10
**version [2]** 12/1 49/18
**versus [3]** 2/3 11/5 62/8
**very [19]** 2/19 4/10 6/3 6/4 12/17 14/20 17/16 34/11 36/7 36/21 39/8 59/8 59/22 60/4 60/17
**video [5]** 2/11 2/11 3/21 33/17 53/24
**videos [5]** 3/5 3/24 3/25 41/23 42/1
**view [6]** 2/15 16/18 18/12 32/15 32/16 34/3
**views [1]** 19/22
**VII [1]** 46/24
**violated [1]** 45/7
**violating [1]** 20/19
**violation [1]** 37/22
**violations [1]** 42/25
**violence [16]** 7/8 7/9 9/5 9/6 21/15 21/25 22/9 22/13 23/11 24/4 45/20 45/21 45/22 52/7 53/11 53/21
**violent [13]** 22/2 22/4 22/5 22/6 22/14 22/17 23/10 23/10 23/13 24/2 24/3 34/8 50/24
**Virginia [1]** 1/17
**visited [1]** 36/4
**visitor [1]** 36/3
**Visitors [2]** 49/15 51/6
**voluntarily [2]** 16/3 42/6
**volunteered [1]** 15/20

**W**

**waiting [1]** 3/1
**walk [1]** 22/17
**walking [2]** 22/24 23/7
**want [28]** 2/12 4/4 4/11 4/13 4/14 4/18 4/19 5/3 7/15 8/23 15/3 16/24 17/1 18/25 22/1 24/15 24/16 25/11 26/23 34/14 34/18 34/22 36/23 39/13 42/2 43/6 60/8 60/20
**wanting [2]** 31/25 42/8
**wants [4]** 26/13 26/15 26/17 46/2
**War [1]** 41/18
**warrant [1]** 24/25
**was [85]**
**was un [1]** 21/1
**Washington [3]** 1/4 1/12

**1/21**
**wasn't [2]** 20/13 20/15 20/15 20/16 32/18
**way [15]** 8/16 9/18 11/22 12/22 18/10 24/14 26/8 35/25 37/15 37/17 40/15 44/17 51/24 54/8 59/16
**ways [1]** 30/21
**we [66]**
**we'll [11]** 2/5 5/19 46/25 47/8 58/22 59/3 59/7 59/18 60/6 60/16 60/17
**we're [20]** 6/13 8/8 9/21 14/1 20/11 22/8 22/12 23/2 23/5 24/7 26/17 31/21 35/2 48/4 48/8 56/8 57/11 57/20 57/21 60/2
**we've [5]** 26/22 34/21 44/4 48/18 58/3
**weapon [10]** 8/12 12/2 12/4 14/12 14/14 14/15 28/22 29/17 29/21 35/20
**wearing [1]** 29/7
**week [4]** 5/12 5/16 5/21 52/19
**weekend [3]** 58/21 59/11 61/5
**weekly [1]** 40/14
**weeks [2]** 13/18 13/23
**weigh [3]** 6/25 7/10 15/2
**weighed [1]** 15/13
**weighs [1]** 15/10
**weight [3]** 29/11 29/24 31/3
**weighty [2]** 60/1 60/4
**welcome [3]** 3/6 4/22 60/23
**well [33]** 3/9 4/16 5/20 11/5 11/16 15/25 22/22 24/18 26/9 26/17 26/18 26/24 27/21 28/17 31/15 34/17 34/20 35/2 36/13 39/21 44/8 45/21 47/14 50/11 50/20 55/11 56/14 56/21 58/7 59/24 59/25 61/4 61/6
**went [4]** 13/21 22/4 23/16 34/6
**were [18]** 13/21 13/22 19/5 21/8 23/23 29/7 29/20 32/20 33/14 36/5 38/25 40/22 42/22 45/2 49/10 49/12 52/9 54/24
**West [3]** 49/13 49/24 50/13
**Western [2]** 37/13 38/14
**what [80]**
**what's [7]** 5/2 11/3 26/8 42/4 44/2 54/6 56/21

