```
              IN THE UNITED STATES DISTRICT COURT

                 FOR THE DISTRICT OF COLUMBIA
- - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA            CR No. 1:21-cr-00291-ABJ-1

                                    Washington, D.C.
v.                                  Tuesday, October 26, 2021
                                    9:30 a.m.

THOMAS F. SIBICK,

               Defendant.
- - - - - - - - - - - - - - - - - x
_____
       TRANSCRIPT OF BOND MOTION HEARING AND STATUS CONFERENCE
          HELD BEFORE THE HONORABLE AMY BERMAN JACKSON
                  UNITED STATES DISTRICT JUDGE
_____
APPEARANCES:

For the United States:    Cara A. Gardner, Esq.
                          Tara Ravindra, Esq.
                          DOJ-USAO
                          555 4th Street, NW
                          Washington, DC 20001
                          (202) 252-7009


For the Defendant:        Stephen F. Brennwald, Esq.
                          BRENNWALD & ROBERTSON, LLP
                          922 Pennsylvania Avenue, SE
                          Washington, DC 20003
                          (301) 928-7727


Court Reporter:           Timothy R. Miller, RPR, CRR, NJ-CCR
                          Official Court Reporter
                          U.S. Courthouse, Room 6722
                          333 Constitution Avenue, NW
                          Washington, DC 20001
                          (202) 354-3111



Proceedings recorded by machine shorthand; transcript
produced by computer-aided transcription.
```

```
 1                    P R O C E E D I N G S
 2            THE DEPUTY CLERK:  Good morning, Your Honor.
 3            This morning, we have Criminal Case No. 21-291-1,
 4   the United States of America v. Thomas F. Sibick.
 5            Appearing telephonically is our Pretrial Services
 6   Agency officer.
 7            Would you please identify yourself for the record.
 8            THE PROBATION OFFICER:  Good morning, Your Honor.
 9   Christine Schuck, Pretrial Services.
10            THE COURT:  Good morning.
11            THE DEPUTY CLERK:  Will counsel for the Government
12   please identify herself and her colleague for the record.
13            MS. GARDNER:  Good morning, Your Honor.  Cara
14   Gardner and Tara Ravindra on behalf of the United States.
15            THE COURT:  Good morning.
16            THE DEPUTY CLERK:  Defense counsel?
17            MR. BRENNWALD:  Good morning, Your Honor.  Stephen
18   Brennwald for Mr. Sibick.
19            THE COURT:  And Mr. Sibick is present.
20            THE DEFENDANT:  Yes, ma'am.
21            THE COURT:  All right.  Good morning, everybody.
22            Mr. Haley, can I just ask you a question.
23            THE DEPUTY CLERK:  Absolutely.
24            (Brief pause.)
25            THE COURT:  Okay.  We're here on a motion asking
```

1    me to reopen the detention order and the detention hearing
2    in this case.  It's Docket 83.  It was supported by a series
3    of letters, information received from the guards at the
4    Department of Corrections.  A number of these letters were
5    similar to the ones I received in connection with the last
6    motion.  So I'm not going to summarize them all for the
7    record, but I want to assure the defendant and defense
8    counsel and the Government that I read every single one of
9    them, and they're at Docket 84.  The Government filed an
10   opposition at Docket 87, and there was a reply filed under
11   seal at Docket 88.  I don't intend to go into the details or
12   the substance of it, but I may refer to it just in general
13   terms, and I hope that's appropriate.
14            The predicate question that we need to take up is
15   the legal basis for the defendant's motion.  I noted at the
16   last hearing that 18 U.S. Code Section 3142(f) provides that
17   a bond hearing may be reopened, before or after a
18   determination by the judicial officer, at any time before
19   trial if the judicial officer finds that information exists
20   that was not known to the movant at the time of the hearing
21   and that has a material bearing on the issue of whether
22   there are conditions of release that will reasonably assure
23   the appearance of such person as required and the safety of
24   any other person and the community.
25            The D.C. Circuit has held that under that section,

