## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.

ROBERT GIESWEIN,

             Defendant.

Crim. Action No. 21-24 (EGS)

## MR. GIESWEIN'S MOTION TO DISMISS INDICTMENT
## FOR VIOLATION OF HIS RIGHT TO A SPEEDY TRIAL

Robert Gieswein, through undersigned counsel, hereby respectfully requests that the Court dismiss the Indictment for violation of his Constitutional rights to a speedy trial.

### FACTUAL & PROCEDURAL BACKGROUND

Mr. Gieswein has been in continuous custody since January 18, 2021, the date that he surrendered to authorities in Colorado upon learning of a warrant for his arrest.[1] Nine days later, on January 27, and before his initial proceedings in Colorado had even concluded, the grand jury returned an indictment. Rule 5 Documents, ECF No. 5 at 19-22 (Docket in U.S. Dist. Colorado Case No. 1:21-mj-00010-STV). The Indictment charges Mr. Gieswein with one count of obstruction of an official proceeding, three counts of assault with a dangerous weapon, one count of destruction

---

[1] Federal agents executed the warrant on January 19. Arrest Warrant Return, ECF No. 5 at 1.

of government property, and one count of entering and remaining in a restricted building or grounds with a deadly or dangerous weapon. Indictment, ECF No. 3.

On January 29, the United States Magistrate Judge presiding in the District of Colorado ordered that Mr. Gieswein remain detained, and committed him to this district. Rule 5 Documents, ECF No. 5 at 18-22.

Two months later, federal authorities finally delivered Mr. Gieswein to the District of Columbia, and he had his initial appearance on March 29. Minute Entry, Mar. 29, 2021. He is being held at the District of Columbia Correctional Treatment Facility ("CTF").

Through at least April of 2020, he was only allowed outside of his cell for an hour a day, due to restrictions in place due to the coronavirus. Although he now has more hours outside of his particular cell than when he first came to the unit, and occasional recreational time outside, conditions remain bleak. As the coronavirus still circulates, he must wear a mask almost all day long, every day. His movements are severely restricted. His family is too far away to visit. There is mold in his unit, and his unit fears retaliation because some detainees' complaints appear to have led to a U.S. Marshals Service inspection and damning report about conditions at Central Detention Facility. Further, it is very difficult for Mr. Gieswein to review the voluminous discovery in his case, and he has not been able to earn any income to help support his family while detained.

## ARGUMENT

I.   **Mr. Gieswein has consistently objected to excluding time under the Speedy Trial Act, and delays in bringing him to trial.**

That voluminous discovery described above is at the heart of delays in bringing Mr. Gieswein to trial. Over Mr. Gieswein's consistent objection, the government has sought and been granted orders tolling the Speedy Trial Act, 18 U.S.C. § 3161. At each juncture, the government has asserted that it would be impossible for it to comply with its discovery obligations within the seventy days the Speedy Trial Act allows to pass before trial in the ordinary case, due to the number of witnesses and especially cameras from which it was collecting discovery, which included hundreds of cameras and camera phones owned by civilian defendants and witnesses. The government also relied on the fact that, until recently, few if any defense counsel were likely to have a platform in which they could realistically store and review everything the government planned to produce.

Mr. Gieswein has consistently objected to delaying his trial, arguing that many of these challenges were magnified by the government's own decisions. These included the decision to charge as many people after January 6 as quickly as it has, the particular charges it has levied, its refusal to consider deferred dispositions and more favorable plea offers, etc. Mr. Gieswein has also objected that the government's decisions in this unprecedented case came with unprecedented obligations that it was not entitled to skirt, and that those obligations were at their height in cases in which the defendant was detained pretrial. Its decisions imposed upon the government the obligation to creatively find ways to speedily produce discovery, and to speedily

3

ensure that it would be actually reviewable by defense counsel, and defendants, even those that are detained. In other words, Mr. Gieswein has never wavered in insisting that he is entitled to both a speedy trial, and discovery due to him under the Constitution and rules.[2] However, the Court has tolled the running of the Speedy Trial Act each time the government has asked that it do so, over Mr. Gieswein's objections. Usually, the Court has cited agreement with the government that this case is complex, particularly because discovery is voluminous, and the ends of justice justify continuing the case to allow the government to comply with its discovery obligations. *See, e.g.*, August 12, 2021 Hr'g Tr., ECF No. 37, at 32-34. The Court has also suggested that delays are necessary to ensure the defense adequate time to prepare. *Id.* at 34-37 (concluding that an "ends of justice" continuance was warranted under the Speedy Trial Act).[3]

---

[2] *See* March 29, 2021 Minute Entry ("Defense objects to exclusion of time."); Opp. to Gov't Mot. to Exclude Time Under Speedy Trial Act, ECF No. 15; July 29, 2021 Minute Entry ("Defendant Objects to Tolling off Speedy Trial Time"); ECF. No. 30 (Opp. to Gov't July 29 Oral Mot. to Exclude Time Under Speedy Trial Act, ECF No. 30; Oct. 19, 2021 Minute Entry (noting that Court would toll Speedy Trial Act over the defendant's objection). On information and belief, undersigned counsel also objected to any further tolling at the status conference held on November 16.

[3] The Court has also sometimes noted concerns about convening trial during the COVID-19 pandemic. *Id.* at 35; *see also* Nov. 16, 2021 Minute Entry ("The Court Adopts the Chief Judge's Standing Order When It Comes to the Tolling of Speedy Trial Time"). However, the Court has not made findings that the case could not proceed consistent with the safety protocols in place at the Courthouse, a prerequisite for continuing trials pursuant to the Chief Judge's Standing Order relating to trials during the pandemic.

