**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ROBERT GIESWEIN,<br><br>       Defendant. | Crim. Action No. 21-24 (EGS) |

**MR. GIESWEIN'S MOTION TO DISMISS ASSAULT CHARGES,**
**OR FOR A BILL OF PARTICULARS AND DISCOVERY RELATING TO**
**GRAND JURY PROCEEDINGS REGARDING THESE CHARGES**

Robert Gieswein, through undersigned counsel, and pursuant to Rule 12(b)(3)(B)(iii) of the Federal Rules of Criminal Procedure, respectfully requests that this Court dismiss Counts Two through Four of the indictment against him, each of which charge violations of 18 U.S.C. §111(a)(1) and (b). Each count uses the exact same language, and alleges that,

> [o]n or about January 6, 2021, within the District of Columbia, ROBERT GIESWEIN, using a deadly or dangerous weapon, that is, an aerosol irritant spray and baseball bat, did forcibly assault, resist, oppose, impede, intimidate, and interfere with, an officer and employee of the United States, and of any branch of the United States Government (including any member of the uniformed services), that is, officers from the United States Capitol police, while such officers and employees were engaged in and on account of the performance of official duties.

These three counts lack the specificity required by the Constitution and Rule 7(c)(1). Specifically, they fail to state the following: 1) the time and location of the

alleged assaults; 2) the identity of the law enforcement officers allegedly assaulted; and 3) the manner in which the bat was allegedly used. Without these specifics, the counts are fatally flawed and must be dismissed.

If the Court denies the request for dismissal, Mr. Gieswein requests, in the alternative, that the Court (a) order the government to provide him with a bill of particulars, pursuant to Rule 7(f), and (b) order the government to provide him with discovery of the grand jury proceedings relating to Counts Two through Four, pursuant to Rule 6(e)(3)(E)(ii).

## THE COURT SHOULD DISMISS COUNTS TWO THROUGH FOUR

### I. The Court should dismiss an indictment that fails to specify any of the essential elements of the offense.

A defendant may move to dismiss an indictment for, *inter alia*, lack of specificity or failure to state an offense. *See* Fed. R. Crim. P. 12(b)(3)(B). In considering a Rule 12 motion to dismiss, "the Court is bound to accept the facts stated in the indictment as true." *United States v. Syring*, 522 F. Supp. 2d 125, 128 (D.D.C. 2007); *United States v. Sampson*, 371 U.S. 75, 78 (1962). Accordingly, "the Court cannot consider facts beyond the four corners of the indictment." *United States v. Ring*, 628 F. Supp. 2d 195, 204 (D.D.C. 2009) (internal quotations omitted).

The criminal indictment is required by the Fifth Amendment of the Constitution. U.S. Const. amend. V. ("No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger.") As such, the protections it affords

individuals should be regarded as highly as other Fifth Amendment safeguards, namely the protections against double jeopardy and self-incrimination and the right to due process, with which the indictment works in tandem to protect the accused. *Id.* ("[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without the due process of law"). The purposes of the criminal indictment also echo in the rights afforded by the Sixth Amendment, particularly the right to be informed of pending charges. U.S. Const. amend. VI, cl. 4. ("In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation . . ."). "Any discussion of the purpose served by a grand jury indictment in the administration of federal criminal law must begin with" these Constitutional requirements in mind. *Russell v. United States*, 369 U.S. 749, 760 (1962).

To satisfy the constitutional requirements, "an indictment must 'inform the defendant of the precise offense of which he is accused so that he may prepare his defense and plead double jeopardy in any further prosecution for the same offense.'" *United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018) (quoting *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014), and citing *United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007)). "Federal Rule of Criminal Procedure 7(c) effectuates that understanding, requiring an indictment to contain a plain, concise, and definite written statement of the essential facts constituting the offense charged." *Williamson,* 903 F.3d at 130.

An indictment must "sufficiently apprise[] the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offence, . . . the record [must] show[] with accuracy to what extent he may plead a former acquittal or conviction." *Hager v. United States*, 285 U.S. 427, 431, 52 S. Ct. 417, 419 (1932) (quoting *Cochran* and *Sayre v. United States*, 157 U.S. 286, 290); *Rosen v. United States*, 161 U.S. 29, 34)); *Russell*, 369 U.S. at 763-764 (same);; "A vague, general and indefinite description of the alleged crime is insufficient. The averments must be such as clearly to designate, not only the particular kind of offense, but the specific criminal act for which the accused is to answer." *United States v. United States Sav. & Loan League*, 9 F.R.D. 450 (D.D.C. 1949).

