UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | No. 1:21-cr-24 (EGS) |
| v. | : | |
| | : | |
| | : | |
| **ROBERT GIESWEIN,** | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO REOPEN
DETENTION HEARING**

Robert Gieswein was one of the first rioters to enter the U.S. Capitol on January 6, 2021. He entered after assaulting Capitol Police with an irritant spray, and he then proceeded to assault two other groups of officers with spray inside of the Capitol. The defendant came to the Capitol on January 6th dressed in paramilitary gear, carrying a bat and the irritant spray that he would use to assault officers. On the plaza to the west of the Capitol while riots were ongoing, Gieswein stated to an interviewer words to the effect that he "would die for this." When the interviewer followed up by asking, "what's the solution to this right here, man?," Gieswein replied, "to execute these fascists."[1]

On July 27, 2021, after conducting a thorough detention hearing and considering the parties' written submissions and oral arguments, this Court ordered the defendant detained pending trial pursuant to 18 U.S.C. § 3142, finding that there is clear and convincing evidence that no conditions or combination of conditions of release can assure the safety of the community. The

---

[1] This evidence was not presented at the first detention hearing. The government proffers that it has provided a copy of the video in which the defendant says this to defense counsel and that the government would offer it in evidence if the Court reopens the hearing.

Court supported its ruling with a 54-page memorandum opinion. *See* ECF Nos. 28 & 29. The D.C. Circuit affirmed this Court's detention order on October 19, 2021. *United States v. Gieswein*, U.S.C.A. Case No. 21-3052, Doc. No. 1918704 (Unpublished D.C. Cir. 2021).

On November 18, 2021, the defendant filed a motion seeking to reopen the detention hearing, ECF No. 57, arguing that "widely publicized reports" regarding conditions at the Central Detention Facility—where the defendant is not detained—combined with a letter from the defendant, provide grounds to reopen the detention hearing. *See id.* at 2. The defendant raises no information that was both unknown to him at the time of the original detention litigation before this Court and that would have a material bearing on the detention decision. *See* 18 U.S.C. § 3142(f)(2). The Court should accordingly decline to reopen the detention hearing and should deny the defendant's motion.

## LEGAL AUTHORITY

The Court can reconsider pretrial detention at any time before trial if the judicial officer finds that "information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f)(2); *United States v. Bikundi*, 73 F. Supp. 3d 51, 54 (D.D.C. 2014). In other words, the statute requires that a movant provide information that is both "new" and "material." *See United States v. Lee*, 451 F. Supp. 3d 1, 5 (D.D.C. 2020).[2]

---

[2] The defendant argues that the Court may be permitted to re-open the detention hearing, even if he presents no information that was unknown to him at the original hearing, citing to a recent ruling by Judge Berman Jackson. Mot. at 1-2. Judge Berman Jackson never found that she had the authority to reopen a hearing without new, material information. Indeed, the judge acknowledged, in response to the government stating its position that the plain language required

Previously available information—even if "material"—is not grounds to reopen a detention hearing.  *See Lee*, 451 F. Supp. 3d at 5. And any "new" information is only "material" if it is "essential to, or capable of significantly affecting, the detention decision."  *United States v. Worrell*, 2021 WL 2366934 at *9 (D.D.C. June 9, 2021); *see also Lee*, 451 F. Supp. 3d at 5 (stating that, for purposes of reopening a detention hearing, information has a "material bearing" on detention if it "casts different light on any of [the Bail Reform Act] factors," and citing Black's Law Dictionary (11th ed. 2019), which defines "material" as "[h]aving some logical connection with the consequential facts" or "[o]f such a nature that knowledge of the item would affect a person's decision-making; significant; essential.")).

Under the Bail Reform Act, courts consider the following factors in determining whether some condition, or combination of conditions, will reasonably assure community safety or the defendant's appearance at trial and pre-trial proceedings:  (1) the nature and circumstances of the charged offenses; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release.  18 U.S.C. § 3142(g); *see Bikundi*, 47 F. Supp. 3d at 133; *United States v. Hong Vo*, 978 F. Supp. 2d 41, 43 & n.1 (D.D.C. 2013).

