UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ROBERT GIESWEIN,<br><br>                Defendant. | Crim. Action No. 21-24-1 (EGS) |

**REPLY IN SUPPORT OF MOTION TO REOPEN DETENTION HEARING**

      Judge Jackson was right to question the notion that a United States District Judge overseeing a particular case – especially one that remains in the pretrial stage almost a year after indictment – cannot reconsider whether conditions will reasonably assure the appearance of the defendant and the safety of the community at any time.[1] But, regardless, there is new information material to the Bail Reform Act analysis before the Court. *See* 18 U.S.C. § 3142(f)(2). That new information confirms that Mr. Gieswein's disposition, coupled with the combination of the influence of the proposed third-party custodians and the strict conditions the defense has proposed, will ensure that releasing Mr. Gieswein while he awaits trial will not endanger the community.

---

[1] *See* Transcript of Oct. 26, 2021 Bond Motion Hearing in United States v. Sibick, 21-cr-291-1-ABJ, at 3-10, 30 (attached as Exhibit 1 to Mr. Gieswein's motion to reopen the detention hearing, ECF No. 57-1).

I. **Information about the atmosphere in Mr. Gieswein's unit in late 2021, and about Mr. Gieswein's resistance to succumbing to one-sided thinking this long into his confinement in that unit, were not known in July of 2021.**

Apart from the information now available about the physical conditions and management of the Central Treatment Facility ("CTF") where Mr. Gieswein is housed, the Court also has new information about (1) the atmosphere in the unit in which Mr. Gieswein is detained, and (2) his resilience against the one-sided worldview that appears to prevail there, even 11 months in. In short, the evidence of Mr. Gieswein's state of mind *today* in the *current* atmosphere provides new and further evidence that his usual disposition will ensure that he does not present a risk to the community if released under strict conditions to the custody of his godparents. Indeed, releasing him to this environment could inure to the benefit of the community as a whole in the future.

What this unit would be like 11 months in, and how Mr. Gieswein would react to that, is information that was not available when Mr. Gieswein first asked this Court to release him in July of 2021. But on October 21, 2021, the news magazine *Vice* published an article describing an unusual level of unified activity in the jail unit in which Mr. Gieswein is housed, reported out by detainees and lawyers.[2] The article also noted that many outside of the unit champion its residents as heroes, and

---

[2] T. Owen, "Capitol Rioters in Jail's 'Patriot Wing' Have Their Own Rituals and a Growing Fan Base," *Vice.com* (Oct. 21, 2021), at https://www.vice.com/en/article/akvwjp/january-6-rioters-jailed-together-forming-rituals-fanbase [hereinafter "Capitol Rioters"] (last visited 12/12/21).

political prisoners, and coordinate protests and campaigns for the group as a whole.[3] More recent articles, including a November 19 *Business Insider* piece, corroborate much of what *Vice* reported, citing family members of people in the unit, and more lawyers.[4] And Mr. Gieswein's November 18 letter to the Court also confirms key details, including that the detainees sing the Anthem nightly as a group, that they are aware that they are viewed by outsiders "as one type of person," that discussion is very focused on January 6, and that detainees are in a "bubble in this environment."[5]

Extremism experts provided with the third-hand accounts gathered by *Vice* speculated that many in the unit "are likely already radicalized, or at least vulnerable to being radicalized—and so the notion that they're solidifying a group identity should be cause for concern, especially as they move further through the criminal justice system."[6] Others in the unit have publicly reported feeling pressure to conform due to trends in the unit.[7] Mr. Gieswein himself says that he knows it is not "healthy to

---

[3] *See id.*

[4] *See, e.g.*, S. Ankel, "Inside a DC jail's 'Patriot Wing,' where Capitol riot defendants sing the national anthem and act like prisoners of war — but struggle to cope with being locked up," *BusinessInsider.com* (Nov. 19, 2022), at https://www.businessinsider.com/inside-dc-jail-patriot-wing-housing-capitol-riot-defendants-2021-11 (last visited 12/13/2022).

[5] *See* Letter from Mr. Gieswein, ECF No. 57-4, at 1-2.

[6] *See* Owen, "Capitol Rioters," *supra* note 2.

[7] *See, e.g.,* ECF No. 57-1 at 18-19.

3

spend every day in here like Groundhog's Day with people with the same viewpoint, in the same situation" in this context.[8]

This is all new information. Even *if* the details emerging in October and November news reports were present in July, when Mr. Gieswein first sought release from this Court, they were not then widely known. And even if they were extant and thus presumably known to Mr. Gieswein in July, he does not have the background needed to appreciate the potential significance of these details.

And not only is the reporting about the unit new, but the information about *how Mr. Gieswein has reacted to being in this environment for 11 months* is also new. In July, the Court knew that Mr. Gieswein had never been involved in any political strife or violence in the past. In July, the Court knew that Mr. Gieswein had very close friends of different perspectives. [9] In July, the Court knew that Mr. Gieswein holds a collection of views that are not easy to define.[10] But in July, the Court could not have known that, *notwithstanding* the environment recently reported out, and its persistence after 11 months, Mr. Gieswein *retains his open-mindedness*. The letter he

---

[8] ECF No. 57-4.

[9] *See* ECF No. 57-5 (Declarations of Mr. Gieswein's friends, nothing that they did not share his level of support for former President Trump).

[10] This is apparent from his statements to a journalist on January 5. *See Protestors Break Window at Capitol Building*, KION Central Coast News (Jan. 6, 2021, *available at* https://www.youtube.com/watch?v=jtPmi4BShNM, at 00:00, [hereinafter "Protestors Break Window"]. This article was cited in the Affidavit in support of the Complaint. Aff., ECF No. 1-1.

recently wrote to the Court demonstrates this, and it is new additional evidence that Mr. Gieswein is not an ongoing danger to the community.[11]

### II. Release to the custody of Mr. Gieswein's godparents is the best inoculation against this young man losing perspective due to his environment.

