**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Crim. No. 21-cr-00024 (EGS)** |
| | : | |
| **ROBERT GIESWEIN,** | : | |
| | : | |
| **Defendant.** | : | |

**UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS INDICTMENT FOR VIOLATIONS OF HIS RIGHT TO A SPEEDY TRIAL**

In granting the government's oral motion to exclude time under the Speedy Trial Act[1] in this case, the Court stated that as to discovery, this was "the most complex case that the court has seen in its years of judicial service." Aug. 11, 2021 Hr'g Tr. 32:13-32:18. As the government has established in numerous filings in this case, it has worked diligently and with appropriate haste and devotion of resources to produce an unprecedented amount of discovery in a manner that is useful to defense counsel and that provides access to that discovery at the D.C. Department of Corrections this defendant.

The Court has agreed and has tolled the running of the Speedy Trial clock, citing the complexity of this case, on multiple occasions. The defendant now seeks to have the indictment dismissed under the Speedy Trial Clause of the Sixth Amendment by rehashing essentially the same arguments that have failed to convince the Court on every previous occasion that the government's efforts to expeditiously produce discovery have been insufficient. The defendant's motion is without merit and should be denied.

---

[1] 18 U.S.C. § 3161

**LEGAL PRINCIPLES**

The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy ... trial." U.S. Const. Amend. VI. The Supreme Court has established a four-factor balancing test to determine whether a violation of this right has occurred: the length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. *See*, *e.g.*, *Barker v. Wingo*, 407 U.S. 514, 530 (1972). "No single factor is necessary or sufficient to find a deprivation of the right to a speedy trial because the factors are related and must be considered together." *United States v. Bikundi*, 926 F.3d 761, 779 (D.C. Cir. 2019). "To trigger the speedy trial analysis, the length of delay between accusation and trial must 'cross[ ] the threshold dividing ordinary from 'presumptively prejudicial' delay.' Generally, a delay of one year is presumptively prejudicial." *Id.*, quoting *Doggett v. United States*, 505 U.S. 647, 651-52 (1992).

Even if the Court finds a delay of slightly more than a year presumptively prejudicial enough to trigger the full Speedy Trial analysis, it must then "consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *United States v. Taylor*, 497 F.3d 673, 677 (D.C. Cir. 2007), quoting *Doggett*, 505 U.S. at 652. "Presumptive prejudice cannot alone carry a Sixth Amendment claim." *Taylor*, 497 F.3d at 677, quoting *Doggett*, 505 U.S. at 656.

**ARGUMENT**

I. The Length of Delay does not Favor the Defendant

The first factor of the *Barker* test—the length of delay—does no more than (at most) trigger the need for the Court to conduct the full Speedy Trial analysis. It does not favor the defendant in that analysis, however. Although trial is currently set for some 13 months after indictment,

which the case law indicates will generally trigger a full Speedy Trial analysis, the length of time over the one-year threshold is minimal. Once a Speedy Trial analysis is triggered, the Court must "next consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *United States v. Taylor*, 487 F.3d 673, 677 (D.C. Cir. 2007) (quoting *Doggett v. United States*, 505 U.S. 647, 651 (1992)) (internal quotations omitted).

Part of the reason courts look at the length of delay is because "the presumption that pretrial delay has prejudiced the accused intensifies over time." *Id.* *Taylor*, like this case, involved a delay of just over one year, and in finding that the defendant had not established a constitutional violation in that case, the D.C. Circuit held that the presumption had not "intensified" at all. *Taylor*, 487 F.3d at 677. Mr. Gieswein was arrested and indicted in January 2021, and his trial is currently scheduled for February 2022. Such a minimal delay past the one-year threshold does not inure to the defendant's benefit in balancing the Speedy Trial factors.

