UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No. 21-cr-24 (EGS) |
| | : | |
| ROBERT GIESWEIN, | : | |
| | : | |
| Defendant. | : | |

**UNITED STATES' REPLY IN SUPPORT OF ITS MOTION *IN LIMINE* TO PRECLUDE CERTAIN DEFENSE ARGUMENTS AND EVIDENCE**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits the following reply to the defendant's response to its motions *in limine* to preclude certain defense arguments and evidence. *See* ECF Nos. 63, 75. With respect to the government's motions *in limine* to preclude evidence or argument regarding self-defense or entrapment by estoppel, the defendant states that these motions are premature, and he seeks to reserve the right to proffer evidence later on those issues. With respect to the government's motion *in limine* to preclude reference to the defendant's conditions of confinement, he represents that he does not intend to elicit that information. The government requests that on all three of these motions, the Court order that the defendant must proffer the information, allow the government to be heard on its admissibility, and obtain a ruling from the Court, before eliciting any such evidence, or referencing any potential evidence that would be covered by those motions in opening statement or closing argument.[1]

---

[1] The government requests that this order also cover any evidence that the defendant may claim shows he lacked the requisite intent as the result of any statements by then-President Trump or others. *See* Opp. at 3.

The government also moved *in limine* to admit a statement made by the defendant on January 6th—that the solution to "this right here" was to execute the fascists. As explained in further detail below, the government has proffered and provided in discovery sufficient evidence to establish that the defendant made the statement on January 6th, prior to the assaults with which he was charged, and prior to his entry to the U.S. Capitol building, but during the ongoing riot outside that building. The statement is highly probative of the defendant's intent on that date, and as such that Court should admit it into evidence.

I. Authentication Legal Principles

The defendant claims that the government has not proffered enough evidence to authenticate the video at issue, in which the defendant said that the solution to "this right here"—asked while the riot was unfolding around him—was to "execute the fascists" (the "Execute the Fascists Video"). This is not true. As a general matter, establishing an item's authenticity is not "a particularly high hurdle." *United States v. Ortiz*, 966 F.2d 707, 716 (1st Cir. 1992). *See also United States v. Vidacak*, 553 F.3d 344, 349 (4th Cir. 2009) ("The burden to authenticate under Rule 901 is not high"); *Link v. Mercedes-Benz of N. Am., Inc.*, 788 F.2d 918, 927 (3d Cir. 1986) ("The burden of proof for authentication is slight."); *United States v. Hassanshahi*, 195 F. Supp. 3d 35, 48 (D.D.C. 2016) ("The threshold for the Court's determination of authenticity is not high, . . . and the proponent's burden of proof for authentication is slight[.]") (citation and quotation marks omitted). "The standard the district court must apply in evaluating a document's authenticity is whether there is enough support in the record to warrant a reasonable person in determining that the evidence is what it purports to be." *United States v. Blanchard*, 867 F.3d 1, 6 (1st Cir. 2017) (quoting *United States v. Paulino*, 13 F.3d 20, 23 (1st Cir. 1994)). Once that showing is made, "[t]he factual determination of whether evidence is that which the proponent claims is ultimately

reserved for the jury." *Vidacek*, 553 F.3d at 349. *See also, e.g.*, *Belfast*, 611 F.3d at 819 ("Once that *prima facie* case is established, the evidence is admitted and the ultimate question of authenticity is decided by the jury").

To make out a *prima facie* showing of authenticity, "circumstantial evidence of authenticity can be sufficient." *United States v. Bruner*, 657 F.2d 1278, 1284 (D.C. Cir. 1981). *See, e.g.*, *United States v. Broomfield*, 591 F. App'x 847, 851 (11th Cir. 2014) (unpublished) ("Authentication may be established 'solely through the use of circumstantial evidence.'") (quoting *United States v. Smith*, 918 F.2d 1501, 1510 (11th Cir. 1990)). And, importantly, the party seeking to admit evidence need not "rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be." *United States v. Holmquist*, 36 F.3d 154, 168 (1st Cir. 1994). Rather, "the government must only 'demonstrate that, as a matter of reasonable probability, possibilities of misidentification and adulteration have been eliminated.'" *United States v. Celis*, 608 F.3d 818, 842 (D.C. Cir. 2010) ((quoting *United States v. Stewart*, 104 F.3d 1377, 1383 (D.C. Cir. 1997)). *See, e.g.*, *United States v. Bowens*, 938 F.3d 790, 794-95 (6th Cir. 2019) (explaining that "[a]nyone could have used the defendants' Facebook accounts, just as the pictures could have depicted the men smoking tobacco cigars, and 'getting high' could have been a reference to skydiving," but that there was sufficient circumstantial evidence "for the jury to infer that the accounts belonged to the defendants, and that the defendants were the authors of the posts about using marijuana"); *Broomfield*, 591 F. App'x at 852 (finding sufficient evidence of authenticity even though "there was no testimony establishing that the recording equipment was reliable or that the video was not altered or staged").

