# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) |
| v. | ) Case No. 1:21-cr-175-TJK |
| | ) |
| ETHAN NORDEAN, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## DEFENDANT NORDEAN'S RESPONSE TO THE GOVERNMENT'S SUPPLEMENTAL BRIEF ON THE MEANING OF THE TERM "CORRUPTLY" IN THE CONTEXT OF OBSTRUCTION OF CONGRESS

David B. Smith (D.C. Bar No. 403068)
David B Smith PLLC
108 N. Alfred St.
Alexandria, VA 22314
Phone:(703)548-8911
Fax:(703)548-8935
dbs@davidbsmithpllc.com

Nicholas D. Smith (D.C. Bar No. 1029802)
7 East 20th Street
New York, NY 10003
Phone: (917) 902-3869
nds@davidbsmithpllc.com

*Counsel to Ethan Nordean*

# <u>TABLE OF CONTENTS</u>

Introduction .................................................................................................................. 1

Argument ...................................................................................................................... 2

    I.     In the context of congressional proceedings—particularly ones that
          are not investigations—"Corruptly" requires the government to prove
          the defendant acted with the intent to obtain an unlawful advantage
          for himself or an associate ...................................................................... 2

    II.    *Poindexter* requires the government to prove additionally that the defendant
          committed transitive corruption .............................................................. 14

    III.    The First Superseding Indictment neither alleges that Nordean obstructed
          Congress with the intent to secure an unlawful advantage for himself or an
          associate, nor that he influenced another to violate their legal duty;
          bespoke jury instructions do not cure the defects ................................... 17

    IV.    Whether or not his motion to dismiss succeeds, Nordean's motion for bond
          and to reopen bail proceedings should be granted ................................... 23

**Introduction**

The government takes the position that one violates 18 U.S.C. § 1512(c)(2) by corruptly obstructing, influencing or impeding Congress whether or not the legislature is conducting an investigation; that subsection (c)(2) is the only part of § 1512 that criminalizes acts that have no connection to the integrity or availability of evidence, such as the act of appearing in the Capitol without permission or of protesting outside it; and that § 1512's term "corruptly" means "wrongfully." Before January 6, the government had never attempted to direct a court to any of these interpretations. Its obstruction charges against over 250 protesters now depend on the Court applying them all, retroactively.

The government now argues that one commits obstruction of justice, punishable by 20 years in prison, by any act that influences Congress wrongfully. Except that, sometimes, acts that influence Congress wrongfully are not felony obstruction. Sometimes, such acts are Class B misdemeanors. For example: the plea agreements the government has entered into with over 100 protesters—who, it says, also influenced Congress wrongfully. As the Chief Judge has noted, this is a confusing situation. So, the Court asked the government, "What does it mean to act 'wrongfully'"—in a felony kind of way? Minute Order, 11/3/21.

To influence Congress wrongfully and feloniously, answered the government, is to influence it evilly "or" immorally. Gov't Suppl. Br., p. 11. One protester enters the Capitol, chanting, "Stop the steal." He is guilty of misdemeanor parading in Congress. Another does the same thing. She is guilty of felony obstruction. The Court: Why? The government: the second one entered evilly. She influenced Congress by walking around immorally.

The government cannot avoid vagueness because it attempts to apply obstruction of justice concepts where they do not belong. It cites authorities appearing to equate "corruptly"

with "wrongfully" in cases involving § 1512. Yet it does not notice that all of those cases involve a defendant's interference with evidence in an investigation—an act corrupt per se. It cannot take notice of the distinction: the joint session of Congress on January 6 did not involve an investigation or evidence. But whether or not it notices, the government's own cases hold that it is only the specific context of acts obstructing judicial proceedings and investigations that permits synonymizing "corruptly" and "wrongfully" without unconstitutional vagueness. *United States v. Aguilar*, 515 U.S. 593, 617 (1995) (Scalia, J., concurring in part and dissenting). By contrast, the D.C. Circuit has held that synonymizing "corruptly" and "wrongfully" is impermissibly vague in the different context of obstruction of Congress, where "[n]o one can seriously question that people constantly attempt, in innumerable ways, to obstruct or impede congressional committees," *United States v. North*, 910 F.2d 843, 882 (D.C. Cir. 1990)—unlike the judicial proceedings in all of the government's cases. The government pretends the distinction doesn't exist, as its obstruction charges do not survive it. *United States v. Poindexter*, 951 F.2d 369 (D.C. Cir. 1991).

Because Nordean's § 1512(c)(2) charges plainly do not satisfy the "corruptly" definition set by those decisions, the issue is not a matter of jury instruction quibbling but of dismissal so as to avoid a defective verdict after a long, expensive, and unnecessary trial turning on a vague, arbitrary, and unprecedented charge.

**Argument**

**I.      In the context of congressional proceedings—particularly ones that are not investigations—"Corruptly" requires the government to prove the defendant acted with the intent to obtain an unlawful advantage for himself or an associate**

The government aims to show that courts "consistently" equate the meaning of § 1512(c)(2)'s "corruptly" with "wrongfully." And as for Nordean's cases holding that "corruptly"

2

means acting with the intent to obtain an unlawful advantage for oneself or an associate, those are limited to the special circumstances of tax law. Gov't Suppl. Br., pp. 4-10. As the government itself may understand, its mistake is explained by the cases on which it relies.

