# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
|  | ) |
|  | ) |
|  | ) |
| v. | ) Case No. 1:21-cr-175-TJK |
|  | ) |
|  | ) |
| ETHAN NORDEAN, et al., | ) |
|  | ) |
| Defendants. | ) |
|  | ) |

## DEFENDANT NORDEAN'S RESPONSE TO THE GOVERNMENT'S REPLY BRIEF ON THE MEANING OF THE TERM "CORRUPTLY" IN THE CONTEXT OF OBSTRUCTION OF CONGRESS

David B. Smith (D.C. Bar No. 403068)
David B Smith PLLC
108 N. Alfred St.
Alexandria, VA 22314
Phone:(703)548-8911
Fax:(703)548-8935
dbs@davidbsmithpllc.com

Nicholas D. Smith (D.C. Bar No. 1029802)
7 East 20th Street
New York, NY 10003
Phone: (917) 902-3869
nds@davidbsmithpllc.com

*Counsel to Ethan Nordean*

## **TABLE OF CONTENTS**

Introduction .................................................................................................. 1

Argument ..................................................................................................... 2

I.    Almost a year after the obstruction charges were filed, the government may not "postpone the interpretive questions posed by the Court" and by a motion to dismiss filed six months ago ................................................ 2

II.   The government continues to ignore the distinction between judicial proceedings and congressional ones because its corruptly-wrongfully equation does not survive it ............................................................... 6

III.  The government's new attempts to avoid *Poindexter*'s transitive corruption requirement are not persuasive ................................................................ 12

IV.  The government's supplemental submission in the *Reffitt* case shows that its interpretation of § 1512(c)(2) makes surplusage of large portions of Chapter 73 ................................................................................................ 15

In standard federal practice, when a party moves to dismiss a charge or claim, the government or other opposing party is then entitled to file a legal memorandum in opposition, following which the moving party may submit a brief in reply. The motion is then submitted for decision. LCrR 47. That basic rule should not be taken for granted. Allow a party to modify its legal position without limit in response to a motion to dismiss and effective judicial review is thwarted. Procedural abuse in this way can become substantive.

Here, the government returned hundreds of obstruction charges in the January 6 cases following less than a month of investigation and legal research. ECF Nos. 1, 6. Nordean's Motion to Dismiss the First Superseding Indictment was then filed half a year ago. ECF No. 94. In the six months that followed, the government has been given the privilege, available to no other litigant, of multiple opportunities to explain what its vague charges mean over the course of hundreds of pages of supplemental briefing. The resulting shifts in its obstruction of justice theory have yielded no greater clarity of meaning.

Nearly a year after Nordean was charged, the Court therefore ordered the government to elucidate what acting to obstruct or influence Congress "wrongfully" means. Minute Order, 11/3/21. The government submitted a supplemental brief, ECF No. 224, and Nordean responded. ECF No. 226. Now, in its reply brief, the government says that the Court's question was misplaced, all the extra briefing unnecessary. It says the Court should defer the issue of whether Nordean is properly charged with a felony offense for which he has been incarcerated for eight months. That can be resolved in another six months from now, perhaps a couple weeks before trial, and after more duplicative legal briefing in the future. And if post-indictment evolutions in the government's obstruction theory mean that it will try Nordean on a constructively amended indictment, "nothing precludes [him] from raising such a claim post-

trial." Gov't Suppl. Reply, p. 4.  Nearing the end of the year, the government says the Court may not rush it into defining a crime it charged shortly after January 6.  If the Court does not put a stop to this undisguised disregard for normal criminal process, it will not end.

On the merits of the Court's question, the government briefly stabs at substantively replying to Nordean's response to its supplement.  The effort is halfhearted, as the government understands that its definition of "corruptly," when divorced from the context of investigations and evidence, is inescapably Humpty-Dumptian.  Like the clumsy egg, the government asserts that "corruptly" means "just what I choose it to mean, neither more nor less." To attach felony liability to nonviolent January 6 protesters, the government will say and argue anything.  But disgraceful as the event was, it does not justify interpreting criminal statutes in a manner not intended by Congress when they were enacted.  It does not justify distorting the meaning of basic legal concepts like obstruction of justice.  That would only multiply the day's harms in the name of remedying them.

**Argument**

**I.    Almost a year after the obstruction charges were filed, the government may not "postpone the interpretive questions posed by the Court" and by a motion to dismiss filed six months ago**

Whether Nordean obstructed, influenced or impeded an official proceeding "corruptly" is an element of the § 1512(c)(2) offense with which he is charged.  He moved to dismiss the First Superseding Indictment's § 1512(c)(2) counts on the basis that they do not allege facts stating an offense under that statute. Fed. R. Crim. P. 12(b)(3)(B)(iii), (v).  If the government's interpretation of "corruptly" as charged in the indictment is legally deficient, the § 1512(c)(2) charges do not state an offense, nor has the government presented legally cognizable evidence to the grand jury in satisfaction of Nordean's Fifth Amendment presentment right.

