UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ROBERT GIESWEIN,<br><br>                Defendant. | Crim. Action No. 21-24-1 (EGS) |

**MR. GIESWEIN'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS ASSAULT CHARGES, OR FOR DISCOVERY REGARDING GRAND JURY PROCEEDINGS REGARDING THE SAME**

The government has agreed to provide a bill of particulars regarding the assault charges in Counts Two through Four. Gov't Opp. to Def. Mot. to Dismiss, ECF No. 70 at 1; *see also id.* at 1-2 (stating that the government will provide the "identities of the officers involved in the three incidents"); 4 ("To the extent the defendant remains confused about the assaults with which he is charged, that confusion can be cured through additional discovery and/or a bill of particulars regarding the identities of officers."). However, the balance of the government's response only reinforces the need for the Court to dismiss Counts Two and Three, or at least permit discovery about the grand jury proceedings relating to the assault counts.

**I.  The government has not dispelled the impression that it has yet to identify specific law enforcement officers targeted by the alleged assaults charged in Counts Two and Three.**

The government continues to deepen the impression that it had not identified victims of the assaults charged in Counts Two and Three.

First, the government rightly points out that there is a particular officer identified, by his or her initials, as the target of the alleged assault charged in Count Four of the Indictment. ECF No. 70 at 3 n.1 (noting that undersigned counsel inadvertently stated that all three assault counts used identical language); *see* Indictment, ECF No. 3 (alleging an assault of Officer with initials "N.V."). But this only highlights the omission of any similar detail in Counts Two and Three. Indeed, the Indictment shows that when the government had evidence that an *identified person* was actually targeted by Mr. Gieswein's alleged spraying conduct, and that this person was a *law enforcement officer*, the government provided that information to the grand jury, the grand jury considered it, and the grand jury found probable cause on that basis. The omission of similar detail in Counts Two and Three, especially when coupled with the incomplete videos the government relies upon to prove those counts, and the absence of supporting witness statements in discovery, suggests that the government *did not* present such information to the grand jury when it sought an indictment on those Counts.[1]

Second, in response to the defense's motion for a bill of particulars regarding the obstruction charge in Count One, the government offered greater detail about the theories underlying that charge. ECF No. 73; *see also* ECF No. 74 at 16-17. Similarly,

---

[1] The government asserts that video "depicts the unlawful conduct at issue for Counts Two and Three." ECF No. 70 at 4. But the government never disputes the defense's point that "they do not show that any spray made contact with or even landed near any particular officer during either of the incidents the government's correspondence described, let alone the identity of any officer who would claim to have been assaulted by the spray," or that the same is true for Count Three. Def. Mot. to Dismiss Assault Counts, ECF No. 61 at 17-18.

in response to the instant motion, the government collected and synthesized some detail about the time and place of the three alleged assaults that can be gleaned from assertions it has made in litigation regarding detention, or from discovery. ECF No. 70 at 9. But, in striking contrast, the government's response fails to identify (by initials or otherwise), the law enforcement officers allegedly assaulted as charged in Counts Two and Three.

Third, although the government promised in its December 24, 2021 response to provide a bill of particulars, the government did not state in its response when it would do so, has yet to do so, and still has not produced one, nearly five weeks after the defense filed its motion. Indeed, as of January 8, the government could only promise "something" relating to a bill of particulars sometime before January 19. This is further evidence that although the government may be working hard to identify alleged victims of the assaults described in Counts Two and Three, it has not yet done so, or at least it had not done so at the time that Mr. Gieswein was indicted.

Indeed, the government never asserts that the grand jury did have specific officers in mind when it indicted, and even seems to allow that "it is possible that the grand jury was not provided with the identities of those officers[.]" ECF No. 70 at 10 (arguing that this possibility is not grounds for dismissal).

## II. Mr. Gieswein must be able to distinguish the alleged victims from the crowd.

The government argues that this is all of no moment because the names of officer-victims are not essential elements of proof of 18 U.S.C. § 111(a) & (b). That may be, but the government must prove their status, *i.e.,* that the victim or victims

of the assaults charged actually was a law enforcement officer (or were officers). Further, given that the government alleges that Mr. Gieswein sprayed officers in the midst of a mob made up of many law enforcement officials and civilians, identification of law enforcement officers by their names or initials in the indictment is the only way to ensure that he knows what he is defending against, to ensure that he is defending against the charges for which the grand jury found probable cause, and to protect against double jeopardy.

