UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ROBERT GIESWEIN,<br><br>          Defendant. | Crim. Action No. 21-24-1 (EGS) |

**MR. GIESWEIN'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS OBSTRUCTION CHARGE IN COUNT ONE**

Mr. Gieswein, through undersigned counsel, acknowledges that several of this Court's colleagues have recently denied motions to dismiss charges of obstruction under 18 U.S.C. § 1512(c)(2). *See* Memorandum Opinion, ECF No. 63, *United States v. Sandlin, et al.*, 21-CR-88 (DLF) (hereafter "*Sandlin* mem. op."); Memorandum Opinion, ECF No. 558, *United States v. Caldwell et al.*, 21-CR-28 (APM) (hereafter "*Caldwell* mem. op."); Memorandum Opinion, ECF No. 263, *United States v. Nordean et al.*, 21-CR-175 (TJK) (hereafter "*Nordean* mem. op."); Memorandum Opinion, ECF No. 87, *United States v. Montgomery, et al.*, 21-CR-046 (RDM) (hereafter "*Montgomery* mem. op."); Memorandum Op., ECF No. 88, *United States v. Mostofsky*, 21-CR-138 (JEB) (hereinafter "*Mostofsky* mem. op.").

Mr. Gieswein nevertheless maintains his objections to application of the statute to this case (and to any case, because it is vague on its face), and adopts the objections the defendants in those cases made (which are described in some detail in the foregoing opinions). In particular, he adopts the arguments made by the defense in the *Montgomery* case, as well as the supplement filed in that case to address the

*Sandlin* memorandum opinion. *See* ECF Nos. 66, 77, 83, 84, and 85 in *United States v. Montgomery, et al.,* 21-CR-046 (RDM) (attached hereto as exhibits).[1] He also notes the following in support of his motion.

I.  **The various definitions for "corruptly" emerging in this district demonstrate how vague the term remains.**

This Court's colleagues do not disagree that, in the abstract, "corruptly" is somewhat vague, and acknowledge that many of words often used to define it are of little help. *See, e.g., Sandlin* mem. op. at 23 ("But defining 'corruptly' to involve 'wrongfulness' presents a closer question because it may be subject to the same infirmities that *Poindexter* found in the words 'immoral' and 'improper'.") (citing *Poindexter*, 951 F.2d 369, 379 (D.C. Cir. 1991); *Caldwell* mem. op. at 19 (noting that *Poindexter* provided that "'the word 'corruptly' is vague" and that, "in absence of some narrowing gloss, people must 'guess at its meaning and differ as to its application'"); *Mostofsy* mem. op. at 21 (adopting reasoning of both *Sandlin* and *Caldwell*).

So far, though, the courts have found that that "judicial gloss" provides further, and sufficient, definition to the word "corruptly." But they do not agree on what that gloss provides. That is, all appear to agree that "corruptly" requires proof of intent to obstruct an official proceeding, and that there must be some "nexus," a relationship in time, causation, or logic," between the defendant's actions and the official

---

[1] Note that both parties submitted filings from other cases in *Montgomery,* so some of these originated in other cases.

proceeding in question. But they do not all agree on the rest of the definition of "corruptly," or arrive at their conclusion exactly the same way.

Judge Friedrich appears to conclude that judicial gloss provides notice that proof that a defendant acted "corruptly" also must include proof that he acted "wrongfully." *Sandlin* mem. op. at 23. The court finds that "in considering the meaning of "corruptly" (or wrongfully), courts have drawn a clear distinction between lawful and unlawful conduct," drawing "a line that is consistent with the definition of 'wrongful': that is contrary to law, statute, or established rule." *Id.* at 24 (internal citations omitted). This meaning, and judicial opinions, according to this court, "identify a core set of conduct against which § 1512(c)(2) may be constitutionally applied – 'independently criminal' conduct . . . that is 'inherently malign'," in addition to being intended to obstruct a proceeding with which it has a nexus. *Id.* at 24. Thus, Judge Friedrich concludes that the statute is not vague as applied against the defendants accused of illegal conduct intended to obstruct an official proceeding, at least so long as it is inherently malign. *Id.* It appears that Judge Friedrich allows that more may fall within the definition of "corrupt," but the court has declined to determine its outer limits. *Id.* at 25.

In the *Nordean* case, Judge Kelly appears to follow the logic of *Sandlin*, concluding that corruptly means at least "intentionally" and "wrongfully" and that the defendants in that case are alleged to have so-acted because they allegedly used "unlawful means." *Nordean* mem. op. at 22. However, Judge Kelly seems to be more open to the notion that unlawful purposes, as opposed to unlawful means (such as

3

breaking the law) can satisfy the "wrongfulness" prong perceived as a limitation on the meaning of "corrupt" in section 1512(c)(2). *Nordean* mem. op. at 24-25.

