UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | Case No. 21-CR-24 (EGS) |
| | : | |
| **ROBERT GIESWEIN,** | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
COUNTS TWO AND FOUR OF THE SUPERSEDING INDICTMENT**

On February 4, 2022, the defendant filed a motion to dismiss Counts Two and Four of the First Superseding Indictment, which charge him with violations of 18 U.S.C. § 231(a)(3). The defendant argues that that section is vague and overbroad. For the reasons set forth below, and as four of this Court's colleagues have found, the civil disorder statute is neither vague nor overbroad. The Court should consequently deny Defendant's motion.

**Procedural History**

On January 14, 2022, the Grand Jury returned the First Superseding Indictment (ECF no. 91, "FSI"), which charged the defendant in Counts Two and Four with violating 18 U.S.C. § 231(a)(3) for actions he took at the U.S. Capitol on January 6, 2021. He had not been previously charged with those violations.

On February 4, 2022, in anticipation of a then-scheduled February 20, 2022, motions hearing, the defendant filed a motion to dismiss Counts Two and Four of the FSI. The motions hearing, and thus responses to the defendant's motion, have been pushed back since the defendant filed this motion. For the reasons stated below, the defendant's motion is without merit and should be denied, either at or before the April 20, 2022, motions hearing.

**Factual Background**

The Court is familiar with the facts of this case, having presided over a lengthy detention hearing, and a subsequent motion to reopen that hearing. The factual recitation that follows is, accordingly, brief.

Robert Gieswein was one of the first rioters to enter the U.S. Capitol on January 6, 2021. He entered after assaulting Capitol Police officers with an irritant spray, and he then proceeded to assault two other groups of officers with spray inside of the Capitol. The defendant was at the Capitol on January 6th dressed in paramilitary gear and carrying a bat and the irritant spray that he would use to assault officers. On the plaza to the west of the Capitol while riots were ongoing, Gieswein stated to an interviewer, words to the effect that he "would die for this." When the interviewer followed up by asking, "what's the solution to this right here, man?," Gieswein replied, "to execute these fascists."

As relevant to the defendant's motion, Count Two of the FSI charges that the defendant committed acts that include "pushing on a police barricade on a plaza to the west of the U.S. Capitol building and spraying a substance at law enforcement officers at or near the top of a set of stairs on U.S. Capitol grounds, to obstruct, impede, and interfere with law enforcement officers, lawfully engaged in the lawful performance of their official duties." Count Four of the FSI additionally charges that the defendant committed acts that include "spraying a substance at officers near a room adjacent to the Crypt in the U.S. Capitol, spraying a substance at officers in or near the Capitol Visitor's Center, and pushing with other individuals against a line of officers at an exit from an area of the Capitol known as the Rotunda, to obstruct, impede, and interfere with law enforcement officers, lawfully engaged in the lawful performance of their official duties."

2

### **Legal Principles**

A defendant may move to dismiss an indictment or count thereof for failure to state a claim prior to trial. *See* Fed. R. Crim. P. 12(b)(3)(B)(v). "An indictment must be viewed as a whole and the allegations must be accepted as true in determining if an offense has been properly alleged. *United States v. Bowdin*, 770 F. Supp. 2d 142, 146 (D.D.C. 2011). The operative question is whether the allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed. *Id.* An indictment must contain every element of the offense charged, if any part or element is missing, the indictment is defective and must be dismissed." *See United States v. Hillie*, 227 F. Supp. 3d 57, 70 (D.D.C. 2017).

Federal Rule of Criminal Procedure 7(c)(1) governs the "Nature and Contents" of an indictment. The rule states, in relevant part, that "[t]he indictment … must be a plain, concise, and definite written statement of the essential facts constituting the offense charged," and that "[f]or each count, the indictment or information must give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated."

The "void for vagueness" doctrine prevents the enforcement of a criminal statute that is "so vague that it fails to give ordinary people fair notice of the conduct it punishes" or is "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). To ensure fair notice, "generally, a legislature need do nothing more than enact and publish the law, and afford the citizenry a reasonable opportunity to familiarize itself with its terms and to comply." *United States v. Bronstein*, 849 F.3d 1101, 1107 (D.C. Cir. 2017) (citation omitted).

