1

          UNITED STATES DISTRICT AND BANKRUPTCY COURTS
              FOR THE DISTRICT OF COLUMBIA

2

3
UNITED STATES OF AMERICA      Criminal No.  21-cr-00024

4
      v.               Washington, D.C.

5
ROBERT GIESWEIN,         April 20, 2022

6
        Defendant.     9:00 a.m.

7
------------------------/

8
          TRANSCRIPT OF MOTIONS HEARING
       BEFORE THE HONORABLE EMMET G. SULLIVAN

9
         UNITED STATES DISTRICT JUDGE

10
APPEARANCES:

11
For the Government:   United States Attorney's Office
                By: ERIK KENERSON, ESQUIRE

12
                   JASON McCULLOUGH, ESQUIRE
                   JAMES PEARCE, ESQUIRE

13
                555 Fourth Street, NW
                Washington, D.C.  20530

14

15
For the Defendant:    Federal Public Defender
                By: ANN RIGBY, ESQUIRE

16
                   ELIZABETH MULLIN, ESQUIRE
                1650 King Street, NW

17
                Suite 500
                Alexandria, Virginia 22314

18

19

20
Court Reporter        Lisa K. Bankins RMR FCRR RDR
                United States District Court
                District of Columbia

21
                333 Constitution Avenue, NW
                Washington, D.C. 20001

22

23

24
Proceedings recorded by mechanical stenography,
transcript produced by notereading.

25

                                              1

```
 1                    P R O C E E D I N G S
 2              THE COURTROOM DEPUTY:  Your Honor, this is
 3   Criminal Action 21-24, the United States of America versus
 4   Robert Gieswein.  Counsel, please identify yourselves for
 5   the record, beginning with the government.
 6              MR. KENERSON:  Good morning, Your Honor.  Eric
 7   Kenerson along with Jason McCullough and James Pearce on
 8   behalf of the United States.
 9              THE COURT:  Good morning, counsel.
10              MS. RIGBY:  Good morning, Your Honor.  This is
11   Ann Rigby and I believe Ms. Mullin is also here on behalf
12   of Mr. Gieswein, who is present by video and consents to
13   proceed by video.
14              THE COURT:  All right.
15              MS. RIGBY:  I cannot actually see Ms. Mullin.
16   If somebody else can let me know if she is here --
17              THE COURT:  Yes.  I can see her.  Hi.
18              MS. RIGBY:  Okay.
19              MS. MULLIN:  Nice to see you.
20              MS. RIGBY:  Thank you, Your Honor.
21              THE COURT:  And, Mr. Gieswein, how are you this
22   morning?
23              THE DEFENDANT:  Longing to be home.
24              THE COURT:  All right.  Counsel, so one
25   housekeeping matter.  I have a 10:45 matter that I have to
```

1      address.  It will take about 15 minutes.  So we ought to

2      take a recess then.  Let me just kind of dive in here.  I

3      don't have a lot of questions.  Let me initially address a

4      couple of the motions in limine.

5              With respect to ECF 63, the motion in limine to

6      preclude certain arguments, the Court will take that under

7      advisement.  It's too early to resolve that motion now and

8      it may be relevant closer to trial.  It will be relevant,

9      more relevant closer to trial and more appropriate to

10     address what arguments can be made and what can be said in

11     voir dire, et cetera.  So the Court will take under

12     advisement ECF 63.

13              Likewise with respect to ECF 65, the motion to

14     limit cross-examination, it's too early to talk about

15     that.  It's certainly appropriate either immediately

16     before a jury is selected or before a defendant or before

17     the or before jeopardy attaches, but it's too early now.

18              Let me just inquire about ECF 65.  That's the

19     motion in limine to limit cross-examination.  Should the

20     Court request briefing on the issue of whether a Secret

21     Service protectee has to be on the grounds at issue at the

22     precise time of the defendant's entry?  I didn't think

23     that was an argument, but let me just inquire of defense

24     counsel.  If that is an argument, then I think we need

25     further briefing on that issue.

1        MS. RIGBY:  Your Honor, I think Ms. Mullin was

2    going to handle that matter.  But is the Court asking

3    if -- could the Court repeat the question?  I'm sorry.

4        THE COURT:  Yeah.  I just want to be clear about

5    your theory here.  Is it your argument that a Secret

6    Service protectee has to be on the grounds at issue at the

7    precise time of the defendant's entry?  I didn't think

8    that was your argument.  But if that is your argument,

9    then there's going to be a need for further briefing on

10   that particular part of the issue.

11       MS. MULLIN:  Your Honor, I don't think there's a

12   need for additional briefing on that point and the reason

13   why is because as it was adduced in a previous January 6th

14   trial, the government is going to elicit that the Secret

15   Service protectee at issue, then Vice President Mike

16   Pence, was in a parking garage on the Capitol grounds at

17   approximately 2:30.  And I think that resolves the issue

18   for us.  We believe that's --

19       THE COURT:  All right.

20       MS. MULLIN:  And so we do think that the

21   government has to establish, of course, beyond a

22   reasonable doubt that the building was restricted when Mr.

23   Gieswein allegedly entered.  But we don't think that's

24   going to be an issue --

25       THE COURT:  All right.  So are there any

1    objections to the Court denying that motion as moot in --

2              MS. MULLIN:  No, Your Honor.

3              THE COURT:  All right.  So thank you.

4              MR. McCULLOUGH:  Your Honor, if we could just --

5    if you would just deny that without prejudice?

6              THE COURT:  Yes.

7              MR. McCULLOUGH:  If something comes up before

8    trial, that will be excellent, Your Honor.

9              THE COURT:  All right.  All right.  I can either

10   deny it without prejudice or just take it under advisement

11   and keep it alive.  Why don't I just do that?  I'll just

12   keep it on the docket.  There may be a basis to supplement

13   at some appropriate time ECF 63 and 65.  So I'll just take

14   both of those under advisement and postpone rulings on

15   those two motions.

16             MR. McCULLOUGH:  That will be excellent, Your

17   Honor.  And the one thing for the government is we would

18   note that the statute plainly states that it is a

19   restricted grounds or building or a place where the

20   protectee is or will be visiting.

21             THE COURT:  Right.

22             MR. McCULLOUGH:  And so the government would --

23   I think Your Honor is tracking that the government would

24   not be arguing that the vice president would need to be

25   inside the building at the time.  But nonetheless, the

1    testimony that is anticipated at trial would seek to kind

2    of moot this issue altogether.

3              THE COURT:  Right.  I agree.  Thank you,

4    counsel.

5              The second application for access to video

6    exhibits, ECF 97, that appears to be unopposed.  I'm going

7    to grant that motion and make the video exhibits

8    available.

9              MS. RIGBY:  Your Honor, the only -- I did not

10   file an opposition.

11             THE COURT:  I know.

12             MS. RIGBY:  However, the Court has just said

13   that the Court will not be considering that issue until a

14   later time.  So I would ask that that motion also be sort

15   of held in abeyance until the Court does in fact

16   consider --

17             THE COURT:  The video exhibits.

18             MS. RIGBY:  -- the video.

19             THE COURT:  What's the government's position on

20   that?  Let me just inquire.  Why about that?  Why is that

21   in the same category as 63 and 65?  I mean 63 and 65 go to

22   the gravamen of what may become a part of the

23   evidentiary -- well, actually, I guess this one would also

24   go to the evidentiary record as well.  Anyway, I'm not

25   going to speak for you.  Go ahead.  You're brilliant.  You

1    will speak for yourself.  Why shouldn't the Court grant

2    that now?  The theory being the public has the right to

3    know.

4              MS. RIGBY:  Your Honor, is the Court addressing

5    me or the government?

6              THE COURT:  Actually, you know what, it's not

7    your motion, is it?  I'm not sure that I invited anyone

8    else to join.  It's a motion about the media.  I'm not

9    sure if there's a media attorney present or not.  Maybe

10   what I should do in fairness to the movant is to just

11   postpone that.  Give the movant an opportunity to persuade

12   me that I should grant it now as opposed to later.  So

13   we'll just postpone that for another day.  Probably sooner

14   than postponement and resolution of 63 and 65.  So that's

15   ECF 97.

16             So does anyone have a burning desire to tell me

17   something new?  I mean these motions have, you know, been

18   presented before my colleagues and that's fine.  There

19   will probably be more motions.  Have any of my

20   colleagues -- has anyone denied -- has anyone granted a

21   motion to transfer venue to any other locale --

22             MS. RIGBY:  Not that I'm aware of, Your Honor.

23             THE COURT:  -- or take it under advisement that

24   issue?

25             MS. RIGBY:  I'm not aware of any Court granting

1    it, Your Honor.

2              THE COURT:  Yeah.  I mean D.C. has some

3    historical trials in, you know, over the years.  I've

4    participated in a number of them.  My recollection -- I

5    may be wrong, but I think Senator Stevens wanted to move

6    his case to Alaska.  And, you know, that's his home.  And

7    they love Ted Stevens in Alaska.  But that was denied.

8    That's my recollection.  And other historical cases.

9              I mean why should the Court carve out an

10   exception here?  I guess I answered my own question.  I'll

11   give you a chance to tell me something I don't know,

12   counsel, that will persuade me, that will say, Judge

13   Sullivan, you are going to create error by not moving this

14   case to Colorado.

15             MS. RIGBY:  Well, Your Honor, thank you.  And

16   let me clarify first that although we did initially ask to

17   move to Colorado specifically, we have since withdrawn

18   that particular request for now.  Our request at this

19   time, Your Honor, is simply for the Court to determine

20   that an impartial jury cannot be found in the District of

21   Columbia.  We think it's a secondary question that would

22   require the parties' input on a whole host of other

23   factors, where the trial should go if the Court were to

24   grant the motion.

25             And, Your Honor, I take the Court's point --

1          THE COURT:  Wait a minute.  Just to be clear.

2     So with respect to ECF 64, it's a motion to change venue.

3     Are you withdrawing that motion?

4          MS. RIGBY:  No, Your Honor.  We're simply --

5     we're asking for the Court to determine that the case

6     should be transferred.  And then we think a second

7     question is to where should the case be transferred if the

8     transfer is granted because the issue is whether a fair

9     jury can be sat in D.C.  That is the question under Rule

10    21 and under the Constitution.  That is all that we're

11    asking the Court to determine at this point because I

12    think history shows that where trials are transferred is

13    an issue that has to do with logistics and all sorts of

14    other factors that neither party has really briefed.  And

15    so really the only question before the Court is is the

16    defense correct that a fair trial cannot be had here or

17    that the case should be transferred if not under the

18    Constitution, then under Rule 21.

19          And I take the Court's point that there have

20    been many historic trials here.  But just as there should

21    not be per se without further consideration an exception

22    granted for January 6th, there's no per se rule that all

23    political trials or all politically related trials can be

24    fairly set in the District of Columbia.  It has been done

25    before.  But the Court must consider the unique factors

1    that play in any case to determine whether a fair trial

2    can be held here.

3            And, Your Honor, the bottom line is this.  You

4    know, every case is different and the Court must consider

5    its own individual factors.  And this case is very

6    different from most of the cases that the government

7    relies on in which transfer has been denied.

8            Your Honor, you know, voir dire is going to be

9    important anywhere no matter where this case is held and

10   the jury questionnaire would be important no matter where

11   this case is held --

12           THE COURT:  Let me stop you right there.  If the

13   case remains here and my inclination at this point is to

14   allow it to remain here, believe me, we're going to spend

15   a lot of time talking about a fair and appropriate and

16   probably a somewhat expansive voir dire that's extremely

17   important.

18           But of interest the pleading that was submitted

19   at 11 p.m. one night about someone who had taken a survey

20   is extremely -- and, you know, what I'm not going to -- I

21   can tell you right now what I'm probably not going to do

22   is to send questionnaires home.  I don't want to do that.

23   You never know who's answering those questionnaires.  I'm

24   not going to bring people down and -- I don't know what

25   I'm going to do.  Well, I'm not going to send

1    questionnaires home.  I did that in Ted Stevens and, you

2    know, it was the first time anyone had ever asked me to do

3    that and I wanted to proceed with a lot of caution because

4    that case had, you know, political overtones like, you

5    know, we could all imagine and I was lulled into that and,

6    you know, it ended up being a survey.  You know, it wasn't

7    voir dire.  It was a survey.

8              You know, you learn from experiences.  But the

9    quid pro quo there was, okay, I'm not going to send the

10   questionnaires home, but I'm going to bring people down to

11   answer the questionnaires and I'll get their answers,

12   process all that.  And this was in the day before ECF and

13   the nightmare.

14             So we're going to give a lot of thought to

15   what's fair and appropriate and expand the voir dire and

16   for all the reasons that defense counsel believe are

17   appropriate and the government believes are appropriate

18   and the Court believes are appropriate.  So my inclination

19   is to deny that.  But we'll talk more about voir dire and

20   fairness and questionnaires and what makes sense --

21             MS. RIGBY:  Thank you, Your Honor.

22             THE COURT:  -- and how to use them.  All right?

23             MS. RIGBY:  Pardon me.  I'm sorry to interrupt

24   the Court.  And that would be important anywhere.  I think

25   the data that has been submitted to the Court showed this

1    is a nationally known case, there is bias all across the

2    country.  But what we are seeking is a trial where the

3    jury is not full of people who are victims or whose family

4    and friends are victims who were affected by January 6th.

5              THE COURT:  We deal with that every day with

6    drugs and guns unfortunately.  Go ahead.

7              MS. RIGBY:  And, Your Honor, who the government

8    alleges were the targets of the events of January 6th.

9    The Court does deal with the fact of victims being

10   potential jurors all of the time.  But in this case, Your

11   Honor, the data we have shown to the Court reflects that

12   the majority of the population believes they were victims.

13   That is not a situation that the Court encounters on a

14   regular basis.  That is not a situation that was

15   encountered in any of the cases or in most of the cases

16   that the government cites, particularly in Haldeman.

17             THE COURT:  Would the answer be any different if

18   the question was posed to anyone in the country?

19             MS. RIGBY:  I think so, Your Honor, and I think

20   the data reflects that.  Nobody else in the country was

21   under curfew.  Nobody else in the country was under

22   lockdown for weeks.  I mean obviously everyone was as a

23   result of COVID.  But not as a result of January 6th.

24   Nobody else experienced the ramp-up in police force that

25   those around Capitol Hill and this city did.  Nobody else

1    experienced the National Guard posted for several weeks.

2    Nobody else had small businesses in the Capitol Hill where

3    they had to shut down or lost business as a result of

4    January 6th.

5            I mean there were articles, Your Honor, about

6    children not being able to sled on Capitol Hill.  That

7    only happened in the District of Columbia.  And only

8    District of Columbia residents would feel that they would

9    be the target of the next January 6th.  Only the residents

10   of District of Columbia would feel that.  The data shows

11   that people felt fear.  They felt targeted.  They feel

12   targeted I believe the In Lux data showed, Your Honor.

13   That is what makes this case appropriate for transfer of

14   venue.  And if it wasn't people in particular, it was

15   their family and friends.

16           And, Your Honor, the data also shows D.C. is

17   unique.  You know, we speculated, frankly, before we had

18   the data that D.C. residents would feel that they were

19   victimized, that they were targeted, that they were

20   affected.  The data now shows that and the data now

21   shows --

22           THE COURT:  Let me stop you for a second.  Let

23   me stop you for a second.  I see Mr. Pearce.  I didn't see

24   him earlier.  He's entered his appearance on behalf of Mr.

25   Gieswein.  Is that correct?  Is that right?

1          MS. RIGBY:  No, Your Honor.  He's here for the

2     government should the Court have any questions on

3     instructions.

4          THE COURT:  Oh, I'm sorry.  Good morning.

5          MS. RIGBY:  Wrong Mr. Pearce.

6          MR. PEARCE:  Good morning.  Your Honor, I'm here

7     if the Court wants to hear any argument or discussion on

8     the 1512 trial issue on behalf of the United States.

9          THE COURT:  Okay.  Great.  Thank you, Mr.

10    Pearce.  Thank you.  All right.  Ms. Rigby, go ahead.  I

11    didn't see you earlier.  Good morning, sir.  Go right

12    ahead, Ms. Rigby.  Ms. Rigby?

13         MS. RIGBY:  Yes.  Thank you, Your Honor.  You

14    know, we expected that the fact that D.C. residents were

15    affected and felt targeted would be reflected in levels of

16    bias and impartiality and the data we have submitted and

17    the data submitted both by select litigation in the In Lux

18    survey reflect that, Your Honor.  Far and away more bias

19    and partiality is found in D.C. residents than in any

20    other district survey and that includes districts that

21    some may say are very different.  I haven't analyzed this.

22    But perhaps the district in Florida that In Lux submitted

23    has a higher proportion of Republicans.  I don't actually

24    know.  North Carolina may be very different.  I don't

25    know.  I haven't analyzed that.  But I do know that the

1   Middle District of Georgia is very similar and even they

2   had very different rates of bias than the Court sees in

3   the District of Columbia.

4          And this is the only explanation supported by

5   the data from In Lux is that D.C. people, the people of

6   D.C. felt victimized.  They felt targeted and they know

7   that the next January 6th if there's going to be a next

8   January 6th would be in the District of Columbia.  They

9   more than anyone else are invested in the results of these

10  trials.

11         And, you know, we did spend some time on the

12  level of news in the District of Columbia and the quality

13  of news in this case and how it is similar or at least

14  analogous to what the Supreme Court found so compelling in

15  the Rideau case.  And we acknowledge that the phenomenon

16  of the coverage of January 6th is a national issue.

17         But again, the impact of that news, the impact

18  of the constant barrage of news, increasing barrage of

19  news as the January 6th select committee goes on and the

20  videos and the pictures, the quality of that news.  The

21  impact of that is national.  But it is naturally going to

22  have a greater effect again on the victims and the targets

23  and those who are affected by January 6th.  That is why

24  this case is different than any other that in which

25  District of Columbia jurors have denied transfers of

1      venue, Your Honor.

2              And the issue before the Court is not really one

3      of media.  The issue before the Court is is there

4      something pulling on District of Columbia residents.  And

5      there is, Your Honor.  We see that in the data.  It's a

6      natural conclusion.  You know, in McVeigh, Your Honor, the

7      driving --

8              THE COURT:  The pundits would say that this was

9      an attack on democracy period whether you live in D.C. or

10     live in Colorado or live in Hawaii.  This was an attack on

11     democracy.

12             MS. RIGBY:  Certainly, that's --

13             THE COURT:  Pursuant to your theory, everyone in

14     the country would be excluded from presiding over this

15     case.  There wouldn't be a fair locale.

16             MS. RIGBY:  Your Honor, that is the government's

17     theory certainly that this was an attack on democracy and

18     I take the Court's point that --

19             THE COURT:  It's not a far-fetched theory

20     either.

21             MS. RIGBY:  And certainly that would be felt by

22     anyone.  Right?  And I acknowledge that, Your Honor.

23     But --

24             THE COURT:  So you are saying there's no locale

25     then?

1          MS. RIGBY:  No.  I'm not saying that.  I'm

2     saying --

3          THE COURT:  Well, where could he get a fair

4     trial then if not in D.C.?  Where?  And if not in

5     Colorado?  Where?

6          MS. RIGBY:  Well, Your Honor, the Court's

7     decision has to be based not just on one factor and we are

8     not suggesting that merely the government's theory of the

9     case is a reason to transfer the case.  The difference --

10          THE COURT:  I want an answer to my question.

11     Where in the continental United States or Hawaii could Mr.

12     Gieswein get a fair trial if not D.C.?

13          MS. RIGBY:  In a city that is where juries will

14     not be made up of people who were directly impacted by

15     January 6th.

16          THE COURT:  But everyone in the democratic

17     country was impacted by terrorists storming the Capitol.

18     That's the government's theory.

19          MS. RIGBY:  Right, Your Honor.  But if you look

20     at --

21          THE COURT:  And the argument is this was the

22     worst assault on democracy since the War of 1812.

23          THE DEFENDANT:  Your Honor, I would object to

24     all those comments there --

25          THE COURT:  Just a minute.  Just a minute, sir.

```
 1              MS. RIGBY:  Your Honor?
 2              THE COURT:  I don't need to hear from you.  You
 3   have an excellent attorney.
 4              THE DEFENDANT:  This is my --
 5              THE COURT:  I don't want to hear from you.  If
 6   you want to be excluded from the room, keep talking.  I
 7   don't want to hear from you.  You have an excellent
 8   lawyer.
 9              THE DEFENDANT:  Your Honor, this is my case and
10   I have a First Amendment right.  I'd just would like to
11   speak --
12              THE COURT:  Well, I have a right also to control
13   my calendar.  I think you'd better talk to your client,
14   Ms. Rigby, because he'll be back in the lockup in a second
15   if he keeps mouthing off.
16              THE DEFENDANT:  I'm already locked up.  I'm
17   already incarcerated.  I'm trying --
18              MS. RIGBY:  Mr. Gieswein, Mr. Gieswein, would
19   you like a moment?  We can take a break.
20              THE DEFENDANT:  No.  We're good.  I'll keep
21   quiet.
22              THE COURT:  You have an excellent lawyer
23   speaking for you.  Go right ahead, Ms. Rigby.
24              MS. RIGBY:  Your Honor, the difference is that
25   D.C. jurors feel that theory to a greater extent.  Let me
```

1   rephrase, Your Honor.  The difference is D.C. jurors --

2           THE COURT:  Well, you're going to have, you're

3   going to have --

4           MS. RIGBY:  -- feel more impacted in this --

5           THE COURT:  Believe me, you're going to have

6   more than a fair opportunity.  You're going to have an

7   outstanding opportunity to voir dire perspective jurors

8   and I tell you, frankly, this is an issue that could come

9   up again after, after voir dire and after efforts to

10  select a jury.

11          I mean, you know, if your theory is correct at

12  the end of voir dire, we'll be unable to select fair,

13  objective jurors and then maybe what the Court should do

14  is take this one under advisement also and consider your

15  motion at the end of voir dire.  I have every reason to

16  believe that the citizens and residents of the District of

17  Columbia can do what every citizen and resident of a

18  locale is required to do and that's to administer justice.

19          But what about that?  Maybe the Court should

20  just take this under advisement also and address it after

21  voir dire and jury selection.

22          MS. RIGBY:  Thank you, Your Honor.  Let me

23  address those points if I may.  Again the difference is

24  that D.C. residents feel to a greater extent than anyone

25  surveyed so far in four districts that they were impacted

1    and victimized and targeted by January 6th.

2              THE COURT:  And you know what, you know what and

3    in a perspective voir dire panel, you may get those same

4    people called down and they are going to be excluded.  But

5    what about the ones who say I know about it, but I have an

6    open mind, I can listen to the evidence presented by both

7    sides if evidence is presented by the defendant and reach

8    a fair and appropriate decision in this case, an objective

9    decision?  What about those people?

10             MS. RIGBY:  Well, I think the Court's overall

11   point is that we must trust voir dire.

12             THE COURT:  We must what?

13             MS. RIGBY:  We must trust voir dire.  And that

14   is the entire system.  Right?  The entire system is based

15   on the idea of voir dire.  But Rule 21 and the state court

16   have acknowledged that there are --

17             THE COURT:  Well, voir dire in my view is

18   probably the most important part of any trial, period.

19   And you know as well as I do.

20             MS. RIGBY:  I do, Your Honor.  But the law

21   acknowledges that there are occasions when it is not

22   enough and the data we have submitted to the Court

23   reflects that in this case.  Your Honor, if you look at

24   the In Lux stats, the more that people acknowledge some

25   bias in an anonymous survey, by the way --

1            THE COURT:  Oh, you know what --

2            MS. RIGBY:  -- the more fair they thought they

3    were.

4            THE COURT:  Just a minute.  You're raising a

5    point.  I just thought about this.  The government has not

6    had a chance to respond to that either.  This was the

7    information you submitted one evening.  I found it to be

8    very informative, but the government has really not had a

9    chance to respond to that.  So I think fair is fair.  I

10   mean I should probably give the government an opportunity

11   to respond to that and I think I will.  Let me just

12   inquire.  Do you want an opportunity, counsel, to respond

13   to that data?

14           MR. KENERSON:  Thank you, Your Honor.  Erik

15   Kenerson on behalf of the United States.  If the Court

16   thinks it would be helpful for the government to respond,

17   we would like that opportunity.  We're not prepared to do

18   so orally today I think because it was just filed.  But if

19   the Court thinks it would be helpful --

20           THE COURT:  Okay.  Why don't I do that?  I think

21   that's only fair.  It's very interesting.  But, you know,

22   voir dire is very interesting and believe me, you know,

23   I've spent three to four days on Ted Stevens' voir dire

24   and I know how important it is and we still had problems.

25   We still had people, you know, issuing statements from the

1    jury room.  We had a juror who -- a deliberating juror who
2    said her father had died and actually, she went to the
3    Breakers Race in California.  It's outrageous what
4    happened in that case.  But, you know, those things happen
5    and, you know, those people were selected through a three
6    or four, five-day process.  So there's nothing perfect.
7    But we tried as hard as we could to give them a fair
8    trial.
9            I think it's only fair to give the government a
10   chance to respond.  I found that information very
11   interesting.  But I'm not going to say any more about
12   that.  I'll just take it under advisement.  Give the
13   government a fair opportunity to respond.  How much time
14   would you like, counsel?
15           MR. KENERSON:  Can we have two weeks, Your
16   Honor.
17           THE COURT:  Yeah.  Sure.  That's fine.  So 14
18   days from today's date.  Today is April the 20th.  I don't
19   have a calendar in front of me.
20           MS. RIGBY:  That would be the 4th, Your Honor.
21           THE COURT:  The 4th of May.  And for defense
22   counsel to file a reply, how much time would you need,
23   counsel?
24           MS. RIGBY:  May we have two weeks as well?
25           THE COURT:  Yeah.  That's fine.  Yeah.  Two

1     weeks thereafter.  And that would be the 18th of May.  Is

2     that right?

3                  MS. RIGBY:  Yes, Your Honor.

4                  THE COURT:  All right.  Okay.  You know, I want

5     to return to the application, the second application for

6     access to video exhibits, ECF Number 97 and you've heard

7     me say it and you will hear me say it again.  Fair is

8     fair.  The application by the Press Coalition was not

9     opposed by defense counsel.  Wait a minute before you

10    raise objections.  Here's what I'm going to do.  I'm going

11    to grant that motion.  It's unopposed. I'm going to stay

12    that for -- you want two weeks to file a response,

13    counsel, to that motion for reconsideration, Ms. Rigby?

