UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) Crim. Action No. 21-24-1 (TNM) |
| v. | ) |
| | ) |
| ROBERT GIESWEIN, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM IN AID OF SENTENCING

Robert Gieswein traveled alone from his home in Woodland Park, Colorado, to Washington, D.C., to attend a political rally in support of then President Donald Trump after Robert learned that Trump was asking for support. Robert did not bring any weapons, did not intend to meet with anyone or any groups at the rally, and did not plan any acts of violence. Robert did not plan to enter any restricted ground, or even visit the United States Capitol. Robert simply wanted to attend a political rally, as he had done many times in the past.

After Robert arrived in Washington, D.C., he attended the Freedom Plaza rally on January 5. While at the rally, Robert heard people in the crowds talking about potential violent counter-protestors planning to attack Donald Trump supporters such as himself on January 6. Fearful, Robert told a man in the crowd that he wished he had something to protect himself. The unknown man told Robert that Robert could have a baseball bat the man had with him in the event Robert needed to defend himself. Robert never used this bat on January 5, or January 6.

On January 6, Robert observed with his own eyes the now infamous large attack on the United States Capitol and the riots that ensued. Robert began to witness violence and danger coming from all directions. Admittedly caught up in the emotions and energy of the moment, and

1

falling prey to mob mentality, Robert stopped thinking rationally and accepted a can of pepper spray by an unknown protestor. Then, acting completely contrary to the character he displayed throughout his entire life up until this moment, Robert joined the large mob, and took aggressive actions toward some members of the police. Robert voluntarily turned himself into the Teller County Jail on January 18, 2021.

As a result of his actions on January 6, 2021, Robert has been incarcerated almost two and a half years, and has had to watch from afar as the health of his mother and sister deteriorate without being able to assist them. Robert takes full and complete responsibility for his actions on January 6, 2021,[1] and simply asks this Court to now give him the opportunity, after nearly two and a half years, to demonstrate that his actions on that single day do not reflect who he is as a person or his actions in the future. Counsel requests a time-served sentence followed by a period of supervised release with conditions that the Court sees fit to impose, and asks this Court to hold, for the reasons explained below, that a time served sentence would "fit the offender and not merely the crime[.]" *Pepper v. United States*, 562 U.S. 476, 477 (2011).

    **I.**    **The Sentencing Factors**

        A.  <u>Robert's History and Characteristics Demonstrate That a Time-Served Sentence Is Appropriate</u>

            1.  *Robert's Challenging Upbringing*

As detailed in the PSR, Robert had an unforgiving childhood, which would destroy most people. Robert was born on December 28, 1996, to Cheryl Bashlor in Shattuck, Oklahoma. To this day, Robert is uncertain who exactly his biological father is. A Mr. Sean Gieswein is listed on

---

[1]    *See* Exhibit 2.

Robert's birth certificate as his father, but Robert suspects that a Mr. Scott Alridge is his biological father.

Sean Gieswein, to put it mildly, was a toxic individual who Robert was forced to grow up with. Sean Gieswein would often give women tattoos in exchange for having sex with their young daughters, and raped Robert's maternal aunt. Robert's mother was in an intimate relationship with Sean Gieswein until Sean was convicted of sexual assault of a minor. Despite Sean Gieswein being convicted of a sexual offense involving a minor, Sean was granted joint custody of Robert. When Sean Gieswein was released from prison, Robert saw Sean Gieswein on the weekends. When Robert lived with Sean Gieswein, Sean was physically and mentally abusive to young Robert and his mother. Sean also forcefully exposed young Robert to pornography and tried forcing Robert to have sex with his girlfriends. Sean was eventually convicted on a firearm and lewd act with a minor offense in 2005. Sean Gieswein is still incarcerated to this day.

Continuing to search for a father figure, when Robert's mother realized that Sean Gieswein was potentially not Robert's biological father, she searched for Mr. Aldridge. Robert recalls being nine years old when his mother located Mr. Alridge. However, shortly after Robert met Mr. Aldridge, he was found in a hotel room in an advanced stage of decomposition as a result of a drug overdose.

Eventually, Robert's mother started a romantic relationship with a man named Patrick Bashlor in approximately 2007. Finally, having some stability in his young life, Robert's mother married Patrick in 2013. However, Robert's life was turned upside down yet again when Mr. Bashlor died from a massive heart attack on January 28, 2018, at just 46 years old.

