```
          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF COLUMBIA


UNITED STATES OF AMERICA,         )
                                  )
        Plaintiff,                )
                                  )    CR No. 22-15-1
                                  )    Washington, D.C.
     vs.                          )    May 25, 2023
                                  )    9:39 a.m.
ELMER STEWART RHODES III,         )
                                  )
        Defendant.                )
_____)

           TRANSCRIPT OF SENTENCING PROCEEDINGS
            BEFORE THE HONORABLE AMIT P. MEHTA
               UNITED STATES DISTRICT JUDGE
```

APPEARANCES:

For the Government:            Kathryn L. Rakoczy
                               Jeffrey S. Nestler
                               Alexandra Hughes
                               Troy Edwards
                               Louis Manzo
                               U.S. ATTORNEY'S OFFICE
                               601 D Street, NW
                               Washington, D.C. 20579
                               (202) 252-7277
                               Email:
                               kathryn.rakoczy@usdoj.gov
                               Email:
                               jeffrey.nestler@usdoj.gov

1   Those two levels apply.
2           The four levels for organizer and leader apply.
3   As I said earlier, Mr. Rhodes was at the top of the chain.
4   And it's not just the top of -- it's not just that he was
5   the founder and leader of the Oath Keepers.  That's not the
6   only reason.  The Oath Keepers don't come to D.C. on
7   November 14th but for Mr. Rhodes.  They don't come to the
8   Jericho March on December 12th, I believe it was, but for
9   Mr. Rhodes.  And they are not here on January 6th but for
10  Mr. Rhodes.
11          Mr. Rhodes directed his co-conspirators to come to
12  the Capitol, and they abided.  Mr. Meggs came to the
13  Capitol.  Mr. James and his group came to the Capitol.  This
14  was all after he told them to come to the Capitol.
15          And, ultimately, there was testimony about that
16  Mr. Rhodes, at least in the perception of some witnesses,
17  would have been the one who made the decision whether to
18  bring the arms in, and that certainly rings true.
19          There are other pieces of information here and
20  there that also establish the four levels of organizing and
21  control.  He referred to, for example, Roberto Minuta as
22  "one of my most trusted men," suggesting a hierarchical
23  relationship and an ability to control.
24          He designates Mr. Siekerman, Mr. Greene,
25  Mr. James, and Mr. Meggs as leaders for the January 6 op,

78

1   again, suggesting a level of hierarchical control and
2   leadership and organization by Mr. Rhodes.  And so I think
3   this is not a close call that the four-level enhancement
4   applies as well as for the government's requested six-level
5   departure, under 3A1.4, Note 4.
6           As I said yesterday, I think as a matter of law,
7   the conduct of conviction of seditious conspiracy meets the
8   description foursquare of what that element -- excuse me,
9   what that enhancement requires a showing of, which is an
10  offense other than the one that is enumerated in the
11  Guideline, but the motive was to intimidate or coerce a
12  civilian -- I'm sorry, rather than -- sorry.
13          The motive was to -- calculated to influence or
14  affect the conduct of government by intimidation or
15  coercion, which were to retaliate against government
16  conduct.  Certainly that first clause applies squarely to
17  the conduct of conviction.
18          And based upon the facts as I found them yesterday
19  and have incorporated them today, Mr. Rhodes and his
20  compatriots' objective was to affect the conduct of
21  government, specifically Congress, and to do so through
22  intimidation and coercion by means of force, both through
23  the stockpiling of weapons in the event that they needed to
24  be brought across the river -- there was an agreement as to
25  that -- and then, of course, the actual use of force by

1   others who went into the building and applied that force
2   against police officers who were doing their duty that day.
3           In terms of the levels, I disagree that it is an
4   all-or-nothing proposition.  The Guidelines clearly don't
5   contemplate that.  The only restriction is that the levels
6   can't increase more than a certain number to -- that would
7   require the -- which would have the Guidelines become
8   equivalent to what the actual terrorism enhancement would
9   do.  And so it only establishes a cap on what a court can do
10  and not a floor.
11          I think the six levels is appropriate, and how
12  does one get there?  I think the way I get there is the
13  nature of the conduct, and let me be clear.  This is not --
14  this is a separate -- it's a separate and more serious
15  conduct than what's captured by the Guideline.  And I say
16  that because the Guideline itself does not necessarily
17  require the level of intimidation and calculation and
18  targeting that the terrorism enhancement -- what we will
19  call the terrorism enhancement in the note requires.
20          This is an additional level of calculation.  It is
21  an additional level of planning.  It is an additional level
22  of purpose.  It is an additional level of targeting, in this
23  case, an institution of American democracy at its most
24  important moment, the transfer of power.  That's pretty
25  significant.  That's what the jury found.  And I agree with

1   them.

2            It seems to me six levels is appropriate.  I think
3   the case the government cited in its brief at page 57,
4   I think it is -- no, page 67, the case in Oregon in which
5   the judge there apportioned enhancement levels according to
6   level of culpability -- in fact, the highest there was 10.
7   We're not even going that far for Mr. Rhodes.  I think a
8   six-level enhancement, in order to sort of assure some
9   degree of proportionality to those who are involved in that
10  case and, ultimately, to ensure appropriate proportionality
11  to other defendants in this case, I think, is appropriate.
12  So what all of that means is -- oh, two other things -- or
13  three other things.

14           The defense has requested a two-level reduction
15  for acceptance of responsibility under 3E1.1.  I decline to
16  do so.  There's no basis for that.  Mr. Rhodes proceeded to
17  trial for reasons unrelated to factual guilt.  And although
18  that is not the sole reason somebody could receive a
19  two-point reduction for acceptance, there are no special
20  circumstances here in which the rare reason or the rare
21  exception -- circumstance would apply for that two-level
22  reduction, despite somebody having gone to trial.  And, in
23  fact, Mr. Rhodes' comments, which we will soon talk about,
24  that he has made consistently since January 6th and since
25  he's been charged and since he's been convicted clearly