**W**

**whatever [20]** 18/16
19/12 19/12 19/13 20/13
21/20 21/21 21/24 22/1
22/7 26/1 32/13 35/4
35/4 35/5 38/23 46/19
48/14 57/22 61/2
**whatsoever [2]** 22/1
45/20
**when [8]** 17/17 19/9
35/16 44/23 54/19 55/14
59/16 60/12
**where [11]** 2/21 3/21
34/1 39/23 46/4 50/18
50/18 50/25 51/8 55/2
58/24
**whereof [1]** 62/17
**whether [33]** 3/2 6/16
6/16 6/19 6/22 7/6 7/21
7/23 8/11 8/16 8/17
10/4 10/5 10/7 13/11
14/4 14/7 27/4 28/15
28/22 29/1 29/13 29/15
29/22 30/25 35/20 35/22
44/4 45/7 45/15 46/15
54/19 58/14
**which [19]** 5/1 5/13
11/23 12/17 12/21 13/19
14/20 16/1 25/10 27/9
32/21 32/23 36/3 36/5
36/9 48/10 53/12 55/8
55/9
**while [8]** 4/19 4/20
33/14 45/3 51/11 51/12
51/14 52/4
**White [1]** 41/12
**who [22]** 2/10 2/13 2/13
10/18 11/17 11/18 11/19
11/19 13/17 13/21 17/25
18/4 19/18 22/20 23/2
23/23 32/12 33/2 33/16
33/23 40/1 46/1
**whom [2]** 29/7 29/9
**why [13]** 16/12 23/15
24/22 25/1 25/23 26/19
26/23 28/11 32/9 32/21
57/11 57/25 58/2
**Wick [2]** 41/22 41/24
**wild [2]** 9/15 9/23
**will [28]** 2/3 7/1 7/11
15/13 17/8 18/13 18/13
18/14 18/22 19/11 25/16
25/25 26/13 26/16 34/17
38/21 39/5 40/18 46/24
48/5 48/17 53/15 53/20
58/14 58/19 58/19 58/20
59/12
**willing [1]** 34/5
**willingness [1]** 52/5
**window [1]** 33/19
**wish [2]** 34/16 59/10
**wishes [3]** 20/6 20/9
26/6

**within [1]** 45/4
**without [4]** 37/14 39/2
46/17 57/5
**witness [2]** 13/4 62/17
**witnesses [1]** 13/2
**won't [2]** 22/23 23/17
**wonderful [1]** 61/5
**Woodland [2]** 9/14 9/23
**word [1]** 23/10
**worded [1]** 31/5
**words [5]** 19/15 22/23
32/2 44/23 60/19
**wore [1]** 24/24
**work [11]** 21/8 37/1
39/3 40/20 40/21 40/24
41/1 42/8 45/22 45/23
59/3
**worked [3]** 40/19 45/25
46/4
**worker [1]** 46/1
**working [6]** 7/18 20/23
34/5 40/20 45/25 58/22
**works [1]** 58/25
**world [1]** 41/3
**would [62]** 4/1 4/3 4/3
4/22 5/13 5/14 5/17
10/11 10/13 12/10 12/11
15/8 15/25 16/13 17/25
19/8 20/6 20/10 20/11
22/17 23/1 23/9 24/11
25/5 25/7 25/22 25/22
27/17 30/18 30/22 30/24
31/5 33/25 36/6 37/3
37/8 37/9 37/25 38/1
38/2 38/2 38/3 38/18
39/3 40/13 40/22 41/7
41/19 42/6 42/23 44/1
44/3 45/9 45/13 48/24
48/25 51/14 52/10 54/7
55/17 56/16 59/21
**write [3]** 43/16 58/12
60/16
**writing [4]** 4/8 6/1
27/7 59/22
**written [1]** 58/13
**wrong [9]** 14/10 15/22
16/9 16/11 18/10 18/18
30/4 31/16 54/5

**Y**

**yeah [1]** 42/3
**year [1]** 22/1
**years [5]** 42/21 45/4
53/12 53/14 53/18
**yes [8]** 6/21 16/5 17/4
19/24 21/2 26/11 60/6
61/3
**yet [2]** 21/25 22/9
**you [185]**
**you'd [1]** 35/5
**you're [9]** 4/19 5/4
11/25 19/16 26/18 37/20
40/7 48/1 58/12
**you've [3]** 34/24 56/6

59/19
**your [97]**
**yourself [1]** 60/23
**yourselves [1]** 2/4