1  Section 3142(f)(2), a court was authorized to open the
2  detention hearing when previously non-existent, material
3  information was brought to light.  That's United States v.
4  Peralta, 849 F.2d 625 at 622 [sic] from the D.C. Circuit in
5  1988.  In that case, the new information was the court's
6  suppression ruling against the defendant, which increased
7  the likelihood of his conviction and that he would flee if
8  not detained and, therefore, someone who was not previously
9  detained was.
10             In United States v. Lee, 451 F. Supp. 3d at -- 1
11 at Page 5 from this District in 2020, a District Court judge
12 quoted the rule and went on to say that, New and material
13 information consists of something other than a defendant's
14 own evaluation of his character or the strength of the case
15 against him; instead, it must consist of truly changed
16 circumstances, something unexpected, or a significant event.
17 And the court got that language from a case out of the
18 Southern District of New York, United States v. Esposito,
19 354 F. Supp. 3d 354, 359, though I don't think the statute
20 has the word "unexpected" in it.
21             The court went on to say, Moreover, and
22 significantly for present purposes, previously unavailable
23 information that has no material bearing on the factors that
24 must be considered to establish the propriety of pretrial
25 detention aren't important unless that new information casts

1    a different light on any of those factors.  And it points
2    out that Black's Law Dictionary defines "material" as having
3    some logical connection with the consequential facts or of
4    such a nature that knowledge of the item would affect a
5    person's decision-making; significant; essential.  And in
6    that case, this was one of the first bond review hearings
7    based on coronavirus and the court found that it was worthy
8    of consideration.

9         The Government has provided a few opinions from
10   other Districts in United States v. Dillon, 938 F.2d 1412,
11   out of the First Circuit; and the Fifth Circuit case, United
12   States v. Hare, 873 F.2d 796, found that letters from
13   supporters in the community weren't really previously
14   non-existent.  And the Government also points to United
15   States v. Martin, 2015 WL 1738362 from the Northern District
16   of California in 2005 [sic], which rejected the notion that
17   the fact that the defendant had completed a course while he
18   was detained would qualify as new evidence that had a
19   material bearing on the decision.  That court said,
20   Defendant's interpretation misunderstands the purpose of the
21   statute, which is to allow parties to present unknown
22   information that increases the chances the defendant appears
23   for their criminal hearing, or decreases the danger the
24   defendant poses to an individual or the community as a
25   whole.  Allowing defendant to reopen detention hearings to

```
1    present evidence regarding classes he took while in custody
2    doesn't serve this purpose.  Moreover, the court was
3    concerned that anybody could just take a course and then
4    file a motion and said that would lead to judicially
5    inefficient practices and is, therefore, erroneous.
6              I don't think there's any dispute that I may
7    reopen the hearing upon the showing described in subsection
8    (f).  While I was unpersuaded by the arguments about the
9    video at the last hearing that it changed anything, it was
10   because I felt that some of the other information that was
11   being presented to me in connection with the defendant and
12   the last motion called into question the notion that there
13   were no conditions that would protect the community, I
14   invited the parties to address the issue in writing again.
15             What I was not sure about, and what I asked you to
16   brief was, is the converse of Peralta true?  Yes, you can
17   reopen if there's new information.  But am I prohibited from
18   doing so otherwise, particularly if we're talking about
19   releasing a person from detention as opposed to detaining
20   someone who wasn't detained before, as in Peralta?  In other
21   words, does the Court lack the inherent power to review or
22   modify a detention determination in its discretion?  And I'm
23   not sure that either side pointed me to law on that
24   question.  I did find a case from another court in this
25   District that cited a 10th Circuit opinion, United States v.
```