The current standing order states provides that "the Court now finds that *for those cases that cannot be tried consistent with those health and safety protocols* [detailed previously in the order]," the time from March 17, 2020 to December 15,

## II.   The Court's order that trial will not take place before February of 2022 violates Mr. Gieswein's Constitutional right to a speedy trial.

Trial is now set for February of 2022, well outside of the seventy days the Speedy Trial Act contemplates passing from indictment to trial, absent tolling (even taking into consideration periods during which defense motions were pending), and well outside of any reasonable time frame permitted under the Constitution. The Sixth Amendment guarantees the accused a speedy trial. In order to determine whether a defendant's Sixth Amendment right to a speedy trial has been violated, the Court must consider four factors: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker v. Wingo,* 407 U.S. 514, 531 (1972). "No single factor is necessary or sufficient to find a deprivation of the right to a speedy trial because the factors are related and must be considered together." *United States v. Bikundi*, 926 F.3d 761, 779 (D.C. Cir. 2019).

"To trigger the speedy trial analysis, the length of delay between accusation and trial must "'cross[ ] the threshold dividing ordinary from 'presumptively prejudicial' delay.'" *Id.* (quoting *Doggett v. United States*, 505 U.S. 647, 651–52 (1992)). "Generally, a delay of one year is presumptively prejudicial." *Id.*

Here, the fact that trial will not be before February of 2022 triggers that presumption, and the *Barker* factors weigh in favor of dismissal. Over a year will

---

2021 "is excluded under the Speedy Trial Act as the ends of justice served by the continuances to protect public health and safety and fair trial rights of a defendant outweigh the best interest of the public and any defendant's right to a speedy trial, pursuant to 18 U.S.C. § 3161(h)(7)." Standing Order No. 21-62 (BAH) (filed Nov. 1, 2021) (emphasis added).

have passed between his arrest and trial on relatively simple charges, and Mr. Gieswein has consistently insisted on his rights to a speedy trial. *See id.* ("The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right."). Further, as already discussed, although the government has had to wade through an inordinate amount of discovery, it only had to do that because of how many people it charged, and how much data it decided to collect. Moreover, having made its charging decisions, the government, which has vast resources, was obligated to devote whatever resources were needed to ensure that all defendants were provided with discovery promptly, and in a way that ensured they would be able to prepare for trial. The government has represented that it has put significant effort toward this project, and Mr. Gieswein does not doubt that. But it has plainly not done enough, as, as Mr. Gieswein has only recently begun receiving the largest tranches of discovery (with more to come), and as the government still has not ensured a way for detained defendants to review this discovery, as reflected in the last discovery update. *See* Status Report Regarding Discovery, ECF No. 54. As the Supreme Court has said, deliberate attempts to delay trial weigh most heavily in an analysis of whether a defendant's right to a speedy trial has been violated, but even a "neutral reason such as negligence or overcrowded courts should . . . be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Bikundi*, 926 F.3d at 532.

Finally, Mr. Gieswein has been prejudiced by the delay. The Supreme Court has stated that "[p]rejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect," and "identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Id.* at 532.

> We have discussed previously the societal disadvantages of lengthy pretrial incarceration, but obviously the disadvantages for the accused who cannot obtain his release are even more serious. The time spent in jail awaiting trial has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness. Most jails offer little or no recreational or rehabilitative programs. The time spent in jail is simply dead time. Moreover, if a defendant is locked up, he is hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense. Imposing those consequences on anyone who has not yet been convicted is serious.

*Id.* at 532-33. This captures Mr. Gieswein's situation well, except that the Supreme Court's description of the disadvantages of jail is mild, and leaves out the fact that jails are just awful places to be, particularly jails like the one Mr. Gieswein is in, and especially during a pandemic: Mr. Gieswein has no privacy, spends most of every day confined to a tiny room that is in a unit with a mold problem, eats notoriously bad food, must wear a mask almost all of every day. Moreover, Mr. Gieswein has worked consistently since he was 14 years old.[4] But as a result of his incarceration, he has

---

[4] *See* Exhibit 1 to Motion for Revocation of Order of Detention (Letters of Support), ECF No. 18-4 at 1.

been unemployed for almost a year. This means that he is not able to support his mother, who is not able to work at the moment because she is caring for Mr. Gieswein's younger sister, who is suffering from an autoimmune disease.[5] Further, he has only limited access to discovery, which is indeed voluminous, and difficult to review on a small laptop (all that is provided by the jail). All of this adds to just the sort of anxiety that the Supreme Court requires district courts to consider in *Barker*.

## CONCLUSION

Accordingly, for all of the reasons Mr. Gieswein has previously given for objecting to this delay, and those given herein, he respectfully requests that the Court dismiss the Indictment, pursuant to Rule 12(b)(3) of the Rules of Criminal Procedure.

Respectfully submitted on December 1, 2021.

**ROBERT GIESWEIN**
by counsel:

Geremy C. Kamens
Federal Public Defender for the
Eastern District of Virginia

by:_____s/_____
Ann Mason Rigby
DC Bar No. 491902

Elizabeth A. Mullin
DC Bar No. 484020

Assistant Federal Public Defenders
1650 King Street, Suite 500
Alexandria, Virginia 22314
Telephone: (703) 600-0800

---

[5] *See* Exhibit 4 to Motion to Reopen Detention Hr'g (Letter from Mr. Gieswein), ECF No. 57-4.

Facsimile: (703) 600-0880
ann_rigby@fd.org
elizabeth_mullin@fd.org