Although the Court of Appeals for the Circuit of the District of Columbia has ruled that "it is generally sufficient that an indictment set forth the offense in the words of the statute itself," that is the case only "as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." *Williamson*, 903 F.3d at 130 (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)).

What is a sufficient description of a crime for purposes of permitting an adequate defense necessarily varies with the nature of the offense and the peculiarities of defending against the kind of charge involved. *United States v. Tomasetti*, 429 F.2d 978, 979 (1st Cir. 1970). And where "guilt depends . . . crucially upon . . . a specific identification of fact," the Supreme Court has held that "an indictment must do more than simply repeat the language of the criminal statute."

4

*Russell*, 369 U.S. at 764. A valid indictment must include details that, at a minimum, capture the very core of the alleged offense and demonstrate the criminality of the alleged conduct. *Id.* (finding indictment insufficient for failing to specify the "core of criminality" insofar as it alleged the time and place of specific hearings, questions defendant refused to answer, but did state how those questions were pertinent to the subject of the inquiry); *see also United States v. Nance,* 533 F.2d 699, 700 (D.C. Cir. 1976) (holding indictment charging several counts alleging multiple instances of the defendant obtaining something of value by false pretenses lacked sufficient particularity because it failed to sufficiently allege the "very core of the offense," namely "the false representation which induced the victims to part with their money," even though the indictment did allege "[t]he name of the victim, the date of the false representation, the amount involved and the date the was sum paid"). Finally, where more than one offense of the same type is charged, there must be sufficient information in the indictment to differentiate between them. "That is, while generalized pleading might well be permissible when the charged conduct is otherwise clear on the indictment's face and/or where there is only one act or count at issue, 'if prosecutors seek multiple charges against a defendant, they must link those multiple charges to multiple identifiable offenses[.]'" *United States v. Hillie*, 227 F. Supp. 3d 57, 79 (D.D.C., 2017) (quoting *Valentine v. Konteh*, 395 F3d. 626, 636 (6th Cir. 2005)).

**II.    This indictment lacks the specificity the Constitution and Rules require.**

As already noted, Counts Two through Four each charge a violation of 18 U.S.C. § 111(a)(1) & (b). In *United States v. Arrington*, the Court of Appeals for the District of Columbia Circuit held that proof of such a charge requires proof that the defendant: (1) forcibly; (2) assaulted, resisted, opposed, impeded, intimidated, or interfered with; (3) a designated federal officer; (4) while that officer was engaged in or on account of the performance of official duties; (5) with intent to do those acts; and (6) used a deadly or dangerous weapon; (7) in the commission of any of the acts listed; (8) intentionally. *Arrington,* 309 F.3d 40, 44 (D.C. Cir. 2002) (citing *United States v. Kleinbart*, 27 F.3d 586, 592 (D.C. Cir. 1994) (quoting *United States v. Feola*, 420 U.S. 671, 686 (1975)).[1]

Here, Counts Two through Four do not provide Mr. Gieswein with notice of the specific allegations underlying all of elements of assaults. In particular, the indictment lacks information about the time and place of each alleged assault and the victim of each alleged assault. Moreover, the indictment (and the discovery to date) does not shed light on how the bat was used in a manner to qualify as a dangerous weapon. These are the bare minimum facts for an allegation of assault against a law enforcement officer with a dangerous weapon. Indeed, in *United States v. Williamson*, the Court found that an indictment under an analogous statute,

---

[1] "[W]here the acts in violation of [the] section constitute only simple assault," § 111(a) states that the maximum sentence of imprisonment is one year rather than three. Under § 111(b), however, "the use of a deadly or dangerous weapon [is] sufficient ... to boost the crime above the level of 'simple assault.'" *United States v. Duran*, 96 F.3d 1495, 1511 (D.C. Cir. 1996), *quoted in Arrington*, 309 F. 3d at 43 n.3.

charging threats against a federal law enforcement officer, was sufficient because it not only "parrot[ed] the statutory language," but it also "specif[ied]  the time and place of the offense and the identity of the threatened officer[.]" 903 F.3d 124, 130-31 (D.C. Cir. 2018).

Whereas the indictment in *Williamson* thereby "adequately informed [the defendant] about the charge against him so that he could prepare his defense and protect his double-jeopardy rights," *id.* the indictment against Mr. Gieswein does not.

A.     *This deficiency violates Mr. Gieswein's Sixth Amendment rights because it does not provide him with adequate notice of the charges against him, or the ability to prepare a defense to the charges.*

As the Court knows well, the events at the United States Capitol underlying all of the charges against Mr. Gieswein and hundreds of others took place over many hours on January 6, and in many locations in and around the United States Capitol. Mr. Gieswein cannot tell from the face of the indictment where and when he is alleged to have assaulted officers, which officers he is alleged to have assaulted, or even how many officers he is alleged to have assaulted.