## ARGUMENT

The defendant has not proffered, let alone established, that the vast majority of factual allegations in his motion were unknown to him at the time he initially contested the government's request for his detention.  But even if the Court assumes *arguendo* that all the allegations in the

---

the Court to find that new, material information existed, that the bail "statute says what it says, and the cases have been generally accepting that assumption."  ECF No. 57-1 at 10.

defendant's current motion were unknown to him on July 1, 2021, he has not established that the information he proffers "has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community," as required to reopen the detention hearing. *See* 18 U.S.C. § 3142(f)(2). Finally, even if the Court does decide to reopen the detention hearing, it should deny the defendant's motion on the merits.

The defendant makes, broadly speaking, two main arguments in support of his claim that he should be released from pretrial detention: (1) he claims that the conditions at the Central Treatment Facility (CTF), where he is currently detained, are a danger to him and may subject him to radicalization, mot. at 2-5; and (2) that in light of the conditions at CTF, the conditions the Court rejected in July would be sufficient to ensure community safety. *Id.* at 6-12. He additionally provided a letter to the Court, which he contends "tips the balance completely toward release." *Id.* at 11 & ECF No. 57-4. The defendant offers virtually nothing by way of evidence unknown to him at the original hearing—he had been detained at CTF for over three months as of the July 1, 2021, detention hearing and could have presented evidence or argument about the conditions there and the allegedly radicalizing effect of housing January 6 defendants together, but he chose not to. Even if it were new, none of the information proffered by the defendant is material to the question of whether the defendant's release poses a danger to any person or to the community. *See* 18 U.S.C. § 3142(f)(2); *Worrell*, 2021 WL 2366934 at *9 (D.D.C. June 9, 2021) (information is material only if it is "essential to, or capable of significantly affecting, the detention decision").

I. <u>The defendant's claims about conditions at the Central Treatment Facility are neither new nor material.</u>

The defendant raises several issues related to his detention at CTF that he contends require his release, but none of those issues are new. The defendant has been detained at CTF since March of 2021. If the conditions there were such that they tipped the scale in favor of release under the Bail Reform Act, he could have raised those conditions during his initial detention hearing in July 2021. Even if some conditions at CTF are in fact new, they are not material to this Court's analysis of the Bail Reform Act factors.

The defendant relies on the U.S. Marshals Service (USMS) inspection of the two D.C. Department of Corrections (DOC) facilities, the Central Detention Facility (CDF) and CTF, in arguing that he should be released. *See* Mot. at 2-3. Although both facilities are run by DOC, they are in fact separate facilities. The defendant acknowledges that the letter from Acting U.S. Marshal Lamont Ruffin ("Ruffin Letter"), which is attached to his motion as Exhibit 2, stated that the conditions at CTF "were observed to be largely appropriate and consistent with federal standards," Mot. at 2-3, but rather than proffer any findings regarding allegedly unacceptable conditions at CTF, he asks the Court to speculate that the correctional culture at one facility is the same at the other. *Id.* at 3. The Court should not take the defendant up on that offer. Indeed, as noted in the Ruffin Letter, USMS inspected CTF and—in stark contrast to its findings regarding the conditions at CDF—declined to move any detainees out of CTF, while simultaneously beginning the process of transferring approximately 400 detainees housed at CDF to Pennsylvania.[3] ECF No. 57-3.

---

[3] The government does not intend to minimize the findings in the Ruffin Letter, which are concerning. We raise the letter only to note that regardless of whether it is relevant to inmates detained at CDF, it has no bearing on the defendant, who is not housed at the facility at which those concerning conditions existed.