The centripetal force of a unified perspective that the quoted experts in *Vice* and Mr. Gieswein have both identified in his CTF unit is akin to a virus. Mr. Gieswein and the experts have different levels of concern about it at the moment. Specifically, Mr. Gieswein's letter reflects that he recognizes that exposure to a single viewpoint is at least unhealthy; some experts interviewed by *Vice* label it as extremism that might metastasize into radicalism.[12]

*This* is the danger that is analogous to the coronavirus risk that so many courts took into account in determining whether detention was appropriate last year, and which this Court should take into account here.[13] That is, the unusual nature of Mr. Gieswein's pretrial confinement – his prolonged confinement exclusively with a group of men who are all accused of crimes arising from a protest concerning shared political views, and who are all dismissed as "insurrectionists" by some, and all held up as heroic "political prisoners" by others – could weaken, or overcome his natural

---

[11] ECF No. 57-4.

[12] *See* ECF No. 57-4; Owen, "Capitol Rioters," *supra* note 2.

[13] The government appears to have misunderstood Mr. Gieswein to be analogizing the CTF's mold problem to the coronavirus. *See* Gov't Opp. to Def. Mot. to Reopen Det. Hr'g, ECF No. 66, at 8-11.

inclination toward open-mindedness. And warped perspective can spread from person to person, and from jail to the outside world, just like the coronavirus.

Mr. Gieswein's letter reflects that he retains a genuine desire to resist this force, and that is probably key to his doing so. But he wants to do more than resist the pull of a single way of thinking; he wants to actually deepen his access to other perspectives. Only release can accomplish this, and fully inoculate him against what appears to be going on in his unit.

The government argues that Mr. Gieswein can resist the pull of a single narrative by continuing to seek out news and books from other perspectives, and talking on the phone with people of different viewpoints.[14] But just as masks and social distancing could do little to protect vulnerable incarcerated people from the coronavirus, news and phone calls are not enough to protect Mr. Gieswein, or to stop the spread. As we all know, unbiased news is difficult to find, particularly online, where publications vying for advertiser dollars bait consumers with headlines designed to inflame. And as for phone calls, they cost money, and are recorded: they are no replacement for face-to-face communication with trusted mentors with different perspective.

Mr. Gieswein's godmother, who has agreed to act as a third-party custodian, was present at his bond hearing to answer questions, and will be at the next one as

---

[14] ECF No. 66 at 7.

well, but she and her husband have now submitted letters to the Court as well.[15] The letters reflect what undersigned counsel proffered to the Court before: these are people who will ensure that Mr. Gieswein will not violate any condition the Court imposes, and who will promote the best in Mr. Gieswein.

Mr. Gieswein has asserted his right to trial. But even if he did what he is accused of doing, there can be no environment better suited to encouraging his facing the significance of his actions then the home of a police officer whom he already trusts and admires.

In sum, Mr. Gieswein's letter – written 11 months into what we now know is a highly unusual and charged detention setting – is powerful evidence that, notwithstanding his attire, alleged conduct, and statements on and after January 6, at heart, Mr. Gieswein is not so single-minded that there is a real risk that he will offend if released. And it is more evidence that he will be receptive to the guidance of the proposed third-party custodians, whose involvement will provide further assurance that the community will be safe if he is released.

The government raises the specter that if this Court releases Mr. Gieswein based in part on what news and other sources suggest about the atmosphere in Mr. Gieswein's unit, this would "foreclose detention in all January 6 cases."[16] But this is not so at all. All that Mr. Gieswein asks is that the Court take that information into

---

[15] *See* Exs. 1 and 2 (Letters from proposed third party custodians).
[16] ECF No. 66 at 9 n.7.

account in the weighing of all of the factors under the Bail Reform Act, which apply differently in each case.

Here, the factors compel the Court to consider not only Mr. Gieswein's attire, alleged conduct, and statements on and after January 6, but also the fact that he has no criminal history, impressed many as particularly hard-working and compassionate before January 6, was close to people who did not share his views, and proposed to be released to uniquely well-qualified third-party custodians, under very strict conditions tailored to address concerns raised by the government. Now he asks the Court to also weigh the generally applicable atmosphere in his CTF unit, but also his unique reaction to it. His reaction to his setting demonstrates that he is sincere when he says that he "will never put [himself] in a situation like [January 6] again," and that he would use his time on release "productively."[17] Respectfully, considering the new information in the context of everything else the Court knows about Mr. Gieswein will determine nothing about other January 6 defendants' detention, but should tip the scale against detention in the unique circumstances of this case.

## CONCLUSION

For all of these reasons, those previously given in support of release, and such others as may be advanced at a hearing on this matter, Mr. Gieswein respectfully requests that the Court reopen the detention hearing. Further, he respectfully

---

[17] ECF No. 57-4 at 1.

requests that the Court release him to a third-party custodian, pursuant to the conditions proposed, and such others as the Court may find appropriate.

Respectfully submitted on December 13, 2021.

**ROBERT GIESWEIN**
by counsel:

Geremy C. Kamens
Federal Public Defender for the
Eastern District of Virginia

by:_____s/_____
Ann Mason Rigby
DC Bar No. 491902

Elizabeth A. Mullin
DC Bar No. 484020

Assistant Federal Public Defenders
1650 King Street, Suite 500
Alexandria, Virginia 22314
Telephone: (703) 600-0800
Facsimile: (703) 600-0880
ann_rigby@fd.org
elizabeth_mullin@fd.org