II. The Reasons for the Delay do not Favor the Defendant

"The flag all litigants seek to capture is the second factor, the reason for the delay." *United States v. Loud Hawk*, 474 U.S. 302, 315 (1986). As the government has argued in litigation in this case over the Speedy Trial Act—and as this Court has found—it has been "very diligent" in implementing its plan for discovery in this and other January 6 cases. *See* Aug. 11, 2021 Hr'g Tr. at 32:11-32:13 & 33:14-33:17. There has been no bad-faith, negligent, or otherwise unwarranted delay on the part of the government in its prosecution of this case, and what delay here has been was the result of the enormous volume and significant complexity of its discovery obligations that arise from the events of January 6, 2021. Contrary to the defendant's claim (Mot. at 6) that it "only" had to "wade through an inordinate amount of discovery" because

of its charging and investigative decisions, a significant amount of the evidence was generated on January 6 itself, and that which was collected afterward was done so reasonably and is being processed and provided expeditiously.

The Capitol Breach involved thousands of individuals inside and outside of the Capitol, many of whom overwhelmed and assaulted law enforcement officers. According to a Washington Post analysis of the events, the mob on the west side eventually grew to at least 9,400 people, outnumbering officers by more than 58 to one. See https://www.washingtonpost.com/investigations/interactive/2021/dc-police-records-capitol-riot/?itid=sf_visual-forensics (last visited December 14, 2021). As these individuals attacked the Capitol, members of Congress, including the Vice President in his capacity as President of the Senate, worked to certify the Electoral College vote of the 2020 Presidential Election until doing so became unsafe due to the breach of the Capitol.

Although the defendant urges the Court to view this as a straightforward case with "relatively simple charges," Mot. at 4-5, the reality is that many, if not all of these cases are bound by interrelated facts and shared evidence. Each defendant's conduct was enabled because of the collective efforts of the mob. Thus, within the thousands of hours of video footage depicting the conduct of other rioters or law enforcement officials, or the hundreds of interviews with rioters and law enforcement officials, inter alia, there may be information that is also arguably relevant to potential defenses. For example, some defendants have requested any information that arguably shows law enforcement officers authorized the entry of alleged rioters. Other defendants have suggested that the crowd was peaceful and that acts of violence have been exaggerated or mischaracterized by the government. Given the volume of material, and because "[d]efendants are in a better position to determine what evidence they believe is exculpatory and

will help in their defense," the government intends to provide all defendants with all data that may contain information that is arguably material to their defenses, and in a manner that will facilitate the search, retrieval, sorting, and management of that information.

Importantly, the volume of discoverable materials is unrelated to the government's entirely justified decision to prosecute cases arising out of the Capitol Breach simultaneously. A large portion of the discoverable material was created on January 6, when the events were captured by the U.S. Capitol Police's extensive camera system, body-worn cameras of responding law enforcement, and news agencies that captured the riot as it unfolded. In addition, the rioters themselves created an enormous digital footprint on January 6, when they recorded each other on their cell phones and cameras and described their conduct through copious digital communications and social media posts. Given the overt nature of this investigation, had the government failed to move quickly to collect such evidence, it would surely have risked the loss or destruction of terabytes of evidence.[2]

Since January, the government has worked diligently to obtain, organize, review, and make accessible voluminous data. As elaborated in the Discovery Status Memoranda,[3] and as the U.S. Attorney's Office Officewide Discovery Coordinator has explained at status hearings in this case, performing the required tasks correctly and comprehensively takes time. We are using Relativity as a platform to manage, review, and share documents. Before documents are loaded to our Relativity workspace, we must ensure that we have the password for protected documents,

---

2 Additionally, had the government sequenced arrests as the defendant seems to suggest it should have (government "only had to [wade through an inordinate amount of discovery] because of how many people it charged, and how much data it decided to collect," Mot. at 6), the investigative files of those not yet charged would still contain potentially discoverable material that the government would likely be producing in a similar manner to the information it is currently producing.

3 *See* ECF Nos. 40, 44, 52, and 54, which are incorporated herein.

that the documents were provided in a format that will open, and that we remove irrelevant software and system files that would only cloud the workspace and confuse reviewers. Once the documents are loaded, we must deduplicate them so that they are not analyzed or reproduced multiple times. We must also review documents to identify items that must be excluded or redacted. These processes are necessary to avoid production of unorganized data dumps, unreadable files, and unusable databases, or a failure of the government to take adequate steps to prevent both victims' and defendants' private information from being shared with hundreds of defendants.