In some instances, the relevance of a video may turn on a disputed fact—for example, whether the defendant is the person in the video. If that is the case, Rule 104(b) applies: "When

the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist." Under this standard, the government need only introduce sufficient evidence from which a rational jury could find the existence of the preliminary fact.

> At this point, the judge plays a limited, screening role. The judge cannot pass on the credibility of the foundational testimony. Rather, the test is a hypothetical jury finding. The judge must accept the testimony at face value and ask only this question: If the jury decides to believe the testimony, is there a rational, permissive inference of the existence of the preliminary fact? When the judge determines that the jury could not find the existence of the preliminary fact, she excludes the evidence. Otherwise, the question is for the jury to decide during deliberations.

1 McCormick on Evidence § 53 (8th ed. 2020). *See also* 1 Weinstein's Federal Evidence § 104.30 ("In deciding preliminary issues under Rule 104(b), the judge must determine only that a reasonable jury could make the requisite factual determination based on the evidence before it. This standard is much less stringent than what the jury will apply to make the final determination").

II.     The Evidence Establishes That the Defendant is the Declarant.

The defendant contends that the government has not marshaled sufficient evidence that he is the person depicted in the Execute the Fascists Video. A screenshot of that video is below, labeled as Image 1.[2]

---

[2] The government will provide a copy of the entire video to the Court ahead of the January 19 motions hearing.

...
...



**Image 1**

The defendant's position that the government cannot establish—even at the low threshold of authentication—that he is the person being interviewed is inconsistent with the evidence and with his position in prior pleadings. The person depicted in Image 1 is speaking into the microphone and is dressed in identical clothing to the person the defendant has conceded is him from other videos on January 5 and 6, 2021. For example, in his Motion for Hearing & Revocation of Detention Order, the defendant stated that on January 5, 2021, he was interviewed by a different individual in Freedom Plaza, and during that interview, he said he had come to the District "to keep President Trump in," among other things. ECF No. 18 at 2. A screenshot from that video, showing the defendant wearing the same distinctive outfit, including a "Wild Dogs" patch, is below and labeled as Image 2.[3]

---

[3]     In the detention motion, when referencing this specific statement, the defendant included a link to a separate video—which is clearly from January 6, 2021 and depicts a window to the Capitol being broken by rioters. *See* ECF No. 18 at 2, n.2. Undersigned counsel believes defendant included an incorrect link in his filing because the defendant's motion specifically describes an



**Image 2**

The defendant has also previously argued that he was a member of the Woodland Wild Dogs, and he has endorsed the notion, in motions papers before this Court, that the group was "more of a group of friends than anything else." *Id.* at 18. He also emphasized the group's small nature, saying that it "had few participants, and they rarely gathered." *Id.* He emphasized that "there has been no suggestion that anyone who ever joined Mr. Gieswein on a Woodland Wild Dog excursion was in Washington, D.C. on January 6th." *Id.* at 18-19, citing FBI interviews of

---

interview with the defendant that had taken place on January 5. Most importantly, in the video from which the Image 2 was taken, the defendant makes the statements quoted by the defendant in his Motion. *See* ECF No. 18 at 2.

two of the defendant's friends in Colorado.  It is thus unlikely that a doppelganger of the defendant, wearing the highly distinctive and specific Wild Dogs patch, was in the plaza to the west of the Capitol on January 6, 2021.