The government begins by citing decisions that, it says, have "interpreted 'corruptly' in Section 1512(c)(2) to require intent to obstruct and wrongfulness." Gov't Suppl. Br., p. 5. Set aside that what is necessary is not what is sufficient. In uncovering the bigger error here, the best place to start is the government's quotation of the Seventh Circuit Pattern Criminal Jury Instruction. *Id*., p. 7. That instruction, represents the government, defines "corruptly" as acting "'with the purpose of wrongfully impeding' *the proceeding*." *Id.* (emphasis added). Notice the government has replaced the original words following "wrongfully impeding" with its own words: "the proceeding." The omission misleads.

The Seventh Circuit's pattern instruction defines "corruptly" as follows:

A person acts "corruptly" if he or she acts with the purpose of wrongfully impeding the due administration of justice.[1]

Why is the government's substitution of "the due administration of justice" for "the proceeding" material? Because every court of appeals that has considered the definition of "the due administration of justice" has held that it refers to judicial proceedings or investigations. *United States v. Richardson*, 676 F.3d 491, 502-503 (5th Cir. 2012) ("[O]bstructing the due administration of justice means interfering with the procedure of a judicial hearing or trial."); *United States v. Brenson*, 104 F.3d 1267, 1279-80 (11th Cir. 1997) ("due administration of justice" means "judicial procedure" and "the performance of acts required by law in the discharge of duties such as appearing as a witness and giving thoughtful testimony when

---

[1] Pattern Criminal Jury Instructions of the Seventh Circuit (2012 Ed.) (plus 2015-2018 changes), p. 499, https://www.ca7.uscourts.gov/pattern-jury-instructions/7th_criminal_jury_instr.pdf.

subpoenaed"); *United States v. Warlick*, 742 F.2d 113, 116 (4th Cir. 1984) (defining obstruction of the "administration of justice" as acts that "thwart the judicial process"); *United States v. Rasheed*, 663 F.2d 843, 851 (9th Cir. 1981) ("administration of justice" commences with "a specific judicial proceeding").

Now turn to the § 1512(c)(2) cases that, according to the government, have "consistently" equated "corruptly" with "wrongfully." Gov't Suppl. Br., p. 5. The first one cited by the government is *United States v. Delgado*, 984 F.3d 435, 452 (5th Cir. 2021). The government says *Delgado* shows that § 1512(c)(2) merely "requires intent to obstruct and wrongfulness." Gov't Suppl. Br., p. 5. But *Delgado* says something different. The Fifth Circuit held that "a person acts 'corruptly' under [§ 1512(c)(2)] when they act knowingly and dishonestly, with specific intent to subvert or undermine the due administration of justice." 984 F.3d at 453. As with its quotation of the Seventh Circuit jury instruction, the government has again omitted that phrase—"the due administration of justice."

Consider the next case cited by the government, *United States v. Friske*, 640 F.3d 1288 (11th Cir. 2011). That decision, says the government, held that "to act 'corruptly' is to act 'with an improper purpose' and 'with the specific intent to subvert, impede or obstruct.'" Gov't Suppl. Br., p. 5. Notice that the government's transitive verbs "subvert, impede or obstruct" are not followed by any object. The by-now familiar reason: *Friske* held that "corruptly" means acting "with an improper purpose and to engage in conduct knowingly and dishonestly with the specific intent to subvert, impede or obstruct *the [forfeiture proceeding]*. . ." 640 F.3d at 1292 (citing *United States v. Mintmire*, 507 F.3d 1273, 1289 (11th Cir. 2007)) (brackets original, emphasis added). The Eleventh Circuit substituted "forfeiture proceeding" in brackets for the "administration of justice" because *Friske* involved that type of judicial proceeding.

4

Nordean does not need to belabor the point. Suffice it to say that every § 1512(c)(2) authority cited by the government—every obstruction of justice case it cites—concerns interference with evidence in a judicial proceeding. *Delgado*, 984 F.3d at 452; *Friske*, 640 F.3d at 1292; *Mintmire*, 507 F.3d at 1289; *United States v. Gordon*, 710 F.3d 1124, 1151 (10th Cir. 2013); *United States v. Watters*, 717 F.3d 733, 735 (9th Cir. 2013); *United States v. Mann*, 701 F.3d 274, 307 (8th Cir. 2012); *United States v. Bedoy*, 827 F.3d 495, 510 (5th Cir. 2016); *United States v. Matthews*, 505 F.3d 698, 705 (7th Cir. 2007).

In citing these authorities, the government has ignored the Court's central question. In oral argument, the Court observed that judicial proceedings are not the same as congressional ones. The question it wanted the government to answer is why the Court should import the equation of "corruptly" with "wrongfully," occasionally found in the judicial proceedings context, into the different context of congressional proceedings.[2] The government does not address the question, much less provide a cogent answer. But in attempting to show that the intent-to-obtain-an-unlawful-advantage definition of "corruptly" is limited to tax law, the government gives the Court weighty reasons not to equate "corruptly" with "wrongfully" in the context of congressional proceedings. Gov't Suppl. Br., pp. 5-7.

"No court interpreting § 1512(c)," writes the government, "appears to have understood 'corruptly' to require proof that the defendant acted 'with the intent to secure an unlawful

---

[2] Frequently, the government implies that the Supreme Court defined "corruptly" to mean "wrongfully" in *Arthur Andersen LLP v. United States*, 544 U.S. 696 (2005). Gov't Suppl. Br., p. 2. That is wrong. It merely resolved the question whether the trial court erred by excluding from a jury instruction on a § 1512(b) charge the element of consciousness of wrongdoing. 544 U.S. at 706 ("The outer limits of th[e] ['corruptly'] element need not be explored here because the jury instructions at issue simply failed to convey the requisite consciousness of wrongdoing."). Again, what is necessary is not what is sufficient. In any case, as in the government's other authorities, the proceeding at issue in *Arthur Andersen* was a judicial proceeding.

advantage or benefit either for one's self or another.'" Gov't Suppl. Br., p. 5. Notice that although many obstruction statutes in Chapter 73 contain the "corruptly" element, the government references subsection (c) of § 1512 alone. Arbitrarily limiting the field of vision is key to the next mistaken argument. Nordean's definition, the government continues, has only been adopted by courts in the context of 26 U.S.C. § 7212(a), obstruction of federal tax law. *Id.* And tax law has always had "more specific and rigorous . . . *mens rea* requirements . . ." Gov't Suppl. Br., p. 6.