Rather than define the key elements on which its charges rely, the government seeks further delay. It filed Nordean's obstruction charges almost a year ago and he moved to dismiss them six months later, but "[p]ostponing the interpretive questions posed by the Court until jury instructions is consistent with how courts have addressed similar definition issues." Gov't Suppl. Reply, p. 2. The government's case citations are misleading. None of the authorities it cites holds that the government may avoid dismissal of a charge resting on an improper interpretation of an element of a criminal offense by "postponing" the issue until jury instructions. *Id.*, pp. 2-3. Whether the government's § 1512(c)(2) charges rest on a definition of "corruptly" passing constitutional muster is a legal question resolvable now. If the charges do not rest on a proper definition, "postponing" the issue is not just a waste of the parties' and Court's resources. It is a violation of Nordean's constitutionally protected liberty interest. Were the government correct about "postponement" until trial of questions of legal interpretation, Rule 12 would be a dead letter.

The government argues that "determin[ing] whether [Nordean] obstructed the Certification of the Electoral College vote . . . with the necessary *mens rea* requires assessing not bare allegations in an indictment, but the full panoply of Defendants' actions leading up to and on January 6." Gov't Suppl. Reply, p. 3. Exactly what the government means by this is not clear. The indictment must contain "the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). When it does not, the defendant has not received fair notice of the charges against him and the government has not properly presented the felony charge to the grand jury. *See*, *e.g.*, *United States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999). If Nordean is correct that "corruptly" requires the government to allege and prove that he committed an obstructive act with the intent to obtain an unlawful advantage for himself or an associate and that he influenced

3

another to violate their legal duty, the indictment must have alleged, and the grand jury must have passed upon, those allegations. Here, the First Superseding Indictment (FSI) does not allege those facts and the government does not show otherwise.

The government claims it will try the obstruction charges even with a jury instruction requiring it to prove that Nordean committed an obstructive act with the intent to obtain an unlawful advantage for himself or an associate. Gov't Suppl. Reply, p. 4.[1] But that does not somehow cure its failure to identify what fact alleged in the FSI and presented to the grand jury satisfies this "corruptly" definition. Countless times this Court has held that such a pleading deficiency fails to provide constitutionally fair notice to a criminal defendant. Indeed, Judge Friedrich correctly made that finding last week in the context of a January 6 case charging § 1512(c)(2). *United States v. Reffitt*, 21-cr-32-DLF (D.D.C.), Minute Order 11/28/21 (ordering the government to particularize vague allegation that defendant "corruptly" obstructed Congress); *see also United States v. Bazezew*, 783 F. Supp. 2d 160, 168 (D.D.C. 2011) (Rule 7 not satisfied because indictment did not identify specific overt acts of defendants); *United States v. Brown*, 2007 U.S. Dist. LEXIS 49169, *45 (D.D.C. July 9, 2007) (same where indictment did not "specif[y] alleged actions and specifically worded false statements on which the government shall rely in proving its case"); *United States v. Palfrey*, 499 F. Supp. 2d 34, 51-52 (D.D.C. 2007) (same where indictment did not identify proceeds allegedly used in support of criminal enterprise so defendant does not "waste precious pre-trial preparation guessing what data . . . will be relevant to [the] defense"); *United States v. Trie*, 21 F. Supp. 2d 7, 21 (D.D.C. 1998) (same in

---

[1] The government does not make the same commitment if the Court requires it to prove that Nordean influenced another to violate their legal duty, as required by *United States v. Poindexter*, 951 F.2d 369, 379 (D.C. Cir. 1991). The FSI does not allege facts showing that Nordean committed such transitive corruption, nor has the government proffered any.

4

false-statement case where indictment did not allege "which statements he has to defend against . . . when the government knows precisely the statements on which it intends to rely and can easily provide the information"); *United States v. Espy*, 989 F. Supp. 17, 34 (D.D.C. 1997) (same where indictment did not allege "the basis of the government's allegations that the defendant solicited and received things of value for and because of official acts performed and to be performed by defendant").

Not only does the FSI fail to allege facts satisfying the unlawful-advantage standard and the *Poindexter* transitive corruption rule, the government fails even to hint at which of Nordean's unindicted acts among the "full panoply of Defendants' actions leading up to and on January 6" would satisfy the unlawful-advantage and *Poindexter* "corruptly" definitions.  The government provides no notice whatsoever of what the "corruptly" element factually entails in this case.

What was the "unlawful benefit" Nordean intended to and did receive on January 6?

Whom did Nordean influence to violate their legal duty and thereby obstruct an official proceeding?