*United States v. Miller,* 883 F.3d 998, 1003 (7thCir. 2018), relied upon by the government, is not to the contrary. In that case, the indictment charged aggravated identity theft. The Seventh Circuit did indeed find that the indictment need not identify the person whose identity the defendant possessed, as the government notes. ECF No. 70 at 5. However, this finding rested on the conclusion that the indictment included "limiting detail, including the time frame in which he committed the offenses, language of the pertinent criminal statutes, and detailed means by which Miller committed these offenses." *United States v. Miller*, 883 F.3d 998, 1003 (C.A.7 (Ill.), 2018). That is not the case here; equally limiting detail about Counts Two and Three is not provided in the Indictment. Moreover, whereas aggravated identity theft requires the government to prove nothing in particular about the victim of an offense, the government must prove that the victim of an alleged § 111(a) assault was indeed a law enforcement officer, so exactly who the alleged victim is an essential element of the crime.

In addition, nothing in *Miller* suggests that there was a mob of people surrounding the defendant at the time of his / her offense, constituting a huge universe of potential targets of Miller's actions, as is the case here. Thus, the effect of knowing the "the time frame" and "detailed means" the government would rely on was much more powerful in *Miller* than it is here. Finally, in *Miller*, there was not evidence that the government had not identified the victims in question, as there is here. Indeed, in that case, "the government provided Miller with the names of the victims in pretrial disclosure." *Id.* That has yet to happen here, and the government has not refuted the evidence that it has yet to identify victims of the assaults charged in Counts Two and Three.

*United States v. Mendez-Colon*, 417 Fed. Appx. 320 (4th Cir. 2011), another case relied on by the government (this one unpublished), ECF No. 70 at 5, is also distinguishable, on similar grounds. In *Mendez-Colon*, the charge at issue was assault within the special territorial jurisdiction of the United States, under 18 U.S.C. § 113(a)(2), which prohibits assaults of *any person* in federal property, no matter their position or what they were doing. Again, the Court affirming failure to dismiss those counts for want of particularity relied on the fact that the indictment, "by identifying the date and location of the assault, did so with sufficient specificity to put Mendez–Colon on notice as to the conduct at issue." 417 Fed. Appx. at 321-22. Moreover, that case concerned just two discrete events, and, as in *Miller*, there is no indication in the case that there was a mob surrounding the defendant at the time of the offense, making it difficult for him to assess whom the government would claim was a victim.

5

Finally, the reviewing court emphasized that "the record [made] it clear the charged conduct related to the assaults of . . . two inmates and specifies the count relating to each inmate." *Id.*

As for *United States v. Figueroa*, the government claims that, in this Section 111(a) case, the trial court "rejected a similar Rule 12 argument," ECF No. 70, but this is not so. In that case, the defendant argued that the indictment was insufficient because the Section 111 count against him "does not directly mention 18 U.S.C. § 1114, the statute that Section 111 points to for the definition of what types of employees are protected under Section 111." *United States v. Figueroa*, 2021 WL 1661202, at *8 (D.N.J., 2021). That is not Mr. Gieswein's claim. Moreover, the indictment in that case identified a specific victim, albeit by a unique identifier (Victim 2) rather than initials. In addition, the indictment only charged a single count of assault of a federal officer, and, again, the Court's discussion does not suggest that the defendant would have any reason to question whether the government had actually identified an actual federal officer as a victim, or that the factual circumstances created a realistic chance that the defendant might be confused or uncertain about whom the government would claim was the pertinent victim – as is the case here.

**III.    The government fails to refute that the lack of specifically-identified law enforcement officers raises the risk that Mr. Gieswein could be prosecuted on a theory different than that underlying the grand jury's charges, in violation of the Fifth Amendment.**

The government's argument that there is nothing wrong with the Indictment because the "name" of officer victims is not an element of the offense, and not core to

6

the criminality, is an attempt to evade the real issue. That the victim has, or the victims have, the *status* of federal law enforcement officer *is* an element of the offense, as the government concedes. ECF No. 70 at 5. Where, as here, the alleged assaults took place in an enormous crowd of both civilians and law enforcement, in which law enforcement and allegedly some civilians possessed aerosol sprays, and especially where the videos that the government points to do not show exactly whom (if anyone) was targeted by a particular spray, the Sixth and Fifth Amendments demand that a particular individual be identified in the charge so that the defendant can distinguish the alleged victims from the crowd and test the government's theory that he was aiming to assault a person of the requisite status, and so that the government is wedded to the theory on which the grand jury indicted.