Judge Boasberg also closely follows Judge Friedrich's rationale, in *Mostofsky*. However, that court interprets *Sandlin* to stand for the proposition that "corruptly" *requires* "that defendants acted '*unlawfully*, and with the intent to obstruct, impede, or influence an official proceeding." *Mostofsky* mem. op. at 23 (emphasis added).

Judge Mehta takes yet another view of what the "judicial gloss" provides. In *Caldwell,* Judge Mehta concludes that case law provides notice that "corrupt" action involves "conscious wrongdoing" undertaken with specific intent to obstruct a congressional proceeding. *Caldwell* mem. op. at 23-25. But apparently not all conscious wrongdoing suffices, per this opinion: whereas preplanning to obstruct, wearing paramilitary gear, forcible trespass and assault, and coordinated movement through the Capitol would apparently qualify, "mere . . . trespass" apparently would not. *Id*. at 27. Thus, Judge Mehta perceives an extra limitation on what it means to act corruptly (*i.e.*, it includes consciously violating crimes at least more serious than trespass), just as Judge Friedrich's did (*i.e.*, it includes conduct that is both unlawful and "inherently malign").

In *Montgomery*, Judge Moss appears to follow Judge Mehta's reasoning, finding that case law preceding and following *Poindexter* provides notice that, to prove a defendant acted corruptly, the government must establish intent to obstruct an official proceeding, and "consciousness of wrongdoing." *Montgomery* mem. op. at 45. However, Judge Moss allows that there could be further requirements, including

4

proof that the defendant used "some unlawful method" and acted "with the hope or expectation of a benefit to oneself or a benefit to another person." *Id.* at 48 n.5 (internal citations omitted)).

For its part, the government also states that proof that one acted "corruptly" for purposes of the statute requires "consciousness of wrongdoing," including, but not necessarily limited to, wrongdoing that was independently unlawful. ECF No. 74 at 26, 27.

These various spins on just what it means to act "corruptly" under Section 1512(c)(2) demonstrate that the defendants in all of these cases are right that the law was *not* so clear about what "corruptly" means, and that neither the text nor the judicial gloss on it provided them with sufficient notice that it could be applied against their conduct.

II. **If the judicial gloss does give notice of what "corrupt" means in this context, it provides that "corruptly" entails an element of dishonesty not alleged in the Indictment against Mr. Gieswein.**

Both the government and the Court's colleagues put a great deal of emphasis on *Arthur Andersen LLP*. Among the problems with this is that the Supreme Court was not analyzing Section 1512(c) in that case. Another is that the Court did not say in that case that to "corruptly" necessarily connotes consciousness of wrongdoing, as Judge Mehta's decision suggested in *Caldwell*. To the contrary, the Supreme Court's definition of "corrupt or corruptly" standing alone – unmodified by "knowingly" – employed just the sort of other vague terms disapproved of in *Poindexter*. *Arthur*

5

*Andersen*, 544 U.S. at 705 (stating that the words are "normally associated with wrongful, immoral, depraved, or evil").

Instead, in *Arthur Andersen,* the Court considered what it means, under Section 1512(b)(2)(A) and (B) to "'*knowingly* . . . . corruptly persuad[e]' another person "with intent to cause" that person to 'withhold' documents from, or 'alter' documents for use in, an 'official proceeding.'" *Arthur Andersen*, 544 U.S. at 703 (emphasis added). And its decision that this meant to act with consciousness of wrongdoing had everything to do with that former word – knowingly – which *does not appear in the statute at issue in this case*. It was the "joining" of the usual meanings of "corruptly" and "knowingly" – to mean "conscious wrongdoing" – that defined the *mens rea* for the Supreme Court in *Arthur Andersen*, and which led the Court to conclude, albeit in passing, that the statute was sufficiently limited. *Id.* at 706 ("And limiting criminality to persuaders conscious of their wrongdoing sensibly allows Section 1512(b) to reach only those with the level of "culpability . . . we usually require in order to impose criminal liability." (citations omitted)). The Court never suggested in that case that "corruptly" in itself implies knowingly unlawful conduct, and never suggested that "corruptly" – unmodified by "knowingly" or some other word – is not unconstitutionally vague.

Third, both the government and the courts employing *Arthur Andersen* to support the conclusion that citizens are on notice of what Section 1512(c) prohibits – and to conclude that the statute is not vague as applied to Mr. Gieswein and others charged in the wake of January 6 – pick and choose their preferred portions of that

6

decision. Specifically, they disregard the fact that, in that case, the Supreme Court appeared to endorse an interpretation of "corruptly" that includes an element of dishonesty. The Court noted disapprovingly that the lower court in that case (which concerned Section 1512(b)) had omitted the word "dishonesty" from the jury instructions defining "corruptly." *See Arthur Andersen*, 544 U.S. at 707. So, if this case did anything to help cabin the definition of "corruptly," this was it.