A statute is not unconstitutionally vague simply because its applicability is unclear at the margins, *United States v. Williams*, 553 U.S. 285, 306 (2008), or because reasonable jurists might

3

disagree on where to draw the line between lawful and unlawful conduct in particular circumstances, *Skilling v. United States*, 561 U.S. 358, 403 (2010). A provision is impermissibly vague only if it requires proof of an "incriminating fact" that is so indeterminate as to invite arbitrary and "wholly subjective" application. *Williams*, 553 U.S. at 306; *see Smith v. Goguen*, 415 U.S. 566, 578 (1974). A statutory provision is "not rendered unconstitutionally vague because it 'do[es] not mean the same thing to all people, all the time, everywhere.'" *Bronstein*, 849 F.3d at 1107 (quoting *Roth v. United States*, 354 U.S. 476, 491 (1957)). A statute is instead vague where it fails to specify any "standard of conduct . . . at all." *Coates v. Cincinnati*, 402 U.S. 611, 614 (1971). A law is not vague because it "call[s] for the application of a qualitative standard . . . to real-world conduct; 'the law is full of instances where a man's fate depends on his estimating rightly . . . some matter of degree.'" *Johnson*, 576 U.S. at 603–04 (quoting *Nash v. United States*, 229 U.S. 373, 377 (1913)).

There is a strong presumption that a statute is not vague. *See United States v. Nat'l Dairy Products Corp.*, 372 U.S. 29, 32 (1963). Other courts in this district have recognized that high bar. *See United States v. Gonzalez*, No. 20-cr-40 (BAH), 2020 WL 6342948, at *7 (D.D.C. Oct. 29, 2020); *see also United States v. Harmon*, No. 19-cr-395 (BAH), 2021 WL 1518344, at *4 (D.D.C. Apr. 16, 2021) (finding that the defendant did not meet the "stringent standard" to prevail on a Rule 12 vagueness motion).

Facial overbreadth challenges—in which a defendant asserts that a statute, constitutionally applied to him, is nevertheless invalid because it would be unconstitutional in a "substantial number" of *other* cases, *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 n.6 (2008)—are even more exceptional. Overbreadth can invalidate a criminal law

only if "'a substantial number' of its applications are unconstitutional, 'judged in relation to the statute's plainly legitimate sweep,'" and no limiting construction is available. *Id.* (quoting *New York v. Ferber*, 458 U.S. 747, 769–771 (1982)); *see also City of Houston v. Hill*, 482 U.S. 451, 458 (1987). The Supreme Court has "vigorously enforced the requirement that a statute's overbreadth be *substantial*, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." *Williams*, 553 U.S. at 292.

"[T]he mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Members of the City Council v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984). Rather, a defendant must show a "realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court . . . ." *Id.* at 801. "Rarely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating)." *Virginia v. Hicks*, 539 U.S. 113, 124 (2003).

Invalidating a statute for overbreadth is "strong medicine" to be applied "sparingly and only as a last resort." *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973). If the statute is "readily susceptible" to a narrowing construction that would make it constitutional, it must be upheld. *Virginia v. American Booksellers Ass'n*, 484 U.S. 383, 397 (1988); *accord Broadrick*, 413 U.S. at 613.

**ARGUMENT**

Defendant is charged in Counts Two and Four of the First Superseding Indictment with violating 18 U.S.C. § 231(a)(3), which criminalizes interference with a police officer or fire fighter "lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function." The statute defines civil disorder as "any public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of or results in damage or injury to the property or person of any other individual." 18 U.S.C. § 232(1). Criminal liability extends to actions directed against any federal, state, or local law enforcement officer. 18 U.S.C. § 232(7).

Defendant launches two constitutional attacks on Section 231(a)(3), vagueness and overbreadth. Both challenges fail.[1]

---

[1] The defendant notes that "similar arguments have been presented in other January 6 cases and found to be unpersuasive by district judges in *United States v. Mostofsky*, 1:21CR138-JEB and *United States v. McHugh*, 1:21CR453-JDB." Mot. at 2, n.2. In addition to Judge Boasberg in *Mostofsky* and Judge Bates in *McHugh*, the defendant's arguments have been rejected by Judge Kelly in *United States v. Nordean*, 21-cr-175 (TJK), 2021 WL 6134595 (D.D.C. Dec. 28, 2021), and Judge Nichols in *United States v. Fischer*, 21-cr-234 (CJN), 2022 WL 782413 (D.D.C. Mar. 15, 2022).