14                 MS. RIGBY:  That's fine, Your Honor.  And if we

15    reconsider, we will file something within two weeks.

16                 THE COURT:  All right.  And if you concede it,

17    that's fine.  But I think it's only fair to grant that

18    because I mean the Press Coalition, they'll accuse me of

19    being unfair.  So I think it's fair to grant that motion.

20    I'll stay it.  I'll stay the ruling for 14 days.  Give

21    defense counsel until I think it's the 4th of May to file

22    a motion for reconsideration or concede the issue.

23                 If defense counsel files a motion for

24    reconsideration, then the parties with standing, I guess

25    it would be the Press Coalition will have two weeks

1    thereafter to file a response and the government is --

2    obviously, the government did not oppose this.  But if the

3    government wants to file something two weeks thereafter,

4    that's fine.  That would be the 18th of May.

5            MS. RIGBY:  Your Honor, Mr. --

6            THE COURT:  All right.  Very interesting issue.

7    But trust me, Mr. Gieswein, if the case remains here,

8    which I'm inclined to let it remain here, it's going to be

9    fair, jury selection is going to be fair.  But you are

10   going to have to get a hold of yourself because I don't

11   want you to make any outbursts during your trial.  I don't

12   want you to prejudice yourself in front of perspective

13   jurors or in front of a jury that's been selected.  You

14   have two excellent lawyers.  You've got to trust them,

15   sir.  Yes?

16           THE DEFENDANT:  Your Honor, with that said, I

17   just still would like to speak in my case.  I'm the

18   defendant and I have a right --

19           THE COURT:  The whole purpose of -- you know,

20   and as smart as you are, you are not a lawyer.  And you

21   have these two brilliant lawyers representing you.  And I

22   have a job to save you from yourself and I tell my law

23   clerks, they are my lawyers.  They save me from myself

24   more than you can imagine.

25           So I'm just trying to make sure you don't say

1    anything -- it's not going to prejudice me.  But, you

2    know, you start doing this, exhibiting this type of

3    conduct in front of a jury and, you know, it's not good.

4    It's not good for your presentation.

5          So I know it's difficult.  You're incarcerated.

6    I understand that.  But let your attorneys work for you.

7    They're brilliant.  They are hard working.  They file

8    motions at 10, 11:00 at night.  And, you know, I read

9    everything that comes in.  So let them do their job.

10   That's all I'm saying.

11         If you need a breakout room to speak with your

12   brilliant lawyers at any time, I'll give you a breakout

13   room.  Would you like to speak with them now for a second?

14         THE DEFENDANT:  Yeah.  If I could?

15         THE COURT:  Sure.  That's fine.  Ms. Whitney,

16   let's accommodate Mr. Gieswein and his attorneys.

17         And take the time you need to speak with either

18   what matters we've already discussed or any other thoughts

19   Mr. Gieswein may have.  It's difficult.  If we were in

20   court, you would have to write to -- you would have a

21   tablet and a pen.  You could pass notes to your attorney

22   and, you know, and get their attention and it's difficult

23   now.  So and actually, you just reminded me.  We don't

24   have that luxury now.

25         So to be fair, any time you want to speak with

1    your attorney, Mr. Gieswein, just raise your hand and I'm
2    going to recognize that as your request to speak with your
3    attorney and I'm going to honor that request, sir.
4              All right.  So Ms. Whitney, let's give them a
5    breakout room.  And whenever you're ready -- I'm not going
6    to say you only have three -- I'm not going to do that.
7    Whenever you are ready within reason, you can return.  All
8    right.  But if you need more time, you need more time,
9    counsel.  So I'll be right here, Ms. Whitney, working.
10   Just let me know.  I'm going to put myself on mute video
11   and audio for a second.  Thank you.
12             (Recess.)
13             THE COURT:  Ms. Rigby, have you had enough time?
14             MS. RIGBY:  Yes.  Thank you.
15             THE COURT:  Okay.  And the same goes for the
16   attorney for Mr. Gieswein.  If at any time, you think you
17   need to speak with your client, just tell me --
18             MS. RIGBY:  Yes, Your Honor.  Thank you.
19             THE COURT:  -- and I'll give you a breakout
20   room.
21             Let me just for the record and on this point I
22   think it's highly relevant to put into the record some
23   comments that people have made about January the 6th and
24   I'll be brief.  I mean there are millions of comments out
25   there, but I'll be brief.  And I have put these comments

1    on the record at a sentencing and I probably will in the

2    future in other cases.

3            The events of January 6th were in the words of

4    Senator McConnell "a dark day for Congress and our

5    country" after "the seed of the first branch of our

6    federal government was stormed by criminals who brutalized

7    police officers and used force to try to stop Congress

8    from doing its job."  Senator McConnell aptly pointed out

9    that "American citizens attacked their own government."

10   This is a quote.  "They used terrorism to try to stop a

11   specific piece of democratic business they did not like."

12           "These attacks on Congress were an attack on our

13   republic" in the words of former President George Bush.

14   Although and I quote, "there's little cultural overlap

15   between violent extremists abroad and violent extremists

16   at home and their disdain for pluralism and their

17   disregard for human life in their determination to defile

18   national symbols.  They are children of the same vial

19   spirit."

20           As Representative Elise Stefanik stated

21   "Americans will always have their freedom of speech and

22   the constitutional right to protest with violence in any

23   form is absolutely unacceptable.  It is anti-America."

24           So you can see the sentiments expressed about

25   being an attack on democracy.

1          Mitch McConnell added and I quote, "a dark day

2    for Congress and our country" after quote "the seed of the

3    first branch of our federal government was stormed by

4    criminals who brutalized police officers and used force to

5    try to stop Congress from doing its job and it goes on and

6    on and on.

7          Representative Chip Roy, Republican of Texas.

8    "Today, the people's house was attacked which is an attack

9    on the republic itself.  There's no excuse for it.  A

10   woman died.  And the president should never have" -- well,

11   I'm not going to go into that.

12         Senator Rubio.  "There's nothing patriotic about

13   what is occurring on Capitol Hill."  And it goes on and on

14   and on and I don't need to put any more.  But that's the

15   sentiment that's been expressed by many across the world.

16   And, no one has focused on the impact on the citizens and

17   residents of the District of Columbia.  So anyway, I just

18   thought I'd put that on the record.

19         Ms. Rigby, anything further?

20         MS. RIGBY:  I would say we are focused on the

21   sentiments of the residents of the District of Columbia

22   and they are focused on it as well and that is why this

23   trial should not be held here.

24         THE COURT:  Okay.  All right.  But it would be

25   trying I assume -- and again did I get an answer to the

1    question where, what locale if the Court was inclined to

2    transfer?  You've withdrawn Colorado.  But where --

3              MS. RIGBY:  Well --

4              THE COURT:  -- consider transferring this case?

5              MS. RIGBY:  Your Honor, I don't mean that we've

6    withdrawn Colorado.  I just mean that we are not

7    specifically requesting Colorado at this point.  I don't

8    think we have determined where we would ask to go to.  I

9    think that we would be open essentially at this point to

10   anywhere but the District of Columbia.  I think the Court

11   would need to consider convenience to the witnesses.  You

12   know, we need to be in a place with a good airport.  We

13   need to be in a place with a good courthouse.  So I think

14   there are a lot of factors that the Court would have --

15             THE COURT:  What about Montgomery County,

16   Maryland?  Would that be an appropriate locale?

17             MS. RIGBY:  I do think, Your Honor, we would

18   resist something so close to the District of Columbia that

19   it would be so likely to have so many people who work for

20   Congress, the federal government or their friends and

21   family.  I think that goes without saying given the thrust

22   of our motion.

23             THE COURT:  What about New York City?

24             MS. RIGBY:  I think that gets us farther away,

25   Your Honor.

1          THE COURT:  But --

2          MS. RIGBY:  And it also has, you know, airports,

3     trains, you know, to make it easy for people to get there.

4     Obviously, they are used to having big trials there, too,

5     Your Honor.  I think that would get us closer.  But I have

6     not frankly settled on a court.  If the court were to

7     transfer, I would ask for an opportunity for all the

8     parties to confer on what would be the next best place.

9     Perhaps give the Court two or three options for the Court

10    to decide.

11         THE COURT:  All right.  So at this time so the

12    record is crystal clear, your motion just focuses on the

13    issue of whether the venue should be transferred, not with

14    respect to any particular locale at this point and you are

15    not ruling out Colorado as a suggested locale for trial if

16    there's going to be a trial.  Correct?

17         MS. RIGBY:  Right, Your Honor.  I just thought

18    that would be simpler to keep it to the main issue now and

19    then confer with the government and the Court on all kinds

20    of other factors about where it would be appropriate to

21    move to.

22         THE COURT:  All right.  Thank you.

23         MS. RIGBY:  Thank you, Your Honor.

24         THE COURT:  And from government counsel, any

25    response?

1              MR. KENERSON:  Thank you, Your Honor.  I think

2    given that the Court has ordered supplemental briefing,

3    we'll keep our comments mostly there and any additional

4    arguments the Court may have.

5              But just a couple of things that I want to

6    address.  The Court had asked early on whether the parties

7    were aware of any court granting one of these motions and

8    like the defense, we are not.

9              One decision that came to my attention just last

10   night.  So obviously, we're not having had a chance to

11   file it.  This is a decision issued on April 18th of this

12   year by Judge Chutkan.  So just two days ago.  The United

13   States against Russell Dean Alford, Case Number 21-CR-263.

14   It's Document 46.  Judge Chutkan denied a motion to

15   transfer venue.  That was based on the select -- based at

16   least in part on the select litigation poll relied upon by

17   Mr. Gieswein here.  And we'd be happy to file a notice of

18   that or provide a copy of it to the Court if it would be

19   helpful, but just kind of wanted to note that.

20             THE COURT:  Thank you, counsel.  I was unaware

21   of Judge Chutkan's written opinion.  If you can provide

22   that as an attachment, that would be -- I mean we can find

23   it also.  But since you have it, just file it on the

24   docket.

25             And, you know, I don't know.  Ms. Rigby, I guess

1    your office was involved in that.  Maybe or maybe not.

2    I'm not sure.

3         MS. RIGBY:  We were not.  Well, remember, I am

4    from the Eastern District of Virginia.  So no.  We were

5    not.  We were not.  I don't think so.

6         THE COURT:  All right.  But thank you.  That was

7    a decision issued Monday.  Okay.  That's fine.

8         All right.  Why don't we just wait?  And I'll

9    just -- thank you, counsel, for bringing that to our

10   attention and, you know, anyone wants to respond to that.

11        I mean I don't want to -- you know, I think it's

12   tricky.  We are getting a lot of opinions filed and my job

13   is not to sit as a judge resolving essentially a motion

14   for reconsideration.  I mean a judge has spoken.  If

15   someone disagrees with that and there are cogent reasons

16   to state disagreement, but just state the reasons for

17   disagreement.  But I'm not going to sit as an intermediate

18   Court of Appeals for one of my colleagues.

19        Look, my inclination is to keep the case here

20   and I feel comfortable that if the case remains here,

21   believe me, Mr. Gieswein will get a fair trial and believe

22   me, there will be a fair jury panel selected and I don't

23   care how long it takes to do that.  But he'll get a fair

24   trial.  Anyway, that's all I have to say about that issue.

25        The motion to reopen the detention hearing, I

1        don't need -- that issue has been fully briefed.  I'm

2        going to rule from the bench today.  Speedy trial, I'm

3        inclined to likewise rule.  Bill of particulars to rule.

4        And I don't think that leaves too many others.  But again

5        in fairness, if there are any -- if there's a burning

6        desire to say anything about remaining motions that you

7        haven't clearly articulated, please go right ahead.  But

8        believe me, we've worked very hard on this.  I've read

9        everything that comes in.  Had Judge Chutkan's opinion

10       come in or had I spoken with her to tell me about it, I

11       would have read that.  And Jordan is probably sending me a

12       copy now to read over the recess.  Although I'm not going

13       to take any time to read it.  My guess is that it's well

14       reasoned.

15               But do you have a burning desire to say anything

16       about any other pending motions, Ms. Rigby, or government

17       counsel or something that occurred -- look, something that

18       occurs to us after we write, you know, sometimes I get my

19       best thoughts after the opinion is issued or maybe I'll

20       say why did I say that and just try to avoid it.  But if

21       there is something that you thought of even this morning

22       or during this hearing that impacts other matters pending,

23       please speak up.

24               MS. RIGBY:  Your Honor, I just want to say one

25       thing about the motion for release and motion to dismiss

1    and they're -- for speedy trial reasons.  And they are

2    related and that is that we are now well past the one year

3    mark at which the Court should presume that delay of trial

4    is prejudicing Mr. Gieswein.

5          Now that the trial has been moved to October, he

6    will have been in -- I did do the math, but it escapes me

7    now -- I think 22 months by the time we get to trial.  And

8    this is an additional reason for the Court to dismiss.

9    And, Your Honor, we continue to believe that release is

10    appropriate.  This is going on a very long time.  The

11    damage to Mr. Gieswein is significant.  That's all I want

12    to say about the additional continuance.  I think the

13    Court should take that into consideration for both

14    motions.

15          THE COURT:  All right.  Thank you, counsel.

16          And from government counsel?

17          MR. KENERSON:  Thank you, Your Honor.

18    Obviously, the motion to dismiss for speedy trial was

19    briefed I think when there was a February trial date.  I

20    don't think that the continuance now until October changes

21    the factors.  The defense has made no new arguments

22    outside of the straight length of time.

23          I would note that in terms of the defense

24    argument, that we're well past the one-year mark for

25    presumption of prejudice.  That presumption of prejudice

1    applies only to whether the Court should conduct a speedy

2    trial analysis.  It should not be confused with whether

3    prejudice has accrued under the fourth factor or any of

4    the factors requiring the Court to dismiss the case.  And

5    there is case law supporting the government's

6    interpretation of that which I can find if the Court needs

7    it.

8            And the defendant has proffered no additional

9    prejudice, certainly no prejudice to his ability to

10   present the defense in this case which as we noted in our

11   papers, the Supreme Court has said is the most serious

12   type of prejudice that the Court should establish or

13   should look at for speedy trial purposes.

14           So we don't think that there is anything that

15   changes the analysis based on the continuance.  We would

16   be happy to answer any questions the Court may have.

17           THE COURT:  All right.  Thank you.  There's one

18   motion and I'm sorry.  There was a motion to dismiss

19   certain counts that I believe the parties agree is moot in

20   view of the superseding indictment.  I just want to be

21   clear for the record what the ECF number is.  I think it's

22   ECF 100, but I want to be correct about that.  No.  I'm

23   sorry.  It's ECF Number 61.  This motion to dismiss Counts

24   Two through Four and that's moot and that is also followed

25   by the motion to Dismiss Counts Two through Four and ECF

1    Number 100.  Is that correct?

2            MS. RIGBY:  Your Honor, ECF Number 61 is the

3    number I have.

4            THE COURT:  Okay.

5            MS. RIGBY:  That one is mooted.

6            THE COURT:  Right.

7            MS. RIGBY:  The motion to dismiss the 231

8    counts, ECF 100, is not mooted.

9            THE COURT:  Correct.

10           MS. RIGBY:  The parties have rested on the

11   papers.

12           THE COURT:  All right.  Okay.  Are there any

13   other motions that the parties have -- that the parties

14   are either withdrawing or the parties maintain that the

15   issues raised are moot?  I don't believe so.  But out of

16   an abundance of caution because there are so many motions,

17   I should ask that question.

18           MS. RIGBY:  No for the defense, Your Honor.

19           MR. KENERSON:  No for the government, Your

20   Honor.

21           THE COURT:  Okay.  All right.  So that leaves

22   the Motion To Reopen The Detention Hearing, ECF Number 57,

23   Motion To Dismiss Case For Violation Of Speedy Trial

24   Rights, ECF Number 58 and Motion To Dismiss Counts Two And

25   Four Of The Superseding Indictment, ECF Number 100.  That

1     leaves the Motion To Dismiss Count One Of The Indictment,

2     ECF Number 60.  And I think that covers everything.  And

3     if I'm correct, then I'll take about a five-minute recess.

4     If I'm not correct, please speak up.

5              And, Mr. Gieswein, if you need to speak with

6     your attorneys again, all you need to do is raise your

7     hand, sir, and I'll give you that opportunity.

8              Okay.  Let me do this.  I'm going to rule from

9     the bench.  The rulings are lengthy.  And again I still

10    must take a recess at 10:45 to address another matter on

11    the calendar.  I'm trying to look at which one is -- let

12    me do this.  Let me address ECF Number 100.  That's the

13    shortest of the remaining rulings.  I'll address that now.

14    It's 10:21.  And that will take me ten minutes or so to

15    get through this.

16             This is ECF Number 100.  Mr. Gieswein moves for

17    the Court to dismiss Counts Two and Four of the

18    superseding indictment which charges him with obstruction

19    of an official proceeding in violation of 18 U.S. Code,

20    Section 231(a)(3).  He first argues that 231(a)(3) is

21    unconstitutionally vague.  And that's his motion, ECF

22    Number 100 at page 3.  The void for vagueness doctrine

23    "guarantees that ordinary people have fair notice of the

24    conduct a statute proscribes" and "guards against

25    arbitrary or discriminatory law enforcement by insisting

1    that a statute provides standards to govern the actions of

2    police officers, prosecutors, juries and judges."  Quoting

3    Sessions versus Dimaya, 138 Supreme Court 1204, 1212

4    (2018).  A statute is impermissibly vague if it neither,

5    one, "fails to provide people of ordinary intelligence a

6    reasonable opportunity to understand what conduct it

7    prohibits" or, two, "authorizes or even encourages

8    arbitrary and discriminatory enforcement."  Relying upon

9    Hill versus Colorado, 530 U.S. 703, 732 (2000).

10              Let me just say for purposes of the oral

11   rulings, I will give the court reporter a copy of what I'm

12   reading from, the documents I'm reading from so that she

13   can accurately transcribe especially the quote citations

14   and the referral to other cases.  I'll do that at the end

15   of this session today.

16              The statute at issue here, Section 231(a)(3)

17   prohibits "any act to obstruct, impede or interfere with"

18   a law enforcement officer "lawfully engaged in the lawful

19   performance of his official duties incident to and during

20   the commission of a civil disorder which in any way or

21   degree obstructs, delays or adversely affects commerce or

22   the movement of any article or commodity in commerce or

23   the conduct or performance of any federally protected

24   function."

25              The Court concludes that the statute is not

1    unconstitutionally vague because it provides "sufficient

2    notice of the conduct it prohibits."  Citing United States

3    versus Fischer, 2022 Westlaw 782413, at 2-3 (District

4    Court, District of Columbia March 15, 2022)(finding same).

5              As Judge Kelly concluded in Nordean, 2021

6    Westlaw 6134595 at page 16, the terms of Section 231(a)(3)

7    are not "dependent on the subjective reaction of others"

8    as with others like "annoying," Coates, 402 U.S. at 611,

9    "unjust or unreasonable," United States versus L. Cohen

10   Grocery Company, 255 U.S. 81, 86 (1921) or "indecent,"

11   Williams, 553 U.S. at 306.  Rather, "there are specific

12   fact-based ways to determine whether a defendant's conduct

13   interferes with or impedes others or if a law enforcement

14   officer is performing his official duties incident to and

15   during a civil disorder."  Id.

16             Although Mr. Gieswein argues "by penalizing any

17   act to obstruct, impede or interfere, Section 231(a)(3)

18   reaches the outer limits of verbal and expressive conduct

19   without barring any distinction that could exclude acts

20   undertaken merely to convey a message or symbolic

21   content."  That's his motion, ECF Number 100 at 4.  The

22   Court disagrees.  "An ordinary person would have an

23   intuitive understanding of what is proscribed by a ban on

24   obstructing, impeding, or interfering with law

25   enforcement."  McHugh, 2022 Westlaw 296304 at 16.

1              And as Judge Bates concluded, "there's a crucial

2       difference between reasonable people differing over the

3       meaning of a word and reasonable people differing over its

4       application to a given situation.  The latter is perfectly

5       normal; while the former is indicative of constitutional

6       difficulty."  McHugh, 2022 Westlaw 296304 at 16.

7              Mr. Gieswein also argues that the "civil

8       disorder" definition "offers no limitation to solve the

9       vagueness problem because it could apply to virtually any

10      tumultuous public gathering to which police might be

11      called, not just large scale protests or riots."  And

12      "there is no indication within the statute whether the

13      defendant is required to have participated in civil

14      disorder or if it is sufficient that he or she be in the

15      general vicinity of the event."  Id.  But the "fulsome

16      statutory definition" of "civil disorder" "makes plain

17      that to constitute a civil disorder, the gathering must

18      involve acts of violence that either caused or immediately

19      threatened bodily injury or property damage."  Fischer

20      2022 Westlaw 782413 at 3.  Quoting McHugh 2022 Westlaw

21      296304 at 15 and note 22.

22              The Court agrees with Judge Bates that the

23      definition "limits the application of civil disorder to a

24      small obviously unlawful subset of public gatherings."

25      McHugh, 2022 Westlaw 296304 at 15 and note 22.

1          The Court also disagrees with Mr. Gieswein that

2     "because the statute omits an express mens rea

3     requirement, it is left to police, prosecutors and judges

4     to decide whether the statute requires knowledge or

5     specific intent or neither."  This is his motion at pages

6     5 to 6.  Rather, the Court concludes that "Section

7     231(a)(3) is a specific intent statute criminalizing only

8     acts performed with the intent to obstruct, impede or

9     interfere with a law enforcement officer."  McHugh 2022

10    Westlaw 296304 at 14.  Indeed the government also argues

11    in favor of such a reading.  And in that regard, see the

12    government's opposition, ECF Number 113 at page 10.

13          Mr. Gieswein next argues that Section 231(a)(3)

14    is facially overbroad under the First Amendment.  That's

15    his motion at page 7.  "In the First Amendment context,

16    the law may be invalidated as overbroad if a substantial

17    number of its applications are unconstitutional, judged in

18    relation to the statute's plainly legitimate sweep."

19    United States versus Stevens, 559 U.S. 460, 473

20    (2010)(quoting Washington State Grange versus Washington

21    State Republican Party, 552 U.S. 442, 449 (2008).  This is

22    so "even if the statute also has legitimate application."

23    City of Houston versus Hill, 482 U.S. 451, 459 (1987).  In

24    addition, criminal statutes "must be scrutinized with

25    particular care."  Id.

1          The Court concludes that Section 231(a)(3) is

2     not overbroad under the First Amendment.  By its terms,

3     Section 231(a)(3) applies to persons who commit or attempt

4     to commit any act to obstruct, impede or interfere with

5     law enforcement or firefighters.

6          The words "any act" imply that the statute is

7     directed towards conduct, not speech.  Phomma, 2021

8     Westlaw 4199961 at 5.  See also Mostofsky, 2021 Westlaw

9     6049891 at 8 (noting that "most courts" read Section

10    231(a)(3) to not include speech in the parenthetical and

11    "although there could be limited instances in which

12    speaking constitutes the act of interfering with a law

13    enforcement officer, those instances will be rare."

14    McHugh, 2022 Westlaw 296304 at 17 (quoting Mostofsky 2021

15    Westlaw 6049891 at 8.  And indeed several other courts

16    have all concluded the same within the last year.  See

17    McHugh, 2022 Westlaw 296304 at 17; Mostofsky, 2021 Westlaw

18    6049891 at 8 to 9; Nordean, 2021 Westlaw 6134595 at 17;

19    United States versus Howard, 2021 Westlaw 3856290 at 11 to

20    12 (Eastern District of Wisconsin, August 30, 2021);

21    United States versus Phomma, Number 3:20-cr-00465, 2021

22    Westlaw 4199961 at 4 to 5 (District of Oregon, September

23    15, 2021); United States versus Wood, 2021 Westlaw 304844

24    at 7 to 8 (District Court of Delaware, July 20, 2021).

25    The Court joins in these decisions.

1          And finally, Mr. Gieswein argues that judicial

2     interpretation cannot save Section 231(a)(3) from its

3     constitutional invalidity.  That's his motion, Number 100

4     at 9.  However, because the Court has already concluded

5     that Section 231(a)(3) is not vague or overbroad, the

6     Court rejects this argument.

7          Accordingly, the Court denies Mr. Gieswein's

8     motion to dismiss Counts Two and Four of the superseding

9     indictment.

10          It's 10:33, counsel.  I know I said I was going

11     to break at 10:45.  The Court will break now until 11 a.m.

12     Does any attorney wish to put anything on the record at

13     this point?

14          MS. RIGBY:  No, Your Honor.

15          MR. KENERSON:  No, Your Honor.

16          THE COURT:  All right.  When the Court returns,

17     the Court will resolve the motion to reopen the detention

18     hearing and the motion to dismiss the case for violation

19     of speedy trial rights and the motion for -- actually, the

20     Court can resolve the motion for bill of particulars now.

21     And I'll do so.

22          Mr. Gieswein requests that the Court order the

23     government to provide him with a bill of particulars

24     related to Count One, which charges him with obstruction

25     of an official proceeding in violation of 18 U.S. Code,

1     Section 1512(c)(2).  Federal Rule of Criminal Procedure

2     7(c) provides that an indictment "must be a plain, concise

3     and definite written statement of the essential facts

4     constituting the offense charged."  The Constitution

5     requirements are two-fold.  First, the indictment must

6     "contain the elements of the offense charged and fairly

7     inform a defendant of the charge against which he must

8     defend" and, second, he must allow the defendant "to plead

9     an acquittal or conviction in bar of future prosecutions

10    for the same offense."  Citing United States versus

11    Resendiz-Ponce, 549 U.S. 102, 108 (2007).

12              Under Rule 7(f), "the Court may direct the

13    government to file a bill of particulars." "A bill of

14    particulars can be used to ensure that the charges brought

15    against the defendant are stated with enough precision to

16    allow the defendant to understand the charges, to prepare

17    a defense and perhaps also to be protected against retrial

18    on the same charges."  United States versus Butler, 822

19    F.2d. 1191, 1193 (D.C. Circuit 1987).  "Yet, if the

20    indictment is sufficiently specific or if the requested

21    information is available in some other form, then a bill

22    of particulars is not required."  Id.

23              Since briefing on the motion is completed, the

24    government has filed a superseding indictment.