Adding to the extreme trauma and inconsistency detailed above, Robert's mother struggled financially to provide Robert and his younger sister Alyssa with the basic material necessities. As

a result, Robert had to often care for his younger sister. Alyssa, now age 19, lives with their mother in Divide, Colorado. Alyssa has Pott disease (musculoskeletal tuberculosis), and Robert's mother has lupus.

2. *Robert's Success and Character Despite His Challenging Upbringing*

Despite the extreme and incessant difficulty in Robert's life detailed above, Robert grew to be an incredibly responsible young man with a great heart and great character. Robert was a caregiver for his mother and his sister as a result of their health issues, and Robert also chose to be a caregiver to his community. Specifically, from May until June 2015, Robert worked for Mile High Youth Corp Fire Mitigation Program where he received a scholarship stipend, and was an environmental aide at Cripple Creek Nursing in Colorado until he received his Certified Nurse's Aid ("CNA") certification. As a CNA, Robert earned between only $11.50 and $12 hourly, and was eventually forced to quit due to the low hourly wages and his stepfather's death. Undersigned has also attached multiple letters from individuals who know Robert well attesting to his character. *See* Exhibits 3-6.

3. *Robert's Lack of Criminal History*

At 26 years old, Robert has no prior criminal convictions, whether as an adult or as a juvenile. In fact, Robert has no arrests in his history.

B. The Nature and Circumstances of Robert's First and Only Offense Do Not Warrant Further Incarceration

Robert chose to attend a Trump rally on January 6, 2021, with the intent to lawfully exercise his right to free speech and show support for a political candidate. He did not attend the rally with the intent to do violence, but wore protective gear in order to defend himself out of fear that others might do violence to him. Eventually, Robert became swept up in the emotion of an enormous crowd after witnessing violence happen all around him. As a result, Robert takes full responsibility

4

for his actions and admits that he temporarily became an aggressor in certain instances due to losing control of his emotions and not thinking rationally. The emotional actions that Robert engaged in on that lone day on January 6, 2021, are completely unlike the actions Robert has taken every other day of his life. After removing himself from the area and traveling back to his home in Colorado, Robert understood what he did was wrong and voluntarily turned himself into police. Robert then plead guilty to these offenses.

### C. A Time-Served Sentenced With Supervision Will Achieve the Goals of Sentencing

As the Court is well aware, there are many goals of sentencing, including the need (1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (2) to afford adequate deterrence to criminal conduct; (3) to protect the public from further crimes of the defendant; (4) to avoid Sentence Disparities. *See* 18 U.S. Code § 3553. After examining these needs as applied to Robert, it is clear that a time served sentence of almost two and a half years will achieve these goals.

First, removal from public society and incarceration for nearly two and a half years for assaultive actions that took place on one day of a person's life reflects the seriousness of the offense, promotes respect for the law, and to provides just punishment. It becomes even more clear that these goals are met when the Court considers that the incarceration itself is not the only punishment that Robert has endured: as a result of his actions and the publicity in this case Robert will be severely punished for potentially the rest of his life even if released from custody today. *See United States v. Nesbeth*, 188 F. Supp.3d 179 (E.D.N.Y. 2016) ("There is a broad range of collateral consequences that serve no useful function other than to further punish criminal defendants after they have completed their court-imposed sentences. Many—under both federal and state law—attach automatically upon a defendant's conviction. The effects of these collateral

consequences can be devastating. … Myriad laws, rules, and regulations operate to discriminate against ex-offenders and effectively prevent their reintegration into the mainstream society and economy. These restrictions amount to a form of civil death and send the unequivocal message that 'they' are no longer part of 'us.'"). Further, every day that Robert is incarcerated is not just a day of his life that he loses his freedom, but a day that he is unable to help care for the medical needs of his mother and sister, and help provide financial and physical support for them.

Second, a sentence of time served is more than sufficient to provide adequate deterrence, especially when considering that Robert will likely not be able to pursue many of the employment opportunities that he had hopes for—including potentially serving his community in law enforcement. *See United States v. Stewart*, 590 F.3d 93 (2d Cir. 2009) (district court imposed sentence of twenty months despite guidelines of 78-97 months in part because conviction "made it doubtful that the defendant could pursue his career as an academic or translator, and therefore that the need for further deterrence and protection of the public is lessened because the conviction itself already visits a substantial punishment on the defendant"); *United States v. Pauley*, 511 F.3d 468, 474-75 (4th Cir. 2007) (loss of the defendant's "teaching certificate and his state pension as a result of his conduct" is appropriate sentencing consideration consistent with requirement that "the sentence reflect the need for just punishment and adequate deterrence"). Further, it continues to be established that duration of punishment is far less connected to deterrence than previously believed. *See* , e.g.,*United States v. Bannister*, 786 F. Supp. 2d 617, 668 (E.D.N.Y. 2011) ("[G]iven that effective deterrence arises from certainty, not harshness, of punishment, our society might better consider whether our scarce resources would be better spent, not on extended incarceration, but on eliminating social conditions encouraging crime and on non-incarceratory techniques"); National Institute of Justice, *Five Things About Deterrence*, at 1 (May 2016), available at

https://www.ojp.gov/pdffiles1/nij/247350.pdf (stating that "increasing the severity of punishment does little to deter crime," and "the certainty of being caught is a vastly more powerful deterrent than the punishment").