1  Worrell, W-O-R-R-E-L-L, at 2021 WL 2366934 from June of
2  2021.  The court felt that the defendant's health condition
3  didn't have material bearing on the detention order, and he
4  quoted a case from the 10th Circuit, United States v.
5  Cisneros, 328 F.3d 610 at 614, that said, Reconsideration is
6  permissible under this section only when there is new
7  information that would materially influence the judgment
8  about whether there are conditions of release which will
9  reasonably assure that the defendant will not flee and will
10 not harm any other person or the community.
11          So before we get to whether the information
12 presented constitutes new information and how it bears on
13 the prediction that I'm supposed to make at this point about
14 the defendant, I do want to hear argument on the question
15 about whether I have to make the finding under Section
16 3142(f) to go forward or whether I can review a detention
17 order at any time, given my supervisory powers over this
18 case.
19          So Mr. Brennwald, do you want to address that.
20          MR. BRENNWALD:  Thank you, Your Honor.
21          Two things.  Number one, we would argue that the
22 Court has inherent power as the judicial officer assigned to
23 the case to review material that has come in.  As I argued
24 in my reply, he didn't have a chance to get this letter from
25 Major Moquet before the hearing before Chief Judge Howell on

```
1    March 16.  So we do consider that new evidence.  The other
2    thing that's significant and that I don't know if it's had
3    the impact on the Court that it had on me is the new
4    information -- it -- there's -- I don't think there can be
5    any question that it's new that Mr. Sibick's diagnosis is
6    completely different.
7              THE COURT:  All right.  Mr. Brennwald, I'm not
8    saying I disagree with you about any of that, and I --
9              MR. BRENNWALD:  Okay.
10             THE COURT:  -- am going to hear with you -- from
11   you --
12             MR. BRENNWALD:  Okay.
13             THE COURT:  -- on that.
14             MR. BRENNWALD:  Okay.
15             THE COURT:  I'm just trying to find out right
16   now --
17             MR. BRENNWALD:  Right.  I mean, I --
18             THE COURT:  -- do I have to hang my hat on Section
19   3142(f) or do I have broader authority?  I'm not saying I
20   don't think I can.  I just really want to know, because it
21   was surprising to me how little authority there is out
22   there --
23             MR. BRENNWALD:  Right.
24             THE COURT:  -- and the statute doesn't say "only
25   if."
```

1     MR. BRENNWALD:  Right.
2     THE COURT:  It just says "if."
3     MR. BRENNWALD:  Right.
4     THE COURT:  So I want to know what your reading of
5  the law is about just the legal standard that governs us
6  this morning, and then I will give you ample opportunity to
7  argue what the facts show this morning.
8     MR. BRENNWALD:  Okay.  Thank you.
9         I don't have any cases.  The Court cited the cases
10 that it looked at, Cisneros and Worrell, but I think the
11 fact that the language is not "only if" but "if" would imply
12 that the Court has some discretion.  I wish I had something
13 more substantive --
14    THE COURT:  Okay.
15    MR. BRENNWALD:  -- to provide to you, but I think
16 that Congress knows how to make things clear when they want
17 to make them clear, you know?  You have languages that say
18 "may" or "must," things like that.  So I would argue to the
19 Court that the Court does have the authority to do that, but
20 I wish I had something --
21    THE COURT:  All right.
22    MR. BRENNWALD:  -- substantive.  I did spend time
23 looking for it and, like the Court said, there's --
24    THE COURT:  It's really not there, I don't think.
25    MR. BRENNWALD:  Right.  So this might be a case of

1      first impression.
2               THE COURT:  Okay.  All right.  Thank you.
3               Does the Government want to address that issue?
4               And, Ms. Ravindra, Mr. Haley informed me that you
5      have a conflict this morning.  If you have to leave, just
6      go.  Don't worry about it.
7               MS. RAVINDRA:  Thank you, Your Honor.
8               THE COURT:  All right.
9               MS. GARDNER:  So Your Honor, the Government's
10     position is that, under the plain language of the statute,
11     Your Honor does need to make a finding under 3142(f)(2).  We
12     hadn't briefed Peralta and Worrell, so I can't necessarily
13     speak to those, but the Government's position is that Your
14     Honor is limited to the plain language of the statute.
15              THE COURT:  All right.  It seems odd to me that a
16     court would never have the authority to review the
17     justification for someone to be locked up.  It just doesn't
18     sit well with me.  I understand your position, and the
19     statute says what it says and the cases have been generally
20     accepting that assumption, though it seems to me that there
21     -- I know, certainly, during the pandemic, I got bond review
22     motion after bond review motion after bond review motion and
23     I'm not sure every one put it under 3142(f).
24              But the next question is, if you assume that the
25     test does apply and we have to satisfy that showing to