These are not minor details: they go to the essential elements of the charges against Mr. Gieswein. *Arrington*, 309 F.3d at 44; *Williamson*, 903 F.3d 124, 130-31 (finding indictment sufficient because it alleged time, place, and victim of threats to law enforcement officer). In particular, the failure of the government to identify the officers Mr. Gieswein has allegedly assaulted go to the core of the criminality, just as the failure to identify the matter under inquiry did in *Russell*, 369 U.S. at 764, and failure of the government to identify the alleged "false pretenses" did in *Nance*, 533 F.2d at 700.

From the face of the indictment, Mr. Gieswein cannot investigate whether he may have a defense that there was not actually any forceful conduct directed toward any of the alleged victims; he cannot determine whether he may have a defense that anything he did in relation to an alleged victim was inadvertent, rather than knowing and deliberate; he cannot determine whether there is evidence that any of the alleged victims the government will rely on at trial were not actually federal law enforcement officers; and he cannot investigate whether any such officers were acting outside of their lawful authority in a way that might provide him a defense.

Further, "[t]his lack of particularity or specificity regarding [Mr. Gieswein's] actions also makes it impossible to discern—and therefore to distinguish between— the conduct underlying each separate count." *United States v. Hillie*, 227 F. Supp. 3d 57, 72 (D.D.C. 2017) (dismissing indictment that charged several instances of child-pornography-production offenses and failed to provide relevant conduct to distinguish among them). Indeed, as in *Hillie,* "it is not at all clear that these counts even reference *different* acts on the Defendant's part." *Id.* These "undifferentiated charges" "impermissibly frustrat[e]" Mr. Gieswein's ability to mount a defense. *Id.* at 76 (citing *Valentine*, 395 F.3d at 633 ("As the forty criminal counts were not anchored to forty distinguishable criminal offenses, [the defendant] had little ability to defend himself.")).

Under these circumstances, the lack of specificity in the indictment violates Mr. Gieswein's 6th Amendment right to be informed of the nature and cause of the accusation against him. *See* U.S. Const. Amend. 6.

B.      *This deficiency violates Mr. Gieswein's Fifth Amendment right to indictment only upon presentation of probable cause to a grand jury.*

"[T]he Fifth Amendment grand jury right serves a vital function in providing for a body of citizens that acts as a check on prosecutorial power." *United States v. Cotton*, 535 U.S. 625, 634 (2002). The requirement that an indictment provide notice of the charges against a defendant protects not only his individual right to notice, but also his ability to ensure that his right not to be held to answer for crimes the grand jury has not identified. "Little may be left open to construction or interpretation of an indictment after the grand jury returns its charge, because if the offense is not plainly stated and is made so only by a process of interpretation, there is no assurance that the Grand Jury would have charged such an offense." *Hillie*, 227 F. Supp. 3d at 77 (quoting *Van Liew v. United States*, 321 F.2d 664, 669 (5th Cir. 1963)) (internal quotations omitted). "And where there is ambiguity, the principal harm suffered by the [defendant] because of the lack of precision in the indictment results from his inability to discern the specific underlying offense, if any, that the grand jury had in mind when it returned the indictment." *Id.* (quoting *United States v. Thomas*, 444 F.2d 919, 922 (D.C. Cir. 1971)) (internal quotations omitted).

Here, the indictment offers no assurance that Mr. Gieswein is being "held to answer" for offenses found by a grand jury. The government may perhaps proffer that the grand jury was considering certain incidents and individuals when it charged Mr. Gieswein with assaulting one or more federal officers in Count Two, and others when

it charged Mr. Gieswein as it did in Counts Three, and Four.[2] But there is nothing on the face of the indictment providing that assurance. As a result, at best, the government can *guess* at what the grand jury had in mind when it voted to indict Mr. Gieswein as charged, but it "cannot *know* the actual tenor of their deliberations or decisions." *Id.* (quoting *Gaither v. United States*, 413 F.2d 1061, 1070-71 (D.C. Cir. 1969) (emphasis added). Thus, no one can have "the requisite degree of certainty" that whatever theories the government intends to prove at trial are the same as those adopted by the grand jury. *See id.* at 77-78; *see also United States v. Pirro*, 212 F.3d 86, 92 (2d Cir. 2000) ("The Indictment Clause of the Fifth Amendment requires that an indictment contain some amount of factual particularity to ensure that the prosecution will not fill in elements of its case with facts other than those considered by the grand jury.") (quotation marks and citation omitted)); *Russell*, 369 U.S. at 770 (same).