5

The defendant's citation to concerns expressed by Judge Lamberth is similarly unavailing. The defendant in that case had a need for medical treatment, which this defendant has not proffered he has. Judge Lamberth also expressed a concern for retaliation, given that the case before him had partially led to the inspection and ultimately the Ruffin Letter. Defendant has expressed no such concern here, nor has the defendant proffered that any aspect of his case has led to a fear that DOC would retaliate against him. The fact that some inmates allegedly became sick after guards used some sort of spray in subduing an inmate—even if true—does not materially affect this Court's determination regarding the defendant's dangerousness.[4]

II.     The Politics of Defendant's Blockmates Do Not Require His Release.

The fact that the defendant is housed with other January 6th defendants is neither new nor material. Indeed, in his initial motion to revoke the detention order, which was filed on June 8, 2021, the defendant stated that he was held at CTF, "with other 'January 6th' defendants." ECF No. 18 at 4. He could have presented this Court with the argument he advances here—that the ideological homogeneity of the January 6th defendants with whom the defendant is housed tips the scales in favor of his release—but he chose not to.

Even if the Court construes the ideological makeup of the defendant's blockmates as new information, his argument that he *might* become radicalized is immaterial to the Court's detention analysis. See Mot. at 5 ("Mr. Gieswein does not report feeling pressure [to conform to the January

---

[4] The defendant's reliance on this episode—the use of an irritant spray in an area with detainees housed in separate cells allegedly sickening every inmate on the block—highlights the strength of the government's arguments that the defendant's actions on January 6, which involved spraying a chemical irritant thrice while in close proximity to multiple other people and law enforcement officers, were especially dangerous. It is ironic that the defendant now raises the dangers involved in the use of irritant spray as a reason he should be released, when he minimized those dangers in the original litigation over his detention, at least in relation to other assaults committed on January 6th. See ECF No. 22 at 13.

6 unit] at this point." As then-District Judge Brown-Jackson has noted, the proper Bail Reform Act inquiry is "***not*** the benefits that a defendant's release would bring about (however significant) or the harms that his incarceration would cause (however substantial). Rather, the statute requires the Court to evaluate "***the danger***" that "***would be posed by the person's release***." *United States v. Lee*, 451 F. Supp. 3d 1, 7 (D.D.C. 2020) (emphasis in original). If the defendant is astute enough to realize that it is helpful to be exposed to other viewpoints regarding January 6th, *see* ECF Nos. 57 at 6-7 & 57-4, he is astute enough to realize that he should take any opinions that form in an allegedly politically homogenous situation with a large grain of salt. There is moreover nothing preventing the defendant from speaking to his proposed third-party custodian or anyone he desires from his current location via phone, or from seeking out material at the library that may come from a differing viewpoint. Moreover, the defendant asserts that he has been able to resist becoming radicalized while incarcerated at CTF thus far, and he has proffered no reason for the Court to think he cannot keep up his resistance.

Nothing about the fact that the defendant is housed with other January 6 defendants with allegedly homogenous political beliefs changes the careful analysis the Court underwent. It does not change his charges, which include multiple felonies (at least three of which are crimes of violence), ECF No. 29 at 26, nor does it change the Court's finding that his tactical gear "suggests that he was not just caught up in the frenzy of the crowd, but instead came to Washington, D.C. with the intention of causing mayhem and disrupting the democratic process." *Id.* at 27, citing *United States v. Chrestman*, 2021 WL 765662, at *8 (D.D.C. 2021) (Howell, C.J.). Nothing cited by the defendant affects the Court's conclusion that he acted "deliberately and dangerously" on January 6th, *id.* at 32, nor the Court's conclusion that the nature and circumstances of his offenses "evince a clear disregard for the safety of others, and of law enforcement in particular," *id.* at 48,

nor the conclusion that the defendant's statements "demonstrate a willingness to take matters into his own hands to defend the country against perceived corruption in democratic institutions." *Id.* at 50-51 (internal quotations omitted). That last finding by the Court is only bolstered by the government's evidence that the defendant stated on January 6, as the riot was unfolding, that the solution was "to execute the fascists."