The government has modified its contract with Axon Enterprises, which owns evidence.com, to allow instances of discovery production on that platform to which only defense counsel has access. The government has taken the time and resources necessary to make that process work for defense with multiple different types of videos. The processing and production of thousands of hours of digital evidence is simply complex and time-consuming, and the government is devoting significant resources to doing so expeditiously. The government has additionally spent significant resources improving access to voluminous discovery at the Department of Corrections, including participating in expanding the electronic discovery-review program and working to develop an Internet-connected room for discovery review at the Department of Corrections.

Discovery in this case is so voluminous because the defendant decided to commit multiple federal crimes on January 6, 2021, at the same time as hundreds (if not thousands) of other people, while in close proximity to numerous recording devices—ranging from CCTV cameras to body-worn cameras to news cameras to other rioters' cell phones—and also while in

close proximity to dozens of witnesses. Any delay in provision of this volume of evidence to the defense is not attributable to the government.

As the Court noted in granting the government's oral motion to exclude time under the Speedy Trial Act, discovery in this case is the "most complex case that the court has seen its years of judicial service," and the government's discovery process "does not indicate any failure to diligently handle the discovery across January 6th cases." Aug. 11, 2011 Hr'g Tr. 32:13-32:18 & 33:25-34:2. In that same hearing, the Court briefly addressed the defendant's invocation his Sixth Amendment right to a Speedy Trial, and it noted that the defendant's challenge likely fails on the first prong of the analysis, noting that the delay "remains shorter than others the D.C. Circuit has upheld." Aug. 11, 2021 Hr'g Tr. 38:18-38:20.[4] The defendant has failed to establish that the reasons for any delay favor him. *See*, *e.g.*, *Bikundi*, 926 F.3d at 780 (delay of 18 months in a case with complex discovery did not violate Speedy Trial clause); *United States v. Lopesierra-Gutierrez*, 708 F.3d 193, 203 (D.C. Cir. 2013) (same, with a delay of three-and-a-half years).

III. Defendant has Asserted his Right to a Speedy Trial

The government does not contest that the defendant has asserted his right to a speedy trial. We do note, however, that he took actions that toll the running of the Speedy Trial Act, including filing multiple pretrial motions and an interlocutory appeal. The government also acknowledges that it sought multiple ends-of-justice continuances, with requests to toll the Speedy Trial Act. Whatever weight this factor holds in analysis is far outweighed by the other three factors.

---

[4] Part of the Court's analysis was the fact that at that point, less than a year had elapsed since the defendant's arrest. Aug. 11, 2021 Hr'g Tr. 38:16-38:18. At that point, the parties were contemplating a January trial date, which may or may not have fallen outside of the one-year mark. In any event, the trial date the parties ultimately set was in mid-February, and the additional couple of weeks are not material to the Court's analysis.

IV. Defendant Has Suffered No Prejudice Requiring Dismissal

The defendant has not established prejudice requiring dismissal as the result of the fact that 13 months will have elapsed between his arrest and the start of his trial. Notably, the defendant does not allege any prejudice to his ability to present a defense based the current trial date. Of the three types enumerated by the Supreme Court, it has called prejudice to the ability to present defense "the most important," given the potential to "skew[] the fairness of the entire system" if a defendant cannot prepare and present a defense. *See*, *e.g.*, *Barker*, 407 U.S. at 532.[5] The defendant has proffered no prejudice whatsoever to his ability to mount a defense to the charges.

The two areas of prejudice proffered by the defendant are the fact that he is incarcerated and that he is not presently able to work, which harms his ability to support his family. The two are presumably interrelated. To be clear, neither the incarceration itself, nor the disruption of Mr. Gieswein's ability to support his family are small matters. But especially in light of the 13-month delay between arrest and the currently scheduled trial—barely enough to trigger a full *Barker* analysis in the first place—and the government's diligence as discussed above, the defendant's proffered prejudice does not rise to the level of a constitutional violation requiring dismissal of the indictment.