The only material difference between the defendant's helmet on January 5th and January 6th is the presence of orange tape, as visible in Image 1 above and Image 3 below.  The government has previously provided the Court with evidence showing the distinctive outfit the defendant wore on January 6th, which is what the defendant can be seen wearing in Image 1 above.  *See*, *e.g.*, ECF No. 20 at 3 & 4.  In video exhibits submitted to this Court, the defendant appears to be wearing the same (or at least an identical-looking) mask that he is depicted wearing in Image 1.  *See* Detention Hr'g Exh. 1 & 2.  Defendant has not contested that he is the person depicted in those images, and indeed he appears to concede as much.  *See* ECF No. 18 at 13 ("Mr. Gieswein acknowledges evidence suggesting that, at points during January 6th, he appeared to spray something from a can in his hand").  In any event, the images of the defendant, with his face visible in this distinctive outfit, match both his driver's license photograph and images from his social media accounts.  *See* Aff. In Support of a Criminal Complaint, ECF No. 1-1, ¶ 2.  He is wearing the same distinctive outfit in the video from which Image 1 is taken, and the portion of his face that is visible, in addition to features like his hair, appear identical in all material respects to the images of the defendant taken on January 6th without a mask on.  This is sufficient to authenticate the defendant's identity as the speaker in the video.

In short, the government can establish that the person in the "Execute the Fascists" video is Gieswein. The government has certainly met the low threshold to present the evidence to the

jury, and the defense will be free to present evidence or argument to the contrary if it is able to do so.[4]

### III. The Evidence Establishes that the Statement was made on January 6, 2021.

The defendant also contends that the government cannot establish that the Execute the Fascists Video was from January 6th, or if it was recorded before the charged assaults. He is mistaken. The background of the Execute the Fascists Video (Image 1) shows a distinctive lamppost with the light cover partially removed and lying perpendicular to its normal position, with a person climbing on it. The below photograph, Image 3, was taken by a U.S. Capitol Police Officer on January 6, 2021. It shows a crowd of rioters unlawfully gathered in the West Plaza. In the photograph, the defendant is visible, dressed identically to how he is dressed in Image 1, including the orange tape that was on his helmet on January 6th, but not January 5th (red circle). He is in a similar position relative to the distinctive lamppost with the partially removed cover. Image 3 also depicts a similar-looking person climbing that lamppost (yellow circle). In the photograph, the person who interviewed the defendant can be seen, a short distance away,

---

[4] The defendant claims that the government must provide evidence that the video or audio was not altered. *See* Opp. at 5. The government need not completely disprove the possibility of adulteration, but must only "demonstrate that, as a matter of reasonable probability, possibilities of misidentification and adulteration have been eliminated." *United States v. Celis*, 608 F.3d 818, 842 (D.C. Cir. 2010). "The possibility of adulteration need not be eliminated absolutely." *United States v. Holton*, 122 F. Supp. 2d 21, 27 (D.D.C. 2000) (Harris, J.) The corroborating circumstances laid out above and below, including an independent photograph of the defendant near the interviewer on January 6th, wearing an identical outfit with corroborative background details, make it more likely that the recording is unaltered. It was uploaded to Instagram nine days after January 6th. The Court will also have the chance to view the video and look for any indications of alteration, such as the defendant's facial movements or other nonverbal cues not lining up with the audio. *See* Fed. R. Evid. 901(b)(4) (Court can consider "appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances").

interviewing someone else (green circle).[5]  Image 3 was taken at approximately 1:45 p.m. on January 6, 2021.  It has been cropped from the original.



**Image 3**

The above evidence is more than sufficient to authenticate the date and approximate time of the interview in question.  If the defense wishes to argue otherwise, it would be free to do so to the jury.

---

[5] The officer who took this photograph took dozens from a similar vantage point during the riot.  He photographed multiple different parts of the West Plaza, and not all of those photographs showed this exact area.  Undersigned counsel has been unable, to date, to locate a photograph among these dozens that shows the exact moment of the interview.

IV.     <u>The Statement is Relevant and not Unfairly Prejudicial.</u>

The defendant's various arguments about what he may have meant by "execute the fascists"—*e.g.*, that he meant Antifa, his co-rioters, or a state-sponsored execution, Opp. at 7-8—are similarly jury questions. The defendant's statement is unquestionably relevant to the question of whether he acted corruptly on January 6th, which the government is required to prove to prevail on Count One. It is similarly relevant to his intent at the time he sprayed a substance at federal officers. It is especially relevant where the government expects the defendant to argue that he was in a defensive posture and/or that the substance he sprayed did not hit the officers at issue. *See* ECF No. 21 at 15 ("the items that the government focuses on as evidence of planning are just as often deterrent or defensive as they are offensive, or even more often so"); ECF No. 61 at 15 ("the evidence that the government has disclosed relating to the assaults alleged in counts two and three does not show spray reaching anyone, let alone anyone who appears to be a federal law enforcement officer").