The cases cited by the government itself show that the unlawful-advantage-or-benefit definition has nothing to do with concepts intrinsic to tax law and applies to Chapter 73 obstruction statutes. Its § 7212(a) string cite begins with *United States v. Floyd*, 740 F.3d 22, 31 (1st Cir. 2014) (collecting cases). Gov't Suppl. Br., pp. 5-6. As *Floyd* shows, the unlawful-advantage-or-benefit definition stems back to one of the decisions cited by Nordean, *United States v. Reeves*, 752 F.2d 995, 1001 (5th Cir. 1985) *cert. denied*, 474 U.S. 834 (1985). But *Reeves* was in no way limited to tax law. *United States v. Popkin*, 943 F.2d 1535, 1540 (11th Cir. 1991) (*Reeves* set the unlawful-advantage-or-benefit definition "after considering cases under the general obstruction of justice statute as well as the legislative history of § 7212(a)").

In *Reeves*, the Fifth Circuit framed what the government concedes is a more "rigorous definition" of "corruptly," Gov't Suppl. Br., p. 6, because the crime at issue did not necessarily involve acts corrupt per se—as in the administration of justice context. Section 7212 penalizes "Whoever . . . corruptly . . . obstructs or impedes . . . the due administration of [the internal revenue laws.]" 26 U.S.C. § 7212(a). Reeves knew he was under IRS criminal investigation. So, he filed a common law lien against the residence of his IRS investigator, demanding payment of $250,000. In his § 7212(a) trial, the district court "expressly adopted the definition of

'corruptly' as meaning 'with improper motive or bad or evil purpose.'" 752 F.2d at 998. The Fifth Circuit vacated his conviction.

The court of appeals began with the legal chestnut that it is context-dependent whether the "corruptly" element of an obstruction offense describes a type of act or a type of motive. 752 F.2d at 998. However, its review of § 1503 case law led it to the conclusion that, "ordinarily," the term "corruptly" "is not directed at actions motivated by all 'bad,' 'evil' or 'improper' purposes." *Id.* The Fifth Circuit then grasped the nettle: why, then, do some courts seem to define "corruptly" with value-laden terms like "evil"? They do so in "the special circumstances surrounding a criminal trial." *Id.* at 999. Reasoned the court,

> "[T]o obstruct or impede the due administration of justice is per se unlawful and is tantamount to doing the act corruptly." *Id.* (quoting *United States v. Ogle*, 613 F.2d 233, 238 (10th Cir. 1979)). Thus, where a defendant has endeavored to obstruct a criminal proceeding, the advantage inconsistent with the duties and rights of others is so clear that courts have often been willing to impute the desire to obtain such advantage on a per se basis.

*Reeves*, 752 F.2d at 999.

But the facts in *Reeves* did not involve a judicial proceeding. Section 1505, covering pending judicial proceedings, "presupposes a proceeding the disruption of which will almost necessarily result in an improper advantage to one side in the case." 752 F.2d at 999. But interference with the administration of tax laws

> need not concern a proceeding in which a party stands to gain an improper advantage [so] there is no reason to presume that *every* annoyance or impeding of an IRS agent is done per se "corruptly." A disgruntled taxpayer may annoy a revenue agent with no intent to gain any advantage or benefit other than the satisfaction of annoying the agent. Such actions by taxpayers are not to be condoned, but neither are they "corrupt. . ."

752 F.2d at 999 (emphasis original).

The Fifth Circuit continued. The court of appeals had previously "upheld section 1503 as not unconstitutional on vagueness grounds largely because the statute covers only actions related

7

to pending judicial proceedings, thus providing adequate notice to potential violators." 752 F.2d at 999 (citing *United States v. Howard*, 569 F.2d 1331, 1336 (5th Cir. 1978)).  But "merely prohibiting 'bad,' 'evil,' and 'improper' purposes is very probably insufficient where, as here, a statute reaches such a broad category of circumstances." *Id.*  "To interpret 'corruptly' as meaning 'with an improper motive or bad or evil purpose' would raise the potential of overbreadth in this statute because of the potential chilling effect on protected activities.  The Court has a duty to construe a federal statute to avoid constitutional questions where such a construction is reasonably possible." *Id.* at 1001 (citing *Arnett v. Kennedy*, 416 U.S. 194 (1974)).  And "where 'corruptly' is taken to require an intent to secure an unlawful advantage or benefit, the statute does not infringe on first amendment guarantees and is not overbroad." *Id.*

In sum, the unlawful-advantage-for-oneself-or-another definition, stemming back to *Reeves*, does not turn on "the complexity of the tax laws," Gov't Suppl. Br., p. 6, but is rather based on courts' recognition that "corruptly" may be constitutionally synonymized with "wrongfully" only where the prohibited acts are corrupt per se—in judicial proceedings and investigations.  The default definition of "corruptly" aligns with Nordean's, not the government's.  *See*, *e.g.*, *Marinello v. United States*, 138 S. Ct. 1101, 1114 (2018) (Thomas, J., dissenting) ("'[C]orruptly' requires proof that the defendant not only knew he was obtaining an 'unlawful benefit' but that his 'objective' or 'purpose' was to obtain that unlawful benefit.") (citing 21 Am. Jur. 2d, Criminal Law § 114 (2016)). *See also* Black's Law Dictionary 414 (rev. 4th ed. 1951) ("Corruptly" "generally imports a wrongful design to acquire some pecuniary or other advantage").[3]  And why don't more § 1512 cases adopt the unlawful-advantage definition?