The government's cursory treatment of the constructive amendment issue illustrates both how little thought it has put into grave charging decisions across hundreds of cases and how cavalier it is with the Court's time.  Gov't Suppl. Reply, p. 4.  It does not dispute Nordean's description of the rule from *Stirone v. United States*, 361 U.S. 212, 217 (1960), that a constructive amendment occurs where the evidence on which a defendant is tried broadens the possible bases for conviction beyond the indictment voted on by the grand jury.  Nor does the government dispute that such amendment is a "fatal error," for which prejudice is presumed. *Stirone*, 361 U.S. at 219; *United States v. Rigas*, 490 F.3d 208, 226 (2d Cir. 2007) (constructive amendment per se violation of grand jury right); *United States v. Atul Bhagat*, 436 F.3d 1140,

1145 (9th Cir. 2006) (same). Instead, the government flatly states that even if it did not present

facts to the grand jury showing that Nordean acted with the intent to obtain an unlawful

advantage for himself or an associate and that he influenced another to violate their legal duty,

that does not "implicate the type of change to a factual theory of proof at issue in *Stirone* . . ."

Gov't Suppl. Reply, p. 4. But that is not a legal argument; it is ipse dixit.

Its implicit reasoning is no more rigorous. In *Stirone*, the change in the government's

theory of liability from the grand jury stage to trial merely concerned the type of commodity

passing through interstate commerce (sand versus steel). 361 U.S. at 219. Although the Hobbs

Act charge required the government to prove the element of an effect on interstate commerce,

that jurisdictional subject was still tangential to the underlying crime at issue, extortion. *Id.* By

contrast, the meaning of the term "corruptly" lies at the heart of the government's obstruction

charge against Nordean.

The government implies that the Court requested supplemental briefing on the meaning

of "corruptly" in the context of obstruction of Congress for no reason at all. That is wrong. The

Court requested supplemental briefing because the pure legal issue can and should be resolved

now to avoid waste, to uphold Nordean's constitutionally protected liberty interest, and because

Rules 7 and 12 of the Federal Rules of Criminal Procedure and the due process and presentment

clauses of the Fifth Amendment require it.

## II. The government continues to ignore the distinction between judicial proceedings and congressional ones because its corruptly-wrongfully equation does not survive it

Nordean's response to the government's supplemental brief demonstrated that if, as the

government erroneously contends, (i) § 1512's "proceeding" does not require an investigation,

inquiry, or the administration of justice (unlike every proceeding in the history of obstruction

case law); and if (ii) subsection (c)(2) covers all obstructive acts whether or not they are intended

to affect the integrity or availability of evidence, then defining "corruptly" to mean "wrongfully" would spawn an offense that criminalizes much of ordinary legislative business. In reply, the government offers four rejoinders. Gov't Suppl. Reply, pp. 5-9. These merit only brief responses.

First, the government says, "Defendants identify no case involving Section 1512(c) or congressional obstruction prosecuted under another statute that applies the improper-advantage theory they advocate." Gov't Suppl. Reply, p. 5. Of course, the government omits that, as the authorities cited by Nordean hold, "corruptly" has been defined to mean "wrongfully" only in the context of the administration of justice, i.e., judicial proceedings or investigations, where "the advantage inconsistent with the duties and rights of others is so clear that courts have often been willing to impute the desire to obtain such advantage on a per se basis." *United States v. Reeves*, 752 F.2d 995, 999 (5th Cir. 1985) *cert. denied*, 474 U.S. 834 (1985).[2] And it fails to cite a single case predating January 6 in which the government charged either a § 1512 or § 1505 offense outside the context of the administration of justice. So, faulting Nordean for not identifying a § 1512(c)(2) case applying the improper-advantage definition turns the *ex post facto* principle on its head: it is not the government's problem that its charge lacks any precedential support—it is somehow the criminal defendant's. In any case, Nordean has cited many cases where courts have held or implied that the unlawful-advantage definition applies outside the context of tax

---

[2] The government does not contest this definition of the "administration of justice." It therefore implicitly concedes that even if it were to obtain a § 1512(c)(2) conviction, it could secure no sentencing enhancements under the U.S. Sentencing Guidelines. For virtually all such enhancements require interference with the "administration of justice." USSG, § 2J1.2. As Nordean has noted previously, this point does not just go to sentencing but to whether the government's attempt to decouple the obstruction of justice offense from investigations and evidence is legally sound—or perhaps just frivolous. The Guidelines show that the legally distinguished members of the Commission never contemplated an obstruction offense somehow divorced from investigations and evidence.

obstruction.  *See*, *e.g.*, *United States v. Aguilar*, 515 U.S. 593, 616 (1995) (jury instruction applied unlawful-advantage definition in Chapter 73 case); *Marinello v. United States*, 138 S. Ct. 1101, 1114 (2018) (Thomas, J., dissenting) (generally defining "corruptly" to "require[] proof that the defendant not only knew he was obtaining an 'unlawful benefit' but that his 'objective' or 'purpose' was to obtain that unlawful benefit.") (citing 21 Am. Jur. 2d, Criminal Law § 114 (2016)); Black's Law Dictionary 414 (rev. 4th ed. 1951) ("Corruptly" "generally imports a wrongful design to acquire some pecuniary or other advantage").