Given that the government has agreed that it will – someday – provide the defense with a bill of particulars identifying the alleged victims of Counts Two and Three, the key remaining question before the Court is whether the Indictment and surrounding circumstances suggest that there has been a violation of Mr. Gieswein's Fifth Amendment right not to be held to answer for crimes the grand jury has not identified. That is, even if an eventual bill of particulars enables the defense to prepare to defend against the government's theories at trial and protect against double jeopardy, there remains the problem that the indictment provides no assurance that the government's theories in its eventual bill of particulars and at trial will be "the same as those adopted by the grand jury," or assurance against

double jeopardy. *Hillie*, 227 F. Supp. 3d at 77 (discussing right to be tried only on charges found by grand jury), 78 (discussing right against double jeopardy).

Count Four serves to illustrate the problem with Counts Two and Three. Count Four, which identifies a particular individual (by name), makes it very clear exactly whom the grand jury believed was the target of that offense: "N.V." ECF No. 3. Once Mr. Gieswein has more information about N.V. (as the government has promised he will have), he will be able to investigate whether this person is in fact a law enforcement officer (an element of the offense), and consider the evidence that this particular person was the actual target of Mr. Gieswein's alleged conduct (as the statute requires), consider whether anything this person did justified any of Mr. Gieswein's actions, and consider whether anything in this person's background would help to impeach him or her, etc.

That Count Four identifies a particular individual also communicates that the *grand jury* believed that N.V. was a law enforcement officer, and that it was Mr. Gieswein's conduct *toward that particular person* while he or she was engaged in or on account of the performance of official duties *that the grand jury concluded* was an assault with a dangerous weapon under § 111, supporting a charge. Thus, that N.V. is identified in the Indictment will also ensure that the government cannot now decide for whatever reason to shift focus from N.V., and obtain a conviction on this count with evidence of a different alleged assault than that found by the grand jury. Thus, the identification of the law enforcement officer provides assurances that, at

8

least with respect to Count Four, Mr. Gieswein will not be convicted of an assault that the grand jury did not charge.

The Indictment provides no equivalent assurance with regard to Counts Two and Three. A bill of particulars might help address the lack of notice in the Indictment, but it cannot cure this Fifth Amendment concern. Indeed, the lack of particularity in the Indictment would allow the government to decide now, a year after indictment, to list any officers it wants to in a bill of particulars, and to put on a case that Mr. Gieswein's conduct was directed toward a certain official or group of officials without any regard to whom exactly it was that the *grand jury* believed was assaulted for purposes of Counts Two and Three. The Fifth Amendment does not allow that.

The government misses the mark in claiming that the holdings in *United States v. Russell* and *United States v. Hillie* do not support his claim. The government claims that *Russell* is inapposite because the "deficiency in the *Russell* indictment went to the core of the criminal conduct – in that case, the subject matter under inquiry from Congress, and Counts Two and Three do allege the core criminal conduct, an assault on federal law enforcement officers. ECF No. 70 at 8.

But the core criminal conduct addressed by the indictment in *Russell* was not, as the government claims, the subject matter under injury; the core criminal conduct was what the defendant allegedly did: he refused to answer congressional inquiries that were allegedly pertinent to the matter under inquiry. Knowing what the grand jury determined to be the subject matter under inquiry was simply necessary for

9

anyone to assess whether the defendant's refusal to answer actually violated the law. The indictment in that case alleged that the defendant's refused to answer a question pertinent to a matter under inquiry – parroting the language of the statute – and the Supreme Court acknowledge that this is normally sufficient. *Russell*, 369 U.S. at 764.