Indeed, following *Arthur Andersen,* more than one Court of Appeal has read the term "corruptly" for purposes of Section 1512(c)(2) to require not only intent to interfere with the due administration of justice (as the defense has previously argued) but also a showing of both "improper purpose" *and* "dishonesty." *See United States v. Gordon*, 710 F.3d 1124, 1151 (10th Cir. 2013) ("Acting 'corruptly' within the meaning of [Section] 1512(c)(2) means acting 'with an improper purpose and to engage in conduct knowingly *and dishonestly* with the specific intent to subvert, impede or obstruct the [proceeding].") (emphasis added); *United States v. Friske*, 640 F.3d 1288, 1291 (11th Cir. 2011) (emphasis added) (same).

This Court's colleagues do not appear to have adopted this requirement apparent from the "judicial gloss" on "corruptly" since *Poindexter*. But if *Andersen* and this progeny provide sufficient gloss to narrow Section 1512(c)(2), then Count One is vague as applied to the conduct alleged in Count One against Mr. Gieswein, as it does not allege (and the government has never claimed) that Mr. Gieswein's actions were dishonest in any way, providing further grounds for the Court to dismiss.

### III. This Indictment does not allege conduct meeting any of the standards set forth in the decisions on the application of Section 1512 to the events of January 6 to date.

Count One charges that Mr. Gieswein violated the statute "by entering and remaining in the United States Capitol without authority, committing an act of civil disorder, and engaging in disorderly and disruptive conduct." ECF No. 3 at 1. Count One does not allege that Mr. Gieswein's civil disorder and disorderly and disruptive conduct violated the law, and even if it did, it does not allege that Mr. Gieswein knew this, and thus acted with "consciousness of wrongdoing," or that it was otherwise "wrongful." It certainly does not allege that his conduct was "inherently malign." And although the count charges an illegal trespass insofar as it alleges an entering and remaining without authority, that is a "mere trespass," and the Indictment does not allege that any such trespass was done with "consciousness of wrongdoing, " or that it was "inherently malign." Accordingly, neither the Court's colleagues' opinions, nor the government's arguments, foreclose Mr. Gieswein's arguments that the statute is vague as applied to the allegations in Count One.

### IV. The electoral vote count does not qualify as an official proceeding even if this Court's colleagues are correct regarding the scope of that definition.

The Court's colleagues have all ruled that the vote count on January 6, 2021 was a "proceeding before Congress" and therefore qualified as an "official proceeding" under 18 U.S.C. § 1512(c)(2). But none of the decisions consider whether the electoral vote was a "proceeding" at all under any definition.

To date, no court has analyzed the ceremonial and predetermined nature of the electoral count, and how that predetermination is antithetical to the vote count

8

being considered a "proceeding" or "hearing." The *Sandlin* court ruled that a "proceeding" need not be "court-like" and did not require the "administration of justice." *Sandlin* mem. op. at 7-9. [2] The *Caldwell* and *Montgomery* courts ruled that an "official proceeding" means "the business conducted before an official body." *Caldwell* mem. op. at 8-10; *Montgomery* mem. op. at 13, 19. And the *Nordean* court had the broadest interpretation ruling that an "official proceeding" is a "series of actions" that requires "some formal convocation." *Nordean* mem. op. at 11. The *Mostofsky* court adopts the reasoning of both *Sandlin* and *Caldwell*. *Mostofsky* mem. op. at 21-22.

In reaching those determinations, these courts left a crucial part of the definition of "proceeding" out of its analyses. *See Caldwell* mem. op. at 9; *Nordean* mem. op. at 11; *Montgomery* mem. op. at 11. Black's Law Dictionary defines "proceeding" to be "the business conducted by a court or other official body; *a hearing*." (11th ed. 2019) (emphasis added). The word "hearing," which was left out of the three courts definitions, provides crucial context to the definition of "proceeding" by requiring something more than a "formal convocation" or "business conducted before an official body."

Also not considered by these courts is whether the Joint Session is not a "proceeding" at all under any definition because the statute governing the Joint

---

[2] The *Sandlin* court did, however, rule that an official proceeding must be akin to a hearing. *Id*.

9

Session, 3 U.S.C. § 15, repeatedly makes clear that the Joint Session is simply a "meeting" of both Congressional bodies:

> The Senate and House of Representatives shall **meet** in the Hall of the House of Representatives . . . When the two Houses have voted, they shall immediately again **meet** . . .

3 U.S.C. § 15. (emphases added). Thus, the language of the statute governing the Joint Session plainly describe it as a "meet[ing]."