Additionally, a number of courts outside this circuit have also recently rejected similar challenges to Section 231. See *United States v. Phomma*, No. 20-465, 2021 WL 4199961, at *5 (D. Or. Sept. 15, 2021); *United States v. Rupert*, No. 20-cr-104 (NEB/TNL), 2021 WL 1341632, at *16–*20 (D. Minn. Jan. 6, 2021) (Report & Recommendation), adopted, 2021 WL 942101 (D. Minn. Mar. 12, 2021); *United States v. Pugh*, No. 1:20-cr-73-TFM, slip op. (S.D. Ala. May 13, 2021); *United States v. Wood*, No. 20-cr-56 MN, 2021 WL 3048448 (D. Del. July 20, 2021); and *United States v. Howard*, No. 21-cr-28-pp, 2021 WL 3856290 (E.D. Wis. Aug. 30, 2021).

I.      **Section 231(a)(3) Is Not Unconstitutionally Vague.**

Federal legislation enjoys a presumption of constitutionality that may only be overturned "upon a plain showing that Congress has exceeded its constitutional bounds." *United States v. Morrison,* 529 U.S. 598, 607 (2000). Gieswein cannot overcome this presumption.

Section 231(a)(3) is not unconstitutionally vague. *See McHugh,* 2022 WL 296304 at *16; *Nordean,* 2021 WL 6134595, at *17; *Fischer*, 2022 WL 782413 at *2-*3. It provides sufficient notice of the conduct it prohibits. The terms Gieswein attacks, such as "any act to obstruct, impede, or interfere" and "civil disorder," Mot. at 4-6, do not carry the potential for misunderstanding or make the statute "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015); *see also Nordean*, 2021 WL 6134596, at *16 (observing that "there are specific fact-based ways to determine whether a 'defendant's conduct interferes with or impedes others,' or if a law enforcement officer is performing his official duties 'incident to and during' a civil disorder."). Like the challenge recently rejected by Judge Bates, Gieswein's motion "misunderstand[s]" vagueness: "There is a crucial difference between reasonable people differing over the meaning of a word and reasonable people differing over its application to a given situation—the latter is perfectly normal, while the former is indicative of constitutional difficulty." *McHugh,* 2022 WL 296304 at *16.

Section 231(a)(3) does not prohibit mere presence at a civil disorder, but rather, "an act committed during the course of such disorder." *United States v. Mechanic*, 454 F.2d 849, 853 (8th Cir. 1971). And not just any act: it prohibits only concrete "act[s]" that are performed with the specific purpose to "obstruct, impede, or interfere" with firefighters or law enforcement carrying

7

out their official duties during a civil disorder. It punishes intentional conduct, not "mere inadvertent conduct." *United States v. Featherston,* 461 F.2d 1119, 1122 (5th Cir. 1972).

Contrary to defendant's arguments, the statute's terms are thus quite different from statutory terms that courts have found to be vague, such as statutes that turn on subjective judgments of whether a defendant's conduct was "annoying" or "indecent," or those that depend on the victim's state of mind, as in the cases defendant cites. *See Nordean,* 2021 WL 6134595, at *16; *see also Williams*, 553 U.S. at 306; Mot. at 8 (citing *Coates*, 402 U.S. at 614, *United States v. Kozminski,* 487 U.S. 931, 949–50 (1988)).[2] "An ordinary person would have an intuitive understanding of what is proscribed by a ban on obstructing, impeding, or interfering with law enforcement." *McHugh,* 2022 WL 296304 at *16. In addition, Section 231(a)(3) is not unique; many state and federal statutes likewise criminalize "obstructing" the government's efforts to enforce the law and maintain public order, and they have been upheld. *See, e.g.,* 26 U.S.C. § 7212(a) (prohibiting obstructing or impeding the administration of the tax laws); 18 U.S.C. § 2237 (making it unlawful to "oppose, prevent, impede, intimidate or interfere with" a maritime investigation); *United States v. Brice,* 926 F.2d 925, 930–31 (9th Cir. 1991) (rejecting overbreadth and vagueness challenges to 41 C.F.R. § 101-20.305, regulation prohibiting impeding or disrupting government duties).