25              The first indictment charged that Mr. Gieswein

1    "attempted to and did corruptly obstruct, influence and

2    impede an official proceeding; that is, a proceeding

3    before Congress by entering and remaining in the United

4    States Capitol without authority, committing an act of

5    civil disorder and engaging in disorderly and disruptive

6    conduct."

7            The superseding indictment, on the other hand,

8    charges that Mr. Gieswein "attempted to and did correctly

9    obstruct, influence and impede an official proceeding,

10   that is, a proceeding before Congress, specifically,

11   Congress' certification of the Electoral College vote as

12   set out in the Twelfth Amendment.

13           In addition to the language in the superseding

14   indictment, the government in its opposition provides

15   three ways in which it intends to show that Mr. Gieswein

16   violated Section 1512(c):  One, that Mr. Gieswein intended

17   through his individual actions and by encouraging others

18   to prevent the certification proceeding from occurring at

19   the time described by law; two, that Mr. Gieswein intended

20   to corruptly obstruct or impede legislators from attending

21   and participating in the certification proceeding by, for

22   example, entering the building and traveling to an area in

23   the Capitol adjacent to the Senate chamber and interfering

24   with law enforcement's efforts to clear the building; and

25   three, that Mr. Gieswein intended to corruptly obstruct or

1    impede the lawmakers' consideration of constitutionally

2    and statutorily required documents.  See ECF Number 73 at

3    6 to 8.

4              Mr. Gieswein argues, however, one, the

5    indictment fails to allege what proceeding he allegedly

6    obstructed to; the indictment fails to allege what "acts

7    of civil disorder" and "disorderly and disruptive conduct"

8    allegedly obstructed proceedings; and three, the

9    indictment fails to provide notice of how Mr. Gieswein

10   allegedly acted "corruptly."

11             The Court disagrees.  First, the superseding

12   indictment articulates which official proceeding was

13   alleged to be impeded:  Congress' certification of the

14   Electoral College vote.  As Judge Boasberg explained in

15   United States versus Mostofsky, 2021 Westlaw 316850 at 5

16   (D.D.C. July 27, 2021), "the government need not specify

17   who was impeded since the focus of the statute is the

18   proceeding, not the individual."  Second, because the

19   superseding indictment eliminates the language alluding to

20   "acts of civil disorder" and "disorderly and disruptive

21   conduct," the Court need not address this argument.  And

22   third, although Mr. Gieswein argues that the indictment

23   fails to provide notice of how he allegedly acted

24   "corruptly," this is more an issue of statutory

25   interpretation than one of insufficient factual support

1    and thus is not appropriate for a bill of particulars.

2    Mostofsky, at 5 (denying motion for bill of particulars

3    where the defendant argues that the indictment provides no

4    limitation of how it uses the adverb "corruptly").

5         Moreover, in view of the theories the government

6    provided in its opposition, which are substantively

7    identical to the theories provided in a bill of

8    particulars that Judge Friedrich took no issue with in

9    United States versus Reffitt, Number 21-32, ECF Number 71,

10   the government has sufficiently explained the basis of the

11   charge.  See Resendiz-Ponce, 549 U.S. at 108-109 (2007)

12   (An indictment parroting the language of a federal

13   criminal statute is often sufficient"); United States

14   versus Williamson, 903 F.3d 124, 130 to 31 (D.C. Circuit

15   2018) (upholding indictment for threatening an officer in

16   "the performance of official duties," even though "it did

17   not identify particular "official duties").

18        Because the superseding indictment provided all

19   the essential elements of the offense and thus "informed

20   the defendants of the nature of the accusation against"

21   them, Ballestas, 795 F.3rd. at 148-49, the Court denies

22   Mr. Gieswein's motion for a bill of particulars, ECF

23   Number 59.

24        It's 10:43 and the Court will stand in recess

25   until 11 a.m.  You may be excused if you want.  Counsel,

1    if you want a breakout room with your client, Ms. Whitney

2    will be happy to accommodate you.  Thank you.

3            MS. RIGBY:  Thank you, Your Honor.

4            (Recess.)

5            THE COURT:  All right.  So there are two other

6    rulings I'm going to read into the record and again I'll

7    give the court reporter a copy of my summaries, my notes

8    that I'm reading from.

9            There's one motion that the Court is not going

10   to resolve today or even address and that's motion --

11   that's ECF Number 60.  The Court recognizes it's currently

12   a split among the judges in this court.  So, you know, we

13   have the luxury of some time there.  But I'm not going to

14   address ECF 60 today.

15           So the two remaining motions that I have -- and

16   if I'm mistaken, you can tell me -- are ECF Number 58, the

17   speedy trial rights motion and ECF Number 57, the

18   detention hearing motion and that will conclude this

19   morning's session and then we can talk afterwards about

20   whether the Court needs to schedule an intervening motions

21   hearing date or a status hearing date.  We can also talk

22   briefly about whether the parties anticipate additional

23   motions or we can wait until I finish ruling on these two

24   motions.

25           With respect -- I'll do it numerically -- to the

1    motion to reopen detention hearing, Number 57, Mr.

2    Gieswein requests that the Court reopen his detention

3    hearing and reconsider releasing him pursuant to the

4    conditions he previously proposed.  He contends there is

5    new and material information of the type identified in

6    Section 3142(f)(2) warranting the reopening of the

7    detention hearing.

8         Under the Bail Reform Act, the defendant shall

9    be released before trial unless a judicial officer

10   determines after a hearing that no condition or

11   combination of conditions will reasonably assure the

12   appearance of the person and the safety of any other

13   person in the community.  18 U.S. Code, Section

14   3142(e)(1).

15        In making this determination, the Court must

16   consider four factors:  First, the nature and

17   circumstances of the offense charged; second, the weight

18   of the evidence against the person; third, the history and

19   characteristics of the person; and fourth, the nature and

20   seriousness of the danger to any person or the community

21   that would be posed by the person's release.  18 U.S.

22   Code, Section 3142(g).

23        On July 27, 2021, the Court denied Mr.

24   Gieswein's motion for revocation of the detention order,

25   finding that no condition or combination of conditions

1  will reasonably assure the safety of any other person and

2  the community were Mr. Gieswein to be released pending

3  trial.  The Court's decision was affirmed by the D.C.

4  Circuit per curiam on October 19, 2021.

5          The determination that a criminal defendant must

6  be detained pursuant to Section 3142(g) "may be reopened"

7  at any time prior to trial if new information surfaces

8  that has a "material bearing on the issue of whether there

9  are conditions of release that will reasonably assure the

10 appearance of such person as required and the safety of

11 any person and the community."  18 U.S. Code, Section

12 3142(f).

13         "New and material information consists of

14 something other than a defendant's own evaluation of his

15 character or the strength of the case against him."

16 Instead, it must consist of "truly changed circumstances,

17 something unexpected or a significant event."  United

18 States versus Esposito, 354 F.Supp. 2nd 354, 359 (Southern

19 District New York 2019).  Moreover, "new" information is

20 only "material" if it is "essential to or capable of

21 significantly affecting the detention decision."  United

22 States versus Worrell, 2021 Westlaw 2366934 at 9 (D.D.C.

23 June 9, 2021).

24         Regarding Mr. Gieswein's arguments, first, the

25 Court finds that the report concerning conditions at CTF

1    and CDF is new information, but ultimately does not have a

2    material bearing on the issue of whether there are

3    conditions of release that will reasonably assure the

4    appearance of such person as required and the safety of

5    any other person and the community.

6        The Court held a detention hearing on July 1,

7    2021.  Though it is true that Mr. Gieswein was housed at

8    CTF at that time and was aware of its conditions, the

9    Marshals Service had not yet inspected the facility and

10   thus its report and conclusions on the condition of

11   confinement was not yet available.  Thus, it qualifies as

12   "information that was not known to" Mr. Gieswein at the

13   time of his detention hearing.  18 U.S. Code, Section

14   3142(f).  However, the information is not "material."

15       Other judges in this district have described

16   "material" as information that "casts different light on

17   any of the Section 3142(g) factors."  United States versus

18   Lee, 451 F.Supp. 3d 1, 5 (D.D.C. 2020)(Judge Ketanji Brown

19   Jackson); or information that is "essential to or capable

20   of significantly affecting the detention decision."

21   United States versus Worrell, 2021 Westlaw 2366934 at 9

22   (D.D.C. June 9, 2021)(Judge Lamberth.)  The information in

23   the Marshals Service report has no bearing on this Section

24   3142(g) factors.  The USMS inspection found that

25   conditions at CTF "were observed to be largely appropriate

1    and consistent with federal standards," and the most

2    recent briefing regarding conditions does not alter this

3    finding.

4         Moreover, Mr. Gieswein also does not include any

5    detailed individualized concerns regarding how he has been

6    affected by any alleged poor conditions such as resulting

7    health consequences or denial of treatment which could

8    impact, for example, the Court's analysis of the "history

9    and characteristics" factor.

10        Second, the news articles reporting that the

11   January 6 defendants at CTF are "vulnerable to

12   radicalization due to the particular circumstances of

13   their incarceration" constitutes new information, but is

14   not "material."  Although Mr. Gieswein was detained within

15   this particular unit with other January 6th defendants, at

16   the time of his first hearing, it was unknown at the time

17   the extent to which experts posited that the group could

18   become "radicalized" by living together.  Thus, it also

19   qualifies as "information" that was not known to Mr.

20   Gieswein at the time of his detention hearing.  18 U.S.

21   Code, Section 3142(f).

22        However, while these reports are concerning in

23   the abstract, they are not material at this time.  First,

24   the reports are largely speculative of potential future

25   events and Mr. Gieswein himself has stated that he has not

1    felt pressure to conform to the activities of others in

2    the unit.  Moreover, while not diminishing the overall

3    importance of having a variety of view points, Mr.

4    Gieswein's arguments are weakened by his prior behavior.

5    Mr. Gieswein's previous "diverse" connections in Colorado

6    did not prevent him from participating in the events of

7    January 6th in the first place.  And as the government

8    points out, Mr. Gieswein currently has avenues to seek out

9    different viewpoints while at CTF such as through the

10   library or through phone calls with others.

11            And finally, Mr. Gieswein's argument that the

12   Court should consider the danger of radicalization

13   "analogous to the Coronavirus risk that so many courts

14   took into account in determining whether detention was

15   appropriate last year," the defendant's reply, ECF Number

16   68 at 6 is unavailing.  In those cases, courts weighed the

17   defendant's particular vulnerability to contracting a

18   severe case of COVID-19 against the other 3142(g) factors.

19   Significantly, generalized concerns regarding the risk of

20   contracting COVID-19 did not suffice.  Cf. United States

21   versus Stephens, 2021 Westlaw 663184, at 2 (D.D.C.

22   February 19, 2021) ("The general threat posed by COVID-19

23   while gravely serious for inmates often housed in

24   conditions tragically conducive to the spread of COVID-19

25   does not in and of itself pose an extraordinary and

1    compelling reason for compassionate release." Lee, 451 F.

2    Supp. 3rd. at 7 (It also appears that Lee's personal

3    circumstances are not like those of other defendants for

4    whom COVID-19 has a readily material bearing, ergo, those

5    who have underlying medical conditions and thus reasonably

6    maintain that COVID-19 casts new light on the individual

7    characteristics that the Court previously considered when

8    deciding whether detention was required."

9         Here, Mr. Gieswein's fears of potential

10   radicalization are most akin to generalized concerns.  He

11   does not allege that he himself fears retaliation from

12   other January 6th defendants for non-conforming behavior

13   and his letter reports that he does not feel pressure to

14   conform.  Therefore, even if the Court analogized to the

15   COVID-19 line of cases, the result would not change.

16        For these reasons, Mr. Gieswein's motion to

17   reopen the detention hearing, ECF Number 57 is denied.

18        And the final motion that the Court will resolve

19   today is the ECF Number 58.  Before the Court does that,

20   it will take a five-minute recess and mute the video and

21   audio.  Thank you.

22        Ms. Whitney, if Mr. Gieswein would like to work

23   with his attorneys, that's fine.  Anytime he'd like to

24   speak with his attorneys in a breakout room is fine, Ms.

25   Whitney.

1          THE COURTROOM DEPUTY:  Yes, Your Honor.

2          MS. RIGBY:  Thank you, Your Honor.  We'll go

3    ahead into the breakout room if it's no trouble.  Thank

4    you.

5          (Recess.)

6          THE COURT:  Any time you need to speak to your

7    client, counsel, just let me know.

8          MS. RIGBY:  Thank you, Your Honor.

9          THE COURT:  And, Mr. Gieswein, that applies to

10   you.  You are a brilliant man.  But you've got a brilliant

11   lawyer.  So I'm going to save you from yourself as my law

12   clerks tell me.  All right?  Okay.  So I'm going to go

13   ahead and address ECF Number 58.  I'm going to deny that

14   motion.

15         Mr. Gieswein requests that the Court dismiss the

16   indictment against him because the approximately 21-month

17   delay between his arrest and the current trial date

18   violates his constitutional right to a speedy trial.

19   That's his motion at Number 58.

20         To determine whether a defendant's Sixth

21   Amendment right to a speedy trial has been violated and

22   whether dismissal of the indictment is appropriate, the

23   Court must consider four factors:  One, "the length of

24   delay; two, the reason for the delay; three, the

25   defendant's assertion of his right; and four, prejudice to

1    the defendant."  Citing Barker versus Wingo, 407 U.S. 514,

2    531 (1972).  "No single factor is necessary or sufficient

3    to find a deprivation of the right to a speedy trial

4    because the factors are related and must be considered

5    together."  United States versus Bikundi, 926 F.3d 761,

6    779 (D.C. Circuit 2019).  "To trigger the speedy trial

7    analysis, the length of delay between accusation and trial

8    must cross the threshold of dividing ordinary from

9    presumptively prejudicial delay."  Id.  (Quoting Doggett

10   v. United States, 505 U.S. 647, 651-52 (1992).

11   "Generally, a delay of one year is presumptively

12   prejudicial." Id.

13          On balance, the Barker factors do not weigh in

14   favor of a finding that Mr. Gieswein's right to a speedy

15   trial has been violated.

16          The first Barker factor, whether the delay

17   before a trial was uncommonly long is actually --

18   according to Doggett and I'll quote -- "was actually a

19   double enquiry."  Doggett, 505 U.S. at 651.  First, to

20   trigger the speedy trial analysis, the defendant must

21   allege an abnormally long delay "since by definition, he

22   cannot complain that the government has denied him a

23   speedy trial if it has in fact prosecuted his case with

24   customary promptness."  Id. at 651-52.  Courts call this

25   trigger a "presumptively prejudicial" delay and generally

1    deem it satisfied if the delay exceeds one year.  See

2    Bikundi, 926 F.3d at 779.  The second half of the inquiry

3    considers "as one factor among several the extent to which

4    the delay stretches beyond the bare minimum needed to

5    trigger judicial examination of the claim."  Doggett, 505

6    U.S. at 652.  How much delay is tolerable is "dependent

7    upon the peculiar circumstances of the case."  Barker, 407

8    U.S. at 530-31.

9           Here, the delay is "presumptively prejudicial"

10    because the delay will be approximately 21 months if trial

11    goes forward in October.  However, while presumptively

12    prejudicial, the delay remains shorter than others the

13    D.C. Circuit has upheld.  Ergo, United States versus

14    Lopesierra-Gutierrez, 708 F.3d 193, 202-03 (D.C. Circuit

15    2013)(delay of 3 1/2 years did not violate Sixth Amendment

16    where case involved "complicated and far-reaching

17    conspiracy").  In addition, as the Supreme Court has

18    observed, the delay that can be tolerated for an ordinary

19    street crime is considerably less than for a serious

20    complex conspiracy charge.  Barker, 407 U.S. at 531.

21    Given the complex nature of this case, particularly with

22    regard to the unprecedented amount of discovery --

23    including the large number of potential witnesses and a

24    variety of discovery sources -- the delay is not

25    "uncommonly long."  Doggett, 505 U.S. at 651.

1          The second factor assesses "whether the

2    government or the defendant is more to blame for the

3    delay."  Id.  The Barker court differentiated between

4    three types of delay:  One, deliberate; two, neutral; and

5    three, valid.  Barker, 407 U.S. at 531.  Deliberate

6    attempts to hamper the defense weigh heavily against the

7    government.  Id.  Neutral factors like "negligence and

8    overcrowded courts" weigh against the government, but not

9    as heavily.  Id.  "Valid reasons such as a missing

10    witness" justify the corresponding delay and do not weigh

11    against any party.  Id.

12          Here, "the delay in bringing the case to trial

13    has resulted primarily from the practical difficulties

14    occasioned by the complexities of the case and not from

15    congestion of the calendar or bad faith or neglect on the

16    part of the government or the district court."  United

17    States versus Cain, 671 F.3d 271, 296-97 (2d Circuit 2012)

18    (reasoning that a delay "of less than 22 months" was

19    "understandable given the presence of multiple defendants,

20    the large number of allegations and the complexity of the

21    racketeering case").  There is no allegation that the

22    government deliberately attempted to cause any delay.  And

23    generally, "delays to the complexity of the case and the

24    large number of defendants support a finding that no Sixth

25    Amendment violation occurred."  United States versus Bass,

460 F.3d 830, 836 (6th Circuit 2006)(no violation despite
five-year delay where case involved a large-scale drug and
murder conspiracy that at one point encompassed seventeen
defendants); United States versus Bikundi, 926 F.3d 761,
777-78 (D.C. Circuit 2019)(upholding the ends-of-justice
continuances totaling 18 months in two co-defendant health
care fraud and money laundering conspiracy cases in part
because the district court had found a need to "permit
defense counsel and the government time to both reduce
discovery and review discovery").

The Court has previously agreed with the
government that this is a complex case due to the
unprecedented amount of discovery and that the government
has worked diligently in producing discovery to defense.
August 11, 2021 Hearing Transcript.  ECF Number 37 at 32,
pages 13 to 18; see also Doggett, 505 U.S. at 652
(district court's reasonable diligence finding is reviewed
"with considerable deference").

The Court agrees with the government that the
volume of discoverable materials is unrelated to its
decision to prosecute cases arising out of the Capitol
breach simultaneously and the most recent discovery update
indicates that vast quantities of discovery are being
provided to the defense in this case.  See Discovery
Update, ECF Number 103.  Moreover, the Court notes that

Mr. Gieswein has filed multiple pretrial motions and an interlocutory appeal which have tolled the speedy trial clock.

Regarding the third Barker factor, notwithstanding his decision to file multiple pretrial motions and an interlocutory appeal, Mr. Gieswein has consistently asserted his right to a speedy trial which weighs in his favor.

Finally, under the fourth Barker factor, prejudice to defendant, the Court considers three kinds of prejudice that result from an unreasonable delay; "oppressive pretrial incarceration, anxiety and concern of the accused and the possibility that the accused defendant will be impaired by dimming memories and loss of exculpatory evidence." Doggett, 505 U.S. at 654. The most serious form of prejudice is the last, "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system."

Here, Mr. Gieswein has not proffered any basis to conclude that the defense case has been impaired by the delay. Moreover, courts have found that a delay in discovery, in and of itself is not enough to warrant dismissal. Ergo, United States versus Anderson, 902 F.2d 1105, 1110 (2nd Circuit 1990)("failure of the government to respond to discovery requests" did not prejudice the

1    defendant in light of eight-month delay and other

2    circumstances).  United States versus Grimmond, 137 F.3d

3    823, 830 (Fourth Circuit 1998)(defendant had not shown

4    impairment of his defense where he failed to "identify any

5    witness that was unavailable as a result of the delay,"

6    did not "allege that any witness was unable accurately to

7    recall the events in question" and did "not contend that

8    any exculpatory evidence was lost" or that "any evidence

9    was unavailable because of the delay").

10           Instead the prejudices Mr. Gieswein alleges are

11   based on the conditions at CTF during the pandemic as well

12   as his inability to work while incarcerated.  While the

13   Court does not doubt that Mr. Gieswein has suffered

14   anxiety while incarcerated at CTF, "courts generally have

15   not found prison conditions to weigh heavily in favor of

16   dismissal, even during the current pandemic."  Zhukov,

17   2021 Westlaw 1784552 at 4; see also Akhavan, 2021 Westlaw.

18   797806 at 5 (no Sixth Amendment violation where the

19   defendant argued he suffered prejudice due to

20   "psychological trauma associated with incarceration during

21   the pandemic"); United States v. Kaetz, 2021 Westlaw

22   1251711, at 5 to 7 (District Court of New Jersey April the

23   5, 2021)(defendant's "general concerns of COVID-19 in

24   prison" did not amount to "oppressive" incarceration under

25   Barker).

1          Similarly, regarding Mr. Gieswein's

2    unemployment, while unfortunate, this is largely a

3    generalized concern that would affect any individual who

4    is detained.  See United States v. Eccleston, 615 F.App'x

5    767, 776 (4th Circuit 2015)(finding no prejudice where

6    defendant complained of "economic harm, damaged credit,

7    the inability to advance his skills at work, embarrassment

8    and missed birthdays").

9          So accordingly, Mr. Gieswein's motion to dismiss

10   the indictment for violation of his speedy trial rights is

11   denied.

12          During the recess, I had an opportunity to agree

13   with -- to read word for word Judge Chutkan's opinion.  I

14   agree with her.  The opinion is brilliant.  If the case

15   remains in this jurisdiction, which this Court is inclined

16   to allow it to remain, I'm not sure I'd go so far as Judge

17   Chutkan went.  It appears that she will allow

18   questionnaires to be mailed to prospective jurors.  I

19   doubt I would do that only because of my fear about who

20   may be providing answers or how or what tools the

21   prospective juror is using to prepare and submit answers.

22   I may do what I did in Stevens.  It's time consuming, but

23   it's fair.

24          I may bring jurors in different parts of the day

25   and give them the questionnaire to fill out and then

1    leave.  And then the attorneys and I can determine who to

2    bring back for the jury pool to consider selection.  I may

3    do that.  But that worked in Stevens.  It's the only time

4    I've done it that way.

5         But I'm really reluctant to submit any

6    questionnaires out to anyone not knowing who is providing

7    the answers.  So anyway, that's all I'll say about that.

8    I gave defense counsel an opportunity to file any points

9    defense counsel wants to make with respect to Judge

10   Chutkan's ruling which was just issued last evening, but

11   it's brilliant and I agree with her analysis.

12        The government has filed a motion -- I almost

13   forgot it -- for the Court to reconsider a discovery order

14   it issued last year and I'm going to vacate that order.

15   I'm the chair of a committee that deals with CTF and D.C.

16   Jail issues.  And I've been working -- the committee has

17   been working very closely with Emily Miller with respect

18   to discovery and I can't say enough about how excellent

19   she and her colleagues have been in promulgating

20   procedures for the expedient dissemination of I don't want

21   to say tons of discovery, but that's essentially what it

22   is.  Tons of discovery.  So I'll vacate that order that

23   the Court issued requiring the government to provide

24   resources to the defendant because I'm persuaded the

25   government is doing everything it possibly can in an

1    expedient manner to collect, analyze and disseminate all

2    discovery to all defendants arrested as a result of the

3    January 6th incident.

4            So what do we do going forward?  Is there a need

5    to schedule an intervening status hearing date or a

6    motions hearing date?  I've given the parties time within

7    which to address other pending motions.  I welcome your

8    suggestions.

9            MS. RIGBY:  Your Honor, the government is going

10   to respond to our latest filing about venue and then we

11   will reply by the 18th per the Court's order.  And we

12   could let the Court know in that filing whether we would

13   request further argument or would rather rest on our

14   papers at that point.

15           THE COURT:  Okay.  So we'll use the 4th and the

16   18th then for filing dates.  The 4th for defense counsel

17   to file with respect to any open motion and for the

18   government to file responses.  Is that correct, Ms. Rigby?

19           MS. RIGBY:  I think it would be the 4th for any

20   responses to anything open and the 18th for any replies --

21           THE COURT:  That makes sense.

22           MS. RIGBY:  -- because I think it applies --

23           THE COURT:  That makes sense.

24           MS. RIGBY:  And, Your Honor does have a hearing

25   set on October 5th for any new motions and has set

1    deadlines for those in August I think.  And I won't speak

2    for the government, but I do anticipate that there will be

3    further motions as 404(b) disclosures or other reasons to

4    raise motions in limine or other motions.  But the Court

5    has already scheduled that.

6              THE COURT:  All right.  That's fine.  Is there a

7    need for an intervening status hearing?  I don't want Mr.

8    Gieswein to feel as though he's been neglected by the

9    Court.  He certainly isn't.  Is there a need to bring him

10   back between now and October?  I'm certainly happy to do

11   so to check in with him.  But I'll defer to his attorneys.

12             MS. RIGBY:  I think, Your Honor, at this point,

13   I don't see a particular need and we know that we can

14   always ask the Court to schedule one if --

15             THE COURT:  Right.  You are just a phone call

16   away.  You know how to reach either Mr. Coates or Ms.

17   Whitney or whomever is assisting the Court.

18             MS. RIGBY:  And I will say, Your Honor, based on

19   the Court's ruling if the Court were to deny the motion

20   for transfer of venue once it's all briefed, I do

21   anticipate that we'll submit a proposed questionnaire.  We

22   are not asking for anything to be sent home to jurors.

23   But we'll confer with the government and propose a --

24             THE COURT:  All right.

25             MS. RIGBY:  -- questionnaire.

1           THE COURT:  I really don't want to do that.  But

2   I'm sensitive also to the fact that when jurors come in,

3   they are kind of hoodwinked.  They think they are coming

4   in for jury selection.  And I really -- you know, I mean

5   Stevens presented a lot of issues.  We never did conduct a

6   post verdict inquiry about how they felt about that

7   process.  And I don't think we ever ascertained the views

8   of people.  But that's something we have to be concerned

9   about, especially Mr. Gieswein.  We don't want to tick off

10  people because they are brought in, fill out a

11  questionnaire and then sent home.  I mean it's for a

12  cogent reason.  I really don't want to mail a question --

13  I really have some strong feelings about that.  About not

14  doing that.  But I have very strong feelings about

15  expanding the scope of questioning.

16          And I hope that the parties can agree on

17  appropriate voir dire.  Not a survey now.  On appropriate

18  voir dire.  And believe me, if it's appropriate, I'm going

19  to allow the questions to be asked with appropriate

20  followup.  But it's not a survey.  And the more we got

21  into the Stevens voir dire, it was a survey.  But it was

22  too late.  So anyway, that's all I'll say about that.