Third, no further incarceration of Robert is needed "to protect the public from further crimes." Indeed, Robert has absolutely no criminal history, and his actions on January 6, 2021, were completely unlike the character he has displayed throughout his entire life. This makes logical sense, as Robert's action on January 6, 2021, may have been conscious, but they occurred while succumbing to mob mentality during the incredibly rare circumstances surrounding January 6, 2021.

Fourth, and finally, a sentence of time served will avoid any sentencing disparities in cases similar to Robert's. Indeed, many January 6 defendants with the same conviction as Robert were sentenced to substantially less time than the 29 months Robert has already served. *See*, e.g.,[2] Council, Matthew, 1:21-CR-00207-TNM (this Court imposing just 6 months of *home detention*, with 18 U.S.C. § 111(a)(1) conviction, along with *five* other convictions, when government recommended 30 months' incarceration); Mehaffie, David, 1:21-CR-00040-TNM (this Court imposing just 14 months' incarceration with 18 U.S.C. § 111(a)(1) conviction, along with three other convictions, when government recommended 64 months' incarceration); Leffingwell, Mark, 1:21-CR-00005-ABJ (imposing 6 months' incarceration with 18 U.S.C. § 111(a)(1) conviction); Young, Philip, 1:21-CR-617-DLF (imposing 8 months' incarceration with 18 U.S.C. § 111(a)(1) conviction); Sargent, Troy, 1:21-CR-00258-TFH (imposing just 14 months' incarceration with 18 U.S.C. § 111(a)(1) conviction along with three other convictions); Dickinson, Michael, 1:21-CR-00649-JDB (imposing 20 months' incarceration with 18 U.S.C. § 111(a)(1) conviction);

---

[2]   *See* Exhibit 1, available at https://www.justice.gov/usao-dc/capitol-breach-cases.

Eckerman, Michael, 1:21-CR-00623-CRC (imposing 20 months' incarceration with 18 U.S.C. § 111(a)(1) conviction); Hernandez, Joshua, 1:22-CR-00042-CRC (imposing 24 months' incarceration with 18 U.S.C. § 111(a)(1) conviction); Willden, Ricky, 1:21-CR-00423-RC (imposing 24 months' incarceration with 18 U.S.C. § 111(a)(1) conviction); Creek, Kevin, 1:21-CR-00645-DLF (imposing 27 months' incarceration with 18 U.S.C. § 111(a)(1) conviction). Further, in the rare circumstances where January 6 defendants with a conviction offense similar to Robert were sentenced to more time than Robert has already served, they were frequently still sentenced to significantly less time than the government recommended. *See*, e.g., Judd, David Lee, 1:21-CR-00040-TNM (this Court imposing just 32 months' incarceration with multiple convictions when government recommended 90 months' incarceration); Sills, Geoffrey William, 1:21-CR-00040-TNM (this Court imposing 52 months' incarceration with multiple convictions when government recommended 108 months' incarceration).

## CONCLUSION

Robert Gieswein lives with great regret for his actions and has accepted full responsibility for the crimes that he committed on January 6, 2021. He has let his family down and acted contrary to his principles and character. As a result of his actions, Robert Gieswein has been incarcerated and lost his freedom for almost two and a half years of his young life. Counsel requests that the Court hold that further incarceration and loss of liberty would not be necessary to comply with the purposes and goals of criminal sentencing. Mr. Gieswein is eager to demonstrate to the Court on supervised release—as he has demonstrated to those around him for his entire life before January 6, 2021—that he is a thoughtful and caring law abiding citizen who aims to do good for his community.

Respectfully submitted.

Dated: June 16, 2023

_____
Blake A. Weiner, VSB # 94087
BLAKE WEINER LAW, PLLC
1806 Summit Avenue, Suite 300
Richmond, VA 23230
Telephone: (804)-482-1465
Email: bweiner@blakeweinerlaw.com
*Attorney for Robert Gieswein*