1    Warren fan, but his mindset's changed to the point where he
2    had to get out of that unit that he was in.  I don't know if
3    the Court saw this, and I was trying to link an article that
4    I read two weeks ago and I couldn't find it, but there was
5    an article that was written.  I think it was written by
6    Spencer Hsu of the Washington Post -- I'm not sure -- H-S-U
7    -- who described what I've known for months, is that that
8    unit at CTF is radicalizing the people who are there.  And
9    I'm not trying to be overly dramatic, but literally there
10   are people there on their tablets looking at podcasts by the
11   folks one would suspect one would follow if you have that
12   mentality.  And the fact -- I think the Court may have --
13   may know this, but every night at 9:00 o'clock, the Court --
14   the folks there stand up and sing the Star-Spangled Banner.
15   I don't know if the Court's heard that before, but that's
16   what happens --
17            THE COURT:  I heard it in the news.  I hadn't
18   heard it from anybody with personal knowledge.
19            MR. BRENNWALD:  I -- you can -- I have personal
20   knowledge.  I was on the phone with Mr. Sibick a month ago
21   and we talked and, literally in the middle -- a minute -- in
22   the middle of our talk, he said to me, I have to put the
23   phone down.  I'll be right back.  They'll be angry if I
24   don't go over there.  Literally.  It's, like, this herd
25   mentality.  So he put the phone down, and I can hear them

1     all singing and they're shouting, most of them off key, but
2     they're literally singing the song.  It was almost cult-like
3     or, maybe, it was cult-like.  It was pretty scary, frankly.
4     And then he came back and then we got back to our discussion
5     and, you know, he was -- he's trying to get along.  He's
6     going along to get along.  His biggest fear is, If I don't
7     get out, how -- what do I do?  Because he's in the hole.  He
8     doesn't want to go back up there.  He shouldn't have to be
9     in the hole because he's trying to avoid a radical unit.
10                But my point is -- as far as this Court's analysis
11    is, he's not the same person who was there on January 6th
12    deluded by claims of stolen elections and doing whatever,
13    you know, angry, shouting, and in a manic phase.  I mean,
14    he's just not that person anymore.  And so the question is,
15    does that make him less dangerous?  And I get that it's not
16    something that we can analyze scientifically.  Mental health
17    -- I mean, mental health is not just some vapor and smoke
18    floating in the air.  It is actually a chemical process, but
19    it's not like a broken bone where you can look at an MRI and
20    see it.  So people have a hard time accepting medication's
21    changes on a person's mind, but he's definitely a different
22    person, and that to me tells me -- that combined with the
23    political distancing he's trying to achieve by getting out
24    of there -- literally getting out of there -- I mean,
25    getting out --

1      trying to just live his life and do the best he can.
2                  THE COURT:  Okay.  Thank you, Mr. Brennwald.
3                  The Court of Appeals upheld the trial court's
4      original application of the 3142 factors, and I think
5      everyone needs to understand that I'm not ruling that either
6      the Chief Judge or the Court of Appeals erred in any way.
7      His detention to date was not, as has been asserted
8      publicly, a disgrace to our country.  The alleged attack on
9      Officer Fanone, who was performing his sworn duty as a law
10     enforcement officer guarding the citadel of our democracy,
11     was.  But I find that the record before me now includes
12     information that was not known to the movant at the time of
13     the hearing and that does have a material bearing on the
14     issue that I have to decide and that every judge has to
15     think about every day which is whether there are conditions
16     of release that will reasonably assure the appearance of the
17     person as required and the safety of any other person and
18     the community.  So I'm going to grant the motion.  There
19     will be conditions.
20                 Not everything the defense has presented is
21     entirely new.  One fact is that he turned himself in the
22     second time after Judge Howell's order.  She obviously
23     didn't know that at the time she issued her order, but that
24     is the minimal expectation.  And while I do understand from
25     defense counsel that the letters from the community could