Thus, the indictment fails to satisfy the Fifth Amendment's requirement that a person only be tried for felonies found by grand juries.

C.     *The charges do not sufficiently protect Mr. Gieswein's Fifth Amendment right not to be subjected to double jeopardy.*

The lack of specificity in Counts Two through Four will make it impossible for Mr. Gieswein to protect himself against double jeopardy in both this case and the future. "The Double Jeopardy Clause, of course, affords a defendant three basic

_____

[2] For reasons discussed below, in Section II.D of this discussion, a November 15 discussion with counsel for the government gave undersigned counsel reason to doubt that the government can do so.

protections: [it] protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *Hillie*, 227 F. Supp. 3d at 78 (quoting *Ohio v. Johnson*, 467 U.S. 493, 497-98 (1984) (internal quotation marks and citations omitted)).

Because the multiple charges of assault here are identically worded, they "fail to satisfy" the essential function of ensuring that Mr. Gieswein will not be convicted more than once on the basis of the same proof at trial. *Valentine*, 395 F.3d at 635 (dismissing indictment of 20 identical counts of alleged child rape); *Hillie,* 227 F. Supp. 3d at 78 (dismissing indictment alleging multiple nearly-identical and overlapping counts of production of child pornography). For example, there is risk that the jury in Mr. Gieswein's present case could convict him of three assaults based on the same evidence, of an interaction with just one law enforcement officer, concluding the evidence showed an "assault," as well as "resisting," as well as "impeding;" or, a jury could convict on three counts without each juror agreeing on which act formed the basis of the conviction, or which officer is alleged to be the victim. *See Hillie*, 227 F. Supp. 3d at 79 (noting concern that "vagueness with respect to each count could result in a unanimous consensus among the jurors regarding Hillie's guilt with respect to a particular count, but a lack of unanimity regarding the offensive conduct that is the basis for each juror's vote"); *see Valentine*, 395 F.3d at 636 (noting that vague charged offenses can result in a defendant being "convicted . . . without jury unanimity as to the underlying factual offenses" in violation of due

process rights). As the court in *Hillie* stated, "if a criminal indictment is going to be drafted to provide adequate notice, to preserve the role of the grand jury, and to avoid the risk of double jeopardy . . .then 'the defendant, the judge, and the jury must be able to tell one count from another.'" *Id.* (quoting *Valentine*, 395 F.3d at 637). Because the present indictment fails this test, it is insufficient.

Second, if, after this trial, Mr. Gieswein were charged with assault of a law enforcement officer on January 6 in the future, the future court would have no way to tell from the present indictment whether new charges violated the Double Jeopardy Clause of the Fifth Amendment. Thus, though generalized pleading may sometimes be acceptable, "'if prosecutors seek multiple charges against a defendant, they must link those multiple charges to multiple identifiable offenses[.]'" *Id.* (quoting *Valentine*, 395 F.3d at 636)).

D. *This invalid indictment cannot be cured by government proffers, disclosure of evidence, or a bill of particulars.*

These failures cannot be cured by proffers from the government, disclosure of evidence, or even a bill of particulars.

In an email to undersigned counsel, the government described the three counts of assault as follows:

> On our call last week, you had asked for clarification as to what acts Counts 1-3 in the indictment correspond to. All three of them correspond to different occasions where your client is alleged to have sprayed a chemical irritant at police officers. Count 1 corresponds to his use of that spray as captured in the video linked to from footnote 1 of the complaint. Count 2 corresponds to his use of that spray when inside the Capitol as a set of metal doors was rolling

down. Count three corresponds to his use of that spray directed at Capitol Police inside the Capitol. After the spraying incident, your client is alleged to have knocked a Capitol Police officer down.

The above summary is intended only to direct your attention to the separate incidents and of course does not encapsulate all of your client's conduct surrounding those incidents.

April 19, 2021 Email (Redacted), Exhibit 1.[3]

The government has also provided the defense with videos corresponding to some of these alleged assaults, and witness interviews relating to the third incident described in its correspondence (Count Four).[4] Thus, correspondence with the government and discovery have shed at least some light on the time and place of the assaults alleged in Counts Two through Four, and discovery relating to Count Four has identified one federal law enforcement officer the government will argue was a victim of the assault alleged in Count Four (albeit not by name). The government is considering a request to help the defense identify CCTV cameras near the alleged

_____

[3] Although this discussion refers to Counts One through Three, it clearly meant to refer to the three alleged assaults in Counts Two through Four.