### III. No Risks to Defendant's Health Warrant Release

The Court should not take the defendant's invitation to "consider evidence that Mr. Gieswein could become ill from exposure to mold or other unacceptable conditions at CTF, that he is definitely harmed by having such limited ability to engage with trusted people with a broad set of viewpoints, and that promoting more communication across perspectives will improve public safety." Mot. at 9.

Mr. Gieswein's reliance on cases where defendants were released as a result of the COVID-19 pandemic is unavailing. *See id*. at 7-9. The defendant's potential exposure to mold—while concerning—is eminently manageable by CTF in a way that COVID-19 was not early in the pandemic. Indeed, the defendant acknowledges that USMS took corrective action when the mold was discovered by moving inmates to different cells within the unit. *See* Mot. at 3. As such, to the extent that mold at CTF caused a risk to the defendant's health, based on his proffer it appears that risk has been ameliorated.[5]

Even if the risk to defendant has not, as of filing, been ameliorated, it can be with simple steps. Mold can be eradicated and, in any event, mold exposure is not transmissible to other

---

[5] The defendant claims that "presumably" mold can still reach inmates through the vents, but he offers nothing beyond speculation to support this, and he does not proffer that he has been exposed to mold where he is currently housed. Mot. at 3.

inmates, or to staff who leave the facility and re-enter the community each day, in the same way that COVID-19 is. It was the extreme transmissibility of COVID-19, and the fact that social distancing measures are difficult to implement in an incarceration setting, that caused the judges who granted release on account of the pandemic in the cases cited by the defendant to do so. *See, e.g.*, *United States v. Davis*, 449 F. Supp. 2d 532, 538 (D. Md. 2020) ("[F]or incarcerated individuals who are infected or very sick [with COVID-19], the ability properly to treat them and save their lives is very limited. Testing kits are in short supply, and prisons and jails have limited options for proper respiratory isolation"); *United States v. Jaffee*, 19-cr-88 (RDM), Minute Order dated March 26, 2020 ("The risk of the *spread of the virus* in the jail is palpable") (emphasis added).[6] This is especially so considering that many of the release orders came early in the pandemic, when neither vaccines nor treatment were readily understood or available.

    IV.    <u>The Remedy for any Unacceptable Conditions at CTF is a Civil Suit.</u>

The defendant is essentially asking the Court to release him from jail, when the proper remedy if there is an issue with his conditions of incarceration is a civil suit.[7] *See Preiser v.*

---

[6] The defendant also cited to *United States v. Khan*, No. 11-cr-276-1 (EGS), where this Court granted temporary release to a defendant with a pending motion filed pursuant to 18 U.S.C. § 2255. *See* Mot. at 8. The Court granted the defendant's release in that case without objection from the government. 11-cr-276, Doc. 300. That lack of opposition was based, in part, on that defendant's underlying health conditions and the Attorney General's direction to the Bureau of Prisons to prioritize the transfer of in]mates to home confinement when they have underlying health conditions that place them at higher risk if they contract COVID-19. *See id*., Doc. 297 at 4.

[7] The defendant's motion makes clear that he is not interested in altering his actual conditions of confinement, as he is opposed to his transfer to another jail. *See* Mot. at 10, n.16. If he were, he would be either filing a civil suit or asking this Court for some form of relief from the conditions at CTF. The defendant's argument, if adopted across the board, would essentially foreclose detention in all January 6 cases. If the conditions at CTF are so deplorable that he must be released for his own safety or to prevent his radicalization, and there is no alternative detention location that allows adequate discovery review or discussions with counsel, then so must countless other January 6th defendants who are detained at CTF, whose detention orders (like Mr. Gieswein's) have been upheld by the D.C. Circuit.