The defendant has cited no case suggesting that prejudice of a magnitude required to dismiss the case arises solely due to the 13 months he will have been detained at the time of trial. This makes sense because if pretrial incarceration of barely over the minimum time needed to trigger a Speedy Trial analysis were, without more, enough to dismiss an indictment under the Speedy Trial Clause, pretrial detention would be impermissible across the board in complex cases.

---

[5] In addition to impairment of the ability to present a defense, the Court has identified oppressive pretrial incarceration and anxiety of the accused as areas of potential prejudice. *Barker*, 407 U.S. at 532.

Indeed, many courts have declined to find a Speedy Trial violation, with much longer periods of incarceration. *See, e.g.*, *United States v. Rice,* 746 F.3d 1074, 1082v (D.C. Cir. 2014) ("although Rice suffered lengthy [twenty-six month] 'pretrial incarceration' and 'anxiety and concern,' he does not even attempt to argue that he suffered 'the most serious' form of prejudice: the impairment of his defense"); *United States v. Taylor*, No. 2020 WL 7264070 (D.D.C. Dec. 10, 2020) (Boasberg, J.) at *10 (28 months' incarceration during pandemic did not violate Speedy Trial clause); *United States v. Muhtorov*, -- F. 4th ----, Case No. 18-1366, (10th Cir. December 8, 2021), Slip Op. at 166 (finding no constitutional Speedy Trial violation despite prejudice arising from six-and-a-half-year period of pretrial incarceration, in part because "the delay was attributable to necessities of the discovery process untainted by government bad faith or negligence"); *United States v. Flores-Lagonas*, 993 F.3d 550, 565 (8th Cir. 2021) (Four-year delay while defendant was incarcerated did not require dismissal where delay was mostly attributable to defendant and he could not show specific prejudice); *United States v. Worthy*, 772 F.3d 42, 49 (1st Cir. 2014) (23-month delay, while defendant was incarcerated, did not warrant dismissal in a complex case).

The government does not dispute that jails are "awful" places to be. Mot. at 7. However, Mr. Gieswein has not proffered that the particular circumstances of his confinement are so oppressive that dismissal is warranted. Although mold was identified in his unit in November 2021, per DOC it had been eradicated by November 30, 2021, and at a check of the shower area occurring on December 13, 2021, no mold was discovered. The defendant has access, 24 hours a day, to an educational tablet within his cell that allows virtual access to educational programming, the law library, and books. If he and his attorney have signed up for the service, they are able to have confidential communications over this device. Mr. Gieswein has also been

able to access a separate "GTL" tablet, which can provide access to movies and games in his cell, along with text-messaging capabilities for a fee. Per DOC, although the defendant is required to wear a mask outside his cell, he is not required to wear one while alone in his cell.

The conditions at CTF are not so oppressive that dismissal is warranted. *See Muhtorov*, --- F. 4th at ----, Slip Op. at 160-61 (where defendant was incarcerated pretrial for six-and-a-half years, most of which was at county facilities with little educational or visitation opportunity, including two months on 24-hour lockdown, the oppressive incarceration weighed in defendant's favor for Speedy Trial analysis, but was insufficient to dismiss the indictment in light of the other three factors). The Court should decline to weigh the fourth factor in defendant's favor at all, but even if it does it does not outweigh the other factors on these facts.

## CONCLUSION

For the reasons described above, and any others that may be offered at a hearing on this matter, Court should deny the defendant's motion.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052

By: *__/s/ Erik M. Kenerson__*
ERIK M. KENERSON
Ohio Bar No. 82960
JASON B.A. MCCULLOUGH
D.C. Bar No. 998006
Assistant United States Attorneys
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-7233 //
jason.mccullough2@usdoj.gov
(202) 252-7201 // Erik.Kenerson@usdoj.gov