"Evidence need not be dispositive of an element of the crime to be relevant, it must merely cross the low threshold prescribed by Rule 401." *United States v. Slatten*, 310 F. Supp. 3d 141, 145 (D.D.C. 2018) (Lamberth, J.). The defendant essentially concedes that if the statement was made on January 6th prior to the charged assaults (and for the reasons laid out above, the evidence will establish that it was), it is relevant to prove the speaker's intent. *See* Opp. at 6 ("this statement is not relevant to prove the speaker's intent unless one assumes that the video was taken before the alleged offenses charged in the indictment, and unless the 'fascists' to whom the speaker was referring are identified").[6]

---

[6] The government submits that even if the statement were made after the charged assaults on January 6th, it would be relevant to his actions, given the context in which it was made here.

The defendant's complaints about the alleged lack of evidence about who the fascists are represent classic questions for the jury to decide. The jury will hear the evidence of the context in which the statement was made—as a riot was unfolding outside the Capitol building during the certification of the Electoral College vote—and would be well within its purview to decide that the defendant was referring to the lawmakers inside and/or the police who were trying to prevent the mob from reaching them. If the defense wants to present one of the alternative explanations it raises in its opposition to the jury, it is free to do so.

The statement has high probative value and shosuld not be excluded under Fed. R. Evid 403. "Rule 403 establishes a high barrier to justify the exclusion of relevant evidence, by requiring that its probative value must be 'substantially' outweighed by considerations such as 'unfair' prejudice." *United States v. Lieu*, 963 F.3d 122, 128 (D.C. Cir. 2020), citing *United States v. Cassell*, 292 F.3d 788, 796 (D.C. Cir. 2002). "Virtually all evidence is prejudicial or it isn't material. The prejudice must be 'unfair.'" *See Cassell*, 292 F.3d at 796, quoting *Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 618 (5th Cir. 1977). Few statements would be more probative of a defendant's intent on January 6th than one that he made *as the riot was unfolding* that addressed what was going on around him. Quite plainly, such a statement reveals his mental state. The government's interpretation of the defendant's statement is supported by the circumstances in which it was made, and to the extent the defense has a different interpretation, "[t]he jury's function in every case is to weigh the credibility of witnesses, resolve evidentiary conflicts and draw reasonable inferences from proven facts." *United States v. Clifford*, 704 F.2d 86, 90 (3d Cir. 1983)

(internal quotations omitted).[7]  The question of how to interpret and how much weight to give the defendant's statement is squarely within the jury's province.

## CONCLUSION

For the foregoing reason, and any other reasons as may be cited at a hearing on this motion, the government requests that the Court grant the government's motion to admit the defendant's statement and direct the defendant that he must seek a ruling on the evidence covered by the government's other motions *in limine* prior to making any reference to it.

Respectfully submitted,

Matthew M. Graves
United States Attorney
D.C. Bar No. 481052

*/s/ Erik M. Kenerson*
ERIK M. KENERSON
Ohio Bar No. 82960
JASON B.A. MCCULLOUGH
D.C. Bar No. 998006; NY Bar No. 4544953
Assistant United States Attorneys
555 4th Street, N.W.
Washington, D.C. 20530
202 252-7201 // Erik.Kenerson@usdoj.gov
202 252-7233 // Jason.McCullough2@usdoj.gov

---

[7] The defendant's choice of words—*execute* the fascists—similarly does not render the statement irrelevant or character evidence.  *See* Opp. at 8.  The term "execution" in this context carries even more power and probative value precisely because of the nature of what was happening on January 6th—an attack on legislators carrying out the certification of the Electoral College Vote.  It is thus squarely probative of his intent that day and not character evidence excludable under Fed. R. Crim. P. 404(b)(2).  To the extent that the Court is concerned that the jury will improperly use the statement as character evidence, it can give a limiting instruction that informs the jury of its duty to consider the statement only as evidence of the defendant's intent to commit the crimes with which he is charged, and not his propensity for violence generally.