---

[3] In *Marinello*, the Court rejected the government's overbroad interpretation of § 7212(a)'s "omnibus clause." 138 S. Ct. at 1107-08.  One reason it did so was that the interpretation would render many other, more specific crimes in the Internal Revenue Code surplusage.  While

Because before January 6, the government had never charged any obstruction offense outside the context of the administration of justice (which includes congressional investigations)—except tax obstruction.

The Court wanted to know what Justice Scalia meant in *Aguilar*. The above points are exactly what he meant. *Aguilar*, 515 U.S. at 617 (Scalia, J., concurring in part and dissenting) ("[I]n the context of obstructing jury proceedings, any claim of ignorance of wrongdoing is incredible. Acts specifically intended to 'influence, obstruct, or impede, the due administration of justice' are obviously wrongful, just as they are necessarily 'corrupt.'"). In support of the point, Justice Scalia cited *Reeves*. 515 U.S. at 617.[4] Of course, the jury instruction in *Aguilar* itself, a § 1505 case, adopted the unlawful-advantage definition of "corruptly." *Id.*

The vagueness and overbreadth problems identified in *Reeves* are even more stark here than in the tax context. The government claims that *every act that influences Congress*

---

"[s]ome overlap in criminal provisions is, of course, inevitable," the Court had not seen "overlap and redundancy to the degree that would result from the Government's broad reading of § 7212—particularly when it would render superfluous other provisions in the same enactment." *Id.* (citing *Yates v. United States*, 574 U.S. 135 (2015)). Nordean asks the Court to consider the combined effect of *Marinello* and *Yates* in evaluating the government's argument that § 1512(c)(2) proscribes any act that influences or obstructs any official proceeding without regard to whether it affects the integrity or availability of evidence.

[4] The government relegates the Court's question about Justice Scalia's point in *Aguilar* to a footnote. Gov't Suppl. Br., p.10 n. 4. It argues that the Justice did not actually limit a moral purpose definition of "corruptly" to judicial proceedings because he cited in support *United States v. Ogle*, 613 F.2d 233, 238 (10th Cir. 1978). In *Ogle*, the Tenth Circuit rejected the defendant's "corruptly" argument that the government must prove that he obstructed a juror with "an evil purpose." 613 F.2d at 239. Its own definition, adds the government, "is more stringent" than *Ogle*'s, as it requires the government to prove "evil motive." And that shows Justice Scalia did not mean what he said in *Aguilar*, somehow. Gov't Suppl. Br., p.10 n. 4. The government appears confused. The *Ogle* court rejected an evil motive definition of "corruptly" because that term is "directed to the effort to bring about a particular" type of interference with the judicial process. 613 F.2d at 239. That refutes, not supports, the government's value-laden definition.

9

*"wrongfully," "evilly," or "immorally" is a felony.* It takes no parliamentary specialist to appreciate the danger to liberty posed by this overbroad definition. Thirty years ago, the D.C. Circuit described it:

> No one can seriously question that people constantly attempt, in innumerable ways, to obstruct or impede congressional committees. An executive branch official, for example, might call the chairman of a congressional committee convened to investigate some wrongdoing and say, "We both know this investigation is really designed to embarrass the President (or a Senator), not to investigate wrongdoing. Why don't you call it off?" The official surely intends to obstruct or impede the inquiry, but it does not necessarily follow that he does so corruptly. Similarly, a political activist might contact his representative and tell her that unless she stops spending her time pursuing a certain investigation rather than some other legislative endeavor, the activist's group will oppose her reelection. Again, the activist is endeavoring to impede or obstruct the investigation, but it is not necessarily doing so corruptly.

*North*, 910 F.2d at 882.

This is why the D.C. Circuit later explicitly held that, in the context of obstruction of *congressional proceedings*, "[w]ords like 'depraved,' 'evil,' 'immoral,' 'wicked,' and 'improper' are no more specific—indeed they may be less specific—than 'corrupt.'" *Poindexter*, 951 F.2d at 379.[5]

It is critical to appreciate that in *North* and *Poindexter* the D.C. Circuit distinguished between "corruptly" as understood in judicial proceedings and as the term is understood in the context of Congress, even where the congressional proceeding at issue was an investigation concerning the review of evidence—the Iran-Contra investigation—and thus analogous to a judicial proceeding. Even in that investigative context, held the D.C. Circuit, vagueness doctrine and overbreadth counseled against a value-laden definition of "corruptly."

---

[5] Nordean will show *infra* that *Poindexter* imposes an additional, objective component to the "corruptly" definition that the government's § 1512(c)(2) charges do not satisfy.

10

Here, by contrast, the government attempts to cut § 1512(c)(2) loose from investigations and even from interference with evidence entirely.  In *North* and *Poindexter* the defendants at least were on notice of the context in which their acts would or would not be considered obstructive—a congressional investigation similar to a court proceeding.  In that predictable investigative context with past as prologue, vagueness and overbreadth concerns are diminished. *Reeves*, 752 F.2d at 999-1000.  Here, the government asserts that any act that influences or obstructs Congress, even when the legislature is not conducting an investigation or inquiry, is a felony so long as a jury agrees that the defendant acted "evilly" or "immorally." That is unprecedented in scope for any congressional crime.