Second, the government argues that distinguishing between judicial proceedings and congressional ones—as the Court did in oral argument—is to "conflate[] the statute's *mens rea* and *actus reus* requirements." Gov't Suppl. Reply, p.  5.  That is a puzzling argument.  For only a few pages prior, the government contended that "the term 'corruptly' . . . is dependent on the context in which it appears." *Id.*, p. 2.  But it is not just the government that refutes the government's argument.

The government's cases also refute the government's argument that the "corruptly" element may somehow be defined abstractly and avoid unconstitutional vagueness without paying heed to the nature of the obstructive act and of the proceeding.  Gov't Suppl. Br., ECF No. 224, p. 6 (citing *Reeves*, 752 F.2d at 1001); p. 10 (citing *Aguilar*, 515 U.S. at 616 (Scalia, J., concurring and dissenting in part)); p. 7 (citing *United States v. North*, 910 F.2d 843, 882 (D.C. Cir. 1990)).  In all of these decisions, the courts distinguish between how "corruptly" is interpreted in judicial proceedings and non-judicial proceedings, such as those in Congress. These courts were not "conflating the [obstruction] statute's *mens rea* and *actus reus* requirements."   Gov't Suppl. Reply, p. 5.  Instead, they recognized that, in the context of judicial proceedings and investigations, the equation of "corruptly" with "wrongfully" does not result in

8

unconstitutional vagueness because the act of obstructing such a proceeding is corrupt per se. *Aguilar*, 515 U.S. at 616 (citing *North*, 910 F.2d at 941; *Reeves*, 752 F.2d at 999). In contrast, where the proceeding and acts at issue cover a "broad[er] category of circumstances" than a judicial proceeding, such as obtains in a congressional proceeding, "merely prohibiting 'bad,' 'evil,' and 'improper' purposes is" void for vagueness and overbroad. *Reeves*, 752 F.2d at 999. Put another way, these decisions merely apply the simple linguistic touchstone that "meaning is use": a word such a "corruptly" takes its meaning from how it is ordinarily used (specifically, in investigations involving evidence) not from the nonce definition of an outcome-oriented interpreter.

Third, the government contends that *Reeves* and all of its progeny, on which the government itself relies, must have wrongfully identified the corrupt-act-per-se distinction in the context of judicial proceedings because "lawyers regularly act with intent to obstruct or impede [judicial proceedings] by, for example, urging their clients not to disclose documents to investigators or in response to a grand jury subpoena." Gov't Suppl. Reply, p. 6. It adds that the sensitive class of lawyers can only be saved from their fate by equating "corruptly" with "wrongfully." *Id.* This argument rests on two mistakes, both trivial. The government has failed to review the statute at issue, which exempts bona fide legal advice by a licensed lawyer from the meaning of "corruptly"—without altering its default meaning. 18 U.S.C. § 1515(c). In addition, the vague, overbroad equation of "corruptly" with "wrongfully" is not needed to rescue lawyers given that "corruptly" may be defined merely to exclude legal advice given to a client to preserve a right recognized by law, such as the privilege against self-incrimination.[3]

---

[3] This second exemption would therefore not cover a prosecutor who intentionally fails to provide exculpatory material to the defense and thereby obstructs an official proceeding.

Fourth, the government argues that the Court should not follow *Reeves*'s distinction between obstructive acts in judicial proceedings and in non-judicial proceedings because the Supreme Court later imposed the obstruction of justice requirement in *Aguilar* that there be an intended nexus between the obstructive act and the proceeding at issue. Gov't Suppl. Reply, p. 7. That is a non sequitur. The concern animating *Aguilar*'s nexus requirement has nothing to do with the distinction in *Reeves* and its progeny as well as in *North-Poindexter*. The so-called nexus rule merely requires the government to prove that when the defendant committed the charged act he did so with the intent to obstruct the specific proceeding at issue. *Aguilar*, 515 U.S. at 600. By contrast, the concern in *Reeves* was not that the defendant's act of placing a lien on an IRS agent's home was not directed to a specific proceeding (he knew he was under a specific IRS investigation) but that the *type* of proceeding at issue was not judicial and involved a "broad[er] category of circumstances," such that equating "corruptly" with "wrongfully" would be unconstitutionally vague. *Reeves*, 752 F.2d at 1001. Thus, the point that *Reeves* "predated *Aguilar*" is lawyerly sounding nonsense. As the government's supplemental brief itself shows, much of *Reeves*'s progeny *post*dates *Aguilar*. Gov't Suppl. Br., pp. 5-6.

Finally, the government waves away the examples Nordean offered to show how dangerously vague is its novel interpretation of § 1512(c)(2), which would criminalize a great deal of legislative business. Gov't Suppl. Reply, p. 8. It is remarkable to see the government breeze through the dangerous sweep of its novel obstruction theory. In the first place, it makes no effort whatsoever to explain how or why the over 100 misdemeanor plea agreement defendants who entered into the Capitol Building on January 6 did not influence or obstruct Congress "wrongfully." It expects the Court to overlook this massive pit of arbitrariness lying at

10

the heart of the government's investigation.  Following the government down a path of willful blindness would lead to constitutional error and a defective verdict.