But the Court went on to make clear that there are circumstances in which parroting the statute does not suffice to protect against trial on a different theory than that underlying the grand jury's charge. In *Russell,* those circumstances were that the "subject matter under inquiry" element (upon which hinged the question of whether defendant's refusal was illegal) was typically undefined, and capable of being framed or characterized in multiple ways. *Russell*, 369 U.S. at 766. The Supreme Court found that if such an indictment did not make clear which of those ways the grand jury relied upon, the theory of prosecution could shift from the theory adopted by the grand jury when it indicted, and even allow a defendant's "conviction to rest on one point and the affirmance of the conviction to rest on another. It gives the prosecution free hand on appeal to fill in the gaps of proof by surmise or conjecture." *Russell*, 369 U.S. at 767 (noting that, in one case under review, "at trial the Government took the position that the subject under inquiry had been Communist activities generally," but later on appeal, "the Government contends that the subject under inquiry at the time the petitioner was called to testify was 'Communist activity in news media.'").

In *Hillie*, the circumstances that rendered a mere parroting of the statute insufficient to satisfy the Fifth Amendment included the fact that the indictment

10

alleged multiples of an identical charge. *Hillie,* 227 F.Supp.3d at 70. The court concluded: "The bottom line is this: if a criminal indictment is going to be drafted to provide adequate notice, to preserve the role of the grand jury, and to avoid the risk of double jeopardy—as the Constitution demands—then 'the defendant, the judge, and the jury must be able to tell one count from another.'" *Hillie*, 227 F. Supp. 3d at 80. There was nothing in the opinion to suggest that this holding was limited to complicated statutes, as the government argues. ECF No. 70 at 7.

The same circumstance exists here. But there is yet another factor that makes it necessary for the indictment to do more than parrot the statute (as may be permissible in another case): the assaults alleged in Counts Two and Three each took place at a moment in which Mr. Gieswein was in a sea of people, many of whom were law enforcement officers, anyone of whom the grand jury might have had in mind (assuming it was property instructed, as discussed below). Unconstrained by the language in Counts Two and Three, the government could easily proceed at trial on a theory at odds with, or not considered by, the grand jury.[2]

A bill of particulars might provide notice of what theory the prosecution intends to put forward at trial, but it cannot not inform Mr. Gieswein, this Court, or

---

[2] In contrast, there was little risk of this in *Miller*, *Melendez-Colon*, and *Figueroa*, upon which the government relies, ECF 70 at 5 (discussing *Miller*, 883 F.3d 998, *Mendez-Colon,* 417 Fed. Appx. 320, and *Figueroa*, 2021 WL 1661202, at *8). Those cases "do not consider a situation in which there were numerous unidentified potential victims," as Judge Mehta recognized in a case previously cited by Mr. Gieswein, and as reflected in their descriptions *supra*, in Section II. *See* Order, *United States v. James*, 21-CR-28-AJT at ECF No. 415 (filed Sept. 14, 2021) at 9; ECF No. 61 at 20 (discussing same).

11

a future court about what theory the grand jury indicted blessed. The government never actually asserts that the Indictment is sufficient to ensure that Mr. Gieswein is not convicted for different assaults than assaults found by the grand jury, and it is not. Accordingly, respectfully, the Court should dismiss Counts Two and Three.

**IV.   The government has not refuted the evidence that discovery is necessary to determine whether the grand jury was properly charged.**

Further, the absence of some way to identify the alleged victims the grand jury had in mind in voting on Counts Two and Three leaves too much doubt about what the grand jury concluded with regard to essential elements of the offense: that the victim was a federal law enforcement officer, *and* that the spray was a dangerous weapon. The government states that the fact that no particular law enforcement officer in the crowd is identified in Counts Two and Three is of no moment because "the government does not need to show that the spray the defendant used actually reached the federal officers." ECF No. 70 at 10. But the government concedes that it must show that the defendant "spray[ed] *at* officers," *id.* at 11 (emphasis added). And to prove a *felony* assault stemming from an incident in which the spray did not actually reach an officer, the government must prove more than a "simple assault," and specifically that he "*used* a dangerous weapon" when "spraying at officers" as alleged in Counts Two and Three. *United States v. Duran*, 96 F.3d 1495, 1511 (D.C. Cir. 1996) ("[W]here the acts in violation of [the] section constitute only simple assault," § 111(a) states that the maximum sentence of imprisonment is one year rather than three. Under § 111(b), however, "the use of a deadly or dangerous weapon [is] sufficient ... to boost the crime above the level of 'simple assault.'"); *Arrington*, 309

F. 3d at 43 n.3 (quoting *Duran*). This, in turn, will require proof that the aerosol spray or bat were "either inherently dangerous or . . . *used in a way that* [*was*] likely to endanger life or inflict great bodily harm," to quote the government. Gov't Opp. to Def. Mot. to Revoke Detention, ECF No. 19 at 19 (citing *United States v. Chansley*, 2021 WL 861079 at *7) (D.D.C. 2021) (Lamberth, J.)) (emphasis added).