In addition, the House and the Senate do not "proceed" together; the houses always "act" separately. Proceedings take place either in the House or in the Senate, separately. The two houses convene together only for specific ceremonies and speaking events (i.e., for the State of the Union, *see* U.S. Const., Article II, Section 3, and to hear speeches from visiting dignitaries). In fact, the only time the Constitution mentions the word "proceeding" in reference to Congress, the ***bicameral*** nature of the Congress is stressed.[3] It follows that a "proceeding before Congress" in Section 1512 must refer to a separate and bicameral adjudicative, investigative, or legislative function of the House or the Senate. The Electoral Certification served none of those functions.

The *Sandlin* court held that a "proceeding" must be akin to a formal hearing. *Sandlin* mem. op. at 7, 9. A "hearing" is defined as a "judicial session, open to the public, held for the purpose of deciding issues of fact or of law." Black's Law Dictionary (11th ed. 2019). The Court reasoned that the vote count is a formal hearing

---

[3] "Each House may determine the Rules of its Proceedings….[e]ach House shall keep a Journal of its Proceedings…" Article I Section V. (emphases added).

10

because of the formal procedures it must follow pursuant to 3 U.S.C. § 15 that allow for objections and decisions. However, the court did not address the "ceremonial and ministerial" nature of the meeting, or consider the procedures that govern the meeting in the context of the meeting's ceremonial nature. *Sandlin* mem. op. at 7-9. The ceremonial nature of the vote count, however, is crucial to determining whether or not the electoral count is akin to a formal hearing and, in turn, whether it constitutes "a proceeding."

The vote count is entirely ministerial – it certifies vote counts that have been determined. It does not meaningfully decide any issues of fact or law because those have already been decided by the states and the courts, s*ee, e.g., Bush v. Gore*, 531 U.S. 98 (2000), and the Joint Session does not have the power under the Constitution to actually reject the votes of any State. *See* Vasan Kesavan, "*Is the Electoral Count Act Unconstitutional?*" 80 North Carolina Law Review 1653, 2002 (hereafter, "*Kesavan*").

The history of "objections" lodged at the Electoral Count further demonstrate the ceremonial nature of the Electoral Count. The past objections were mostly made in the 1800's because of the confusion of when new states were admitted to the union and how that impacted whether their votes should count. Objections were ultimately rejected because it was determined that the Joint Session did not have the authority to judge the proceedings already had in the states. *See* Kesavan at 1678-1694. In 1876, the most tumultuous election, Samuel Tilden and Rutherford Hayes were separated by one electoral vote and four states sent Congress multiple electoral

returns. *Id.* Instead of the Joint Session resolving this issue (because Congress recognized that the Joint Session did not have the authority to do so), Congress formed a separate commission to sort through the chaos and decide the issues of fact and law presented. *Id.* Subsequently, to address issues like this in the future, Congress enacted the Electoral Count Act of 1887, placing on the states the responsibility to resolve disputes about electors and their appointments and certifications. Stephen A. Siegel, *The Conscientious Congressman's Guide to the Electoral Count Act of 1887*, 56 Fla. L. Rev. 540, 543 (July 2004).

In 1969, there was an objection that a vote sent up to Congress from North Carolina should not be counted because it reflected the "faithless" elector who had refused to give his vote to Richard Nixon, despite Nixon winning the popular vote in that state. The objection was rejected, and the vote at issue counted, because of the strong reminder of representatives such as R. Rarick who said:

> We are not election supervisors nor given the discretion to re-compute the vote received from a sovereign state. The Constitution clearly proscribes our duty as to 'count the electoral votes,' the ministerial function of a central collecting agency and a tabulating point.

See *Kesavan* at 1694, 2022 (emphases added).

For all these reasons, the Electoral Count is not "a proceeding" akin to a formal hearing. Rather, it is a ceremonial meeting of both houses of Congress. While steeped in tradition, it decides nothing. It is a political performance conducted in order to give the country a feeling of finality over the already final election results. As a result, the

Electoral Count does not qualify as an "official proceeding" and count One of the Indictment should be dismissed.[4]

## CONCLUSION

For all of these reasons, those previously given, and such others as may be advanced at a hearing on this matter, Mr. Gieswein respectfully requests that the Court dismiss Count One.

Respectfully submitted on January 11, 2022.

**ROBERT GIESWEIN**
by counsel:

Geremy C. Kamens
Federal Public Defender for the
Eastern District of Virginia

by:_____s/_____
Ann Mason Rigby
DC Bar No. 491902

Elizabeth A. Mullin
DC Bar No. 484020

Assistant Federal Public Defenders
1650 King Street, Suite 500
Alexandria, Virginia 22314
Telephone: (703) 600-0800
Facsimile: (703) 600-0880
ann_rigby@fd.org
elizabeth_mullin@fd.org

---

[4] Undersigned counsel notes that this argument is borrowed from counsel for the defendant in *United States v. Andries*, 21-cr-093-RC, Assistant Federal Public Defender Maria N. Jacob.

13