---

[2] Gieswein also cites *McCoy v. City of Columbia*, 929 F. Supp. 2d 541 (D.S.C. 2013) (Mot. at 8)., *McCoy* is readily distinguishable. *See McHugh,* 2022 WL 296304 at *16, n.24. *McCoy* invalidated an ordinance making it unlawful "for any person to interfere with or molest a police officer in the lawful discharge of his duties." *Id.* at 546. As Judge Bates observed, unlike Section 231(a)(3), "the ordinance at issue in *McCoy* did not include a scienter requirement, and its use of only two operative verbs ('interfere and molest') prevented interpreters from . . . giving those words 'more precise content by the neighboring words with which it is associated." *McHugh*, at *16, n.24 (citing *McCoy*, 929 F. Supp. 2d at 553) (quoting *United States v. Stevens*, 559 U.S. 460, 474 (2010)).

Gieswein also claims that the phrase "incident to and during the commission of a civil disorder" is vague because he cannot tell whether the statute requires an individual to have participated in the civil disorder or if it is sufficient that he be in the general vicinity of the event. Mot. at 5. This argument, too, is meritless. "The crime set forth by the statute is not mere presence at a civil disorder . . . but an act committed during the course of such a disorder, so 'civil disorder' simply describes the environment in which the act must be committed in order to be subject to prosecution under § 231(a) (3)." *Mechanic*, 454 F.2d at 852; *see also Howard*, 2021 WL 3856290, at *14 ("[T]he statute does not require the government to prove that the defendant created the civil disorder, or that he was participating in the civil disorder.").

Contrary to Gieswein's argument that any "tumultuous public gathering" could qualify (Mot. at 5), "it is not just any public disturbance which is the subject of the section, but only public disturbances which (1) involve acts of violence (2) by assemblages of three or more persons, and which (3) cause immediate danger of or result in injury to (4) the property or person of any other individual." *Mechanic*, 454 F.2d at 853; *see* 18 U.S.C. § 232(1) (defining the term "civil disorder" for purposes of 18 U.S.C. § 231); *cf. United States v. Huff*, 630 F. App'x 471, 489 (6th Cir. 2015) (unpublished) (rejecting vagueness challenge to "civil disorder" as used in in 18 U.S.C. § 231(a)(2)). *See also McHugh,* 2022 WL 296304 at *15, n.22.

And even if a broad range of public gatherings could be deemed "civil disorders," Section 231(a)(3) criminalizes only particular conduct, not mere participation in such a disorder. The "civil disorder" language operates to narrow the situation where the statute may apply—unlike other statutes, which criminalize acts of obstruction, wherever they may take place. *See* 26 U.S.C. § 7212(a) (criminalizing obstruction of tax laws). The requirement that the *actus reus*—an

9

obstructive, impeding, or interfering act—take place in the context of—that is, "incident to or during the commission of"—a civil disorder does not make Section 231 vague; to the contrary, it limits its application.

Gieswein's argument that the statute is vague because it lacks an express scienter requirement or *mens rea* (Mot. at 5-7) is also incorrect. Gieswein ignores the fact that Section 231(a)(3) requires *intent*, which narrows its scope. *See Williams*, 553 U.S. at 294 (focusing on scienter requirement in finding that a statute was not overbroad); *McHugh,* 2022 WL 296304 at *15 (finding that Section 231(a)(3) includes an intent requirement). The statute requires proof that the "act" was done "to obstruct, impede, or interfere" with a firefighter or police officer, *i.e.,* the defendant's purpose or intent in performing the "act" must be to obstruct, impede, or interfere. *See Mechanic*, 854 F.2d at 854 (construing Section 231(a)(3) to include an intent requirement). And even if the statute lacked an express scienter requirement, courts "generally interpret [] criminal statutes to include broadly applicable scienter requirements, even where the statute by its terms does not contain them." *Elonis v. United States*, 135 S. Ct. 2001, 2009 (2015) (citation omitted); *see also United States v. Cassel*, 408 F.3d 622, 634 (9th Cir. 2005) ("[E]xcept in unusual circumstances, we construe a criminal statute to include a *mens rea* element even when none appears on the face of the statute.").