23          So anyone have any burning desire to say

24  anything other than Mr. Gieswein?  Mr. Gieswein, if you

25  need to talk to your attorney, I'll give you a breakout

1    room, you know that, before we break.  Anyone else want to
2    say anything?
3           MR. KENERSON:  Your Honor, just to follow up on
4    what Ms. Rigby just suggested, the government is in accord
5    with proceeding in that manner.  We would ask that the
6    Court -- I know time is currently tolled by some of the
7    pending motions.  It's possible some of those will get
8    resolved.  I would ask that the Court find that the time
9    between now and our next hearing which is scheduled in
10   October is also excludable under the interest of justice
11   exception, 18 USC 3161(h)(7)(a), for the reasons the Court
12   has previously found and also just stated on the record in
13   denying the defendant's motion to dismiss for
14   constitutional speedy trial violations with respect to the
15   complexity of the case.
16          THE COURT:  And the Court will so find and the
17   docket will reflect that the time between now is excluded
18   and also consistent with the chief judge's standing order.
19   And for all the reasons the Court has previously
20   articulated because there are motions pending, the Court
21   will maintain its rulings that the time between now and
22   the trial date is excluded under speedy trial
23   calculations.
24          Ms. Rigby, do you need to speak to your client
25   before we break?

1          MS. RIGBY:  No, Your Honor.  And we have nothing
2     further for the defense.
3          THE COURT:  All right.
4          MR. KENERSON:  Your Honor, there's one other
5     issue --
6          THE COURT:  Yes.
7          MR. KENERSON:  -- the government wants to put on
8     the record which is that between the last hearing and
9     today, the government has extended a plea offer to the
10    defendant which it's our understanding that he rejected.
11    We just want to put that on the record.  The offer was to
12    two counts of assaulting, resisting or impeding certain
13    officers in violation of 18 USC 111(a).  So it's our
14    understanding that that's been presented to the defendant
15    by his counsel and he's rejected it.
16         THE COURT:  All right.  Thank you for putting
17    that on the record.  And, Ms. Rigby, anything you want to
18    say about that?  You don't have to say anything at all.
19    But do you agree with what counsel just said?
20         MS. RIGBY:  I don't have anything to add, Your
21    Honor.
22         THE COURT:  Okay.  All right.  That's fine.
23         MS. RIGBY:  Thank you.
24         THE COURT:  Okay.  Look, I'm a phone call away.
25    If you want to come back and check in at any time --

1   actually, I'm going to ask Ms. Whitney to put me and

2   Jordan in a breakout room.  I'm sure I'm forgetting

3   something and Jordan can save me from myself, Mr.

4   Gieswein.  So if you can put us in a breakout room, that

5   will be fine, Ms. Whitney.

6            THE COURTROOM DEPUTY:  Yes, Your Honor.

7            THE COURT:  Thank you.

8            (Recess.)

9            THE COURT:  I'm in pretty good shape I think.  I

10  don't have anything else to say.  It's 11:56.  We have the

11  next hearing date.  Everyone be safe and healthy.  And for

12  the last time in this hearing, I'm available any time if

13  anyone wants to talk about anything.  So thank you all.  I

14  appreciate it.  Mr. Gieswein, take care of yourself.

15           THE DEFENDANT:  Thank you, Your Honor.

16           MS. RIGBY:  Thank you, Your Honor.

17           THE COURT:  All right.  Okay.  Mr. Gieswein, let

18  me ask you this.  What's the current status of phone

19  service there?  There was a concern -- or maybe your

20  attorney is going to address it.  Is there still a

21  problem, Ms. Rigby, because there was an issue with phone

22  service and if I need to start yelling at the general

23  counsel over there, I will.

24           MS. RIGBY:  Your Honor, now that in-person

25  visits are permitted --

1          THE COURT:  Oh, good.  Good.

2          MS. RIGBY:  Phone calls are very hard to get.

3          THE COURT:  Oh, really?

4          MS. RIGBY:  Yes.  Because I mean Mr. Gieswein

5    can call me.  But I'm not aware that I can call him

6    without a good deal of lead time, but that is because --

7    from what I understand that is because we can go see him

8    in person now.

9          THE COURT:  Okay.  All right.  Well, if that

10   problem raises its head again, let us know because

11   that's -- when I heard about it, I, you know, I got

12   involved and we thought it was -- the problem was

13   addressed.  So if there are any other problems, let me

14   know.  But let me know.  Especially since the Court is

15   chair of this committee that deals with "problems" at the

16   jail.

17          And we get periodic updates from Ms. Miller.  I

18   am going to make an assumption that those updates are

19   filed in case related cases.  Is that right, counsel, or

20   do you file updates vis-a-vis an individual case and not

21   everyone's case?

22          MR. KENERSON:  Your Honor, generally speaking,

23   if there's an update that Ms. Miller prepares to be filed

24   across all Jan 6 cases, each individual attorney will file

25   it in their case.  So if one of those -- the next time one

1   of those is available, we will file it in this case as

2   well.

3            THE COURT:  Okay.  My recollection is she filed

4   something about two weeks ago, within the last two-week

5   time period.  It was very involved.  And I don't think it

6   was anything classified in that.  It was just an update to

7   the judges about on -- you may want to check and if you

8   don't have that, let us know.

9            MR. KENERSON:  I'll check with Ms. Miller on

10  that.  I know she appeared before another judge in a

11  different hearing within the last couple of weeks.  I am

12  personally unaware of anything that was filed, but I'll

13  check with her, double check.

14           THE COURT:  Okay.  And it may well be that there

15  are reasons why her report to the judges cannot not be

16  filed in every case.  I'm just unaware.  I shared it with

17  my colleagues, but then the thought occurred to me are the

18  parties getting this report.  So you may want to run it

19  past her and find out.  Just want to make sure everyone is

20  getting everything he or she is entitled to.

21           MR. KENERSON:  Certainly.  Will do.

22           THE COURT:  Okay.  Great.  All right.  Thank

23  you, everyone.  Be safe and be healthy.  Take care.  And

24  Mr. Gieswein, take care of yourself.  Bye.

25           (Proceedings concluded.)

1                    <u>CERTIFICATE OF REPORTER</u>

2

3          I, Lisa K. Bankins, an Official Court Reporter

4    for the United States District and Bankruptcy Courts for

5    the District of Columbia, do hereby certify that I

6    reported, by machine shorthand, in my official capacity,

7    the proceedings had and testimony adduced upon the motions

8    hearing in the case of the United States of America versus

9    Robert Gieswein, Criminal Number 21-cr-00024, in said

10   court on the 20th day of April, 2022.

11

12         I further certify that the foregoing 71 pages

13   constitute the official transcript of said proceedings, as

14   taken from my machine shorthand notes, together with the

15   backup tape of said proceedings to the best of my ability.

16

17         In witness whereof, I have hereto subscribed my

18   name, this 23rd day of April, 2022.

19

20

21                              Lisa K. Bankins

22                              Lisa K. Bankins
                                Official Court Reporter
23

24

25

MR. KENERSON: [13] 2/6 21/14 22/15 31/1 34/17 36/19 43/15 67/3 68/4 68/7 70/22 71/9 71/21
MR. McCULLOUGH: [4] 5/4 5/7 5/16 5/22
MR. PEARCE: [1] 14/6
MS. MULLIN: [4] 2/19 4/11 4/20 5/2
MS. RIGBY: [76]
THE COURT: [102]
THE COURTROOM DEPUTY: [3] 2/2 55/1 69/6
THE DEFENDANT: [9] 2/23 17/23 18/4 18/9 18/16 18/20 24/16 25/14 69/15

## 0

00024 [2] 1/3 72/9
00465 [1] 42/21
03 [1] 57/14

## 1

1/2 [1] 57/15
10 [2] 25/8 41/12
100 [9] 35/22 36/1 36/8 36/25 37/12 37/16 37/22 39/21 43/3
102 [1] 44/11
103 [1] 59/25
108 [1] 44/11
108-109 [1] 47/11
109 [1] 37/14
10:21 [1] 37/14
10:33 [1] 43/10
10:43 [1] 47/24
10:45 [3] 2/25 37/10 43/11
11 [4] 42/19 43/11 47/25 59/15
11 p.m [1] 10/19
1105 [1] 60/24
111 [1] 68/13
1110 [1] 60/24
113 [1] 41/12
1191 [1] 44/19
1193 [1] 44/19
11:00 [1] 25/8
11:56 [1] 69/10
12 [1] 42/20
1204 [1] 38/3
1212 [1] 38/3
124 [1] 47/14
1251711 [1] 61/22
13 [1] 59/16
130 [1] 47/14
137 [1] 61/2
138 [1] 38/3
14 [3] 22/17 23/20 41/10
148-49 [1] 47/21
15 [5] 3/1 39/4 40/21 40/25 42/23
1512 [3] 14/8 44/1 45/16
16 [3] 39/6 39/25 40/6
1650 [1] 1/16
17 [3] 42/14 42/17 42/18
1784552 [1] 61/17
18 [11] 37/19 43/25 49/13 49/21 50/11 51/13 52/20 59/6 59/16 67/11 68/13
1812 [1] 17/22
18th [6] 23/1 24/4 31/11 64/11 64/16 64/20
19 [10] 50/4 53/18 53/20 53/22 53/22 53/24 54/4 54/6 54/15 61/23
1921 [1] 39/10
193 [1] 57/14
1972 [1] 56/2
1987 [2] 41/23 44/19
1990 [1] 60/24
1992 [1] 56/10
1998 [1] 61/3

## 2

2-3 [1] 39/3
20 [2] 1/5 42/24
2000 [1] 38/9
20001 [1] 1/21
2006 [1] 59/1
2007 [2] 44/11 47/11
2008 [1] 41/21
2010 [1] 41/20
2012 [1] 58/17
2013 [1] 57/15
2015 [1] 62/5
2018 [2] 38/4 47/15
2019 [3] 50/19 56/6 59/5
2020 [1] 51/18
2021 [28] 39/5 42/7 42/8 42/14 42/17 42/18 42/19 42/20 42/21 42/23 42/23 42/24 46/15 46/16 49/23 50/4 50/22 50/23 51/7 51/21 51/22 53/21 53/22 59/15 61/17 61/17 61/21 61/23
2022 [13] 1/5 39/3 39/4 39/25 40/6 40/20 40/20 40/25 41/9 42/14 42/17 72/10 72/18
20530 [1] 1/13
20th [2] 22/18 72/10
21 [4] 9/10 9/18 20/15 57/10
21-24 [1] 2/3
21-32 [1] 47/9
21-cr-00024 [2] 1/3 72/9
21-CR-263 [1] 31/13
21-month [1] 55/16
22 [4] 34/7 40/21 40/25 58/18
22314 [1] 1/17
231 [13] 36/7 37/20 37/20 38/16 39/6 39/17 41/7 41/13 42/1 42/3 42/10 43/2 43/5
2366934 [2] 50/22 51/21
23rd [1] 72/18
24 [1] 2/3
255 [1] 39/10
263 [1] 31/13
27 [2] 46/16 49/23
271 [1] 58/17
296-97 [1] 58/17
296304 [7] 39/25 40/6 40/21 40/25 41/10 42/14 42/17
2:30 [1] 4/17
2d [1] 58/17
2nd [2] 50/18 60/24

## 3

30 [1] 42/20
304844 [1] 42/23
306 [1] 39/11
31 [2] 47/14 57/8
3142 [10] 49/6 49/14 49/22 50/6 50/12 51/14 51/17 51/24 52/21 53/18
3161 [1] 67/11
316850 [1] 46/15
32 [2] 47/9 59/15
333 [1] 1/21
354 [2] 50/18 50/18
359 [1] 50/18
37 [1] 59/15
3856290 [1] 42/19
3:20-cr-00465 [1] 42/21
3d [1] 51/18
3rd [1] 54/2

## 4

402 [1] 39/8
404 [1] 65/3
407 [4] 56/1 57/7 57/20 58/5
4199961 [2] 42/8 42/22
442 [1] 41/21
449 [1] 41/21
451 [3] 41/23 51/18 54/1

459 [1] 41/23
46 [1] 39/6
460 [2] 41/19 59/1
473 [1] 41/19
482 [1] 41/23
49 [1] 47/21
4th [7] 22/20 22/21 23/21 62/5 64/15 64/16 64/19

## 5

500 [1] 1/17
505 [6] 56/10 56/19 57/5 57/25 59/16 60/15
514 [1] 56/1
52 [2] 56/10 56/24
530 [1] 38/9
530-31 [1] 57/8
531 [3] 56/2 57/20 58/5
549 [2] 44/11 47/11
552 [1] 41/21
553 [1] 39/11
555 [1] 1/13
559 [1] 41/19
57 [4] 36/22 48/17 49/1 54/17
58 [5] 36/24 48/16 54/19 55/13 55/19
59 [1] 47/23
5th [1] 64/25

## 6

60 [3] 37/2 48/11 48/14
6049891 [3] 42/9 42/15 42/18
61 [2] 35/23 36/2
611 [1] 39/8
6134595 [2] 39/6 42/18
615 [1] 62/4
63 [6] 3/5 3/12 5/13 6/21 6/21 7/14
64 [1] 9/2
647 [1] 56/10
65 [6] 3/13 3/18 5/13 6/21 6/21 7/14
651 [2] 56/19 57/25
651-52 [2] 56/10 56/24
652 [2] 57/6 59/16
654 [1] 60/15
663184 [1] 53/21
671 [1] 58/17
68 [1] 53/16
6th [21] 4/13 9/22 12/4 12/8 12/23 13/4 13/9 15/7 15/8 15/16 15/19 15/23 17/15 20/1 26/23 27/3 52/15 53/7 54/12 59/1 64/3

## 7

703 [1] 38/9
708 [1] 57/14
71 [2] 47/9 72/12
73 [1] 46/2
732 [1] 38/9
761 [2] 56/5 59/4
767 [1] 62/5
776 [1] 62/5
777-78 [1] 59/5
779 [2] 56/6 57/2
78 [1] 59/5
782413 [2] 39/3 40/20
795 [1] 47/21
797806 [1] 61/18

## 8

81 [1] 39/10
822 [1] 44/18
823 [1] 61/3
830 [2] 59/1 61/3
836 [1] 59/1
86 [1] 39/10

## 9

902 [1] 60/23

903 [1] 47/14
926 [3] 56/5 57/2 59/4
97 [4] 6/6 7/15 23/6 58/17
9:00 [1] 1/6

## A

a.m [3] 1/6 43/11 47/25
abeyance [1] 6/15
ability [2] 35/9 72/15
able [1] 13/6
abnormally [1] 56/21
about [48] 3/1 3/14 3/18 4/4 6/20 7/8 10/15
10/19 11/19 13/5 19/19 20/5 20/5 20/9 21/5
22/11 26/23 27/24 28/12 29/15 29/23 30/20
32/24 33/6 33/10 33/16 33/25 34/12 35/22 37/3
48/19 48/22 62/19 63/7 63/18 64/10 66/6 66/6
66/9 66/13 66/13 66/14 66/22 68/18 69/13
70/11 71/4 71/7
abroad [1] 27/15
absolutely [1] 27/23
abstract [1] 52/23
abundance [1] 36/16
access [2] 6/5 23/6
accommodate [2] 25/16 48/2
accord [1] 67/4
according [1] 56/18
accordingly [2] 43/7 62/9
account [1] 53/14
accrued [1] 35/3
accurately [2] 38/13 61/6
accusation [2] 47/20 56/7
accuse [1] 23/18
accused [2] 60/13 60/13
acknowledge [3] 15/15 16/22 20/24
acknowledged [1] 20/16
acknowledges [1] 20/21
acquittal [1] 44/9
across [3] 12/1 28/15 70/24
act [7] 38/17 39/17 42/4 42/6 42/12 45/4 49/8
acted [2] 46/10 46/23
Action [1] 2/3
actions [2] 38/1 45/17
activities [1] 53/1
acts [5] 39/19 40/18 41/8 46/6 46/20
actually [10] 2/15 6/23 7/6 14/23 22/2 25/23
43/19 56/17 56/18 69/1
add [1] 68/20
added [1] 28/1
addition [3] 41/24 45/13 57/17
additional [6] 4/12 31/3 34/8 34/12 35/8 48/2
address [15] 3/1 3/3 3/10 19/20 19/23 31/6
37/10 37/12 37/13 46/21 48/10 48/14 55/13
64/7 69/20
addressed [1] 70/13
addressing [1] 7/4
adduced [2] 4/13 72/7
adequately [1] 60/17
adjacent [1] 45/23
administer [1] 19/18
advance [1] 62/7
adverb [1] 47/4
adversely [1] 38/21
advisement [3] 3/7 3/12 5/10 5/14 7/23 19/14
19/20 22/12
affect [1] 62/3
affected [5] 12/4 13/20 14/15 15/23 52/6
affecting [2] 50/21 51/20
affects [1] 38/21
affirmed [1] 50/3
after [9] 19/9 19/9 19/9 19/20 27/5 28/2 33/18
33/19 49/10
afterwards [1] 48/19
again [11] 15/17 15/22 19/9 19/23 23/7 28/25
33/4 37/6 37/9 48/6 70/10

against [13] 31/13 37/24 44/7 44/15 44/17
47/20 49/15 50/3 53/18 55/16 58/6 58/8 58/11
ago [2] 31/12 71/4
agree [7] 6/3 35/19 62/12 62/14 63/11 66/16
68/19
agreed [1] 59/11
agrees [2] 40/22 59/19
ahead [8] 6/25 12/6 14/10 14/12 18/23 33/7
55/3 55/13
airport [1] 29/12
airports [1] 30/2
Akhavan [1] 61/17
akin [1] 54/14
Alaska [2] 8/6 8/7
Alexandria [1] 1/17
Alford [1] 31/13
alive [1] 5/11
all [61] 2/14 2/24 4/19 4/25 5/3 5/9 5/9 9/10
9/13 9/22 9/23 11/5 11/12 11/16 11/22 12/1
12/10 14/10 17/24 23/4 23/16 24/6 25/10 26/4
26/7 28/24 30/7 30/11 30/19 30/22 32/6 32/8
32/24 34/11 34/15 35/17 36/12 36/21 37/6
42/16 43/16 47/18 48/5 55/12 63/7 64/1 64/2
65/6 65/20 65/24 66/22 67/19 68/3 68/16 68/18
68/22 69/13 69/17 70/9 70/24 71/22
allegation [1] 58/21
allegations [1] 58/20
allege [5] 46/5 46/6 54/11 56/21 61/6
alleged [2] 46/13 52/6
allegedly [5] 4/23 46/5 46/8 46/10 46/23
alleges [2] 12/8 61/10
allow [6] 10/14 44/8 44/16 62/16 62/17 66/19
alluding [1] 46/19
almost [1] 63/12
along [1] 2/7
already [5] 18/16 18/17 25/18 43/4 65/5
also [26] 2/11 6/14 6/23 13/16 18/12 19/14
19/20 30/2 31/23 35/24 40/7 41/1 41/10 41/22
42/8 44/17 48/21 52/4 52/18 54/2 59/16 61/17
66/2 67/10 67/12 67/18
alter [1] 52/2
although [7] 8/16 27/14 33/12 39/16 42/11
46/22 52/14
altogether [1] 6/2
always [2] 47/21 65/14
am [3] 32/3 70/18 71/11
Amendment [9] 18/10 41/14 41/15 42/2 45/12
55/21 57/15 58/25 61/18
AMERICA [4] 1/3 2/3 27/23 72/8
American [1] 27/9
Americans [1] 27/21
among [2] 48/12 57/3
amount [5] 57/22 59/13 61/24
analogized [1] 54/14
analogous [2] 15/14 53/13
analysis [6] 35/2 35/15 52/8 56/7 56/20 63/11
analyze [1] 64/1
analyzed [2] 14/21 14/25
Anderson [1] 60/23
ANN [2] 1/15 2/11
annoying [1] 39/8
anonymous [1] 20/25
another [3] 7/13 37/10 71/10
answer [5] 11/11 12/17 17/10 28/25 35/16
answered [1] 8/10
answering [1] 10/23
answers [4] 11/11 62/20 62/21 63/7
anti [1] 27/23
anti-America [1] 27/23
anticipate [3] 48/22 65/2 65/21
anticipated [1] 6/1
anxiety [2] 60/12 61/14
any [68] 4/25 5/19 7/21 7/25 10/1 12/15 12/17
14/2 14/7 14/19 15/24 20/18 22/11 24/11 25/12
25/18 25/25 26/16 27/22 28/14 30/14 30/24
31/3 31/7 33/5 33/13 33/16 35/3 35/16 36/12

38/17 38/20 38/22 38/23 39/16 39/19 40/9 42/4
42/6 43/4 46/7 46/7 49/20 50/1 50/7 50/11 51/5
51/17 52/4 52/6 55/6 58/11 58/22 60/19 61/4
61/6 61/8 61/8 62/3 63/5 63/8 64/17 64/19
64/20 64/25 66/23 68/25 69/12 70/13
anyone [14] 7/7 7/16 7/20 7/20 11/2 12/18 15/9
16/22 19/24 32/10 63/6 66/23 67/1 69/13
anything [17] 25/1 28/19 33/6 33/15 35/14
43/12 64/20 65/22 66/24 67/2 68/17 68/18
68/20 69/10 69/13 71/6 71/12
Anytime [1] 54/23
anyway [5] 6/24 28/17 32/24 63/7 66/22
anywhere [3] 10/9 11/24 29/10
appeal [2] 60/2 60/6
Appeals [1] 32/18
appearance [4] 13/24 49/12 50/10 51/4
APPEARANCES [1] 1/10
appeared [1] 71/10
appears [3] 6/6 54/2 62/17
application [7] 6/5 23/5 23/5 23/8 40/4 40/23
41/22
applications [1] 41/17
applies [4] 35/1 42/3 55/9 64/22
apply [1] 40/9
appreciate [1] 69/14
appropriate [21] 3/9 3/15 5/13 10/15 11/15
11/17 11/17 11/18 13/13 20/8 29/16 30/20
34/10 47/1 51/25 53/15 55/22 66/17 66/17
66/18 66/19
approximately [4] 4/17 55/16 57/10
April [6] 1/5 22/18 31/11 61/22 72/10 72/18
April 18th [1] 31/11
aptly [1] 27/8
arbitrary [2] 37/25 38/8
are [77]
area [1] 45/22
argued [1] 61/19
argues [9] 37/20 39/16 40/7 41/10 41/13 43/1
46/4 46/22 47/3
arguing [1] 5/24
argument [12] 3/23 3/24 4/5 4/8 4/8 14/7 17/21
34/24 43/6 46/21 53/11 64/13
arguments [6] 3/6 3/10 31/4 34/21 50/24 53/4
arising [1] 59/21
around [1] 12/25
arrest [1] 55/17
arrested [1] 64/2
article [1] 38/22
articles [2] 13/5 52/10
articulated [2] 33/7 67/20
articulates [1] 46/12
as [53] 4/13 5/1 6/21 6/24 7/12 9/20 12/22
12/23 13/3 15/19 20/19 20/19 22/7 22/7 22/24
24/20 24/20 26/2 27/20 28/22 30/15 31/22
32/13 32/17 35/10 39/5 39/8 40/1 41/16 45/11
46/14 50/10 51/4 51/11 51/16 52/6 52/19 53/7
53/9 55/11 57/3 57/17 58/9 58/9 61/5 61/11
61/12 62/16 64/2 65/3 65/8 71/1 72/13
ascertained [1] 66/7
ask [10] 6/14 8/16 29/8 30/7 36/17 65/14 67/5
67/8 69/1 69/18
asked [3] 11/2 31/6 66/19
asking [4] 4/2 9/5 9/11 65/22
assault [1] 17/22
assaulting [1] 68/12
asserted [1] 60/7
assertion [1] 55/25
assesses [1] 58/1
assisting [1] 65/17
associated [1] 61/20
assume [1] 28/25
assumption [1] 70/18
assure [4] 49/11 50/1 50/9 51/3
attaches [1] 3/17
attachment [1] 31/22
attack [6] 16/9 16/10 16/17 27/12 27/25 28/8

## A

attacked [2] 27/9 28/8
attacks [1] 27/12
attempt [1] 42/3
attempted [3] 45/1 45/8 58/22
attempts [1] 58/6
attending [1] 46/20
attention [3] 25/22 31/9 32/10
attorney [10] 7/9 18/3 25/21 26/1 26/3 26/16 43/12 66/25 69/20 70/24
Attorney's [1] 1/11
attorneys [7] 25/6 25/16 37/6 54/23 54/24 63/1 65/11
audio [2] 26/11 54/21
August [3] 42/20 59/15 65/1
August 11 [1] 59/15
August 30 [1] 42/20
authority [1] 45/4
authorizes [1] 38/7
available [5] 6/8 44/21 51/11 69/12 71/1
Avenue [1] 1/21
avenues [1] 53/8
avoid [1] 33/20
aware [5] 7/22 7/25 31/7 51/8 70/5
away [4] 14/18 29/24 65/16 68/24