[4] The government provided the Court with a video relating to the first incident underlying the charge (Count Two), as Exhibit 1 at the July 1 hearing on Mr. Gieswein's motion to revoke the detention order. The government's brief opposing revocation of the pretrial detention order included a "screen grab" of the video underlying the second incident described above (Count Three). *See* Gov't Opp. to Def. Mot. for Hr'g & Rev. of Detention Order, ECF No. 19 at 9. There is "not a video" of the third incident described above (Count Four), as the government has noted. *See id.* at 10. However, the Court has been provided with a summary of a witness interview underlying Count Four that was produced in discovery. *See* ECF No. 19-2. And a video showing what the government describes as "part[s] of the aftermath of this incident, including the defendant and Capitol police on the ground, and the defendant fleeing, are captured on Capitol surveillance video" that has been produced in discovery. *See* ECF No. 19 at 10.

assaults, and has agreed to provide the defense with all witness names subject to certain strictures yet to be finalized.

A bill of particulars would presumably provide more information about the theories underlying the assault charges. But neither discovery nor a bill of particulars can suffice to cure the deficiencies in the indictment because "[i]t is a settled rule that [even] a bill of particulars cannot save an *invalid* indictment." *Russell*, 369 U.S. at 770 (emphasis added); *Hillie*, 227 F. Supp. 3d at 81 ("[W]hile a *valid* indictment can be clarified through a bill of particulars, an *invalid* indictment cannot be saved by one."). Here, there is not just confusion about the evidentiary bases for the charges. There is reason to doubt what the grand jury actually found. And, though a bill of particulars may fill in gaps about the elements of an alleged offense that the government intends to prove at trial, "absent any allegation whatsoever in the indictment as to what the [essential elements were in the minds of the grand jurors who indicted], the United States Attorney would have a free hand to insert the vital part of the indictment without reference to the grand jury. The law does not vest [the United States Attorney] with such authority." *Nance*, 533 F.2d at 701 (ruling that false pretenses counts should have been dismissed upon objection that they failed to allege misrepresentations forming core of charge).

Here, as in *Hillie,* because the multiple identical charges call into question what the grand jury actually found, a bill of particulars will not "guarantee that the formal charges brought against the defendant adhere to the facts that the grand jury

considered." *Hillie*, 227 F. Supp. 3d at 81 (citing several cases finding that invalid indictment may not be cured with a bill of particulars).

There is further cause for concern about the proceedings in the grand jury in this case. Specifically, in a discovery request, undersigned counsel asked that the government identify the officers alleged to have been assaulted in Counts Two through Four. In a November 15 telephone conference regarding the status of discovery, counsel for the government responded that he could not yet identify the officer or officers alleged to have been assaulted on January 6, but that he would be able to do so before trial. Although the Assistant United States Attorney now representing the government in this matter did not himself present the charges in the indictment to the grand jury, he has access to whatever took place in the grand jury. Thus, this discussion raises the distinct concern that neither the prosecutors presenting the case, nor the grand jury, identified specific law enforcement officers as alleged victims of the assaults alleged in Counts Two through Four.

Moreover, the evidence that the government has disclosed relating to the assaults alleged in counts two and three does not show spray reaching *anyone*, let alone anyone who appears to be a federal law enforcement officer. And, again, there have been no witness statements produced relating to these counts. If this is what the grand jury relied on in charging Mr. Gieswein with assault of federal law enforcement officers in Counts Two and Three, there is even greater cause for concern – raised by the lack of specificity in the resulting counts – that they did not actually find that there was a forceful assault in each of these incidents, that there was a

particular law enforcement officer victim, and that the alleged victim was acting within the scope of his duties at the time. There is at least cause for concern that the grand jurors were not unanimous on these findings.  No bill of particulars or discovery could cure the Fifth Amendment violation that would result from nevertheless forcing Mr. Gieswein to answer to those charges at trial.

### IN THE ALTERNATIVE, THE COURT SHOULD ORDER A BILL OF PARTICUALRS AND DISCOVERY OF GRAND JURY MATERIALS

**I.   If the court declines to dismiss counts two through four, the Court should order the government to provide a bill of particulars.**

   *A.   A bill of particulars can provide specificity lacking in an otherwise valid indictment.*

   Federal Rule of Criminal Procedure 7(f) provides that the Court may direct the filing of a bill of particulars upon the motion of a defendant. Fed. R. Crim. P. 7(f). The purpose of a bill of particulars is to apprise defendants of the nature of the charges against them so as to ensure that they: (1) understand the charges, (2) can prepare a defense, (3) can avoid prejudicial surprise at trial, and (4) can be protected against retrial for the same offense. *See United States v. Butler*, 822 F.2d 1191, 1193 (D.C. Cir. 1987); *United States v. U.S. Gypsum Co.*, 37 F. Supp. 398, 402 (D.D.C. 1941). When deciding whether a requested bill is warranted, courts should consider the complexity of the crime charged, the clarity of the indictment, and the degree of discovery and other sources of information otherwise available to the defendants.  The determination as to whether a bill of particulars should be provided is within the discretion of the trial court. *Butler*, 822 F.2d at 1194. Unlike civil orders for particulars, criminal orders should be liberally granted. Indeed, Rule 7(f) was amended in 1966 to eliminate the requirement that defendants show cause when

seeking a bill of particulars – for the express purpose of encouraging widespread use.
*See United States v. Barrett*, 153 F. Supp. 3d 522, n.17 (E.D.N.Y. Dec. 23, 2015).