*Rodriguez*, 411 U.S. 475, 499 (1973) ("[A] § 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life."); *United States v. Banks*, 422 F. App'x 137, 138 n.1 (3d Cir. 2011) (per curiam) ("We agree with the District Court that a motion filed in his criminal case was not the proper vehicle for raising the claims about prison conditions contained in that motion."); *United States v. Garcia*, 470 F.3d 1001, 1003 (10th Cir. 2006) (noting that, because the defendants' "challenge[s] to the conditions of confinement . . . were raised in motions filed in their respective criminal cases . . . they were properly denied by the district court"). Instead, the proper way to challenge potentially unsanitary or unsafe conditions at the jail is to file a civil suit against DOC or its warden. *See, e.g.*, *United States v. Folse*, Nos. CR 15-2485 JB, CR 15-3883 JB, 2016 WL 3996386, at *15 (D.N.M. June 15, 2016) ("The general rule is that a defendant must file a separate civil action to address his conditions of confinement."); *United States v. Luong*, No. Cr. 99-433 WBS GGH, 2009 WL 2852111, at *1 (E.D. Cal. Sept. 2, 2009) ("As several courts have recognized, the proper procedure to redress a defendant's grievances regarding treatment within a jail or prison is to file a civil suit against the relevant parties . . . rather than a motion in his criminal case."); *United States v. Wells*, Cr. No. 3:02CR-20-H, 2007 WL 3025082, at *2 (W.D. Ky. Oct. 15, 2007) ("[T]o the extent Wells is challenging his condition of confinement by claiming that his life is in danger, the appropriate course would be to file a civil action against the alleged wrongdoers, not a Rule 60(b) motion in his criminal action."); *Campbell v. McGruder*, 416 F. Supp. 100, 101 (D.D.C. 1975) (addressing "class action brought by unconvicted pre-trial detainees incarcerated at the District of Columbia jail"). Indeed, there is an active civil case related to conditions of confinement during the pandemic itself, currently supervised by a federal judge. *See Banks v. Booth*, No. 1:20-cv-849 (CKK) (D.D.C.).

The Court should deny the defendant's request for release because the defendant's danger

to the community and risk of flight has not changed. The defendant has proffered no new or changed evidence as to his role on January 6th. He still came to the U.S. Capitol armed with a bat and aerosol spray, the latter of which he used against at least three different groups of police officers—one group of which was attempting to retreat from rioters, and another of which was attempting to effect an arrest. The government is able to proffer additional evidence that the defendant said the solution was to "execute the fascists" as the riot unfolded.

The concerning allegations about the current conditions at CDF—where the defendant is not housed—should not trigger the defendant's release, nor should the fact that he is housed with allegedly ideologically homogenous defendants, nor that USMS moved inmates in his block after mold was discovered. The safety of the community at large must drive the Court's analysis as to whether to reopen the hearing, and nothing the defendant has proffered materially affects the careful analysis the Court undertook in July.

## **CONCLUSION**

In short, the defendant has asked this Court to release him because USMS found deplorable conditions at a facility at which he is not incarcerated; because he claims that he may become radicalized where he is currently placed; and based on a comparison of the risk of mold exposure to the risks posed by COVID-19. None of these arguments withstand scrutiny. Following the July hearing, the Court found that "Mr. Gieswein poses a danger to his community and the broader community of American citizens if he were to be released pending trial, and he cannot be trusted to abide by any conditions of release that might be imposed instead of pretrial detention." ECF No. 29 at 53. (internal quotation marks omitted). Even if the Court assumes *arguendo* that all of the information in defendant's motion was unknown to him at the initial hearing—which it was not—none of it is material to the question of whether the defendant poses a danger to the

community if he is released, and none of it materially alters the Court's analysis that led to the conclusion quoted above. As such the Court should not reopen the hearing under 18 U.S.C. § 3142(f)(2), and the defendant's motion should be denied.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
DC Bar No. 481052

By: __/s/ *Erik M. Kenerson*_____
ERIK M. KENERSON, OH Bar 82960
JASON B.A. MCCULLOUGH, D.C. Bar 998006
U.S. Attorney's Office for the District of Columbia
Assistant United States Attorneys
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-7201
Erik.Kenerson@usdoj.gov