The due process and First Amendment hazards are overwhelming.  It is not just the everyday examples cited above by the *North* court.  For even those are limited to noncriminal acts obstructing Congress *during investigations*.  The government appears to have persuaded this Court that the term "proceeding" in § 1512(c)(2) has the lay definition of "the carrying on of an action or series of actions; action, course of action." *United States v. Ermoian*, 752 F.3d 1165, 1169 (9th Cir. 2013) (rejecting lay definition and holding that "proceeding" in § 1512(c)(2) has the legal definition, meaning "the business done in courts").  If so, and if "corruptly" means "wrongfully," § 1512(c)(2) criminalizes swathes of protected activities in Congress and ordinary legislative business.

A firearms lobbyist wheedles a Senator to limit federal spending on research into gun-related fatalities.  The lobbyist gives and promises no thing of value in return.  A text from the lobbyist to his friend turns up: "I drink too much because my work is evil." The government now says it can convict the lobbyist of a § 1512(c)(2) felony, so long as a jury finds that the acts used

to influence the legislator were done "evilly" or "immorally." A jury will decide: is prohibiting federal spending on gun research immoral, beyond a reasonable doubt?

A former politician calls a congressman of the same political party on a recorded line, saying do whatever you have to do to block this pending legislation providing aid to children in poverty— "boy, we are evil and/or immoral comma depraved aren't we, but it will hurt our chances in 2022 if the other side gets a win." Question for the jury: is preventing aid from reaching poor children for non-budgetary reasons evil beyond a reasonable doubt?

To be clear, the vagueness problem with the government's definition of "corruptly" is not just about hypotheticals. The government has entered into plea agreements with over 100 January 6 defendants to the misdemeanor charge of parading in the Capitol or a related Title 40 offense. ECF No. 207-1 (comprehensive January 6 plea agreement chart). Title 40 prohibits "parad[ing], demonstrat[ing], or picket[ing] in . . . the Capitol Building[.]" 40 U.S.C. § 5104(e)(2)(G). To "'demonstrate' is defined as 'to make a demonstration,' which is defined in turn as 'an outward expression or display' and 'a public display of group feelings toward a person or cause.'" *Brunti v. Pittsburg*, 941 F.3d 73, 87 (3d Cir. 2019) (quoting Merriam-Webster's Collegiate Dictionary 332 (11th ed. 2005)). Many of the misdemeanor Title 40 plea agreements concern defendants who pleaded guilty to engaging in disorderly or disruptive conduct inside the Capitol. ECF No. 207-1. The government claims it is a felony § 1512(c)(2) violation to influence Congress wrongfully and that violating the law is wrongful. Why, then, did it enter into the over 100 misdemeanor plea agreements all involving defendants who intruded into the Capitol Building?

Derek Jancart brought a gas mask and two-way radios to D.C. on January 6. He penetrated the Capitol Building to the Speaker's conference room. He likely destroyed evidence

by deleting videos and message threads from his phone. He posted on Facebook that he "stormed the Capitol," explaining that the protesters "wanted to let the politicians know we can get this far any time we want." ECF No. 207-1. The government entered into a misdemeanor Title 40 offense plea agreement with Jancart. Was Jancart not influencing Congress "wrongfully"? Why not?

Leonard Ridge entered the Capitol after texting, "I think we are going to try to block the session of Congress." He later texted that he had stormed the Capitol and that "we" had broken down the doors to the offices of Senator Mitch McConnell and Speaker Nancy Pelosi. ECF No. 207-1. The government entered into a misdemeanor plea agreement with Ridge. Was Ridge not influencing Congress "wrongfully"? If not, where does "wrongful" begin?

Several defendants entered the Capitol and smoked and used controlled substances inside, including in Senators' offices. ECF No. 207-1. Simple possession of marijuana is a federal offense. 21 U.S.C. § 844. The government entered into a misdemeanor plea agreements with these defendants. Were these defendants not influencing Congress "while also independently violating the law"? Gov't Suppl. Br., p. 13.

Frank Scavo recorded himself on video inside the Capitol saying, "Stormed the f**king Capitol" and "We f**king took it back" and "Treason." Several defendants penetrated all the way to Senators' offices and the Speaker's conference rooms. Protesters stole objects from the Capitol. One protester recorded herself inside the Capitol saying, "We were looking for Nancy to shoot her in the frickin' brain, but we didn't find her." ECF No. 207-1. The government entered into misdemeanor plea agreements with these defendants. What makes the conduct of these defendants "moral" as opposed to "immoral"?

The government's contention that "corruptly" means "wrongfully" in the context of congressional obstruction unrelated to an investigation or evidence is frivolous. Instead, "['Corruptly'] requires an intent to secure an unlawful advantage or benefit, [so] the [obstruction] statute does not infringe on first amendment guarantees and is not overbroad." *Reeves*, 752 F.2d at 1001.[6] *See also Jeannette Rankin Brigade v. Chief of Capitol Police*, 342 F. Supp. 575, 577 (D.D.C. 1972) *affirmed by Chief of Capitol Police v. Jeannette Rankin Brigade*, 409 U.S. 927 (1972) (Capitol Police violated First Amendment rights of 5,000 protesters by not letting them protest the Vietnam War on the steps of the Capitol).

## II.  *Poindexter* requires the government to prove additionally that the defendant committed transitive corruption

To ward off criticism that it has charged hundreds of January 6 protesters under liability theories that are without precedent, the government responds that the events of that day were themselves unprecedented. Therefore, defendants can only expect their felony charges to be novel. Whatever the merits of that argument in other contexts, the government's claim that, when it comes to congressional obstruction, "corruptly" merely means "wrongfully" is not new in this Circuit. It was rejected in *Poindexter*, which binds this Court.