As for Nordean's hypothetical "lobbyist" and "former politician," the government says it has a distinction that renders their ordinary legislative activity legal even though it comes within the government's interpretation of § 1512(c)(2). Its proposed instruction

> distinguishes between a political activist whose efforts to lobby and influence evinces an intent to obstruct but not corrupt intent, and an activist who seeks to obstruct a proceeding and does so corruptly by, *for example*, offering illegal bribes, engaging in violence, committing fraud, or engaging in other independently unlawful conduct.

Gov't Suppl. Reply, p. 8. (emphasis added).

Notice that this "distinction" does not actually distinguish or define anything.  Nordean's lobbyist and former politician did not act corruptly, it says, because they did not have corrupt intent, but other defendants corruptly obstruct Congress because. . . they do so corruptly. . .if their acts fall under an arbitrary list of activities—or perhaps even if their acts fall outside those "examples." But Nordean's lobbyist did have "consciousness of wrongdoing" when he attempted to obstruct Congress's funding of gun-related fatality research.  His former politician knew he was acting "evilly" in blocking legislation providing aid to children living in poverty.  The government does not explain how they were not influencing Congress "wrongfully" under its definition of "corruptly." The lobbyist and former politician are guilty of felony obstruction of Congress, according to the government's no-investigation-no-evidence-needed interpretation, and should be prosecuted.

More confusing still, the FSI does not allege that Nordean committed any of the illustrative "corrupt" acts cited in the government's jury instruction distinction: offering bribes, engaging in violence, committing fraud.

And as for "other independent unlawful conduct," Nordean has shown that *Poindexter* forecloses the argument that one obstructs Congress "corruptly" by undertaking any obstructive act "while" committing an independent offense. Nordean Suppl. Br., ECF No. 226, p. 14 n. 6. The government does not contest this reading of *Poindexter* and the argument is forfeited. Nor does the government account for why over 100 defendants who entered the Capitol Building on January 6 were solely charged with, or entered into plea agreements concerning, Title 40 misdemeanors even though they influenced/obstructed Congress "while" committing such "independent" alleged crimes as possessing controlled substances, committing local D.C. trespass, and entering a "restricted area" under § 1752.

## III. The government's news attempts to avoid *Poindexter*'s transitive corruption requirement are not persuasive

Nordean showed that in *Poindexter* the D.C. Circuit foreclosed the government's equation of "corruptly" with "wrongfully" in the context of congressional obstruction. Nordean Suppl. Br., ECF No. 226, pp. 14-17. He also showed that *Poindexter* requires the government to prove that Nordean committed transitive corruption, i.e., that he influenced another person to violate their legal duty. *Id.* The government now posits more reasons why *Poindexter* "has no application here." They are misleading and confused. Gov't Suppl. Reply, pp. 9-13.

First, the government points out that *Poindexter* interpreted an obstruction of Congress offense under § 1505 "at a time when Congress had not yet enacted Section 1512(c)(2)." Gov't Suppl. Reply, p. 9. This temporal distinction is meaningless, as the D.C. Circuit's interpretation of "corruptly" in *Poindexter* rested on statutory grammar, the due process clause, and the nature of proceedings in Congress—all of which §§ 1505 and 1512(c) share in common—not on some nonspecific temporal distinction between 1991 (*Poindexer*) and 2000 (Sarbanes-Oxley). The government does not contend that the "corruptly" element in § 1512(c) serves a grammatical

function different from "corruptly" in § 1505. It does not. In both statutes, "corruptly" is an adverb that modifies the actus reus verbs at issue. Of course, all of the legislative history the *Poindexter* court canvassed concerning the history of obstruction of Congress offenses applies to § 1512(c) no less than to § 1505. 951 F.2d at 380-382.

Second, the government represents that *Poindexter* "expressly refrained from adopting the improper-advantage interpretation of 'corruptly' that Defendants now advocate." Gov't Suppl. Reply, p. 9. That is misleading. The D.C. Circuit did not reject the improper-advantage definition. To the contrary, the court cited with approval to Judge Silberman's concurrence in *North* as well as to *Reeves*, which adopted Nordean's definition of "corruptly." *Poindexter*, 951 F.2d at 386 (citing *North*, 910 F.2d at 881; *Reeves*, 752 F.2d at 999-1001). However, as a matter of judicial parsimony the *Poindexter* court did not reach the question because the government had not even proven that the defendant transitively obstructed Congress by influencing another person to violate their legal duty. *Id.*

Third, the government persists in falsely maintaining that Congress "overruled" *Poindexter* in § 1515(b). Gov't Suppl. Reply, p. 9. It ignores that *Poindexter*'s transitive corruption rule rests on the D.C. Circuit's interpretation of the due process clause of the Fifth Amendment via the vagueness doctrine, 951 F.2d at 377-78, and that Congress cannot "overrule" the court's interpretation of the Constitution under the *Marbury* principle. That is precisely what this Court meant in *United States v. Kanchanalak*, 37 F. Supp. 2d 1, 4 (D.D.C. 1999), where it held that it may well be the case that § 1515(b)'s vague defining of "corruptly" to mean acting

with an "improper purpose" runs afoul of *Poindexter*. The government's reply has nothing to say about *Kanchanalak*.[4]