For the grand jury to have found probable cause that the spraying alleged in Counts Two and Three was likely to endanger life or inflict great bodily harm on a law enforcement officer, the grand jurors would necessarily have to had to identify a specific officer or officers who were the target of those sprayings. Otherwise, the grand jurors could not have assessed whether the spraying at such people (if that was found) was done in a way that was likely to engager life or inflict great bodily harm. For example, even assuming the spray was an irritant (as the government alleges), spraying a small amount way above a law enforcement officer's head in the open air could not meet that standard. Spraying a small amount at a law enforcement officer's knee could not meet that standard. Spraying a lot of it directly in the face of a civilian far away from a law enforcement officer could not meet the standard. Spraying at a crowd of law enforcement officers and civilians from so far away that the spray could not have realistically gotten near them could not meet that standard.[3]

---

[3] Thus, cans of aerosol irritant sprays are not, as the government suggests, analogous to firearms, which are inherently dangerous if discharged. *See* ECF No. 70 at 11 (arguing that the logical conclusion of an argument of Mr. Gieswein's about such sprays is that one who shoots at an officer may not be guilty of assault with a dangerous weapon). No matter where a bullet makes contact, it is likely to *at least* "inflict great bodily harm." But whether a can of aerosol spray is likely to cause great bodily harm depends a great deal on how much of its ammunition (aerosol spray)

13

This means that mere proof that a defendant sprayed a purported irritant spray *in the vicinity* of law enforcement officers does not prove a felony assault. To find probable cause that discharging an aerosol spray can was a *felony* assault, the grand jury must have analyzed exactly how the spray can was deployed *vis a vis* a *specific* law enforcement officer or officers.

Here, although the videos the government points to as support for Counts Two and Three provide evidence that law enforcement officers were in the vicinity when Mr. Gieswein purportedly discharged an aerosol spray, the videos show neither the spray landing, nor who was "on the other end" of the alleged spraying, nor how far they (and their faces) were from the spraying. No interviews support these charges, to the knowledge of the undersigned. As such, it is doubtful that the grand jury could have been in a position to assess whether the can was *used in a way likely to cause great bodily harm*.

And yet the grand jury indicted. This – combined with the evidence that the government had not identified specific alleged victims for those counts at the time of indictment – strongly suggests that the grand jury was satisfied that spraying a purported irritant spray in the vicinity of law enforcement officers is a felony assault, which suggests that they may not have been properly informed of the elements of the offense.

---

lands, and where it lands, and the environment in which it was sprayed (not to mention what is in the can). As such, it is not necessarily the case that discharging a can of such spray and missing constitutes a felony assault.

In sum, if the Court does not dismiss Counts Two and Three, then it should order discovery to ensure that the government does not prosecute Mr. Gieswein on a different theory than that adopted by the grand jury, and to ensure that the grand jury was properly charged.

## CONCLUSION

For all of these reasons, those previously given, and such others as may be advanced at a hearing on this matter, Mr. Gieswein respectfully requests that the Court dismiss counts Two and Three, or order the government to disclose transcripts of the grand jury proceedings relating to the assault counts.

Respectfully submitted on January 11, 2022.

    **ROBERT GIESWEIN**
    by counsel:

    Geremy C. Kamens
    Federal Public Defender for the
    Eastern District of Virginia

    by:_____s/_____
    Ann Mason Rigby
    DC Bar No. 491902

    Elizabeth A. Mullin
    DC Bar No. 484020

    Assistant Federal Public Defenders
    1650 King Street, Suite 500
    Alexandria, Virginia 22314
    Telephone: (703) 600-0800
    Facsimile: (703) 600-0880
    ann_rigby@fd.org
    elizabeth_mullin@fd.org