Even if defendant were correct—and he is not—that the terms of § 231(a)(3) could be vague as applied as to some conduct, the defendant's actions are clearly within that statute's ambit. The Court must consider vagueness "as applied to the particular facts at issue, for a [defendant] who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applies to the conduct of others." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18–19

(2010) (cleaned up).³ Here, the First Superseding Indictment alleges that, as to Count Two, the defendant committed acts that included "pushing on a police barricade on a plaza to the west of the U.S. Capitol and spraying a substance at law enforcement officers at or near the top of a set of stairs on U.S. Capitol grounds." Count Four charges that the defendant committed acts that included "spraying a substance at officers in near a room adjacent to the Crypt in the U.S. Capitol, spraying a substance at officers in or near the Capitol Visitor's Center, and pushing with other individuals against a line of officers at an exit from an area of the Capitol known as the Rotunda." The First Superseding indictment alleges in both counts that the defendant took those actions "to obstruct, impede, or interfere with law enforcement officers . . . ." The defendant's actions in actively interfering with and assaulting members of law enforcement who were trying to quell a civil disorder fall clearly within the words of the statute, and thus the defendant cannot rely on any vagueness those words may have as applied to other conduct.

## II.     The Civil Disorder Statute is not Overbroad.

Defendant's argument that Section 231(a)(3) is facially overbroad under the First Amendment also fails. Overbreadth can invalidate a criminal law only if "'a substantial number' of its applications are unconstitutional, 'judged in relation to the statute's plainly legitimate sweep.'" *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 n.6 (2008) (quoting *New York v. Ferber*, 458 U.S. 747, 769-771 (1982)); *see also Williams*, 553 U.S. at 293; *City of Houston v. Hill*, 482 U.S. 451, 458 (1987) (citing *Ferber*, 458 U.S. at 769).

---

³     Undersigned counsel acknowledges that Judge Bates expressed skepticism about this interpretation. *See McHugh*, 2022 WL 296304 at *14, n.20.

Although the defendant purports to challenge to the statute on First Amendment grounds, by its terms 18 U.S.C. § 231(a)(3) refers to "*any act* to obstruct, impede, or interfere with . . ." (emphasis added). Most Courts that have interpreted this provision have read it to not include speech. *See*, *e.g.*, *United States v. Mostofsky*, 2021 WL 6049891 at *8 (Boasberg, J. 2021) (collecting cases). As a result, the defendant "faces an uphill battle, since '[r]arely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech.'" *Id.*, quoting *Hicks*, 539 U.S. at 124.

Section 231(a)(3) is not overbroad because "the statute's potentially unconstitutional applications are few compared to its legitimate ones." *Mostofsky,* 2021 WL 6049891, at *8. The statute's scope is primarily, if not exclusively, conduct or unprotected speech, such as threats. The plain text supports this reading. *See Nordean*, 2021 WL 6134595, at *17. An overbreadth challenge faces a steep uphill climb when the statute focuses mainly on conduct, as Section 231(a)(3) does. *See Hicks*, 539 U.S. at 119, 124 (noting the "substantial social costs created by the overbreadth doctrine when it blocks application of a law to . . . constitutionally unprotected conduct" and observing that laws "not specifically addressed to speech or to conduct necessarily associated with speech" are far less likely to be overbroad).

In *Mechanic*, the Eighth Circuit rejected a similar overbreadth challenge to § 231(a)(3). "The section applies only to a person who acts to impede, obstruct, or interfere with an official described in the statute." 454 F.2d at 852. The Eighth Circuit held that the "conduct involved here [the massing of a mob that threw stones at an R.O.T.C. building on a college campus to protest the Viet Nam war, followed by rock and bottle-throwing at firemen who arrived to quell the disturbance] is not entitled to constitutional protection." *Id.* As the Court explained, "[t]he First

Amendment has not been extended to protect rioting, inciting to riot, or other forms of physical violence." *Id.* (citation omitted).