## B

back [4] 18/14 63/2 65/10 68/25
backup [1] 72/15
bad [1] 58/15
Bail [1] 49/8
balance [1] 56/13
Ballestas [1] 47/21
ban [1] 39/23
Bankins [1] 1/19 72/3 72/21 72/22
BANKRUPTCY [2] 1/1 72/4
bar [1] 44/9
bare [1] 57/4
Barker [10] 56/1 56/13 56/16 57/7 57/20 58/3 58/5 60/4 60/9 61/25
barrage [2] 15/18 15/18
barring [1] 39/19
based [8] 17/7 20/14 31/15 31/15 35/15 39/12 61/11 65/18
basis [4] 5/12 12/14 47/10 60/19
Bass [1] 58/25
Bates [2] 40/1 40/22
be [18]
bearing [4] 50/8 51/2 51/23 54/4
because [31] 4/13 9/8 9/11 11/3 18/14 21/18 23/18 24/10 36/16 39/1 40/9 41/2 43/4 46/18 47/18 55/16 56/4 57/10 59/8 60/16 61/9 62/19 63/24 64/22 66/10 67/20 69/21 70/4 70/6 70/7 70/10
become [2] 6/22 52/18
been [19] 7/17 9/20 9/24 10/7 11/25 24/13 28/15 33/1 34/5 34/6 52/5 55/21 56/15 60/20 63/16 63/17 63/19 65/8 68/14
before [22] 1/8 3/16 3/16 3/16 3/17 5/7 7/18 9/15 9/25 11/12 13/17 16/2 16/3 23/9 45/3 45/10 49/9 54/19 56/17 67/1 67/25 71/10
beginning [1] 2/5
behalf [5] 2/8 2/11 13/24 14/8 21/15
behavior [2] 53/4 54/12
being [7] 7/2 11/6 12/9 13/6 23/19 27/25 59/23
believe [15] 2/11 4/18 10/14 11/16 13/12 19/5 19/16 21/22 32/21 32/21 33/8 34/9 35/19 36/15 66/18
believes [3] 11/17 11/18 12/12
bench [2] 33/2 37/9
best [3] 30/8 33/19 72/15
better [1] 18/13
between [10] 27/15 40/2 55/17 56/7 58/3 65/10 67/9 67/17 67/21 68/8
beyond [2] 4/21 57/4

bias [5] 12/1 14/16 14/18 15/2 20/25
bid [1] 9/4
Bikundi [3] 56/5 57/2 59/4
bill [10] 33/3 43/20 43/23 44/13 44/21 47/1 47/2 47/7 47/22
birthdays [1] 62/8
blame [1] 58/2
Boasberg [1] 46/14
bodily [1] 40/19
both [5] 5/14 14/17 20/6 34/13 59/9
bottom [1] 10/3
branch [2] 27/5 28/3
breach [1] 59/22
break [5] 18/19 43/11 43/11 67/1 67/25
Breakers [1] 22/3
breakout [10] 25/11 25/12 26/5 26/19 48/1 54/24 55/3 66/25 69/2 69/4
brief [2] 26/24 26/25
briefed [4] 9/14 33/1 34/19 65/20
briefing [7] 3/20 3/25 4/9 4/12 31/2 44/23 52/2
briefly [1] 48/22
brilliant [8] 6/25 24/21 25/7 25/12 55/10 55/10 62/14 63/11
bring [5] 10/24 11/10 62/24 63/2 65/9
bringing [2] 32/9 58/12
brought [2] 44/14 66/10
Brown [1] 51/18
brutalized [2] 27/6 28/4
building [5] 4/22 5/19 5/25 45/22 45/24
burning [4] 7/16 33/5 33/15 66/23
Bush [1] 27/13
business [2] 13/3 27/11
businesses [1] 13/2
Butler [1] 44/18
Bye [1] 71/24

## C

Cain [1] 58/17
calculations [1] 67/23
calendar [4] 18/13 22/19 37/11 58/15
California [1] 22/3
call [5] 56/24 65/15 68/24 70/5 70/5
called [2] 20/4 40/11
calls [2] 53/10 70/2
came [1] 31/9
can [36] 2/16 2/17 3/10 3/10 5/9 9/9 9/23 10/2 10/21 18/19 19/17 20/6 22/15 24/24 26/7 27/24 31/21 31/22 35/6 38/13 40/8 48/18 48/19 48/21 48/23 57/18 63/1 63/25 65/13 66/16 69/3 69/4 70/5 70/5 70/7
can't [1] 63/18
cannot [6] 2/15 8/20 9/16 43/2 56/22 71/15
capable [5] 50/20 51/19
capacity [1] 72/6
Capitol [9] 4/16 12/25 13/2 13/6 17/17 28/13 45/4 45/23 59/21
care [6] 32/23 41/25 59/7 69/14 71/23 71/24
Carolina [1] 14/24
carve [1] 8/9
case [60] 8/6 8/14 9/5 9/7 9/17 10/1 10/4 10/5 10/9 10/11 10/13 11/4 12/1 12/10 13/13 15/13 15/15 15/24 16/15 17/9 17/9 18/9 20/8 20/23 22/4 24/7 24/17 29/4 31/13 32/19 32/20 35/4 35/5 35/10 36/23 43/18 50/15 53/18 56/23 57/7 57/16 57/21 58/12 58/21 58/23 59/2 59/12 59/24 60/17 60/20 62/14 67/15 70/19 70/20 70/21 70/23 71/1 71/16 72/8
cases [12] 8/8 10/6 12/15 12/15 27/2 38/14 53/16 54/15 59/7 59/21 70/19 70/24
casts [2] 51/16 54/6
category [1] 6/21
cause [1] 58/22
caused [2] 40/18
caution [2] 11/3 36/16
CDF [1] 51/1
certain [3] 3/6 35/19 68/12

certainly [8] 3/15 16/12 16/17 16/21 35/9 65/9 66/10 71/9
CERTIFICATE [1] 72/1
certification [4] 45/11 45/18 45/21 46/13
certify [2] 72/5 72/12
cetera [1] 3/11
CF [1] 53/20
chair [2] 63/15 70/15
chamber [1] 45/23
chance [5] 8/11 21/6 21/9 22/10 31/10
change [2] 9/2 54/15
changed [1] 50/16
changes [2] 34/20 35/15
character [1] 50/15
characteristics [3] 49/19 52/9 54/7
charge [3] 44/7 47/11 57/20
charged [4] 44/4 44/6 44/25 49/17
charges [6] 37/18 43/24 44/14 44/16 44/18 45/8
check [6] 65/11 68/25 71/7 71/9 71/13 71/13
chief [1] 67/18
children [2] 13/6 27/18
Chip [1] 28/7
Chutkan [3] 31/12 31/14 62/17
Chutkan's [4] 31/21 33/9 62/13 63/10
Circuit [12] 44/19 47/14 50/4 56/6 57/13 57/14 58/17 59/1 59/5 60/24 61/3 62/5
circumstances [6] 49/17 50/16 52/12 54/3 57/7 61/2
citations [1] 38/13
cites [1] 12/16
Citing [3] 39/2 44/10 56/1
citizen [1] 19/17
citizens [3] 19/16 27/9 28/16
city [4] 12/25 17/13 29/23 41/23
civil [10] 38/20 39/15 40/7 40/13 40/16 40/17 40/23 45/5 46/7 46/20
claim [1] 57/5
clarify [1] 8/16
classified [1] 71/6
clear [5] 4/4 9/1 30/12 35/21 45/24
clearly [1] 33/7
clerks [2] 24/23 55/12
client [5] 18/13 26/17 48/1 55/7 67/24
clock [1] 60/3
close [1] 29/18
closely [1] 63/17
closer [3] 3/8 3/9 30/5
co [1] 59/6
co-defendant [1] 59/6
Coalition [3] 23/8 23/18 23/25
Coates [2] 39/8 65/16
Code [7] 37/19 43/25 49/13 49/22 50/11 51/13 52/21
cogent [2] 32/15 66/12
Cohen [1] 39/9
colleagues [5] 7/18 7/20 32/18 63/19 71/17
collect [1] 64/1
College [2] 45/11 46/14
Colorado [10] 8/14 8/17 16/10 17/5 29/2 29/6 29/7 30/15 38/9 53/5
COLUMBIA [19] 1/1 1/20 8/21 9/24 13/7 13/8 13/10 15/3 15/8 15/12 15/25 16/4 19/17 28/17 28/21 29/10 29/18 39/4 72/5
combination [2] 49/11 49/25
come [4] 19/8 33/10 66/2 68/25
comes [3] 5/7 25/9 33/9
comfortable [1] 32/20
coming [1] 66/3
comments [5] 17/24 26/23 26/24 26/25 31/3
commerce [2] 38/21 38/22
commission [1] 38/20
commit [2] 42/3 42/4
committee [4] 15/19 63/15 63/16 70/15
committing [1] 45/4
commodity [1] 38/22

**C**

community [5] 49/13 49/20 50/2 50/11 51/5
Company [1] 39/10
compassionate [1] 54/1
compelling [2] 15/14 54/1
complain [1] 56/22
complained [1] 62/6
completed [1] 44/23
complex [3] 57/20 57/21 59/12
complexities [1] 58/14
complexity [3] 58/20 58/23 67/15
complicated [1] 57/16
concede [2] 23/16 23/22
concern [3] 60/12 62/3 69/19
concerned [1] 66/8
concerning [2] 50/25 52/22
concerns [4] 52/5 53/19 54/10 61/23
concise [1] 44/2
conclude [2] 48/18 60/20
concluded [5] 39/5 40/1 42/16 43/4 71/25
concludes [3] 38/25 41/6 42/1
conclusion [1] 16/6
conclusions [1] 51/10
condition [3] 49/10 49/25 51/10
conditions [14] 49/4 49/11 49/25 50/9 50/25
51/3 51/8 51/25 52/2 52/6 53/24 54/5 61/11
61/15
conducive [1] 53/24
conduct [13] 25/3 35/1 37/24 38/6 38/23 39/2
39/12 39/18 42/7 45/6 46/7 46/21 66/5
confer [3] 30/8 30/19 65/23
confinement [1] 51/11
conform [2] 53/1 54/14
conforming [1] 54/12
confused [1] 35/2
congestion [1] 58/15
Congress [8] 27/4 27/7 27/12 28/2 28/5 29/20
45/3 45/10
Congress' [2] 45/11 46/13
connections [1] 53/5
consents [1] 2/12
consequences [1] 52/7
consider [10] 6/16 9/25 10/4 19/14 29/4 29/11
49/16 53/12 55/23 63/2
considerable [1] 59/18
considerably [1] 57/19
consideration [3] 9/21 34/13 46/1
considered [2] 54/7 56/4
considering [1] 6/13
considers [2] 57/3 60/10
consist [1] 50/16
consistent [2] 52/1 67/18
consistently [1] 60/7
consists [1] 50/13
conspiracy [4] 57/17 57/20 59/3 59/7
constant [1] 15/18
constitute [2] 40/17 72/13
constitutes [2] 42/12 52/13
constituting [1] 44/4
Constitution [4] 1/21 9/10 9/18 44/4
constitutional [5] 27/22 40/5 43/3 55/18 67/14
constitutionally [1] 46/1
consuming [1] 62/22
contain [1] 44/6
contend [1] 61/7
contends [1] 49/4
content [1] 39/21
context [1] 41/15
continental [1] 17/11
continuance [3] 34/12 34/20 35/15
continuances [1] 59/6
continue [1] 34/9
contracting [2] 53/17 53/20
control [1] 18/12
convenience [1] 29/11

convex [1] 39/20
conviction [1] 18/7
copy [4] 31/18 33/12 38/11 48/7
Coronavirus [1] 53/13
correct [10] 9/16 13/25 19/11 30/16 35/22 36/1
36/9 37/3 37/4 64/18
correctly [1] 45/8
corresponding [1] 58/10
corruptly [6] 45/1 45/20 45/25 46/10 46/24
47/4
could [15] 4/3 5/4 11/5 17/3 17/11 19/8 22/7
25/14 25/21 39/19 40/9 42/11 52/7 52/17 64/12
counsel [33] 2/4 2/9 2/24 3/24 6/4 8/12 11/16
21/12 22/14 22/22 22/23 23/9 23/13 23/21
23/23 26/9 30/24 31/20 32/9 33/17 34/15 34/16
43/10 47/25 55/7 59/9 63/8 63/9 64/16 68/15
68/19 69/23 70/19
Count [2] 37/1 43/24
country [8] 12/2 12/18 12/20 12/21 16/14
17/17 27/5 28/2
counts [8] 35/19 35/23 35/25 36/8 36/24 37/17
43/8 68/12
County [1] 29/15
couple [3] 3/4 31/5 71/11
course [1] 4/21
court [135]
court's [10] 8/25 9/19 16/18 17/6 20/10 50/3
52/8 59/17 64/11 65/19
courthouse [1] 29/13
courts [10] 1/1 42/9 42/15 53/13 53/16 56/24
58/8 60/21 61/14 72/4
coverage [1] 15/16
covers [1] 37/2
COVID [9] 12/23 53/18 53/20 53/22 53/24
54/4 54/6 54/15 61/23
COVID-19 [8] 53/18 53/20 53/22 53/24 54/4
54/6 54/15 61/23
cr [4] 1/3 31/13 42/21 72/9
create [1] 8/13
credit [1] 62/6
crime [1] 57/19
criminal [7] 1/3 2/3 41/24 44/1 47/13 50/5 72/9
criminalizing [1] 41/7
criminals [2] 27/6 28/4
cross [3] 3/14 3/19 56/8
cross-examination [2] 3/14 3/19
crucial [1] 40/1
crystal [1] 30/12
CTF [8] 50/25 51/8 51/25 52/11 53/9 61/11
61/14 63/15
cultural [1] 27/14
curfew [1] 12/21
curiam [1] 50/4
current [3] 55/17 61/16 69/18
currently [3] 48/11 53/8 67/6
customary [1] 56/24

**D**

D.C [25] 1/4 1/13 1/21 8/2 9/9 13/16 13/18
14/14 14/19 15/5 15/6 16/9 17/4 17/12 18/25
19/1 19/24 44/19 47/14 50/3 56/6 57/13 57/14
59/5 63/15
D.D.C [5] 46/16 50/22 51/18 51/22 53/21
damage [2] 34/11 40/19
damaged [1] 62/6
danger [2] 49/20 53/12
dark [2] 27/14
data [15] 11/25 12/11 12/20 13/10 13/12 13/16
13/18 13/20 13/20 14/16 14/17 15/5 16/5 20/22
21/13
date [9] 22/18 34/19 48/21 48/21 55/17 64/5
64/6 67/22 69/11
dates [1] 64/16
day [9] 7/13 11/2 12/5 22/6 27/4 28/1 62/24
72/10 72/18
days [4] 21/23 22/18 23/20 31/12

deadlines [1] 65/1
deal [3] 29/25 12/9 70/6
deals [2] 63/15 70/15
Dean [1] 31/13
decide [2] 30/10 41/4
deciding [1] 54/8
decision [11] 17/7 20/8 20/9 31/9 31/11 32/7
50/3 50/21 51/20 59/21 60/5
decisions [1] 42/25
deem [1] 57/1
defend [1] 44/8
defendant [28] 1/6 1/15 3/16 20/7 24/18 35/8
40/13 44/7 44/8 44/15 44/16 47/3 49/8 50/5
56/1 56/20 58/2 59/6 60/10 60/13 60/17 61/1
61/3 61/19 62/6 63/24 68/10 68/14
defendant's [10] 3/22 4/7 39/12 50/4 53/15
53/17 55/20 55/25 61/23 67/13
defendants [17] 47/20 52/11 52/15 54/3 54/12
58/19 58/24 59/4 64/2
Defender [1] 1/15
defense [3] 3/23 9/16 11/16 22/21 23/9 23/21
23/23 31/8 34/21 34/23 35/10 36/18 44/17 58/6
59/9 59/14 59/24 60/20 61/4 63/8 63/9 64/16
68/2
defer [1] 65/11
deference [1] 59/18
defile [1] 27/17
definite [1] 44/3
definition [4] 40/8 40/16 40/23 56/21
degree [1] 38/21
Delaware [1] 42/24
delay [32] 34/3 55/17 55/24 55/24 56/7 56/9
56/11 56/16 56/21 56/25 57/1 57/4 57/6 57/9
57/10 57/12 57/15 57/18 57/24 58/3 58/4 58/10
58/12 58/18 58/22 59/2 60/11 60/21 60/21 61/1
61/5 61/9
delays [2] 38/21 58/23
deliberate [2] 58/4 58/5
deliberately [1] 58/22
deliberating [1] 22/1
democracy [5] 16/9 16/11 16/17 17/22 27/25
democratic [2] 17/16 27/11
denial [1] 52/7
denied [9] 7/20 8/7 10/7 15/25 31/14 49/23
54/17 56/22 62/11
denies [2] 43/7 47/21
deny [5] 5/5 5/10 11/19 55/13 65/19
denying [3] 5/1 47/2 67/13
dependent [1] 39/7 57/6
deprivation [1] 56/3
described [2] 45/19 51/15
desire [4] 7/16 33/16 33/15 66/23
despite [1] 59/1
detailed [1] 52/5
detained [3] 50/6 52/14 62/4
detention [16] 32/25 36/22 43/17 48/18 49/1
49/2 49/7 49/24 50/21 51/6 51/13 51/20 52/20
53/14 54/8 54/17
determination [3] 27/17 49/15 50/5
determine [7] 8/19 9/5 9/11 10/1 39/12 55/20
63/1
determined [1] 29/8
determines [1] 49/10
determining [1] 53/14
did [22] 6/9 8/16 11/1 12/25 15/11 24/2 27/11
28/25 33/20 34/6 45/1 45/8 47/16 53/6 53/20
57/15 60/25 61/6 61/7 61/24 62/22 66/5
didn't [4] 3/22 4/7 13/23 14/11
died [2] 22/2 28/10
difference [5] 17/9 18/24 19/1 19/23 40/2
different [11] 10/4 10/6 12/17 14/21 14/24
15/2 15/24 51/16 53/9 62/24 71/11
differentiated [1] 58/3
differing [2] 40/2 40/3
difficult [3] 25/5 25/19 25/22
difficulties [1] 58/13

**D**

difficulty [1] 40/6
diligence [1] 59/17
diligently [1] 59/14
Dimaya [1] 38/3
diminishing [1] 53/2
dimming [1] 60/14
dire [21] 3/11 10/8 10/16 11/7 11/15 11/19 19/7 19/9 19/12 15/15 19/21 20/3 20/11 20/13 20/15 20/17 21/22 21/23 66/17 66/18 66/21
direct [1] 44/12
directed [1] 42/7
directly [1] 17/14
disagreement [2] 32/16 32/17
disagrees [4] 32/15 39/22 41/1 46/11
disclosures [1] 65/3
discoverable [1] 59/20
discovery [16] 57/22 57/24 59/10 59/10 59/13 59/14 59/22 59/23 59/24 60/22 60/25 63/13 63/18 63/21 63/22 64/2
discriminatory [2] 37/25 38/8
discussed [1] 25/18
discussion [1] 14/7
disdain [1] 27/16
dismiss [17] 33/25 34/8 34/18 35/4 35/18 35/23 35/25 36/7 36/23 36/24 37/1 37/17 43/8 43/18 55/15 62/9 67/13
dismissal [3] 55/22 60/23 61/16
disorder [10] 38/20 39/15 40/8 40/14 40/16 40/17 40/23 45/5 46/7 46/20
disorderly [3] 45/5 46/7 46/20
disregard [1] 27/17
disruptive [3] 45/5 46/7 46/20
disseminate [1] 64/1
dissemination [1] 63/20
distinction [1] 39/19
district [37] 1/1 1/1 1/9 1/20 1/20 8/20 9/24 13/7 13/8 13/10 14/20 14/22 15/1 15/3 15/8 15/12 15/25 16/4 19/16 28/17 28/21 29/10 29/18 32/4 39/3 39/4 42/20 42/22 42/24 50/19 51/15 58/16 59/8 59/17 61/22 72/4 72/5
districts [2] 14/20 19/25
dive [1] 3/2
diverse [1] 53/5
dividing [1] 56/8
do [46] 4/20 5/11 7/10 9/13 10/21 10/22 10/25 11/2 14/25 19/13 19/17 19/18 20/19 20/20 21/12 21/17 21/20 23/10 25/9 26/6 29/17 32/23 33/15 34/6 37/6 37/8 37/12 38/14 43/21 48/25 56/13 58/10 62/19 62/22 63/3 64/4 64/4 65/2 65/10 65/20 66/1 67/24 68/19 70/20 71/21 72/5
docket [3] 5/12 31/24 67/17
doctrine [1] 37/22
Document [1] 31/14
documents [2] 38/12 46/2
does [13] 6/15 7/16 12/9 43/12 51/1 52/2 52/4 53/25 54/11 54/13 54/19 61/13 64/24
Doggett [7] 56/9 56/18 56/19 57/5 57/25 59/16 60/15
doing [5] 25/2 27/8 28/5 63/25 66/14
don't [43] 3/3 4/11 4/23 5/11 8/11 10/22 10/24 14/23 14/24 18/2 18/5 18/7 21/20 22/18 24/10 24/11 24/25 25/23 28/14 29/5 29/7 31/25 32/5 32/8 32/11 32/22 33/1 33/4 34/20 35/14 36/15 63/20 65/7 65/13 66/1 66/7 66/9 66/12 68/18 68/20 69/10 71/5 71/8
done [2] 9/24 63/4
double [2] 56/19 71/13
doubt [3] 4/22 61/13 62/19
down [4] 10/24 11/10 13/3 20/4
driving [1] 16/7
drug [1] 59/2
drugs [1] 12/6
due [3] 52/12 59/12 61/19
during [8] 24/11 33/22 38/19 39/15 61/11

**E**

each [1] 70/24
earlier [2] 13/24 14/11
early [4] 3/7 3/14 3/17 31/6
Eastern [2] 32/4 42/20
easy [1] 30/3
Eccleston [1] 62/4
ECF [38] 3/5 3/12 3/13 3/18 5/13 6/6 7/15 9/2 11/12 23/6 35/21 35/22 35/23 35/25 36/2 36/8 36/22 36/24 36/25 37/2 37/12 37/16 37/21 39/21 41/12 46/2 47/9 47/22 48/11 48/14 48/16 48/17 53/15 54/17 54/19 55/13 59/15 59/25
economic [1] 62/6
effect [1] 15/22
efforts [2] 19/9 45/24
eight [1] 61/1
eight-month [1] 61/1
either [8] 3/15 5/9 16/20 21/6 25/17 36/14 40/18 65/16
Electoral [2] 45/11 46/14
elements [1] 44/6 47/19
elicit [1] 4/14
eliminates [1] 46/19
Elise [1] 27/20
ELIZABETH [1] 1/16
else [10] 2/16 7/8 12/20 12/21 12/24 12/25 13/2 15/9 67/1 69/10
embarrassment [1] 62/7
Emily [1] 63/17
EMMET [1] 1/8
encompassed [1] 59/3
encountered [1] 12/15
encounters [1] 12/13
encourages [1] 38/7
encouraging [1] 45/17
end [3] 19/12 19/15 38/14
ended [1] 11/6
ends [1] 59/5
enforcement [8] 37/25 38/8 38/18 39/13 39/25 41/9 42/5 42/13
enforcement's [1] 45/24
engaged [1] 41/14
engaging [1] 45/5
enough [5] 20/22 26/13 44/15 60/22 63/18
enquiry [1] 55/8
ensure [1] 44/14
entered [2] 4/23 13/24
entering [2] 45/3 45/22
entire [3] 20/14 20/14 60/18
entitled [1] 71/20
entry [2] 3/22 4/7
ergo [3] 54/4 57/13 60/23
Eric [1] 2/6
ERIK [2] 1/11 21/14
error [1] 8/13
escapes [1] 34/6
especially [3] 38/13 66/9 70/14
Esposito [1] 50/18
ESQUIRE [5] 1/11 1/12 1/12 1/15 1/16
essential [4] 44/3 47/19 50/20 51/19
essentially [3] 29/9 32/13 63/21
establish [2] 4/21 35/12
et [1] 3/11
evaluation [1] 50/14
even [8] 15/1 33/21 38/7 41/22 47/16 48/10 54/14 61/16
evening [2] 21/7 63/10
event [2] 40/15 50/17
events [5] 12/8 27/3 52/25 53/6 61/7
ever [1] 11/2 66/7
every [5] 10/4 12/5 19/15 19/17 71/16
everyone [6] 12/22 16/13 17/16 69/11 71/19 71/23

everyone's [1] 70/21
everything [5] 25/9 53/9 57/2 63/25 71/20
evidence [6] 20/6 20/7 49/18 60/15 61/8 61/8
evidentiary [2] 6/23 6/24
examination [3] 3/14 3/19 57/5
example [2] 45/22 52/8
exceeds [1] 57/1
excellent [7] 5/8 5/16 18/3 18/7 18/22 24/14 63/18
exception [3] 8/10 9/21 67/11
excludable [1] 67/10
exclude [1] 39/19
excluded [5] 16/14 18/6 20/4 67/17 67/22
exculpatory [2] 60/15 61/8
excuse [1] 28/9
excused [1] 47/25
exhibiting [1] 25/2
exhibits [4] 6/6 6/7 6/17 23/6
expand [1] 11/15
expanding [1] 66/15
expansive [1] 10/16
expected [1] 14/14
expedient [2] 63/20 64/1
experienced [2] 12/24 13/1
experiences [1] 11/8
experts [1] 52/17
explained [2] 46/14 47/10
explanation [1] 15/4
express [1] 41/2
expressed [2] 27/24 28/15
expressive [1] 39/18
extended [1] 68/9
extent [4] 18/25 19/24 52/17 57/3
extraordinary [1] 53/25
extremely [2] 10/16 10/20
extremists [2] 27/15 27/15

**F**

F.2d [2] 44/19 60/23
F.3d [8] 47/14 56/5 57/2 57/14 58/17 59/1 59/4 61/2
F.3rd [1] 47/21
F.App'x [1] 62/4
F.Supp [2] 50/18 51/18
facially [1] 41/14
facility [1] 51/9
fact [6] 6/15 12/9 14/14 39/12 56/23 66/2
fact-based [1] 39/12
factor [9] 17/7 35/3 52/9 56/2 56/16 57/3 58/1 60/4 60/9
factors [16] 8/23 9/14 9/25 10/5 29/14 30/20 34/21 35/4 49/16 51/17 51/24 53/18 55/23 56/4 56/13 58/7
facts [1] 44/3
factual [1] 46/25
failed [1] 61/4
fails [5] 38/5 46/5 46/6 46/9 46/23
failure [1] 60/24
fair [30] 9/8 9/16 10/1 10/15 11/15 16/15 17/3 17/12 19/6 19/12 20/8 21/2 21/9 21/9 21/21 22/7 22/9 22/13 23/7 23/8 23/17 23/19 24/9 24/9 25/25 32/21 32/22 32/23 37/23 62/23
fairly [2] 9/24 44/6
fairness [4] 7/10 11/20 33/5 60/18
faith [1] 58/15
family [3] 12/3 13/15 29/21
far [5] 14/18 16/19 19/25 57/16 62/16
far-fetched [1] 16/19
far-reaching [1] 57/16
farther [1] 29/24
father [1] 22/2
favor [4] 41/11 56/14 60/8 61/15
FCRR [1] 1/19
fear [2] 13/11 62/19
fears [2] 54/9 54/11
February [2] 34/19 53/22