    B.       *Absent dismissal, a bill of particulars is the only way to provide notice to Mr. Gieswein of the alleged victim(s) of the assaults alleged in Counts Two and Three.*

As already noted, counsel for the government described the approximate time and place of the alleged assaults set out in Counts Two and Three.[5] However, that disclosure did not provide notice of what facts the government alleges for all of the essential elements of the charges.[6] In particular, the government's proffer does not identify how many officers Mr. Gieswein allegedly assaulted in those incidents, or the identify such officer or officers, even generally. Further, the videos provided in discovery that appear to correspond to the government's description of its theory for Counts Two and Three do not fill the gaps left by the indictment and government disclosures.[7] This is because they do not show that any spray made contact with or even landed near any particular officer during either of the incidents the government's correspondence described, let alone the identity of any officer who would claim to have been assaulted by the spray. It is impossible to discern from the video associated with Count Two where, if anywhere, the spray landed. The same is

---

[5] *See* Exhibit 1.

[6] Again, proof of the legal violation asserted in Counts Two through Four requires proof that the defendant: (1) forcibly; (2) assaulted, resisted, opposed, impeded, intimidated, or interfered with; (3) a designated federal officer; (4) while that officer was engaged in or on account of the performance of official duties; (5) with intent to do those acts; and (6) used a deadly or dangerous weapon; (7) in the commission of any of the acts listed; (8) intentionally. *Arrington,* 309 F.3d at 44.

[7] *See* ECF No. 19-2; ECF No. 19 at 9.

true for the video relating to Count Three. The government has also not provided the defense with any witness interviews relating to these incidents.

Further, videos relating to these alleged assaults show that many individuals, including multiple officers, are in the vicinity of the individual the government purports to be Mr. Gieswein. Thus, Mr. Gieswein cannot possibly know from the indictment how many alleged victims there were, and whether any alleged victim was, in fact, a federal law enforcement officer, and whether he or she was engaged in official duties, or potentially exceeding his or her authority. Accordingly, any bill of particulars must identify the officer or officers that the government intends to prove that Mr. Gieswein assaulted, as alleged in Counts Two and Three.

C.     *Absent dismissal, a bill of particulars is the only way to provide notice to Mr. Gieswein of the alleged victim(s) of the assault alleged in Count Four.*

Discovery also does not fill the gap with regard to the third alleged assault (Count Four). First, again, the government does not even claim that this alleged assault is captured on video. And although a report of a witness interview provided in discovery does establish that one particular officer claimed to have been sprayed by Mr. Gieswein during the incident that underlies this count, the same report suggests that other officers claimed this as well.[8] Moreover, the video the government has described as showing the "aftermath" of this incident shows that many people

---

[8] The government included a copy of this witness interview as Exhibit 2 to its brief opposing revocation of the pretrial detention order. *See* ECF No. 19-2; *see also* ECF No. 19 at 19 (stating, based on the interview memo, that "[o]*ne of the officers sprayed* by Gieswein said that he was hit in the eyes . . .'") (emphasis added).

were in the vicinity at the time.[9] Finally, the government has, in prior briefing, suggested that it may attempt to prove that more than one officer were sprayed in the incident underlying Count Four.[10]

While it is the government's burden to prove all elements, including those related to the identity of the victims, beyond a reasonable doubt, Mr. Gieswein has the right to mount a defense. And without more information, Mr. Gieswein cannot tell whether he will face accusations that he assaulted multiple officers in this incident, and who those officers were, all of which is necessary to investigate the essential elements of the offense charged in Counts Two through Four, evaluate potential defenses, avoid prejudicial surprise at trial, and protect himself against double jeopardy. *See Arrington,* 309 F.3d at 44 (noting elements). *See Williamson*, 903 F.3d at 130–31 (finding charge of threatening a federal officer was sufficient where it "specif[ied] the time and place of the offense and the identity of the threatened officer"). Accordingly, the Court should order a bill of particulars regarding Counts Two through Four.