---

[6] Recognizing the overbreadth and vagueness of a "wrongfully" definition, the government retreats to the claim that "acting 'wrongfully' includes acting 'contrary to law' or 'unlawfully.'" Gov't Suppl. Br., p. 13. So, "wrongfully" would mean with "the specific intent to obstruct an official proceeding while also independently violating the law." *Id.* This argument is foreclosed by *Poindexter*. Poindexter's false statements to Congress predicated charges under both § 1001 and § 1505. 951 F.2d at 371. The D.C. Circuit reversed the § 1505 charge on the ground that the government had not proven the "corruptly" element. It rejected Poindexter's challenge to his § 1001 conviction. *Id.* at 387. If a defendant's intent to obstruct a proceeding "while" committing an "independent[] violat[ion] [of] the law" were a proper definition of "corruptly," Poindexter's § 1505 charge would not have been vacated. The government cites no authority for the proposition that "corruptly obstructing" means interfering with a proceeding "while" committing a different crime. And the above-referenced Capitol marijuana smokers who pled guilty to misdemeanors show the government doesn't mean it says.

14

Owing to the unconstitutional vagueness inherent in equating "corruptly" with "wrongfully" in the context of congressional proceedings, the D.C. Circuit abandoned outright a motive-focused definition of "corruptly" in § 1505. This decision was made after a painstaking review of § 1505's text and that of related obstruction statutes, the entire legislative history of obstruction-of-Congress offenses, and case law. *Poindexter*, 951 F.2d at 380-384. Beyond the vagueness intrinsic to a value-laden definition of "corruptly" such as "immorally,"

> to read "corruptly" in an intransitive sense as "wickedly" or "immorally" would appear to render the other methods of violating [§ 1505] superfluous: surely the use of force to influence a congressional inquiry would always be "wicked" or at least "immoral."

951 F.2d at 379.

Exactly the same surplusage problem bedevils the government's proposed definition of "corruptly" in § 1512(c)(2). If "corruptly" means "immorally," subsection (c)(1) is rendered superfluous. "Surely," altering or destroying documents with the intent to prevent their use in an official proceeding "would always be 'wicked' or at least 'immoral.'" *Poindexter*, 951 F.2d at 379.

So, in the context of congressional proceedings, *Poindexter* held that "corruptly" must be defined by acts not merely by motives. And to avoid surplusage, the corrupt act had to be different from the act that obstructed or influenced Congress. As a result, "corruptly" was interpreted in the transitive sense—"'A corrupts B, i.e., A causes B to act corruptly.'" 951 F.2d at 379. Thus, a defendant "corruptly" obstructs a congressional proceeding when he "influences another to violate [their] legal duty" and thereby obstruct Congress. *Id.* at 386. Critically, the transitive interpretation was essential to avoiding vagueness inherent in a motive-based definition. For if a defendant may intransitively "corruptly . . . obstruct[] [or] influence[]"

15

Congress, the term "corruptly" can only be defined by an impermissibly vague motive, to avoid rendering superfluous the obstructive act itself. 951 F.2d at 379.

The government offers no argument as to why *Poindexter* does not require it to prove the defendant obstructed Congress by "influencing another to violate [their] legal duty." Gov't Suppl. Br., p. 9. It merely offers that "Congress enacted the definitional provision in 18 U.S.C. § 1515(b) for the limited purpose of overruling *Poindexter*." *Id.* That claim is wrong.

Section 1515(b) provides,

> As used in section 1505, the term "corruptly" means acting with an improper purpose, personally or by influencing another, including making a false or misleading statement, or withholding, concealing, altering, or destroying a document or other information.

18 U.S.C. § 1515(b).

Section 1515(b) by its terms applies only to § 1505, not § 1512(c)(2). It does not purport to "overrule" *Poindexter*. Again, *Poindexter* held that, in the context of a congressional proceeding, the obstruction term "corruptly" cannot be synonymous with "immorally" and must therefore be defined transitively, so as to avoid unconstitutional vagueness. Congress cannot overrule the D.C. Circuit's interpretation of the due process clause of the Fifth Amendment because courts say what the law is. *Marbury v. Madison*, 1 Cranch 137, 177 (1803) (when an Act of Congress is alleged to conflict with the Constitution, "[i]t is emphatically the province and duty of the judicial department to say what the law is").

This Court's decision in *United States v. Kanchanalak*, 37 F. Supp. 2d 1 (D.D.C. 1999) (Friedman, J.), shows that § 1515(b) does not somehow authorize the corruptly-immorally semantic equation despite *Poindexter*. A Committee of Congress was investigating Kanchanalak for his political contributions. His obstructive acts included removing records from offices, dissolving a corporation, hiding corporate records, destroying documents and files. 37 F. Supp.

16

2d at 2.  Charged under § 1505, Kanchanalak moved to dismiss based on a facial challenge to §

1515(b)'s defining of "corruptly" to include "acting with an improper purpose." *Id.* That

definition, he argued, was barred by *Poindexter*.  The Court rejected Kanchanalak's vagueness

argument—but only because it did not work as applied to his case.  "Defendant may be correct

that the phrase 'acting with an improper purpose' . . . does not alleviate the concerns expressed

by [*Poindexter*]." *Id.* at 4.  The problem for Kanchanalak was that his obstructive acts fell within

§ 1515(b)'s specific list of act-based "improper purposes": "making a false or misleading

statement, or withholding, concealing, altering, or destroying a document or other information."

*Id.* (citing § 1515(b)).