Fourth, the government cites to cases contemplating vagueness doctrine generally. Gov't Suppl. Reply, pp., 10-12. The purpose of this legal overview is not clear. The government appears to suggest or believe that Nordean mounts a facial challenge to the term "corruptly," i.e., that he argues that all its applications are vague. That is curious, for Nordean's argument is exactly the opposite: he points out that an overwhelming body of case law has clearly defined "corruptly" in the Chapter 73 statutes—in the context of the administration of justice, i.e., judicial proceedings and investigations. He argues instead that "corruptly" is unconstitutionally vague as applied by the government to a congressional proceeding that is not an investigation and did not involve evidence. About that context the government's cases have nothing to say. But the D.C. Circuit did in *North* and *Poindexter*, where the government's vague, value-laden definition of "corruptly" was rejected in the congressional context.

The government cites to *United States v. Morrison*, 98 F.3d 619 (D.C. Cir. 1996), as though that decision supports its argument. Gov't Suppl. Reply, p. 12. It represents that the D.C. Circuit "rejected a *Poindexter*-based vagueness challenge to 18 U.S.C. § 1512(b)." *Id.* To the extent that representation implies that the D.C. Circuit declined to extend *Poindexter*'s

---

[4] The government continues its attempt to mislead the Court regarding the Supreme Court's decision in *Arthur Andersen LLP v. United States*, 544 U.S. 696 (2005). Gov't Suppl. Reply, pp. 9-10. It says that decision held that "'corruptly' as used in Section 1512 is not vague." *Id.*, p. 10 (citing 544 U.S. at 705). The Court will notice that the passage of *Arthur Andersen LLP* at the government's pin citation has nothing to say about vagueness doctrine. Even if it did, Nordean's argument is not that "corruptly" *as used in Section 1512* is vague, i.e., his is not a facial challenge. Rather, he argues *the government's* construction of "corruptly" is vague as applied to this case (as in *Poindexter*). In any case, the government fails to address Nordean's point that *Arthur Andersen*'s proceeding involved the administration of justice—court proceedings—unlike the proceeding at issue here which involved no investigation or evidence.

transitive corruption definition to § 1512, it is seriously misleading.  For in *Morrison* the court of appeals upheld the obstruction conviction precisely because the government satisfied *Poindexter*'s transitive corruption rule, i.e., the defendant influenced another to violate their legal duty and thereby obstruct a proceeding.  98 F.3d at 630.  Indeed, the D.C. Circuit explicitly held that the *Poindexter* transitive corruption definition would extend to § 1512.  *Id.*  *Poindexter* and *Morrison* are binding law in this Court.

IV.    **The government's supplemental submission in the *Reffitt* case shows that its interpretation of § 1512(c)(2) makes surplusage of large portions of Chapter 73**

In the past six years, the Supreme Court has twice rejected the government's overbroad interpretations of "catchall" or "residual" clauses in obstruction of justice statutes.  *Marinello*, 138 S. Ct. at 1101; *Yates v. United States*, 574 U.S. 135 (2015).  In both cases, the Court rejected the government's argument that redundancy in other obstruction statutes created by its overbroad catchall interpretation was "mere overlap."  *Marinello*, 138 S. Ct. at 1107-08 (While "[s]ome overlap in criminal provisions is, of course, inevitable," the Court had not seen "overlap and redundancy to the degree that would result from the Government's broad reading of § 7212").

The government's construction of § 1512(c)(2) is far broader than its interpretations in *Marinello* and *Yates*.  The government claims that subsection (c)(2) is the only provision in § 1512—titled "Tampering with a witness, victim or informant"—criminalizing acts that need not intend to affect the integrity or availability of any kind of evidence, whether documentary or testimonial, such as the act of appearing in the Capitol without permission.  To appreciate the extremity of the government's interpretation, the Court should notice that some January 6 defendants are charged under § 1512(c)(2) who merely protested outside the Capitol, did not enter the building and are accused of no violence or property destruction. *See*, *e.g.*, *United States v. Felipe Martinez*, 21-cr-392 (D.D.C. 2021).  Of course, the government contends that (c)(2)

15

*also* covers all acts that do intend to affect the integrity or availability of evidence in a proceeding.

The government recently attempted to show that its construction of § 1512(c)(2) does not render useless the rest of § 1512 and other statutes in Chapter 73. *United States v. Reffitt*, 21-cr-32-DLF, ECF No. 71 (D.D.C. 2021). It failed to succeed.