Gieswein argues that Section 231(a)(3) could prohibit expressive conduct, proposing hypotheticals such as a bystander who yells at police to desist from an arrest, who gestures at officers, or who records with a cell phone. Mot. at 7-8. Even if there could be "limited instances in which speaking constitutes the 'act' of interfering with a law-enforcement officer," *Mostofsky,* 2021 WL 6049891, at *8, those instances are just that: limited. *See McHugh,* 2022 WL 296304 at *16. As *Mostofsky* found, Section 231's "plain text, however, indicates that it is 'targeted primarily if not exclusively at conduct rather than speech.'" *Id.* (citing *Phomma*, 2021 WL 4199961, at *5); *see also Nordean,* 2021 WL 6134595, at *17 ("Section 231(a)(3) does not even mention speech, and it simply does not prohibit peaceful expression or association."); *Mechanic*, 454 F.2d at 852 (Section 231 "does not purport to reach speech of any kind. It reaches only acts to impede, obstruct, or interfere with police officers and firemen"), *see also Wood*, 2021 WL 3048448, at *7 ("This Court agrees with *Mechanic* that § 231(a)(3) applies to conduct, not speech."). As such, it is unlikely to present a "realistic danger" that it will "significantly compromise recognized First Amendment protections." *Mostofsky,* 2021 WL 6049891, at *17 (quoting *Vincent,* 466 at 800).

Nor must Section 231(a)(3) be construed as limited only to a violent "act" to preserve its constitutionality. Courts have denied similar challenges to Section 231(a)(3) while recognizing that the statute is not limited to "violent" acts for the simple reason that the statute is not overbroad, as explained above, and so no limiting construction is required. *See, e.g., Mostofsky,* 2021 WL 6049891 at *9 (finding that "the Court need not adopt a limiting construction such that § 231(a)(3) reaches only violent conduct" to uphold the statute and collecting cases); *see also McHugh,* 21-cr-

13

453, ECF No. 51, at 36 n.26, *Wood*, 2021 WL 3048448, at *7 (rejecting overbreadth challenge to § 231(a)(3) while recognizing that it is possible for nonviolent acts to also fall within the statute's prohibition.").[4]

Moreover, Gieswein's hypotheticals, like Mostofsky's, may not even be criminal under the statute because they "would not necessarily rise to the level of 'obstruct[ing], imped[ing], or interfer[ing]' with a law-enforcement officer," as the statute requires. *Mostofsky,* 2021 WL 6049891, at *8. Indeed, as noted above, Section 231 contains numerous guardrails ensuring that not all "acts" qualify: the act must intentionally obstruct, impede, or interfere with, a law enforcement officer or firefighter; and it must occur during a civil disorder, which is defined, in part, as a public disturbance "involving acts of violence." *Mostofsky,* 2021WL 6049891, at *8; *Wood,* 2021 WL 3048448, at *7. Even if "some expressive conduct may fall within its remit," however, Section 231(a)(3) still would not "make unlawful a substantial amount of constitutionally protected conduct." *Mostofsky,* 2021 WL 6049891, at *8 (citation omitted). Gieswein has failed to show a "realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court." *Vincent*, 466 U.S. at 801. His overbreadth and vagueness challenges fail.

---

[4] While *Mechanic* states that Section 231(a)(3) "applies only to violent physical acts," courts do not take this to mean that it imposed such a limitation on the statute; rather, "it appears that the Eighth Circuit was considering the specific 'acts' committed by the defendants in that case— throwing cherry bombs at police officers and firemen—when it referenced "violent acts." *Howard,* 2021 WL 3856290, at *11; *Nordean,* 2021 WL 6134595 at *17 n.14.

.

## **CONCLUSION**

For the foregoing reasons, and any additional reasons as may be cited at a hearing on this motion, the government respectfully requests that Defendant's motion be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

*/s/ Erik M. Kenerson*
Erik M. Kenerson, OH Bar No. 82960
Jason B.A. McCullough, DC Bar No. 998006
U.S. Attorney's Office for the District of Columbia
Assistant United States Attorneys
555 4th Street, N.W.
Washington, D.C. 20530
Erik.Kenerson@usdoj.gov
(202) 252-7201