**F**

February 19 [1] 53/22
federal [7] 1/15 27/6 28/3 29/20 44/1 47/12 52/1
federally [1] 38/23
feel [10] 13/8 13/10 13/11 13/18 18/25 19/4 19/24 32/20 54/13 65/8
feelings [2] 66/13 66/14
felt [8] 13/11 13/11 14/15 15/6 15/6 16/21 53/1 66/6
fetched [1] 16/19
file [19] 6/10 22/22 23/12 23/15 23/21 24/1 24/3 25/7 31/11 31/17 31/23 44/13 60/5 63/8 64/17 64/18 70/20 70/24 71/1
filed [10] 21/18 32/12 44/24 60/1 63/12 70/19 70/23 71/3 71/12 71/16
files [1] 23/23
filing [3] 64/10 64/12 64/16
fill [2] 62/25 66/10
final [1] 54/18
finally [3] 43/1 53/11 60/9
find [6] 31/22 35/6 56/3 67/8 67/16 71/19 62/5
finding [3] 39/4 49/25 52/3 56/14 58/24 59/17 62/5
finds [1] 50/25
fine [13] 7/18 22/17 22/25 23/14 23/17 24/4 25/15 32/7 54/23 54/24 65/6 68/22 69/5
finish [1] 48/23
firefighters [1] 42/5
first [19] 8/16 11/2 18/10 27/5 28/3 37/20 41/14 41/15 42/2 44/5 44/25 46/11 49/16 50/24 52/16 52/23 53/7 56/16 56/19
Fischer [2] 39/3 40/19
five [4] 22/6 37/3 54/20 59/2
five-day [1] 22/6
five-minute [2] 37/3 54/20
five-year [1] 59/2
Florida [1] 14/22
focus [1] 46/17
focused [3] 28/16 28/20 28/22
focuses [1] 30/12
fold [1] 44/5
follow [1] 67/3
followed [1] 35/24
followup [1] 66/20
force [3] 12/24 27/7 28/4
foregoing [1] 72/12
forgetting [1] 69/2
forgot [1] 63/13
form [3] 27/23 44/21 60/16
former [2] 27/13 40/5
forward [2] 57/11 64/4
found [10] 8/20 14/19 15/14 21/7 22/10 51/24 59/8 60/21 61/15 67/12
four [11] 19/25 21/23 22/6 35/24 35/25 36/25 37/17 43/8 49/16 55/23 55/25
fourth [5] 1/13 35/3 49/19 60/9 61/3
frankly [3] 13/17 19/8 30/6
fraud [1] 59/7
freedom [1] 27/21
Friedrich [1] 47/8
friends [3] 12/4 13/15 29/20
front [4] 22/19 24/12 24/13 25/3
full [1] 12/3
fully [1] 33/1
fulsome [1] 40/15
function [1] 38/24
further [8] 3/25 4/9 9/21 28/19 64/13 65/3 68/2 72/12
future [1] 27/2 44/9 52/24

**G**

garage [1] 4/16
gathering [2] 40/10 40/17
gatherings [1] 40/24

gave [1] 63/8
general [6] 40/18 43/22 61/23 69/22
generalized [3] 53/19 54/10 62/3
generally [5] 56/11 56/25 58/23 61/14 70/22
George [1] 27/13
Georgia [1] 15/1
get [17] 11/11 17/3 17/12 20/3 24/10 25/22 28/25 30/3 30/5 32/21 32/23 33/18 34/7 37/15 67/7 70/2 70/17
gets [1] 29/24
getting [3] 32/12 71/18 71/20
GIESWEIN [62] 1/5 2/4 2/12 2/21 4/23 13/25 17/12 18/18 18/18 24/7 25/16 25/19 26/1 26/16 31/17 32/21 34/4 34/11 37/5 37/16 39/16 40/7 41/1 41/13 43/1 43/21 43/22 44/25 45/8 45/16 45/19 45/25 46/4 46/9 46/22 49/2 50/2 51/7 51/12 52/4 52/14 52/20 52/20 52/25 53/8 54/22 53/2 55/15 60/1 60/6 60/19 61/10 61/13 65/8 66/9 66/24 66/24 69/4 69/14 69/17 70/4 71/24 72/9
Gieswein's [12] 43/7 47/22 49/24 50/24 53/4 53/5 53/11 54/9 54/16 56/14 62/1 62/9
give [17] 7/11 8/11 11/14 21/10 22/7 22/9 22/12 23/20 25/12 26/4 26/19 30/9 37/7 38/11 48/7 62/25 66/25
given [6] 29/21 31/2 40/4 57/21 58/19 64/6
go [13] 6/21 6/24 6/25 8/23 12/6 14/10 14/11 18/23 28/11 29/8 33/7 55/2 55/12 62/16 70/7
goes [6] 15/19 26/15 28/5 28/13 29/21 57/11
going [58] 4/2 4/9 4/14 4/24 6/6 6/25 8/13 10/8 10/14 10/20 10/21 10/24 10/25 10/25 11/9 11/10 11/14 15/7 15/21 19/2 19/3 19/5 19/6 19/24 19/25 20/6 21/11 24/8 24/9 24/10 25/1 26/2 26/3 26/5 26/6 26/10 28/11 30/16 32/17 33/2 33/12 34/10 37/8 43/10 48/6 48/9 48/13 55/11 55/12 55/13 61/4 64/4 69/18 69/11 69/20 70/18
good [15] 2/6 2/9 2/10 14/4 14/6 14/11 18/20 25/3 25/4 29/12 29/13 69/9 70/1 70/1 70/6
got [4] 24/14 55/10 66/20 70/1
govern [1] 38/1
government [61] 1/11 2/5 4/14 4/21 5/17 5/22 5/23 7/5 10/6 11/17 12/7 12/16 14/2 21/5 21/8 21/10 21/16 22/9 22/13 24/1 24/2 24/3 27/6 27/9 28/3 29/20 30/19 30/24 33/16 34/16 36/19 41/10 43/23 44/13 44/24 45/14 46/16 47/5 47/10 53/7 56/22 58/2 58/7 58/8 58/16 58/22 59/9 59/12 59/13 59/19 60/24 63/12 63/23 63/25 64/9 64/18 65/2 65/23 67/4 68/7 68/9
government's [6] 6/19 16/16 17/8 17/18 35/5 41/12
Grange [1] 41/20
grant [7] 6/7 7/1 7/12 8/24 23/11 23/17 23/19
granted [7] 7/20 9/8 9/22
granting [2] 7/25 31/7
gravamen [1] 6/22
gravely [1] 53/23
Great [2] 14/9 71/22
greater [3] 15/22 18/25 19/24
Grimmond [1] 61/2
Grocery [1] 39/10
grounds [4] 3/21 4/6 4/16 5/19
group [1] 52/17
guarantees [1] 37/23
Guard [1] 13/1
guards [1] 37/24
guess [5] 6/23 8/10 23/24 31/25 33/13
guns [1] 12/6
Gutierrez [1] 57/14

**H**

had [24] 9/16 10/19 11/2 11/4 13/2 13/3 13/17 15/2 21/6 21/8 21/24 21/25 22/1 22/2 26/13 31/6 31/10 33/9 33/10 51/9 59/8 61/3 62/12 72/7
Haldeman [1] 12/16
half [1] 57/2

hamper [1] 58/6
hand [3] 2/8 37/7 45/7
handle [1] 4/2
happen [1] 22/4
happened [2] 13/7 22/4
happy [4] 31/17 35/16 48/2 65/10
hard [4] 22/7 25/7 33/8 70/2
harm [1] 6/2
has [59] 3/21 4/6 4/21 6/12 7/2 7/20 7/20 8/2 9/13 9/14 9/24 10/7 11/25 14/23 17/7 21/5 21/8 28/16 30/2 31/2 32/14 33/1 34/5 34/21 35/3 35/8 35/11 41/22 43/4 44/24 47/10 50/8 51/23 52/5 52/25 52/25 53/8 54/4 55/21 56/15 56/22 56/23 57/13 57/17 58/13 59/11 59/14 60/1 60/6 60/19 60/20 61/13 63/12 63/16 64/25 65/5 67/12 67/19 68/9
have [84]
haven't [3] 14/21 14/25 53/7
having [3] 30/4 31/10 53/3
Hawaii [2] 16/10 17/11
he [22] 17/3 18/15 34/5 37/20 40/14 44/7 44/8 46/5 46/23 49/4 49/4 52/5 52/25 54/10 54/1 54/13 56/21 61/4 61/19 65/9 68/10 71/20
he'd [1] 54/23
he'll [2] 18/14 32/23
he's [4] 13/24 14/1 65/8 68/15
head [1] 70/10
health [2] 52/7 59/6
healthy [2] 69/11 71/23
hear [5] 14/7 18/2 18/5 18/7 23/7
heard [2] 23/6 70/11
hearing [28] 1/8 32/25 33/22 36/22 43/18 48/18 48/21 48/21 49/1 49/3 49/7 49/10 51/6 51/13 52/16 52/20 54/17 59/15 64/5 64/6 64/24 65/7 67/9 68/8 69/11 69/12 71/11 72/8
heavily [3] 58/6 58/9 61/15
held [6] 6/15 10/2 10/9 10/11 28/23 51/6
helpful [3] 21/16 21/19 31/19
her [9] 2/17 22/2 33/10 62/14 63/11 63/19 71/13 71/15 71/19
here [24] 2/11 2/16 3/2 4/5 8/10 9/16 9/20 10/2 10/13 10/14 14/1 14/6 24/7 24/8 26/9 28/23 31/17 32/19 32/20 38/16 54/9 57/9 58/12 60/19
Here's [1] 23/10
hereby [1] 72/5
hereto [1] 72/17
Hi [1] 2/17
higher [1] 14/23
highly [1] 26/22
Hill [6] 12/25 13/2 13/6 28/13 38/9 41/23 53/6 55/16 56/22 65/9 65/11 70/5 70/7
himself [2] 52/25 54/11
his [37] 8/6 8/6 13/24 25/16 35/9 37/21 38/19 39/14 39/21 41/5 41/15 43/3 45/17 49/2 50/14 51/13 52/16 52/20 53/4 54/13 54/23 54/24 55/17 55/18 55/19 55/25 56/23 60/5 60/7 60/8 60/17 61/4 61/12 62/7 62/10 65/11 68/15
historic [1] 9/20
historical [2] 8/3 8/8
history [3] 9/12 49/18 52/8
hold [1] 24/10
home [2] 2/23 8/6 10/22 11/1 11/10 27/16 65/22 66/11
honor [88]
HONORABLE [1] 1/8
hoodwinked [1] 66/3
hope [1] 66/16
host [1] 8/22
house [1] 28/8
housed [1] 51/7 53/23
housekeeping [1] 2/25
Houston [1] 41/23
how [16] 2/21 11/22 15/13 21/24 22/13 22/22 32/23 46/9 46/23 47/4 52/5 57/6 62/20 63/18 65/16 66/6

## H

Howard [1] 42/19
however [6] 6/12 43/4 46/4 51/14 52/22 57/11
human [2] 27/17

## I

I'd [3] 18/10 28/18 62/16
I'll [30] 5/11 5/13 8/10 11/11 18/20 22/12
23/20 23/20 25/12 26/9 26/19 26/24 26/25 32/8
33/19 37/3 37/7 37/13 38/14 43/21 48/6 48/25
56/18 63/7 63/22 65/11 66/22 66/25 71/9 71/12
I'm [72] 4/3 6/6 6/24 7/7 7/8 7/22 7/25 10/20
10/21 10/23 10/25 10/25 11/9 11/10 11/23 14/4
14/6 17/1 17/1 18/16 18/16 18/17 22/11 23/10
23/10 23/11 24/8 24/17 24/25 25/10 26/1 26/3
26/5 26/6 26/10 28/11 32/2 32/17 33/1 33/2
33/12 35/18 35/22 37/3 37/4 37/8 37/11 38/11
38/12 48/6 48/8 48/13 48/16 55/11 55/12 55/13
62/16 63/5 63/14 63/15 63/24 65/10 66/2 66/18
68/24 69/1 69/2 69/2 69/9 69/12 70/5 71/16
I've [6] 8/3 21/23 33/8 63/4 63/16 64/6
Id [11] 39/15 40/15 41/25 44/22 56/9 56/12
56/24 58/3 58/7 58/9 58/11
idea [1] 20/15
identical [1] 47/7
identified [1] 49/5
identify [3] 2/4 47/17 61/4
imagine [2] 11/5 24/24
immediately [2] 3/15 40/18
impact [5] 15/17 15/17 15/21 28/16 52/8
impacted [4] 17/14 17/17 19/4 19/25
impacts [1] 33/22
impaired [2] 60/14 60/20
impairment [1] 61/4
impartial [1] 8/20
impartiality [1] 14/16
impede [8] 38/17 39/17 41/8 42/4 45/2 45/9
45/20 46/1
impeded [2] 46/13 46/17
impedes [1] 39/13
impeding [2] 39/24 68/12
impermissibly [1] 38/4
imply [1] 42/6
importance [1] 53/3
important [6] 10/9 10/10 10/17 11/24 20/18
21/24
inability [3] 60/17 61/12 62/7
incarcerated [4] 18/17 25/5 61/12 61/14
incarceration [4] 52/13 60/12 61/20 61/24
incident [3] 38/19 39/14 64/3
inclination [3] 10/13 11/18 32/19
inclined [4] 24/8 29/1 33/3 62/15
include [2] 42/10 52/4
includes [1] 14/20
including [1] 57/23
increasing [1] 15/18
indecent [1] 39/10
indeed [2] 41/10 42/15
indicates [1] 59/23
indication [1] 40/12
indicative [1] 40/5
indictment [25] 35/20 36/25 37/1 37/18 43/9
44/2 44/5 44/20 44/24 44/25 45/7 45/14 46/5
46/6 46/9 46/12 46/19 46/22 47/3 47/12 47/15
47/18 55/16 55/22 62/10
individual [7] 10/5 45/17 46/18 54/6 62/3
70/20 70/24
individualized [1] 52/5
influence [2] 45/1 45/9
inform [1] 44/7
information [15] 21/7 22/10 44/21 49/5 50/7
50/13 50/19 51/1 51/12 51/14 51/16 51/19
51/22 52/13 52/19
informative [1] 21/8
informed [1] 47/19

initially [2] 3/3 8/16
injury [1] 40/11
inmates [1] 53/23
input [1] 8/22
inquire [4] 3/18 3/23 6/20 21/12
inquiry [2] 57/2 66/6
inside [1] 5/25
insisting [1] 37/25
inspected [1] 51/9
inspection [1] 51/24
instances [2] 42/11 42/13
Instead [2] 50/16 61/10
instructions [1] 14/3
insufficient [1] 46/25
intelligence [1] 38/5
intended [3] 45/16 45/19 45/25
intends [1] 45/15
intent [3] 41/5 41/7 41/8
interest [2] 10/18 67/10
interesting [4] 21/21 21/22 22/11 24/6
interfere [4] 38/17 39/17 41/9 42/4
interferes [1] 39/13
interfering [3] 39/24 42/12 45/23
interlocutory [2] 60/2 60/6
intermediate [2] 32/17
interpretation [3] 35/6 43/2 46/25
interrupt [1] 11/23
intervening [3] 48/20 64/5 65/7
intuitive [1] 39/23
invalidated [1] 41/16
invalidity [1] 43/3
invested [1] 15/9
invited [1] 7/7
involve [1] 40/18
involved [5] 32/1 57/16 59/2 70/12 71/5
is [213]
isn't [1] 65/9
issue [31] 3/20 3/21 3/25 4/6 4/10 4/15 4/17
4/24 6/2 6/13 7/24 9/8 9/13 14/8 15/16 16/2
16/3 19/8 23/22 24/6 30/13 30/18 32/24 33/1
38/16 46/24 47/8 50/8 51/2 68/5 69/21
issued [6] 31/11 32/7 33/19 63/10 63/14 63/23
issues [3] 36/15 63/16 66/5
issuing [1] 21/25
it [108]
it's [47] 3/7 3/14 3/15 3/17 7/6 7/8 8/21 9/2
16/5 16/19 21/21 22/3 22/9 23/11 23/17 23/19
23/21 24/8 25/1 25/3 25/4 25/8 25/22 26/10 29/12
26/22 31/14 32/11 33/13 35/21 35/23 37/14
43/10 47/24 48/11 55/3 62/22 62/23 63/3 63/11
65/20 66/11 66/18 66/20 67/7 68/10 68/13
69/10
its [14] 10/5 27/8 28/5 40/3 41/17 42/2 43/2
45/14 47/6 51/8 51/10 59/20 67/21 70/10
itself [3] 28/9 53/25 60/22

## J

Jackson [1] 51/19
jail [2] 63/16 70/16
JAMES [2] 1/12 2/7
Jan [1] 70/24
January [21] 4/13 9/22 12/4 12/8 12/23 13/4
13/9 15/7 15/8 15/16 15/19 15/23 17/15 20/1
26/23 27/3 52/11 52/15 53/7 54/12 64/3
January 6 [1] 52/11
January 6th [16] 4/13 12/4 12/8 13/4 13/9 15/7
15/8 15/16 15/19 15/23 17/15 20/1 27/3 52/15
53/7 64/3
JASON [2] 1/12 2/7
jeopardy [1] 3/17
Jersey [1] 61/22
job [5] 24/22 25/9 27/8 28/5 32/12
join [1] 7/8
joins [1] 42/25
Jordan [3] 33/11 69/2 69/3
judge [19] 1/9 8/12 31/12 31/14 31/21 32/13

32/14 33/9 39/5 40/1 40/22 46/14 47/8 51/18
51/22 52/22 63/6 63/9 63/9 63/9 63/25 65/10
judge's [1] 67/18
judged [1] 41/17
judges [6] 38/2 41/3 48/12 51/15 71/7 71/15
judicial [3] 43/1 49/9 57/5
July [4] 42/24 46/16 49/23 51/6
July 1 [1] 51/6
July 20 [1] 42/24
July 27 [1] 46/16
June [2] 50/23 51/22
June 9 [2] 50/23 51/22
juries [2] 17/13 38/2
jurisdiction [1] 62/15
juror [3] 22/1 22/1 62/21
jurors [11] 12/10 15/25 18/25 19/1 19/7 19/13
24/13 62/18 62/25 66/2 66/2
jury [14] 3/16 8/20 9/9 10/10 12/3 19/10 19/21
22/1 24/9 24/13 25/3 32/22 63/2 66/4
just [61] 3/2 3/18 3/23 4/4 5/4 5/5 5/10 5/11
5/11 5/13 6/12 6/20 7/10 7/13 9/1 9/20 17/7
17/25 17/25 18/10 19/20 21/4 21/5 21/11 21/18
22/12 24/17 24/25 25/23 26/1 26/10 26/17
26/21 28/17 29/6 30/12 30/17 31/5 31/9 31/12
31/19 31/23 32/8 32/9 32/16 33/20 33/24 35/20
38/10 40/11 55/7 63/10 65/15 67/3 67/4 67/12
68/11 68/19 71/6 71/16 71/19
justice [3] 19/18 59/5 67/10
justify [1] 58/10

## K

Kaetz [1] 61/21
keep [7] 5/11 5/12 18/6 18/20 30/18 31/3 32/19
keeps [1] 18/15
Kelly [1] 39/5
KENERSON [3] 1/11 2/7 21/15
Ketanji [1] 51/18
kind [4] 3/2 6/1 31/19 66/3
kinds [2] 30/19 60/10
King [1] 1/16
know [70] 2/16 6/11 7/3 7/6 7/17 8/3 8/6 8/11
10/4 10/8 10/20 10/23 10/24 11/2 11/4 11/5
11/6 11/6 11/8 13/17 14/14 14/24 14/25 14/25
15/6 15/11 16/6 19/11 20/2 20/2 20/5 20/19
21/1 21/21 21/22 21/24 21/25 22/4 22/5 23/4
24/19 25/2 25/3 25/5 25/8 25/22 26/10 29/12
30/2 30/3 31/25 31/25 32/10 32/11 33/18 43/10
48/12 55/7 64/12 65/13 65/16 66/4 67/1 67/6
70/10 70/11 70/14 70/14 71/8 71/10
knowing [1] 63/6
knowledge [1] 41/4
known [3] 12/1 51/12 52/19

## L

Lamberth [1] 51/22
language [3] 45/13 46/19 47/12
large [5] 40/11 57/23 58/20 58/24 59/2
large-scale [1] 59/2
largely [3] 51/25 52/24 62/2
last [10] 31/9 42/16 53/15 60/16 63/10 63/14
68/8 69/12 71/4 71/11
late [1] 66/22
later [2] 6/14 7/12
latest [1] 64/10
latter [1] 40/4
laundering [1] 59/7
law [14] 20/20 24/22 35/5 37/25 38/18 39/13
39/24 41/9 41/16 42/5 42/12 45/19 45/24 55/11
lawful [1] 38/18
lawfully [1] 38/18
lawmakers' [1] 46/1
lawyer [4] 18/8 18/22 24/20 55/11
lawyers [4] 24/14 24/21 24/23 25/12
lead [1] 70/6
learn [1] 11/8
least [2] 15/13 31/16

## L

leave [1] 63/1
leaves [3] 33/4 36/21 37/1
Lee [2] 51/18 54/1
Lee's [1] 54/2
left [1] 41/3
legislators [1] 45/20
legitimate [2] 41/18 41/22
length [3] 34/22 55/23 56/7
lengthy [1] 37/9
less [2] 57/19 58/18
let [29] 2/16 3/2 3/3 3/18 3/23 6/20 8/16 10/12 13/22 13/22 18/25 19/22 21/11 24/8 25/6 25/9 26/10 26/21 37/8 37/11 37/12 38/10 55/7 64/12 69/17 70/10 70/13 70/14 71/8
let's [2] 25/16 26/4
letter [1] 54/13
level [1] 15/12
levels [1] 14/15
library [1] 31/6
life [1] 27/17
light [3] 51/16 54/6 61/1
like [14] 11/4 18/10 18/19 21/17 22/14 24/17 25/13 27/11 31/8 39/8 54/3 54/22 54/23 58/7
likely [1] 29/19
likewise [2] 3/13 33/3
limine [4] 3/4 3/5 3/19 65/4
limit [2] 3/14 3/19
limitation [2] 40/8 47/4
limited [1] 42/11
limits [2] 39/18 40/23
line [2] 10/3 54/15
Lisa [4] 1/19 72/3 72/21 72/22
listen [1] 20/6
litigation [2] 14/17 31/16
little [1] 37/14
live [3] 16/9 16/10 16/10
living [1] 52/18
locale [8] 7/21 16/15 16/24 19/18 29/1 29/16 30/14 30/15
lockdown [1] 12/22
locked [1] 18/16
lockup [1] 18/14
logistics [1] 9/13
long [5] 32/23 34/10 56/17 56/21 57/25
Longing [1] 2/23
look [7] 17/19 20/23 32/19 33/17 35/13 37/11 68/24
Lopesierra [1] 57/14
Lopesierra-Gutierrez [1] 57/14
loss [1] 60/14
lost [2] 13/3 61/8
lot [7] 3/3 10/15 11/3 11/14 29/14 32/12 66/5
love [1] 8/7
lulled [1] 11/5
Lux [5] 13/12 14/17 14/22 15/5 20/24
luxury [2] 25/24 48/13

## M

machine [2] 72/6 72/14
made [4] 10/17 17/14 26/23 34/21
mail [1] 66/12
mailed [2] 62/18
main [1] 30/18
maintain [3] 36/14 54/6 67/21
majority [1] 12/12
make [7] 6/7 24/11 24/25 30/3 63/9 70/18 71/19
makes [5] 11/20 13/13 40/16 64/21 64/23
making [1] 49/15
man [1] 55/10
manner [2] 64/1 67/5
many [6] 9/20 28/15 29/19 33/4 36/16 53/13
March [1] 39/4
mark [2] 34/3 34/24

Marshals [2] 51/9 51/23
Maryland [1] 26/10
material [10] 49/5 50/8 50/13 50/20 51/2 51/14 51/16 52/14 52/23 54/4
materials [1] 59/20
math [1] 34/6
matter [6] 2/25 2/25 4/2 10/9 10/10 37/10
matters [2] 25/18 33/22
may [27] 3/8 5/12 6/22 8/5 14/21 14/24 19/23 20/3 22/21 22/24 23/1 23/21 24/4 25/19 31/4 35/16 41/16 44/12 47/25 50/6 62/20 62/22 62/24 63/2 71/7 71/14 71/18
maybe [7] 7/9 19/13 19/19 32/1 32/1 33/19 69/19
McConnell [3] 27/4 27/8 28/1
McCULLOUGH [2] 1/12 2/7
McHugh [7] 39/25 40/6 40/20 40/25 41/9 42/14 42/17
McVeigh [1] 16/6
me [56] 2/16 3/2 3/3 3/18 3/23 6/20 7/5 7/12 7/16 8/11 8/12 8/16 10/12 10/14 11/2 11/23 13/22 13/23 18/25 19/5 19/22 21/11 21/22 22/19 23/7 23/17 23/18 24/7 24/23 25/1 25/23 26/10 26/17 26/21 32/21 32/22 33/8 33/10 33/11 34/6 37/8 37/12 37/12 37/14 38/10 48/16 55/7 55/12 66/18 69/1 69/3 69/18 70/5 70/13 70/14 71/17
mean [18] 6/21 7/17 8/2 8/9 12/22 13/5 19/11 21/10 23/18 26/24 29/5 29/6 31/22 32/11 32/14 66/4 66/11 70/4
meaning [1] 40/3
mechanical [1] 1/24
media [3] 7/8 7/9 16/3
medical [1] 54/5
memories [1] 60/14
mens [1] 41/2
merely [2] 17/8 39/20
message [1] 39/20
Middle [1] 15/1
might [1] 40/10
Mike [1] 4/15
Miller [4] 63/7 70/17 70/23 71/9
millions [1] 26/24
mind [1] 20/6
minimum [1] 37/6
minute [7] 9/1 17/25 17/25 21/4 23/9 37/3 54/20
minutes [2] 3/1 37/14
missed [1] 62/8
missing [1] 58/9
mistaken [1] 48/16
Mitch [1] 28/1
moment [1] 18/19
Monday [1] 32/7
money [1] 59/7
Montgomery [1] 29/15
month [2] 55/16 61/1
months [4] 34/7 57/10 58/18 59/6
moot [5] 5/1 6/2 35/19 35/24 36/15
mooted [2] 36/5 36/8
more [18] 3/9 3/9 7/19 11/19 14/18 15/9 19/4 19/6 20/24 21/2 22/11 24/24 26/8 26/8 28/14 46/24 58/2 66/20
Moreover [6] 47/5 50/19 52/4 53/2 59/25 60/21
morning [8] 2/6 2/9 2/10 2/22 14/4 14/6 14/11 33/21
morning's [1] 48/19
most [9] 10/6 12/15 20/18 35/11 42/9 52/1 54/10 59/22 60/16
mostly [1] 34/15
Mostofsky [5] 42/8 42/14 42/17 46/15 47/2
motion [64] 3/5 3/7 3/13 3/19 5/1 6/7 6/14 7/7 7/8 7/21 8/24 9/2 9/3 19/15 23/11 23/13 23/17 23/22 23/23 29/22 30/12 31/14 32/13 32/25 33/25 33/25 34/18 35/18 35/18 35/23 35/25