D.      *U.S. District Judge Mehta recently ordered the government to provide a bill of particulars relating to a January 6 assault count.*

Recently, U.S. District Judge Mehta ordered the government to produce a bill of particulars to apprise a defendant of which officer he was alleged to have assaulted in a single count of assault arising from the events at the Capitol on January 6. *See* Order, *United States v. James*, 21-CR-28 at ECF No. 415 (filed Sept. 14, 2021). Judge

---

[9] *See* ECF No. 19 at 10.

[10] *See* text accompanying note 3.

Mehta wrote that "because these allegations refer to a number of officers and detail a number of actions that could constitute assault, [the defendant] must be apprised of which actions he allegedly took against which officer or officers constitute assault."[11] Further, Judge Mehta rejected the argument that the indictment need not provide the names of the alleged victims, reasoning that the cases the government relied on for this proposition "do not consider a situation in which there were numerous unidentified potential victims." *Id.* (internal citations omitted).

A bill of particulars like that ordered by Judge Mehta in *James* is the bare minimum needed here to enable Mr. Gieswein to prepare for trial, to prevent surprise, and to assert a defense of double jeopardy should he be prosecuted a second time for assault arising from the events of January 6.

E.   *A bill of particulars is also needed to identify the item that the government alleges was used as a dangerous weapon in Counts Two through Four and Count Six.*

As already noted, if, as is true here, the indictment adds the dangerous weapon enhancement of § 111(b), the government must also prove that: (1) use of a dangerous weapon; (2) in commission of one of the acts listed in § 111(a); and (3) that use of the weapon was intentional. *Arrington*, 309 F.3d at 44. And if the object allegedly used

---

[11] In *James*, the defendant is only charged with one count of assault. That may be why he "conceded that a bill of particulars identifying the officer that James is alleged to have assaulted would nullify his motion to dismiss." Order, *United States v. James, supra,* ECF No. 415 at 7. Here, of course, Mr. Gieswein does not concede that a bill of particulars would nullify his motion to dismiss, in part because he is charged with multiple counts of assault. As discussed at length above, the fact that Mr. Gieswein faces three identical counts of assault that lack specificity raise concerns about the grand jury and double jeopardy that cannot be cured by a bill of particulars.

as a "dangerous weapon" is not inherently deadly, "the following additional element is required: (4) the object must be capable of causing serious bodily injury or death to another person and the defendant must use it in that manner." *Id.* Here, Counts Two through Four allege that Mr. Gieswein used, and Count Six alleges that he "used and carried" "a deadly and dangerous weapon, that is, an aerosol irritant spray *and baseball bat.*" Indictment, ECF No. 3 (emphasis added).

While discovery does reflect moments at which the person the government alleges to be Mr. Gieswein is carrying an item resembling a baseball bat, it has not yet disclosed any *use* of that bat by Mr. Gieswein. Further, the government's briefing relating to detention did not include any allegation that Mr. Gieswein used the bat, and the government's own description of its charges includes no reference to using the bat. *See* Exhibit 1 (noting that the three assault charges "correspond to different occasions where your client is alleged to have sprayed a chemical irritant at police officers").

Accordingly, notwithstanding discovery and discussions with the government, the defense has no information about how the government claims Mr. Gieswein "used" the bat in a manner that made it "capable of causing serious bodily injury or death to another person." Still, the indictment claims that he did, and the government asserted that its description of the bases for Counts Two through Four "of course does not encapsulate all of your client's conduct surrounding those incidents." *Id.* As such, Mr. Gieswein must prepare to defend himself against the charge that he used this bat as a dangerous weapon.

To ensure that Mr. Gieswein can prepare his defense, to prevent prejudicial surprise at trial, and to protect him retrial for the same offense, Mr. Gieswein respectfully requests that the Court's order for a bill of particulars require the government to provide the time and place that he is alleged to have used the bat as a dangerous weapon, and the alleged victim of those incidents of assault, and the manner in which he allegedly used the bat as a dangerous weapon. He also requests that similar information be provided about his alleged carrying of the bat and spray in relation to Count Six.

## II.  If the Court denies the motion to dismiss, the Court should also order the government to produce transcripts of the grand jury proceedings underlying Counts Two through Four.

### A.  *The Court may order disclosure of grand jury material if the defense shows is a particularized need.*

"The grand jury is charged with the dual responsibilities of determining whether there is probable cause to believe a crime has been committed and protecting citizens against unfounded criminal prosecutions." *United States v. Stevens*, 771 F. Supp. 2d 556, 566 (D. Md. 2011) (quoting *United States v. Calandra*, 414 U.S. 338, 343 (1974)) (internal quotations and brackets omitted). "In this way, the grand jury serves as the protector of citizens against arbitrary and oppressive government action." *Id.* (quoting *Calandra* 414 U.S. at 343) (internal quotations omitted). If a prosecutor misstates the applicable law to the grand jury, that can yield "grave doubt that the decision to indict was free from substantial influence of the errors," *United States v. Peralta*, 763 F. Supp. 14, 21 (S.D.N.Y. 1991) (quoting *Bank of Nova Scotia*

*v. United States*, 487 U.S. 250, 256 (1988)) (internal quotations omitted), and provide a basis to dismiss the indictment.