The Court will notice that the part of § 1515(b) *Kanchanalak* deemed consistent with

*Poindexter* perfectly aligns with the case law cited above holding that vagueness is avoided in

equating "corruptly" with "immorally" only in the context of judicial proceedings and

investigations.  *Reeves*, 752 F.2d at 1001.  The act-based "improper purposes" in *Kanchanalak*

are acts corrupt per se in a judicial proceeding.  *Id.*

For all these reasons, in the context of congressional proceedings the government must

prove that a defendant transitively obstructed Congress under § 1512(c)(2) by "influencing

another to violate [their] legal duty."  *See United States v. Morrison*, 98 F.3d 619, 630 (D.C. Cir.

1996) ("[W]e agree that . . . [*Poindexter*'s] 'transitive' reading of the word 'corruptly'" applies to

§ 1512).

### III.  The First Superseding Indictment neither alleges that Nordean obstructed Congress with the intent to secure an unlawful advantage for himself or an associate, nor that he influenced another to violate their legal duty; bespoke jury instructions do not cure the fatal defects

The government argues that even if it is required to prove that Nordean obstructed

Congress with the intent to secure an unlawful advantage for himself or an associate, the §

1512(c)(2) charges may not be dismissed because the First Superseding Indictment pleads the word "corruptly." Gov't Suppl. Br., p. 10. It argues that Nordean is on notice of the charge he faces at trial as the government charges him with the crime of obstructing or influencing Congress "wrongfully," beginning at some undefined point on January 6. No fact alleged in the indictment is cited to support the unlawful-advantage claim. The government is wrong.

Rule 7 of the Federal Rules of Criminal Procedure requires that an indictment contain a "definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c). The government contends that the sole function of this rule is to fairly inform the defendant of the nature of the charge. Gov't Suppl. Br., p. 10. Even if that were the case, the § 1512(c)(2) charges must be dismissed, as shown below. But that is not Rule 7's only function. It also "serves the Fifth Amendment protection against prosecution for crimes based on evidence not presented to the grand jury." *United States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999). "The Indictment Clause of the Fifth Amendment requires that an indictment contain some amount of factual particularity to ensure that the prosecution will not fill in elements of its case with facts other than those considered by the grand jury." *Id.*

Over the course of dozens, if not hundreds, of pages of briefing, the government has contended that whether Nordean obstructed Congress with the intent to secure an unlawful advantage for himself or an associate and whether he influenced another to violate their legal duty are questions irrelevant to § 1512(c)(2)'s "corruptly" element. Simultaneously, the government contends that the grand jury was presented with evidence establishing probable cause that Nordean "corruptly" obstructed Congress in precisely those ways. That does not make sense. If Nordean is wrong that "corruptly" requires the government to prove an intent to secure an unlawful advantage, why did the government present such irrelevant information to the

18

grand jury? And if the government possesses such evidence and presented it to the grand jury, why does it argue that the same information does not go to whether Nordean "corruptly" obstructed Congress?[7]

The government's argument amounts to a request that the Court risk the extreme costs and burdens of a trial only for it to be vacated on account of constructive amendment. Constructive amendment occurs where the evidence on which a defendant is tried broadens the possible bases for conviction beyond the indictment voted on by the grand jury. *Stirone v. United States*, 361 U.S. 212, 217 (1960).

In *Stirone*, the defendant was charged with Hobbs Act extortion involving a Pennsylvania contractor who supplied concrete to a steel plant in the same State. 361 U.S. at 213. The charge required as an element of the offense that the government prove an effect on interstate commerce. The government only offered evidence to the grand jury that sand used to make the concrete moved in interstate commerce. However, at trial, the court allowed the government to present evidence that the plant's steel shipments also moved in interstate commerce. *Id.* at 214. The Supreme Court reversed Stirone's conviction based on the presentment error. Even if the steel shipments satisfied the interstate commerce element, Stirone could not be convicted based on evidence of a different liability theory not presented to the grand jury. Such constructive amendment is a "fatal error," for which prejudice is presumed. *Id.* at 219. *United States v. Rigas*, 490 F.3d 208, 226 (2d Cir. 2007) (constructive amendment per se violation of grand jury right); *United States v. Atul Bhagat*, 436 F.3d 1140, 1145 (9th Cir. 2006) (same).

---

[7] In this connection, the Court will recall that the government claimed it presented evidence to the grand jury that a § 231(a)(3) "civil disorder" in which Nordean was involved adversely affected a "federally protected function" on January 6 and that it did not need to allege the civil disorder affected interstate commerce. Then, after making that argument, the government proceeded to supersede dozens of indictments with an interstate commerce argument.

19

Because the government's own arguments against dismissal show its § 1512(c)(2) charges do not rest on evidence that Nordean obstructed Congress with the intent to secure an unlawful advantage for himself or an associate and influenced another to violate their legal duty, those charges must be dismissed.

As for being "fairly informed" of the charge, the parties' arguments about *Poindexter*'s application and the vagueness doctrine do not admit of resolution by way of finessing jury instructions. The government suggests that it cannot, or will not, try its case without an instruction defining "corruptly" to mean acting "with intent to obstruct or impede an official proceeding, and with consciousness of wrongdoing." Gov't Suppl. Br., p. 10 n. 5. It says that even if a jury instruction were to include Nordean's improper-advantage definition, it must be paired with an instruction defining "corruptly" to mean "wrongfully." *Id.* But that is not how general verdicts work. If, as *Poindexter*, *Reeves* and other cases hold, the "wrongfully" definition is unconstitutionally vague in this congressional context, a general guilty verdict based on an instruction that gave the jury the option of convicting on either "wrongfully" or improper-advantage would require reversal.