**Section 1512.** If subsection (c)(2) criminalizes any act that obstructs an official proceeding, not just subsection (c)(1) but the rest of § 1512 is redundant. The government does not even attempt to salvage (c)(1) from its overbroad interpretation of (c)(2). ECF No. 71, pp. 9-11. Now follow the government's interpretive maneuvering closely, as its speciousness requires detailed unpacking:

It argues that its interpretation of (c)(2) does not "swallow" three sub-sub sections in particular: §§ 1512(a)(1)(C), 1512(a)(2)(C), and 1512(b)(3). ECF No. 71, p. 9. Notice, first, that the government makes no attempt to argue that its any-act-that-obstructs-any-proceeding construction of (c)(2) does not render useless §§ 1512(a)(1)(A), 1512(a)(1)(B), 1512(a)(2)(A), and 1512(a)(2)(B). That is because its (c)(2) interpretation plainly makes surplusage out of those provisions, all of which concern specific acts that interfere with the integrity or availability of evidence in a proceeding.

But even the government's pet sub-sub sections are not saved from oblivion. It says these are "not connected to an official proceeding" and thus its interpretation of (c)(2) does not swallow them. ECF No. 71, p. 9. Not so. When a person kills (§ 1512(a)(1)(C)), or uses physical force (§ 1512(a)(2)(C)) on, or threatens (§ 1512(b)(3)) someone to "prevent [their] communication . . .to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense. . .," this is not

unconnected to an official proceeding.  For "an official proceeding need not be pending or about to be instituted at the time of the offense." § 1512(f)(1).  The nexus element merely requires that obstruction of a *specific* official proceeding, even if merely contemplated but not instituted, be the intended outcome of the obstructive act.  Therefore, if a defendant assaults a person to prevent their communication to law enforcement of the time and location of a particular drug transaction, the nexus requirement to a specific but not-yet-instituted official proceeding may be satisfied.  Thus, the government has not avoided surplusage in §§ 1512(a)(1)(C), 1512(a)(2)(C), and 1512(b)(3).

The government's tangled attempt to show that its interpretation of (c)(2) does not "overlap" with §§ 1512(b)(1) and (2) illustrates Nordean's point perfectly.   Subsection (b)(1) criminalizes knowingly using intimidation, threats or corrupt persuasion on a person with the intent to influence, delay, or prevent "the testimony of any person in an official proceeding." The government observes:

> The knowing threats and intimidation that those provisions prohibit may sometimes be corrupt, and thus fall within Section 1512(c)(2).  But they need not be.  A defendant might, in particular, knowingly threaten or intimidate someone into avoiding full participation in a proceeding for reasons unrelated to the outcome of the proceeding.  A defendant who, for example, knowingly intimidates someone into disregarding a subpoena for an object (say, a gun) because he wishes to use the object himself (say, because he needs it for a drug deal that day), has violated Section 1512(b)(2).  But because the effect on the proceeding itself is only a tangential result of his conduct, rather than its design, he has not acted "corruptly" within the meaning of Section 1512(c)(2).

ECF No. 71, p. 10.

No part of that paragraph avoids incomprehensibility.  It is true that "a defendant who . . . knowingly intimidates someone into disregarding a subpoena for a [gun] because he wishes to use the object himself [for a drug deal] has violated Section 1512(b)(2)." But, according to the government, that defendant has not acted "corruptly" and thus there is no overlap with its any-

17

act-that-obstructs interpretation of subsection (c)(2). That is strange. For the government is simultaneously arguing that "corruptly" means any obstructive act undertaken by the defendant "while" committing an offense independent of the obstructed proceeding. Unless something dramatic has occurred at the Department of Justice in the past week, it is still a prosecutable felony offense to use a gun in facilitation of a drug deal.

The government's treatment of § 1512(d) fares no better. Subsection (d)(1) criminalizes intentional harassment of a person and thereby hindering, delaying, preventing or dissuading any person from "attending or testifying in an official proceeding." The government concedes its any-act-that-obstructs-any-proceeding interpretation of (c)(2) also "overlaps" with the crime in (d)(1). ECF No. 71, p. 10. But, says the government, "Section 1512(c)(2) requires the government to prove that the defendant acted wrongfully with the intent to obstruct a particular official proceeding, whereas Section 1512(d)(1) imposes liability where a defendant simply harasses one person with the result . . .that some other person refrain from attending or testifying at an official proceeding." *Id.* The federal government: "harassing a person is not 'wrongful.'"

Subsections (d)(2)-(4), says the government, "proscribe conduct unrelated to an official proceeding" and so there is no "overlap" with its any-act-that-obstructs construction of (c)(2). ECF No. 71, p. 10. This is the same mistake the government made with respect to §§ 1512(a)(1)(C), 1512(a)(2)(C), and 1512(b)(3). Harassment designed to prevent a person from reporting to law enforcement or a judge ((d)(2)), from arresting a person "in connection with a federal offense" ((d)(3)), or from "causing a criminal prosecution . . . to be sought or instituted" ((d)(4)) is very much conduct related to an official proceeding. Because, again: official proceedings "need not be pending or about to be instituted at the time of the offense." § 1512(f)(1).