26/7 36/22 36/23 36/24 37/1 37/21 39/21 41/5 41/15 42/25 43/4 43/7 43/8 43/19 43/20 44/23 47/2 47/22 48/9 48/10 48/17 48/18 49/1 49/24 54/16 54/18 55/14 55/19 62/9 63/12 64/17 65/19 67/13
motions [27] 1/8 3/4 5/15 7/17 7/19 25/8 31/7 33/6 33/16 34/14 36/13 36/16 48/15 48/20 48/23 48/24 60/1 60/6 64/6 64/7 64/25 65/3 65/4 65/4 67/7 67/20 72/7
mouthing [1] 18/15
movant [2] 7/10 7/11
move [3] 8/5 8/17 30/21
moved [1] 34/5
movement [1] 38/22
moves [1] 37/16
moving [1] 8/13
Mr [73]
Mr. [3] 46/9 52/4 56/14
Mr. Gieswein [2] 46/9 52/4
Mr. Gieswein's [1] 56/14
Ms [17] 14/10 14/12 14/12 18/14 18/23 26/4 26/13 28/19 31/25 33/16 54/22 54/24 64/18 65/16 67/4 68/17 71/9
Ms. [13] 2/11 2/15 4/1 23/13 25/15 26/9 48/1 67/24 69/1 69/5 69/21 70/17 70/23
Ms. Miller [2] 70/17 70/23
Ms. Mullin [3] 2/11 2/15 4/1
Ms. Rigby [3] 23/13 67/24 69/21
Ms. Whitney [5] 25/15 26/9 48/1 69/1 69/5
much [3] 22/13 22/22 57/6
MULLIN [4] 1/16 2/11 2/15 4/1
multiple [3] 58/19 60/1 60/5
murder [1] 59/3
must [19] 9/25 10/4 20/11 20/12 20/13 37/10 40/17 41/24 44/2 44/5 44/7 44/8 49/15 50/5 50/16 55/23 56/4 56/8 56/20
mute [2] 26/10 54/20
my [31] 7/18 7/19 8/4 8/8 8/10 10/13 11/18 17/10 18/4 18/9 18/13 20/17 24/17 24/22 24/23 31/9 32/12 32/18 32/19 33/13 33/18 48/7 48/7 55/11 62/19 71/3 71/17 72/6 72/14 72/15 72/17
myself [3] 24/23 26/10 69/3

## N

name [1] 72/18
national [4] 13/1 15/16 15/21 27/18
nationally [1] 12/1
natural [1] 16/6
naturally [1] 15/21
nature [4] 47/20 49/16 49/19 57/21
necessary [1] 56/2
need [29] 3/24 4/9 4/12 5/24 18/2 22/22 25/11 25/17 26/8 26/8 26/17 28/14 29/11 29/12 29/13 33/1 37/5 37/6 46/16 46/21 55/6 59/8 64/4 65/7 65/9 65/13 66/25 67/24 69/22
needed [1] 57/4
needs [2] 35/6 48/20
neglect [1] 58/15
neglected [1] 65/8
negligence [1] 58/7
neither [3] 9/14 38/4 41/5
neutral [2] 58/4 58/7
never [3] 10/23 28/10 66/5
new [13] 7/17 29/23 34/21 49/5 50/7 50/13 50/19 50/19 51/1 52/13 54/6 61/22 64/25
news [7] 15/12 15/13 15/17 15/18 15/19 15/20 15/20
next [8] 13/9 15/7 15/7 30/8 41/13 67/9 69/11 70/25
Nice [1] 2/19
night [1] 10/19 25/8 31/10
nightmare [1] 11/13
no [36] 1/3 5/2 9/4 9/22 10/9 10/10 14/1 16/24 17/1 18/20 28/9 28/16 32/14 33/25 34/5 35/5 35/22 36/18 36/19 40/8 40/12 43/14 43/15 47/3 47/8 49/10 49/25 51/23 55/3 56/2 58/21 58/24

## N

no... [4]  59/1 61/18 62/5 68/1
Nobody [5]  12/20 12/21 12/24 12/25 13/2
non [1]  54/12
non-conforming [1]  54/12
nonetheless [1]  5/25
Nordean [2]  39/5 42/18
normal [1]  40/5
North [1]  14/24
not [123]
not going [1]  10/20
note [5]  5/18 31/19 34/23 40/21 40/25
noted [1]  35/9
notereading [1]  1/24
nothing [3]  22/6 28/12 68/1
notice [5]  31/17 37/23 39/2 46/9 46/23
noting [1]  42/9
notwithstanding [1]  60/5
now [27]  3/7 3/17 7/2 7/12 8/18 10/21 13/20 13/20 25/13 25/23 25/24 30/18 33/12 34/2 34/5 34/7 34/20 37/13 43/11 43/20 65/10 66/17 67/9 67/17 67/21 69/24 70/8
number [39]  8/4 23/6 31/13 35/21 35/23 36/1 36/2 36/3 36/22 36/24 36/25 37/2 37/12 37/16 37/22 39/21 41/12 41/17 42/21 43/3 46/2 47/9 47/9 47/23 48/11 48/16 48/17 49/1 53/15 54/17 54/19 55/13 55/19 57/23 58/20 58/24 59/15 59/25 72/9
numerically [1]  48/25
NW [3]  1/13 1/16 1/21

## O

object [1]  17/23
objections [2]  5/1 23/10
objective [2]  19/13 20/8
observed [2]  51/25 57/18
obstruct [8]  38/17 39/17 41/8 42/4 45/1 45/9 45/20 45/25
obstructed [2]  46/6 46/8
obstructing [1]  39/24
obstruction [2]  37/18 43/24
obstructs [1]  38/21
obviously [6]  12/22 24/2 30/4 31/10 34/18 40/24
occasioned [1]  58/14
occasions [1]  20/21
occurred [3]  33/17 58/25 71/17
occurring [2]  28/13 45/18
occurs [1]  33/18
October [7]  34/5 34/20 50/4 57/11 64/25 65/10 67/10
October 5th [1]  64/25
off [2]  18/15 66/9
offense [5]  44/4 44/6 44/10 47/19 49/17
offer [2]  68/9 68/11
offers [1]  40/8
office [2]  1/11 32/1
officer [6]  38/18 39/14 41/9 42/13 47/15 49/9
officers [4]  27/7 28/4 38/2 68/13
official [13]  37/19 38/19 39/14 43/25 45/2 45/9 46/12 47/16 47/17 72/3 72/6 72/13 72/22
often [2]  47/13 53/23
Oh [4]  14/4 21/1 70/1 70/3
okay [21]  2/18 11/9 14/9 21/20 23/4 26/15 28/24 32/7 36/4 36/12 36/21 37/8 55/12 64/15 68/22 68/24 69/17 70/9 71/3 71/14 71/22
omits [1]  41/2
once [1]  65/20
one [35]  2/24 5/17 6/23 10/19 16/2 17/7 19/14 21/7 28/16 31/7 31/9 32/18 33/24 34/2 34/24 35/17 36/5 37/7 37/11 38/5 43/24 45/16 46/4 46/25 48/9 55/23 56/11 57/1 57/3 58/4 59/3 65/14 68/4 70/25 70/25
one-year [1]  34/24

ones [1]  20/5
only [19]  9/13 13/7 15/9 15/9 21/1 22/9 23/17 26/6 35/1 41/7 50/20 62/19 63/3
open [4]  20/6 29/9 64/17 64/20
opinion [5]  31/21 33/9 33/19 62/13 62/14
opinions [1]  32/12
opportunity [12]  7/11 19/6 19/7 21/10 21/12 21/17 22/13 30/7 37/7 38/6 62/12 63/8
oppose [1]  24/2
opposed [2]  7/12 23/9
opposition [6]  6/10 41/12 45/14 47/6
oppressive [2]  60/12 61/24
options [1]  30/9
oral [1]  38/10
orally [1]  21/18
order [7]  43/22 49/24 63/13 63/14 63/22 64/11 67/18
ordered [1]  31/2
ordinary [5]  37/23 38/5 39/22 56/8 57/18
Oregon [1]  42/22
other [33]  7/21 8/8 8/22 9/14 14/20 15/24 25/18 27/2 30/20 33/16 33/22 36/13 38/14 42/15 44/21 45/7 48/5 49/12 50/1 50/14 51/5 51/15 52/15 53/18 54/5 54/12 61/1 64/7 65/3 65/4 66/24 68/4 70/13
others [8]  33/4 39/7 39/8 39/13 45/17 53/1 53/10 57/12
ought [1]  3/1
our [15]  8/18 27/4 27/5 27/12 28/2 28/3 29/22 31/3 32/9 35/10 64/10 64/13 67/9 68/10 68/13
out [13]  8/9 26/24 27/8 30/15 36/15 45/12 53/8 53/8 59/21 62/25 63/6 66/10 71/19
outbursts [1]  24/11
outer [1]  39/18
outrageous [1]  22/3
outside [1]  34/22
outstanding [1]  19/7
over [6]  8/3 16/14 33/12 40/2 40/3 69/23
overall [2]  20/10 53/2
overbroad [4]  41/14 41/16 42/2 43/5
overcrowded [1]  58/8
overlap [1]  27/14
overtones [1]  11/4
own [4]  8/10 10/5 27/9 50/14

## P

p.m [1]  10/19
page [4]  37/22 39/6 41/12 41/15
pages [3]  41/5 59/16 72/12
pandemic [3]  61/11 61/16 61/21
panel [2]  20/3 32/22
papers [3]  35/11 36/11 64/14
Pardon [1]  11/23
parenthetical [1]  42/10
parking [1]  4/16
parroting [1]  47/12
part [6]  4/10 6/22 20/18 31/16 58/16 59/7
partiality [1]  14/19
participated [2]  8/4 40/13
participating [2]  45/21 53/6
particular [10]  4/10 8/18 13/14 30/14 41/25 47/17 52/12 52/15 53/17 65/13
particularly [2]  12/16 57/21
particulars [10]  33/3 43/20 43/23 44/13 44/14 44/22 47/1 47/2 47/8 47/22
parties [12]  23/24 30/8 31/6 35/19 36/10 36/13 36/13 36/14 48/22 64/6 66/16 71/18
parties' [1]  8/22
parts [1]  62/24
party [3]  9/14 41/21 58/11
pass [1]  25/21
past [3]  34/2 34/24 71/19
patriotic [1]  28/12
PEARCE [5]  1/12 2/7 13/23 14/5 14/10
peculiar [1]  57/7
pen [1]  25/21

penalizing [1]  39/16
Pence [1]  9/16
pending [6]  33/16 33/22 50/2 64/7 67/7 67/20
people [22]  10/24 11/10 12/3 13/11 13/14 15/5 15/5 17/14 20/4 20/9 20/24 21/25 22/5 26/23 29/19 30/3 37/23 38/5 40/2 40/3 66/8 66/10
people's [1]  28/8
per [4]  9/21 9/22 50/4 64/11
perfect [1]  22/6
perfectly [1]  40/4
performance [3]  38/19 38/23 47/16
performed [1]  41/8
performing [1]  39/14
perhaps [3]  14/22 30/9 44/17
period [3]  16/9 20/18 71/5
periodic [1]  70/17
permit [1]  59/8
permitted [1]  69/25
person [13]  37/22 49/12 49/13 49/18 49/19 49/20 50/1 50/10 50/11 51/4 51/5 69/24 70/8
person's [1]  49/21
personal [1]  54/2
personally [1]  71/12
persons [1]  42/3
perspective [3]  19/7 20/3 24/12
persuade [2]  7/11 8/12
persuaded [1]  63/24
phenomenon [1]  15/15
Phomma [2]  42/7 42/21
phone [6]  53/10 65/15 68/24 69/18 69/21 70/2
pictures [1]  15/20
piece [1]  27/11
place [5]  5/19 29/12 29/13 30/8 53/7
plain [2]  40/16 44/2
plainly [2]  5/18 41/18
play [1]  10/1
plea [1]  68/9
plead [1]  44/8
pleading [1]  10/18
please [4]  2/4 33/7 33/23 37/4
pluralism [1]  27/16
point [16]  4/12 8/25 9/11 9/19 10/13 16/18 20/11 21/5 26/21 29/7 29/9 30/14 43/13 59/3 64/14 65/12
pointed [1]  27/8
points [4]  19/23 53/3 53/8 63/8
police [6]  12/24 27/7 28/4 38/2 40/10 41/3
political [2]  9/23 11/4
politically [1]  9/23
poll [1]  31/16
Ponce [2]  44/11 47/11
pool [1]  63/2
poor [1]  52/6
population [1]  12/12
pose [1]  53/25
posed [3]  12/18 49/21 53/22
posited [1]  52/17
position [1]  6/19
possibility [1]  60/13
possible [1]  67/7
possibly [1]  63/25
post [1]  66/6
posted [1]  13/1
postpone [3]  5/14 7/11 7/13
postponement [1]  7/14
potential [4]  12/10 52/24 54/9 57/23
practical [1]  58/13
precise [2]  3/22 4/7
precision [1]  44/15
preclude [1]  3/6
prejudice [17]  5/5 5/10 24/12 25/1 34/25 34/25 35/3 35/9 35/9 35/12 55/25 60/10 60/11 60/16 60/25 61/19 62/5
prejudices [1]  61/10
prejudicial [5]  56/9 56/12 56/25 57/9 57/12
prejudicing [1]  34/4

**P**

prepare [3] 44/16 60/17 62/21
prepared [1] 21/17
prepares [1] 70/23
presence [1] 58/19
present [3] 2/12 7/9 35/10
presentation [1] 25/4
presented [5] 7/18 20/6 20/7 66/5 68/14
president [4] 4/15 5/24 27/13 28/10
presiding [1] 16/14
Press [3] 23/8 23/18 23/25
pressure [2] 53/1 54/13
presume [1] 34/3
presumption [2] 34/25 34/25
presumptively [5] 56/9 56/11 56/25 57/9 57/11
pretrial [3] 60/1 60/5 60/12
pretty [1] 69/9
prevent [2] 45/18 53/6
previous [2] 4/13 53/5
previously [5] 49/4 54/7 59/11 67/12 67/19
primarily [1] 58/13
prior [2] 50/7 53/4
prison [2] 61/15 61/24
pro [1] 11/9
probably [8] 7/13 7/19 10/16 10/21 20/18 21/10 27/1 33/11
problem [4] 40/9 69/21 70/10 70/12
problems [3] 21/24 70/13 70/15
Procedure [1] 44/1
procedures [1] 63/20
proceed [2] 2/13 11/3
proceeding [12] 37/19 43/25 45/2 45/2 45/9 45/10 45/18 45/21 46/5 46/12 46/18 67/5
proceedings [6] 1/24 46/8 71/25 72/7 72/13 72/15
process [3] 11/12 22/6 66/7
produced [1] 1/24
producing [1] 59/14
proffered [2] 35/8 60/19
prohibits [3] 38/7 38/17 39/2
promptness [1] 56/24
promulgating [1] 63/19
property [1] 40/19
proportion [1] 14/23
propose [1] 65/23
proposed [2] 49/4 65/21
proscribed [1] 39/23
proscribes [1] 37/24
prosecute [1] 59/21
prosecuted [1] 56/23
prosecutions [1] 44/9
prosecutors [2] 38/2 41/3
prospective [2] 62/18 62/21
protected [2] 38/23 44/17
protectee [4] 3/21 4/6 4/15 5/20
protest [1] 27/22
protests [1] 40/11
provide [7] 31/18 31/21 38/5 43/23 46/9 46/23 63/23
provided [4] 47/6 47/7 47/18 59/24
provides [5] 38/1 39/1 44/2 45/14 47/3
providing [2] 62/20 63/6
psychological [1] 61/20
public [4] 1/15 7/2 40/10 40/24
pulling [1] 16/4
pundits [1] 16/8
purpose [1] 24/19
purposes [2] 35/13 38/10
pursuant [3] 16/13 49/3 50/6
put [10] 26/10 26/22 26/25 28/14 28/18 43/12 68/7 68/11 69/1 69/4
putting [1] 68/16

**Q**

qualifies [2] 51/11 52/19

qualify [2] 15/12 15/20
quantified [1] 56/24
question [12] 4/3 8/10 8/21 9/7 9/9 9/15 12/18 17/10 29/1 36/17 61/7 66/12
questioning [1] 66/15
questionnaire [5] 10/10 62/25 65/21 65/25 66/11
questionnaires [8] 10/22 10/23 11/1 11/10 11/11 11/20 62/18 63/6
questions [4] 3/3 14/2 35/16 66/19
quid [1] 11/9
quiet [1] 18/21
quo [1] 11/9
quote [6] 27/10 27/14 28/1 28/2 38/13 56/18
quoting [5] 38/2 40/20 41/20 42/14 56/9

**R**

Race [1] 22/3
racketeering [1] 58/21
radicalization [3] 52/12 53/12 54/10
radicalized [1] 52/18
raise [4] 23/10 26/1 37/6 65/4
raised [1] 36/15
raises [1] 70/10
raising [1] 21/4
ramp [1] 12/24
ramp-up [1] 12/24
rare [1] 42/13
rates [1] 15/2
rather [3] 39/11 41/6 64/13
RDR [1] 1/19
rea [1] 41/2
reach [2] 20/7 65/16
reaches [1] 39/18
reaching [1] 57/16
reaction [1] 39/7
read [8] 25/8 33/8 33/11 33/12 33/13 42/9 48/6 62/13
readily [1] 54/4
reading [4] 38/12 38/12 41/11 48/8
ready [2] 26/5 26/7
really [10] 9/14 9/15 16/2 21/8 63/5 66/1 66/4 66/12 66/13 70/3
reason [8] 4/12 17/9 19/15 26/7 34/8 54/1 55/24 66/12
reasonable [5] 4/22 38/6 40/2 40/3 59/17
reasonably [5] 49/11 50/1 50/9 51/3 54/5
reasoned [1] 33/14
reasoning [1] 58/18
reasons [10] 11/16 32/15 32/16 34/1 54/16 58/9 65/3 67/11 67/19 71/15
recall [1] 61/7
recent [2] 52/2 59/22
recess [11] 3/2 26/12 33/12 37/3 37/10 47/24 48/4 54/20 55/5 62/12 69/8
recognize [1] 26/2
recognizes [1] 48/11
recollection [3] 8/4 8/8 71/3
reconsider [3] 23/15 49/3 63/13
reconsideration [4] 23/13 23/22 23/24 32/14
record [14] 2/5 6/24 26/21 26/22 27/1 28/18 30/12 35/21 43/12 48/6 67/12 68/8 68/11 68/17
recorded [1] 1/24
reduce [1] 59/9
referral [1] 38/14
Reffitt [1] 47/9
reflect [2] 14/18 67/17
reflected [1] 14/15
reflects [3] 12/11 12/20 20/23
Reform [1] 49/8
regard [2] 41/11 57/22
regarding [6] 50/24 52/2 52/5 53/19 60/4 62/1
regular [1] 12/14
rejected [2] 68/10 68/15
rejects [1] 43/6
related [5] 9/23 34/2 43/24 56/4 70/19

relation [1] 41/18
relations [1] 22/5
release [10] 48/23 49/21 50/9 51/3 54/1 57/13 60/2 60/25
released [2] 49/9 50/2
releasing [1] 49/3
relevant [4] 3/8 3/8 3/9 26/22
relied [1] 31/16
relies [1] 10/7
reluctant [1] 63/5
Relying [1] 38/8
remain [3] 10/14 24/8 62/16
remaining [4] 33/6 37/13 45/3 48/15
remains [5] 10/13 24/7 32/20 57/12 62/15
remember [1] 32/3
reminded [1] 25/23
reopen [6] 32/25 36/22 43/17 49/1 49/2 54/17
reopened [1] 50/6
reopening [1] 49/6
repeat [1] 4/3
rephrase [1] 19/1
replies [1] 64/20
reply [3] 22/22 53/15 64/11
report [5] 50/25 51/10 51/23 71/15 71/18
reported [1] 72/6
reporter [6] 1/19 38/11 48/7 72/1 72/3 72/22
reporting [1] 52/10
reports [3] 52/22 52/24 54/13
Representative [2] 27/20 28/7
representing [1] 24/21
republic [2] 27/13 28/9
Republican [2] 28/7 41/21
Republicans [1] 14/23
request [6] 3/20 8/18 8/18 26/2 26/3 64/13
requested [1] 44/20
requesting [1] 29/7
requests [4] 43/22 49/2 55/15 60/25
require [1] 8/22
required [7] 19/18 40/13 44/22 46/2 50/10 51/4 54/8
requirement [1] 41/3
requirements [1] 44/5
requires [1] 41/4
requiring [2] 35/4 63/23
Resendiz [2] 44/11 47/11
Resendiz-Ponce [2] 44/11 47/11
resident [1] 19/17
residents [10] 13/8 13/9 13/18 14/14 14/19 16/4 19/16 19/24 28/17 28/21
resist [1] 29/18
resisting [1] 68/12
resolution [1] 7/14
resolve [5] 3/7 43/17 43/20 48/10 54/18
resolved [1] 67/8
resolves [1] 4/17
resolving [1] 32/13
resources [1] 63/24
respect [9] 3/5 3/13 9/2 30/14 48/25 63/9 63/17 64/17 67/14
respond [10] 21/6 21/9 21/11 21/12 21/16 22/10 22/13 32/10 60/25 64/10
response [3] 23/12 24/1 30/25
responses [2] 64/18 64/20
rest [1] 64/13
rested [1] 36/10
restricted [2] 4/22 5/19
result [7] 12/23 12/23 13/3 54/15 60/11 61/5 64/2
resulted [1] 58/13
resulting [1] 52/6
results [1] 15/9
retaliation [1] 54/11
retrial [1] 44/17
return [2] 23/5 26/7
returns [1] 43/16
review [1] 59/10
reviewed [1] 59/17
revocation [1] 49/24

**R**

Rideau [1] 15/15
RIGBY [17] 1/15 2/11 14/10 14/12 14/12
18/14 18/23 23/13 26/13 28/19 31/25 33/16
64/18 67/4 67/24 68/17 69/21
right [62] 2/14 2/24 4/19 4/25 5/3 5/9 5/9 5/21
6/3 7/2 10/12 10/21 11/22 13/25 14/10 14/11
16/22 17/19 18/10 18/12 18/23 20/14 23/2 23/4
23/16 24/6 24/18 26/4 26/8 26/9 27/22 28/24
30/11 30/17 30/22 32/6 32/8 33/7 34/15 35/17
36/6 36/12 36/21 43/16 48/5 50/5 52/15 55/21
55/25 56/3 56/14 60/7 65/6 65/15 65/24 68/3
68/16 68/22 69/17 70/9 70/19 71/22
rights [4] 36/24 43/19 48/17 62/10
riots [1] 40/11
risk [2] 53/13 53/19
RMR [1] 1/19
ROBERT [3] 1/5 2/4 72/9
room [12] 18/6 22/1 25/11 25/13 26/5 26/20
48/1 54/24 55/3 67/1 69/2 69/4
Roy [1] 28/7
Rubio [1] 28/12
rule [10] 9/9 9/18 9/22 20/15 33/2 33/3 33/3
37/8 44/1 44/12
ruling [5] 23/20 30/15 48/23 63/10 65/19
rulings [6] 5/14 37/9 37/13 38/11 48/6 67/21
run [1] 71/18
Russell [1] 31/13