Rule 6(e)(3)(E)(ii) provides that "the court may authorize disclosure . . . of a grand jury matter" "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury[.]" Fed. Rule Crim. P. 6(e)(3)(E)(ii). In *United States v. Stevens*, a District of Maryland court ordered disclosure of excerpts of grand jury material (after reviewing it *ex parte*) where the defense established cause for concern that prosecutors "may have failed to properly instruct the grand jury regarding the advice of counsel defense and may have failed to present critical exculpatory evidence." *Stevens*, 771 F. Supp. 2d at 564 (dismissing counts after finding that the government did erroneously instruct the grand jury, and finding grave doubt that the decision to indict was free from the substantial influence of the erroneous instruction).

B.       *There is a particularized need here for such discovery because there is reason to believe the grand jury may not have been properly instructed on the law.*

The circumstances here show that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury. The combination of lack of specificity in Counts Two through Four, discussions with the government suggesting that the government has yet to identify which individuals Mr. Gieswein is alleged to have assaulted, and discovery to date together raise the distinct impression that, in indicting Mr. Gieswein, the grand jury itself may not have identified particular forceful assaults, or particular individuals who were victims of those assaults. As such, the grand jury also might not have known whether the

alleged victims were federal law enforcement officers, and, accordingly, may not have considered whether those officers were exceeding their lawful authority at the time of the alleged assaults.

These are essential elements of the charges in Counts Two through Four. *See Arrington*, 309 F.3d at 44 (setting out elements of felony assault of federal law enforcement officer). As such, the circumstances raise the specter that the government did not adequately inform the grand jurors on the elements of felony assault of a federal law enforcement officer under Section 111.

Put another way, Mr. Gieswein is not just speculating; there is definite reason to suspect that Mr. Gieswein very well may be under indictment for at least two felony counts of assault of unidentified people, unsupported by video evidence that the alleged "dangerous weapon" in question – a spray – actually came near any particular person, or that any person who was the object of an alleged spray was a federal law enforcement officer engaged in the performance of official duties. Accordingly, there is "particularized need" for disclosure of grand jury materials here. *See United States v. Wilkerson*, 656 F. Supp. 2d 22, 34 (D.D.C. 2009) ("The defendant must "demonstrate[ ] a 'particularized need' or 'compelling necessity' for the [material].") (quoting *Smith v. United States*, 423 U.S. 1303, 1304 (1975)). His need is great, because only discovery of prosecutors' instructions, and other relevant statements to the grand jury can establish that a ground "to dismiss the indictment because of a matter that occurred before the grand jury" exists. Fed. R. Crim. P. 6(e)(3)(E)(ii). On

the other hand, the public's general interest in grand jury secrecy is diminished because the indictment has already issued.

As such, if the Court does not dismiss Counts Two through Four outright because they are invalid on their face, Mr. Gieswein also respectfully requests that this Court order the government to disclose the instructions provided to the grand jury when securing these counts against Mr. Gieswein, as well as transcripts and recordings of the evidence provided to the grand jury about these charges, and the statements the government made to the grand jury about these charges (in addition to ordering that the government produce a bill of particulars).

## CONCLUSION

For all of these reasons, and such others as may be advanced in further briefing on this motion, or at a hearing on this matter, Mr. Gieswein respectfully requests that the Court dismiss Counts Two through Four, or, in the alternative, order the government to (a) produce a bill of particulars regarding Counts Two through Four in the indictment, and (b) disclose the instructions provided to the grand jury when securing the charges in Counts Two through Four, as well as transcripts and recordings of the evidence provided to the grand jury about these charges, and the statements the government made to the grand jury about these charges

Respectfully submitted on December 1, 2021.

**ROBERT GIESWEIN**
by counsel:

Geremy C. Kamens
Federal Public Defender for the
Eastern District of Virginia

by:_____s/_____
Ann Mason Rigby
DC Bar No. 491902

Elizabeth A. Mullin
DC Bar No. 484020

Assistant Federal Public Defenders
1650 King Street, Suite 500
Alexandria, Virginia 22314
Telephone: (703) 600-0800
Facsimile: (703) 600-0880
ann_rigby@fd.org
elizabeth_mullin@fd.org