In *Street v. New York*, 394 U.S. 576 (1969), the defendant was convicted of violating a statute making it a crime "publicly [to] mutilate, deface, defile, or defy, trample upon, or cast contempt upon either by words or act [any flag of the United States]." *Id.* at 578. The defendant burned a U.S. flag on a street corner. When an officer approached, the defendant said, "We don't need no damn flag." At trial, the government presented two bases for statutory liability: burning the flag and the defendant's insult about a "damn flag." The Supreme Court found that only the latter constituted protected expression, so the question became whether reversal was required. 394 U.S. at 586. Because the verdict was general, and one of the bases of the guilty

20

verdict was constitutionally invalid, reversal was required. *Id.* at 587 (citing *Stromberg v. California*, 283 U.S. 359 (1931)).

So too here. Despite being given the opportunity to do so by the Court, the government does not commit to maintaining its § 1512(c)(2) charges absent an instruction advising the jury it may find guilt on a ground the D.C. Circuit has deemed unconstitutionally vague. The charges must therefore be dismissed.

## IV. Whether or not his motion to dismiss succeeds, Nordean's motion for bond and to reopen bail proceedings should be granted

As the Court knows, Nordean's seven-month term in pretrial incarceration rests on only one of the charges he faces, the allegation that he depredated federal property on January 6 valued at more than $1,000. 18 U.S.C. §§ 3142(f)(1), 1361. He has no criminal history and is not accused of violence on January 6. The government has conceded that no evidence was presented to the grand jury that Nordean personally destroyed property that day in that amount. It concedes that Nordean's detention is based on a proffer statement, made in April, that he conspired with Dominic Pezzola to smash a congressional window worth more than $1,000. No evidence has been presented to the Court in the past nine months showing an agreement between Nordean and Pezzola to commit any crime, much less the property destruction crime. The government has had possession of every phone, communication app, and device Nordean owns for approximately nine months. The claim is false.

The First Superseding Indictment does not allege that Pezzola was a co-conspirator of the conspiracy charged in that indictment, which does not have as its criminal object the destruction of property. Although a charge that Pezzola conspired with Nordean to smash the window would raise the statutory maximum sentence Nordean faces under either a *Pinkerton* or aiding and abetting liability theory, the government did not present *Apprendi* facts supporting those

21

elements to the grand jury. That is known because the First Superseding Indictment does not allege that Pezzola was a co-conspirator of Nordean's, does not allege that Pezzola's property destruction was within the scope of the criminal agreement, and does not allege that Pezzola's crime was reasonably foreseeable to Nordean. That pleading failure means that the allegation that Nordean is criminally responsible for over $1,000 in property damage is inconsistent with his Fifth Amendment grand jury right.

Before Nordean's bail was revoked in April, he had complied with his strict conditions of release for over a month. They included GPS location monitoring and confinement to the home. To secure bail again, Nordean has offered a $1 million cash bond and additional real estate collateral if necessary. His family has installed a network of cameras around the home with views on every entrance. They are linked to an online service that would allow pretrial services to monitor the home, without charge, at any time of day. He has offered to make the cash bond forfeit upon a breach of any material condition of release; offered to remove all electronic devices from the home (except the ethernet box that links the cameras to the internet); waived his Fourth Amendment rights to random, warrantless searches; consented to strict home detention; and consented to a random law enforcement search of the home by an electronic storage detection dog, at his expense. His parents have pledged to daily monitor their son and submit sworn reports to the Court. Many January 6 defendants accused of acts of extreme violence have been released on conditions, as have "leaders" of conspiracy cases.

In the last nine months, no one associated with Nordean has been accused of holding dangerous political rallies or committing crimes. After his bail was revoked, he filed a 60-page motion to dismiss every charge in the indictment. Whether or not the Court grants the motion, it has acknowledged that the issues presented are novel and challenging, as have other judges in

this district.  As the Court knows, a criminal charge's novelty itself is sometimes a basis for

dismissal under the due process clause of the Fifth Amendment.  It follows that such novelty and

ambiguity at least strengthen a detained defendant's request to prepare for his trial in home

confinement under extraordinarily strict conditions.  That is particularly so where, as here,

Nordean's counsel do not have sufficient access to him.

Last week, Nordean missed his young daughter's birthday.  If he cannot resolve his

motion for bail in the near future, he will likely miss Christmas with his family and his detention

will extend into the next year.  Nordean respectfully requests that the Court grant his motion for

bond.

Dated: November 18, 2021                      Respectfully submitted,


*/s/ David B. Smith*
David B. Smith (D.C. Bar No. 403068)
108 N. Alfred St.
Alexandria, VA 22314
Phone:(703)548-8911
Fax:(703)548-8935
dbs@davidbsmithpllc.com

Nicholas D. Smith (D.C. Bar No. 1029802)
7 East 20th Street
New York, NY 10003
Phone: (917) 902-3869
nds@davidbsmithpllc.com

*Attorneys for Ethan Nordean*

## Certificate of Service

I hereby certify that on the 18th day of November, 2021, I filed the foregoing filing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following CM/ECF user(s):

> Jim Nelson
> Assistant United States Attorney
> 555 4th Street, N.W., Room 4408
> Washington, D.C. 20530
> (202) 252-6986

And I hereby certify that I have mailed the document by United States mail, first class postage prepaid, to the following non-CM/ECF participant(s), addressed as follows: [none].

> /s/ David B. Smith
> David B. Smith, VA Bar No. 25930
> David B. Smith, PLLC
> 108 North Alfred Street, 1st FL
> Alexandria, Virginia 22314
> (703) 548-8911 / Fax (703) 548-8935
> dbs@davidbsmithpllc.com
>
> *Attorneys for Ethan Nordean*