**Sections 1503, 1505.** The government concedes that its novel construction of § 1512(c)(2) "overlaps" with §§ 1503 and 1505 but says that it "does not render them superfluous." ECF No. 71, p. 8. "Section 1503, for example, covers various forms of obstruction that interfere with the 'due administration of justice,' and thus encompass obstructive conduct outside the context of an official proceeding." *Id.* This does not make sense. Every circuit that has defined the "due administration of justice" has held that its meaning is coterminous with judicial proceedings.[5] Judicial proceedings are also "official proceedings." § 1515(a)(1)(A). More tangled still is the government's attempt at avoiding making surplusage of § 1505:

> Section 1505 prohibits the corrupt obstruction of "the due and proper exercise of the power of inquiry under which any inquiry or investigation is being had by either House, or any committee of either House, or any joint committee of the Congress." 18 U.S.C. § 1505. Such an inquiry or investigation is not necessarily an "official proceeding" whose obstruction would be prohibited by Section 1512(c)(2).

> For instance, if a congressional chief of staff directed his or her employees to falsely certify that they did not have any responsive documents in response to a request for information issued by investigators from the House Ethics Committee investigating the potential misuse of funds to pay campaign expenses, the chief of staff has likely violated Section 1505. . . But an investigation undertaken by the House Ethics Committee would not appear to qualify as an "official proceeding" for purposes of Section 1512(c)(2), thus placing the chief of staff's obstructive conduct outside the ambit of that provision.

ECF No. 71, pp. 8-9.

---

[5] *United States v. Richardson*, 676 F.3d 491, 502-503 (5th Cir. 2012) ("[O]bstructing the due administration of justice means interfering with the procedure of a judicial hearing or trial."); *United States v. Brenson*, 104 F.3d 1267, 1279-80 (11th Cir. 1997) ("due administration of justice" means "judicial procedure" and "the performance of acts required by law in the discharge of duties such as appearing as a witness and giving thoughtful testimony when subpoenaed"); *United States v. Warlick*, 742 F.2d 113, 116 (4th Cir. 1984) (defining obstruction of the "administration of justice" as acts that "thwart the judicial process"); *United States v. Rasheed*, 663 F.2d 843, 851 (9th Cir. 1981) ("administration of justice" commences with "a specific judicial proceeding").

19

The government does not explain why the "investigation undertaken by the House Ethics Committee" would not "appear" to constitute an § 1512 "official proceeding" as a "proceeding before the Congress," the provision on which it relies in this case. § 1515(a)(1)(B). It is therefore difficult to understand the government's reasoning. But if the government intends to suggest a distinction between proceedings merely "by either House or any committee of either House," § 1505, and "proceedings before the Congress," § 1515(a)(1)(B), on the ground that the former are merely constituent parts of the latter and that § 1515(a)(1)(B) requires the presence of all constituent congressional components, the government has a serious problem. For the joint session of Congress on January 6 was suspended, and the Houses ordered to separate, an hour before the first protester intrusion. 167 Cong. Rec. H77 (Jan. 6, 2021) (at 1:15 p.m. Eastern Time, the vice president directed "the two Houses [to] withdraw from the joint session" due to congressional objections to the Arizona certificate). If §§ 1512(c) and 1515(a)(1)(B) are to be distinguished from § 1505 on the ground that the former do not cover separated House proceedings unlike the latter, the government has not charged a § 1512(c) offense for intrusions into the Capitol Building between 1:15 p.m. to approximately 11:35 p.m. on January 6, when the joint session of Congress "resumed." 167 Cong. Rec. H94 (Jan. 6, 2021).[6]

Dated: December 6, 2021                                Respectfully submitted,


                                                       /s/ David B. Smith
                                                       David B. Smith (D.C. Bar No. 403068)
                                                       108 N. Alfred St.
                                                       Alexandria, VA 22314

---

[6] The government concludes by citing cases noting that statutory "overlap" is not always surplusage. ECF No. 71, p. 11. All of these predate *Yates* (2015) and *Marinello* (2018) which rejected the government's "mere overlap" arguments in the context of "catchall" or "residual" obstruction crimes, as is the case here.

Phone:(703)548-8911
Fax:(703)548-8935
dbs@davidbsmithpllc.com

Nicholas D. Smith (D.C. Bar No. 1029802)
7 East 20th Street
New York, NY 10003
Phone: (917) 902-3869
nds@davidbsmithpllc.com

*Attorneys for Ethan Nordean*

## **Certificate of Service**

I hereby certify that on the 6th day of December, 2021, I filed the foregoing filing with the

Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to

the following CM/ECF user(s):

Jim Nelson
Assistant United States Attorney
555 4th Street, N.W., Room 4408
Washington, D.C. 20530
(202) 252-6986

And I hereby certify that I have mailed the document by United States mail, first class

postage prepaid, to the following non-CM/ECF participant(s), addressed as follows: [none].

/s/ David B. Smith
David B. Smith, VA Bar No. 25930
David B. Smith, PLLC
108 North Alfred Street, 1st FL
Alexandria, Virginia 22314
(703) 548-8911 / Fax (703) 548-8935
dbs@davidbsmithpllc.com

*Attorneys for Ethan Nordean*