**S**

safe [2] 69/11 71/23
safety [4] 49/12 50/1 50/10 51/4
said [10] 3/10 6/12 22/2 24/16 35/11 43/10
68/19 72/9 72/13 72/15
same [8] 6/21 20/3 26/15 27/18 39/4 42/16
44/10 44/18
sat [1] 9/9
satisfied [1] 57/1
save [5] 24/22 24/23 43/2 55/11 69/3
say [28] 8/12 14/21 16/8 20/5 22/11 23/7 23/7
24/25 26/6 28/20 32/24 33/6 33/15 33/20 33/20
33/24 34/12 38/10 63/7 63/18 63/21 65/18
66/22 66/23 67/2 68/18 68/18 69/10
saying [5] 16/24 17/1 17/2 25/10 29/21
scale [2] 40/11 59/2
schedule [3] 48/20 64/5 65/14
scheduled [2] 65/5 67/9
scope [1] 66/15
scrutinized [1] 41/24
se [2] 9/21 9/22
second [14] 6/5 9/6 13/22 13/23 18/14 23/5
25/13 26/11 44/8 46/18 49/17 52/10 57/2 58/1
secondary [1] 8/21
Secret [3] 3/20 4/5 4/14
Section [22] 37/20 38/16 39/6 39/17 41/6 41/13
42/1 42/3 42/9 43/2 43/5 44/1 45/16 49/6 49/13
49/22 50/6 50/11 51/13 51/17 51/23 52/21
see [20] 2/15 2/17 2/19 13/23 13/23 14/11 16/5
27/24 41/11 42/8 42/16 46/2 47/11 57/1 59/16
59/24 61/17 62/4 65/13 70/7
seed [2] 27/5 28/2
seek [2] 6/1 53/8
seeking [1] 12/2
sees [1] 15/2
select [6] 14/17 15/19 19/10 19/12 31/15 31/16
selected [4] 3/16 22/5 24/13 32/22
selection [4] 19/21 24/9 63/2 66/4
Senate [1] 45/23
Senator [4] 8/5 27/4 27/8 28/12
send [3] 10/22 10/25 11/9
sending [1] 33/11
sense [3] 11/20 64/21 64/23
sensitive [1] 66/2
sent [2] 65/22 66/11
sentencing [1] 27/1

sentiment [1] 28/15
sentiments [2] 23/24 28/24
September [1] 42/22
serious [4] 35/11 53/23 57/19 60/16
seriousness [1] 49/20
service [7] 3/21 4/6 4/15 51/9 51/23 69/19
69/22
session [2] 38/15 48/19
Sessions [1] 38/3
set [4] 9/24 45/12 64/25 64/25
settled [1] 30/6
seventeen [1] 59/3
several [3] 13/1 42/15 57/3
severe [1] 53/18
shall [1] 49/8
shape [1] 69/9
shared [1] 71/16
she [9] 2/16 22/2 38/12 40/14 62/17 63/19 71/3
71/10 71/20
shorter [1] 57/12
shortest [1] 37/13
shorthand [2] 72/6 72/14
should [24] 3/19 7/10 7/12 8/9 8/23 9/6 9/7
9/17 9/20 14/2 19/13 19/19 21/10 28/10 28/23
30/13 34/3 34/13 35/1 35/2 35/12 35/13 36/17
53/12
shouldn't [1] 7/1
show [1] 45/15
showed [1] 11/25 13/12
shown [2] 12/11 61/3
shows [5] 9/12 13/10 13/16 13/20 13/21
shut [1] 13/3
sides [1] 20/7
significant [2] 34/11 50/17
significantly [3] 50/21 51/20 53/19
similar [2] 15/1 15/13
Similarly [1] 62/1
simpler [1] 30/18
simply [2] 8/19 9/4
simultaneously [1] 59/22
since [7] 8/17 17/22 31/23 44/23 46/17 56/21
70/14
single [1] 56/2
sir [5] 14/11 17/25 24/15 26/3 37/7
sit [2] 32/13 32/17
situation [3] 12/13 12/14 40/4
Sixth [4] 55/20 57/15 58/24 61/18
skews [1] 63/16
sled [1] 13/8
skills [1] 62/7
small [2] 13/2 40/24
smart [1] 24/20
so [74]
solve [1] 40/8
some [11] 5/13 8/2 14/21 15/11 20/24 26/22
44/21 48/13 66/13 67/6 67/7
somebody [1] 2/16
someone [2] 10/19 32/15
something [15] 5/7 7/17 8/11 16/4 23/15 24/3
29/18 33/17 33/17 33/21 50/14 50/17 66/8 69/3
71/4
sometimes [1] 33/18
somewhat [1] 10/16
sooner [1] 7/13
sorry [5] 4/3 11/23 14/4 35/18 35/23
sort [1] 6/14
sorts [1] 9/13
sources [1] 57/24
Southern [1] 50/18
speak [17] 6/25 7/1 18/11 24/17 25/11 25/13
25/17 25/25 26/2 26/17 33/23 37/4 37/5 54/24
55/6 65/1 67/24
speaking [3] 18/23 42/12 70/22
specific [5] 27/11 39/11 41/5 41/7 44/20
specifically [3] 8/17 29/7 45/10
specify [1] 46/16

speculated [1] 13/17
speculation [1] 13/21
speech [3] 27/21 42/7 42/10
speedy [20] 33/2 34/1 34/18 35/1 35/13 36/23
43/19 48/17 55/18 55/21 56/3 56/6 56/14 56/20
56/23 60/2 60/7 62/10 67/14 67/22
spend [2] 10/14 15/11
spent [1] 21/23
spirit [1] 27/19
split [1] 48/12
spoken [2] 32/14 33/10
spread [1] 53/24
stand [1] 47/24
standards [2] 38/1 52/1
standing [2] 23/24 67/18
start [2] 25/2 69/22
state [5] 20/15 32/16 32/16 41/20 41/21
stated [4] 27/20 44/15 52/25 67/12
statement [1] 44/3
statements [1] 21/25
states [41] 1/1 1/3 1/9 1/11 1/20 2/3 2/8 5/18
14/8 17/11 21/15 31/13 39/2 39/9 41/19 42/19
42/21 42/23 44/10 44/18 45/4 46/15 47/9 47/13
50/18 50/22 51/17 51/21 53/20 56/5 56/10
57/13 58/17 58/25 59/4 60/23 61/2 61/21 62/4
72/4 72/8
stats [1] 20/24
status [4] 48/21 64/5 65/7 69/18
statute [14] 5/18 37/24 38/1 38/4 38/16 38/25
40/12 41/2 41/4 41/7 41/22 42/6 46/17 47/13
statute's [1] 41/18
statutes [1] 41/24
statutorily [1] 46/2
statutory [2] 40/16 46/24
stay [3] 23/11 23/20 23/20
Stefanik [1] 27/20
stenography [1] 1/24
Stephens [1] 53/21
Stevens [8] 8/5 8/7 11/1 41/19 62/22 63/3 66/5
66/21
Stevens' [1] 21/23
still [5] 21/24 21/25 24/17 37/9 69/20
stop [6] 10/12 13/22 13/23 27/7 27/10 28/5
stormed [2] 27/6 28/3
storming [1] 17/17
straight [1] 34/22
street [3] 1/13 1/16 57/19
strength [1] 50/15
stretches [1] 57/4
strong [2] 66/13 66/14
subjective [1] 39/7
submit [3] 62/21 63/5 65/21
submitted [7] 10/18 11/25 14/16 14/17 14/22
20/22 21/7
subscribed [1] 72/17
subset [1] 40/24
substantial [1] 41/16
substantively [1] 47/6
such [6] 41/11 50/10 51/4 52/6 53/9 58/9
suffered [2] 61/13 61/19
suffice [1] 53/20
sufficient [4] 39/1 40/14 47/13 56/2
sufficiently [2] 44/20 47/10
suggested [2] 30/15 67/4
suggesting [1] 17/8
suggestions [1] 64/8
Suite [1] 1/17
SULLIVAN [2] 1/8 8/13
summaries [1] 48/7
superseding [10] 35/20 36/25 37/18 43/8 44/24
45/7 45/13 46/11 46/19 47/18
Supp [1] 54/2
supplement [1] 5/12
supplemental [1] 31/2
support [2] 46/25 58/24
supported [1] 15/4

**S**

supporting [1] 35/5
Supreme [4] 15/18 35/11 38/3 57/17
sure [9] 7/7 7/9 22/17 24/25 25/15 32/2 62/16
69/2 71/19
surfaces [1] 50/7
survey [9] 10/19 11/6 11/7 14/18 14/20 20/25
66/17 66/20 66/21
surveyed [1] 19/25
sweep [1] 41/18
symbolic [1] 39/20
symbols [1] 27/18
system [3] 20/14 20/14 60/18

**T**

tablet [1] 25/21
take [24] 3/1 3/2 3/6 3/11 5/10 5/13 7/23 8/25
9/19 16/18 18/19 19/14 19/20 22/12 25/17
33/13 34/13 37/3 37/10 37/14 54/20 69/14
71/23 71/24
taken [2] 10/19 72/14
takes [1] 32/23
talk [7] 3/14 11/19 18/13 48/19 48/21 66/25
69/13
talking [2] 10/15 18/6
tape [1] 72/15
target [1] 13/9
targeted [6] 13/11 13/12 13/19 14/15 15/6 20/1
targets [2] 12/8 15/22
Ted [3] 8/7 11/1 21/23
tell [9] 7/16 8/11 10/21 19/8 24/22 26/17 33/10
48/16 55/12
ten [1] 37/14
terms [3] 34/23 39/6 42/2
terrorism [1] 27/10
terrorists [1] 17/17
testimony [2] 6/1 72/7
Texas [1] 28/7
than [14] 7/14 14/19 15/2 15/9 15/24 19/6
19/24 24/24 46/25 50/14 57/12 57/19 58/18
66/24
thank [35] 2/20 5/3 6/3 8/15 11/21 14/9 14/10
14/13 19/22 21/14 26/11 26/14 26/18 30/22
30/23 31/1 31/20 32/6 32/9 34/15 34/17 35/17
48/2 48/3 54/21 55/2 55/3 55/8 68/16 68/23
69/7 69/13 69/15 69/16 71/22
that [379]
that's [43] 3/18 4/18 4/23 7/14 7/18 8/6 8/8
10/16 16/12 17/18 19/18 21/21 22/17 22/25
23/14 23/17 24/4 24/13 25/10 25/15 28/14
28/15 32/7 32/24 34/11 35/24 37/12 37/21
39/21 41/14 43/3 48/10 48/11 54/23 55/19 63/7
63/21 65/6 66/8 66/22 68/14 68/22 70/11
their [12] 11/11 13/15 25/9 25/22 27/9 27/16
27/16 27/17 27/21 29/20 52/13 70/25
them [9] 8/4 11/22 22/7 24/14 25/9 25/13 26/4
47/21 62/25
then [20] 3/2 3/24 4/9 4/15 9/6 9/18 16/25 17/4
19/13 23/24 30/19 37/3 44/21 48/19 62/25 63/1
64/10 64/16 66/11 71/17
theories [2] 47/5 47/7
theory [9] 4/5 7/2 16/13 16/17 16/19 17/8
17/18 18/25 19/11
there [52] 4/25 5/12 7/18 9/19 9/20 10/12 11/9
12/1 13/5 16/3 16/5 16/15 17/24 20/16 20/21
26/24 26/25 29/14 30/3 30/4 31/3 32/15 32/22
33/5 33/21 34/19 35/5 35/14 35/18 36/12 36/16
39/11 40/12 42/11 48/5 48/13 49/4 50/8 51/2
58/21 64/4 65/2 65/6 65/9 67/20 69/19 69/19
69/20 69/21 69/23 70/13 71/14
there's [17] 4/9 4/11 7/9 9/22 15/7 16/24 22/6
27/14 28/9 28/12 30/16 33/5 35/17 40/1 48/9
68/4 70/23
thereafter [7] 23/1 24/1 24/3
Therefore [1] 54/14

these [10] 7/17 15/9 24/21 26/25 27/12 31/7
32/24 49/24 52/2 66/2
they [33] 8/7 12/12 13/3 13/8 13/11 13/11
13/18 13/19 13/19 15/1 15/6 15/6 15/9 15/25
20/4 21/2 21/2 24/23 24/23 25/7 25/7 27/10
27/11 27/18 28/22 30/4 34/1 52/23 66/3 66/3
66/3 66/6 66/10
they'll [1] 23/18
they're [2] 25/7 34/1
thing [2] 5/17 33/25
things [2] 22/4 31/5
think [55] 3/22 3/24 4/1 4/7 4/11 4/17 4/20
4/23 5/23 8/5 8/21 9/6 9/12 11/24 12/19 12/19
18/13 20/10 21/9 21/11 21/18 21/20 22/9 23/17
23/19 23/21 26/16 26/22 29/8 29/9 29/10 29/13
29/17 29/21 29/24 30/5 31/1 32/5 32/11 33/4
34/7 34/12 34/19 34/20 35/14 35/21 37/2 64/19
64/22 65/1 65/12 66/3 66/7 69/9 71/5
thinks [2] 21/16 21/19
third [3] 46/22 49/18 60/4
this [90]
those [20] 5/14 5/15 10/23 12/25 15/23 17/24
19/23 20/3 20/9 22/4 22/5 42/13 53/16 54/3
54/4 65/1 67/7 70/18 70/25 71/1
though [3] 47/16 51/7 65/8
thought [8] 11/14 21/2 21/5 28/18 30/17 33/21
70/12 71/17
thoughts [2] 25/18 33/19
threat [1] 53/22
threatened [1] 40/19
threatening [1] 47/15
threat [1] 21/23 22/5 26/6 30/9 45/15 45/25
46/8 55/24 58/4 58/5 60/10
threshold [1] 56/8
through [7] 22/5 35/24 35/25 37/15 45/17 53/9
53/10
thrust [1] 29/21
thus [6] 47/1 47/19 51/10 51/11 52/18 54/5
tick [1] 66/9
time [48] 3/22 4/7 5/13 5/25 6/14 8/19 10/15
11/2 12/10 15/11 22/13 22/22 25/12 25/17
25/25 26/8 26/8 26/13 26/16 30/11 33/13 34/7
34/10 34/22 45/19 48/13 50/7 51/8 51/13 52/16
52/16 52/20 52/23 55/6 59/9 62/22 63/3 64/6
67/6 67/8 67/17 67/21 68/25 69/12 69/12 70/6
70/25 71/5
today [9] 21/18 22/18 28/8 33/2 38/15 48/10
48/14 54/19 68/9
today's [1] 22/18
together [3] 52/18 56/5 72/14
tolerable [1] 57/6
tolerated [1] 57/18
tolled [2] 60/2 67/6
tons [1] 20/3
too [6] 3/7 3/14 3/17 30/4 33/4 66/22
took [2] 47/8 53/14
tools [1] 62/20
totaling [1] 59/6
towards [1] 42/7
tracking [1] 5/23
tragically [1] 53/24
trains [1] 30/3
transcribe [1] 38/13
transcript [4] 1/8 1/24 59/15 72/13
transfer [7] 7/21 9/8 10/7 13/13 17/9 29/2 30/7
31/15 65/20
transferred [5] 9/6 9/7 9/12 9/17 30/13
transferring [1] 29/4
transfers [1] 15/25
trauma [1] 61/20
traveling [1] 45/22
treatment [1] 52/7
trial [53] 3/8 3/9 4/14 5/8 6/1 8/23 9/16 10/1
12/2 14/8 17/4 17/12 20/18 22/8 24/11 28/23
30/15 30/16 32/21 32/24 33/2 34/1 34/3 34/5
34/7 34/18 34/19 35/2 35/13 36/23 43/19 48/17

49/9 50/3 50/7 55/17 55/18 55/21 56/3 56/6
56/7 56/13 56/20 58/23 57/10 58/12 60/2
60/7 62/10 67/14 67/22 67/22
trials [7] 8/3 9/12 9/20 9/23 9/23 15/10 30/4
tricky [1] 32/12
tried [1] 22/7
trigger [4] 56/6 56/20 56/25 57/5
trouble [1] 55/3
true [1] 51/7
truly [1] 50/16
trust [4] 20/11 20/13 24/7 24/14
try [4] 27/7 27/10 28/5 33/20
trying [4] 18/17 24/25 28/25 37/11
tumultuous [1] 40/10
Twelfth [1] 45/12
two [29] 5/15 22/15 22/24 22/25 23/12 23/15
23/25 24/3 24/14 24/21 30/9 31/12 35/24 35/25
36/24 37/17 38/7 43/8 44/5 45/19 48/5 48/15
48/23 55/24 58/4 59/6 68/12 71/4 71/4
two-fold [1] 44/5
two-week [1] 71/4
type [3] 25/2 35/12 49/5
types [1] 58/4

**U**

U.S [26] 37/19 38/9 39/8 39/10 39/11 41/19
41/21 41/23 43/25 44/11 47/11 49/13 49/21
50/11 51/13 52/20 56/1 56/10 56/19 57/6 57/8
57/20 57/25 58/5 59/16 60/15
ultimately [1] 51/1
unable [2] 19/12 61/6
unacceptable [1] 27/23
unavailable [2] 61/5 61/9
unavailing [1] 53/16
unaware [3] 31/20 71/12 71/16
uncommonly [2] 56/17 57/25
unconstitutional [1] 41/17
unconstitutionally [2] 37/21 39/1
under [23] 3/6 3/11 5/10 5/14 7/23 9/9 9/10
9/17 9/18 12/21 12/21 19/14 19/20 22/12 35/3
41/14 42/2 44/12 49/8 60/9 61/24 67/10 67/22
underlying [1] 54/5
understand [4] 25/6 38/6 44/16 70/7
understandable [1] 58/19
understanding [3] 39/23 68/10 68/14
undertaken [1] 39/20
unemployment [1] 62/2
unexpected [1] 50/17
unfair [1] 23/19
unfortunate [1] 62/2
unfortunately [1] 12/6
unique [2] 9/25 13/17
unit [2] 52/15 53/2
UNITED [40] 1/1 1/3 1/9 1/11 1/20 2/3 2/8
14/8 17/11 21/15 31/12 39/2 39/9 41/19 42/19
42/21 42/23 44/10 44/18 45/3 46/15 47/9 47/13
50/17 50/21 51/17 51/21 53/20 56/5 56/10
57/13 58/16 58/25 59/4 60/23 61/2 61/21 62/4
72/4 72/8
unjust [1] 39/9
unknown [1] 52/16
unlawful [1] 40/24
unless [1] 49/9
unopposed [2] 6/6 23/11
unprecedented [2] 57/22 59/13
unreasonable [2] 39/9 60/11
unrelated [1] 59/20
until [7] 6/13 6/15 23/21 34/20 43/11 47/25
48/23
up [9] 5/7 11/6 12/24 17/14 18/16 19/9 33/23
37/4 67/3
update [4] 59/22 59/25 70/23 71/6
updates [3] 70/17 70/18 70/20
upheld [1] 57/13
upholding [2] 47/15 59/5
upon [4] 31/16 38/8 57/7 72/7

**U**

us [7]  4/18 29/24 30/5 33/18 69/4 70/10 71/8
USC [2]  67/11 68/13
use [2]  11/22 64/15
used [5]  27/7 27/10 28/4 30/4 44/14
used to [1]  44/14
uses [1]  47/4
using [1]  62/21
USMS [1]  51/24

**V**

vacate [2]  63/14 63/22
vague [4]  37/21 38/4 39/1 43/5
vagueness [2]  37/22 40/9
valid [2]  58/5 58/9
variety [2]  53/3 57/24
vast [1]  59/23
venue [8]  7/21 9/2 13/14 16/1 30/13 31/15
64/10 65/20
verbal [1]  39/18
verdict [1]  66/6
versus [30]  2/3 38/3 38/9 39/3 39/9 41/19
41/20 41/23 42/19 42/21 42/23 44/10 44/18
46/15 47/9 47/14 50/18 50/22 51/17 51/21
53/21 56/1 56/5 57/13 58/17 58/25 59/4 60/23
61/2 72/8
very [16]  10/5 14/21 14/24 15/1 15/2 21/8
21/21 21/22 22/10 24/6 33/8 34/10 63/17 66/14
70/2 71/5
vial [1]  27/18
vice [2]  4/15 5/24
vicinity [1]  40/15
victimized [3]  13/19 15/6 20/1
victims [5]  12/3 12/4 12/9 12/12 15/22
video [9]  2/12 2/13 6/5 6/7 6/17 6/18 23/6
26/10 54/20
videos [1]  15/20
view [4]  20/17 35/20 47/5 53/3
viewpoints [1]  53/9
views [1]  66/7
violate [1]  57/15
violated [3]  45/16 55/21 56/15
violates [1]  55/18
violation [9]  36/23 37/19 43/18 43/25 58/25
59/1 61/18 62/10 68/13
violations [1]  67/14
violence [2]  27/22 40/18
violent [2]  27/15 27/15
Virginia [2]  1/17 32/4
virtually [1]  40/9
vis [2]  70/20 70/20
visiting [1]  5/20
visits [1]  69/25
void [1]  37/22
voir [21]  3/11 10/8 10/16 11/7 11/15 11/19
19/7 19/9 19/12 19/15 19/21 20/3 20/11 20/13
20/15 20/17 21/22 23/21 66/17 66/18 66/21
volume [1]  59/20
vote [2]  45/11 46/14
vulnerability [1]  53/17
vulnerable [1]  52/11

**W**

wait [4]  9/1 23/9 32/8 48/23
want [32]  4/4 10/22 17/10 18/5 18/6 18/7 21/12
23/4 23/12 24/11 24/12 25/25 31/5 32/11 33/24
34/11 35/20 35/22 47/25 48/1 63/20 65/7 66/1
66/9 66/12 67/1 68/11 68/17 68/25 71/7 71/18
71/19
wanted [3]  8/5 11/3 31/19
wants [6]  14/7 24/3 32/10 63/9 68/7 69/13
War [1]  17/22
warrant [1]  60/22
warranting [1]  49/6
was [70]  3/23 4/1 4/8 4/13 4/16 4/22 8/7 10/18

11/1 11/5 11/7 11/9 11/12 12/14 12/18 12/20
12/21 13/21 13/21 16/4 16/10 16/16 17/17 17/20
17/21 21/6 21/18 23/8 27/6 28/3 28/8 29/1
31/15 31/20 32/1 32/6 34/18 34/19 35/18 43/10
46/12 46/17 50/3 51/7 51/8 51/11 51/12 52/14
52/16 52/19 53/14 54/8 56/17 56/18 58/18 61/5
61/6 61/8 61/9 63/10 66/21 66/21 68/11 69/19
69/21 70/12 70/12 71/5 71/6 71/6 71/12
Washington [5]  1/4 1/13 1/21 41/20 41/20
wasn't [2]  11/6 13/14
way [3]  20/25 38/20 63/14
ways [2]  39/12 45/15
we [88]
we'd [1]  31/17
we'll [8]  7/13 11/19 19/12 31/3 55/2 64/15
65/21 65/23
we're [9]  9/4 9/5 9/10 10/14 11/14 18/20 21/17
31/10 34/24
we've [3]  25/18 29/5 33/8
weakened [1]  53/4
week [1]  71/4
weeks [11]  12/22 13/1 22/15 22/24 23/1 23/12
23/15 23/25 24/3 71/4 71/11
weigh [5]  56/13 58/6 58/8 58/10 61/15
weighed [1]  53/16
weighs [1]  60/8
weight [1]  49/17
welcome [1]  64/7
well [23]  6/23 6/24 8/15 10/25 17/3 17/6 18/12
19/2 20/10 20/17 20/19 22/24 28/10 28/22 29/3
32/3 33/13 34/2 34/24 61/11 70/9 71/2 71/14
went [2]  22/2 62/17
were [24]  8/23 12/4 12/8 12/12 13/5 13/18
13/19 13/19 14/14 17/14 19/25 21/3 22/5 25/19
27/3 27/12 30/6 31/7 32/3 32/4 32/5 50/2 51/25
65/19
Westlaw [25]  39/3 39/6 39/25 40/6 40/20 40/20
40/25 41/10 42/8 42/8 42/14 42/15 42/17 42/17
42/18 42/19 42/22 42/23 46/15 50/22 51/21
53/21 61/17 61/17 61/21
what [42]  3/10 3/10 6/22 7/6 7/10 10/20 10/21
10/24 11/20 12/2 13/13 15/14 19/13 19/17
19/19 20/2 20/2 20/5 20/9 20/12 21/23 22/3
23/10 25/18 28/13 29/1 29/15 29/23 30/8 35/21
38/6 38/11 39/23 46/5 46/6 62/20 62/22 63/21
64/4 67/4 68/19 70/7
what's [3]  6/19 11/15 69/18
when [7]  4/22 20/21 34/19 43/16 54/7 66/2
70/11
whenever [2]  26/5 26/7
where [3]  5/19 8/23 9/7 9/12 10/9 10/10 12/2
13/2 17/3 17/4 17/5 17/11 17/13 29/1 29/2 29/8
30/20 47/3 57/16 59/2 61/4 61/18 62/5
whereof [1]  72/17
whether [22]  3/20 9/8 10/1 16/9 30/13 31/6
35/1 35/2 39/12 40/12 41/4 48/20 48/22 50/8
51/2 53/14 54/8 55/20 55/22 56/16 58/1 64/12
which [28]  10/7 15/24 24/8 28/8 34/3 35/6
35/10 37/11 37/18 38/20 40/10 42/11 43/24
44/7 45/15 46/12 47/6 52/7 52/17 57/3 60/2
60/7 62/15 63/10 64/7 67/9 68/8 68/10
while [10]  40/5 52/22 53/2 53/9 53/23 57/11
61/12 61/12 61/14 62/2
Whitney [9]  25/15 26/4 26/9 48/1 54/22 54/25
65/17 69/1 69/5
who [20]  2/12 10/19 12/3 12/4 12/7 15/23
17/14 20/5 22/1 22/11 27/6 28/4 29/19 42/3
46/17 54/5 62/3 62/19 63/1 63/6
who's [1]  10/23
whole [2]  8/22 24/19
whom [1]  54/4
whomever [1]  65/17
whose [1]  12/3
why [12]  4/13 5/11 6/20 6/20 7/1 8/9 15/23
21/20 28/22 32/8 33/20 71/15
will [51]  3/1 3/6 3/8 3/11 5/8 5/16 5/20 6/13 7/1

7/9 8/12 8/12 17/13 21/11 23/7 23/15 23/25
24/1 27/2 28/21 32/23 34/6 37/14 38/11 42/13
43/11 43/17 47/24 48/2 48/18 49/11 50/1 50/9
51/3 54/18 54/20 57/10 60/14 62/17 64/11 65/2
65/18 67/7 67/16 67/17 67/21 69/5 69/23 70/24
71/1 71/21
Williams [1]  39/11
Williamson [1]  47/14
Wingo [1]  56/1
Wisconsin [1]  42/20
wish [1]  43/12
withdrawing [2]  9/3 36/14
withdrawn [3]  8/17 29/2 29/6
within [8]  23/15 26/7 40/12 42/16 52/14 64/6
71/4 71/11
without [7]  5/5 5/10 9/21 29/21 39/19 45/4
70/6
witness [4]  58/10 61/5 61/6 72/17
witnesses [2]  29/11 57/23
woman [1]  28/10
won't [1]  65/1
Wood [1]  42/23
word [3]  40/3 62/13 62/13
words [3]  27/3 27/13 42/6
work [5]  25/6 29/19 54/22 61/12 62/7
worked [3]  33/8 59/14 63/3
working [4]  25/7 26/9 63/16 63/17
world [1]  28/15
Worrell [1]  50/22 51/21
worst [1]  17/22
would [67]  5/5 5/17 5/22 5/23 5/24 6/1 6/14
6/23 8/21 10/10 11/24 12/17 13/8 13/8 13/10
13/18 14/15 15/8 16/8 16/14 16/21 17/23 18/10
18/18 21/16 21/17 21/19 22/14 22/20 22/22
23/1 23/25 24/4 24/17 25/13 25/20 25/20 28/20
28/24 29/8 29/9 29/11 29/14 29/16 29/17 29/19
30/5 30/7 30/8 30/18 30/20 31/18 31/22 33/11
34/23 35/15 39/22 49/21 54/15 54/22 62/3
62/19 64/12 64/13 64/19 67/5 67/8
wouldn't [1]  16/15
write [2]  25/20 33/18
written [2]  31/21 44/3
wrong [2]  8/5 14/5

**Y**

Yeah [6]  4/4 8/2 22/17 22/25 22/25 25/14
year [9]  31/12 34/2 34/24 42/16 53/15 56/11
57/1 59/2 63/14
years [2]  8/3 57/15
yelling [1]  69/22
Yes [11]  2/17 5/6 14/13 23/3 24/15 26/14 26/18
55/1 68/6 69/6 70/4
yet [3]  44/19 51/9 51/11
York [2]  29/23 50/19
you [182]
you'd [1]  18/13
you're [8]  6/25 19/2 19/2 19/5 19/6 21/4 25/5
26/5
you've [4]  23/6 24/14 29/2 55/10
your [116]
yourself [7]  7/1 24/10 24/12 24/22 55/11 69/14
71/24
yourselves [1]  2/4

**Z**

Zhukov [1]  61/16