```
          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF COLUMBIA


UNITED STATES OF AMERICA,        )
                                 )
       Plaintiff,                )
                                 )   CR No. 22-15-1
                                 )   Washington, D.C.
     vs.                         )   May 25, 2023
                                 )   9:39 a.m.
ELMER STEWART RHODES III,        )
                                 )
       Defendant.                )
_____)

          TRANSCRIPT OF SENTENCING PROCEEDINGS
          BEFORE THE HONORABLE AMIT P. MEHTA
              UNITED STATES DISTRICT JUDGE
```

APPEARANCES:

For the Government:          Kathryn L. Rakoczy
                             Jeffrey S. Nestler
                             Alexandra Hughes
                             Troy Edwards
                             Louis Manzo
                             U.S. ATTORNEY'S OFFICE
                             601 D Street, NW
                             Washington, D.C. 20579
                             (202) 252-7277
                             Email:
                             kathryn.rakoczy@usdoj.gov
                             Email:
                             jeffrey.nestler@usdoj.gov

1  Those two levels apply.
2           The four levels for organizer and leader apply.
3  As I said earlier, Mr. Rhodes was at the top of the chain.
4  And it's not just the top of -- it's not just that he was
5  the founder and leader of the Oath Keepers.  That's not the
6  only reason.  The Oath Keepers don't come to D.C. on
7  November 14th but for Mr. Rhodes.  They don't come to the
8  Jericho March on December 12th, I believe it was, but for
9  Mr. Rhodes.  And they are not here on January 6th but for
10 Mr. Rhodes.
11          Mr. Rhodes directed his co-conspirators to come to
12 the Capitol, and they abided.  Mr. Meggs came to the
13 Capitol.  Mr. James and his group came to the Capitol.  This
14 was all after he told them to come to the Capitol.
15          And, ultimately, there was testimony about that
16 Mr. Rhodes, at least in the perception of some witnesses,
17 would have been the one who made the decision whether to
18 bring the arms in, and that certainly rings true.
19          There are other pieces of information here and
20 there that also establish the four levels of organizing and
21 control.  He referred to, for example, Roberto Minuta as
22 "one of my most trusted men," suggesting a hierarchical
23 relationship and an ability to control.
24          He designates Mr. Siekerman, Mr. Greene,
25 Mr. James, and Mr. Meggs as leaders for the January 6 op,

1  again, suggesting a level of hierarchical control and
2  leadership and organization by Mr. Rhodes.  And so I think
3  this is not a close call that the four-level enhancement
4  applies as well as for the government's requested six-level
5  departure, under 3A1.4, Note 4.
6          As I said yesterday, I think as a matter of law,
7  the conduct of conviction of seditious conspiracy meets the
8  description foursquare of what that element -- excuse me,
9  what that enhancement requires a showing of, which is an
10 offense other than the one that is enumerated in the
11 Guideline, but the motive was to intimidate or coerce a
12 civilian -- I'm sorry, rather than -- sorry.
13         The motive was to -- calculated to influence or
14 affect the conduct of government by intimidation or
15 coercion, which were to retaliate against government
16 conduct.  Certainly that first clause applies squarely to
17 the conduct of conviction.
18         And based upon the facts as I found them yesterday
19 and have incorporated them today, Mr. Rhodes and his
20 compatriots' objective was to affect the conduct of
21 government, specifically Congress, and to do so through
22 intimidation and coercion by means of force, both through
23 the stockpiling of weapons in the event that they needed to
24 be brought across the river -- there was an agreement as to
25 that -- and then, of course, the actual use of force by

1    others who went into the building and applied that force
2    against police officers who were doing their duty that day.
3              In terms of the levels, I disagree that it is an
4    all-or-nothing proposition.  The Guidelines clearly don't
5    contemplate that.  The only restriction is that the levels
6    can't increase more than a certain number to -- that would
7    require the -- which would have the Guidelines become
8    equivalent to what the actual terrorism enhancement would
9    do.  And so it only establishes a cap on what a court can do
10   and not a floor.
11             I think the six levels is appropriate, and how
12   does one get there?  I think the way I get there is the
13   nature of the conduct, and let me be clear.  This is not --
14   this is a separate -- it's a separate and more serious
15   conduct than what's captured by the Guideline.  And I say
16   that because the Guideline itself does not necessarily
17   require the level of intimidation and calculation and
18   targeting that the terrorism enhancement -- what we will
19   call the terrorism enhancement in the note requires.
20             This is an additional level of calculation.  It is
21   an additional level of planning.  It is an additional level
22   of purpose.  It is an additional level of targeting, in this
23   case, an institution of American democracy at its most
24   important moment, the transfer of power.  That's pretty
25   significant.  That's what the jury found.  And I agree with

1  them.

2  It seems to me six levels is appropriate. I think
3  the case the government cited in its brief at page 57,
4  I think it is -- no, page 67, the case in Oregon in which
5  the judge there apportioned enhancement levels according to
6  level of culpability -- in fact, the highest there was 10.
7  We're not even going that far for Mr. Rhodes. I think a
8  six-level enhancement, in order to sort of assure some
9  degree of proportionality to those who are involved in that
10 case and, ultimately, to ensure appropriate proportionality
11 to other defendants in this case, I think, is appropriate.
12 So what all of that means is -- oh, two other things -- or
13 three other things.

14 The defense has requested a two-level reduction
15 for acceptance of responsibility under 3E1.1. I decline to
16 do so. There's no basis for that. Mr. Rhodes proceeded to
17 trial for reasons unrelated to factual guilt. And although
18 that is not the sole reason somebody could receive a
19 two-point reduction for acceptance, there are no special
20 circumstances here in which the rare reason or the rare
21 exception -- circumstance would apply for that two-level
22 reduction, despite somebody having gone to trial. And, in
23 fact, Mr. Rhodes' comments, which we will soon talk about,
24 that he has made consistently since January 6th and since
25 he's been charged and since he's been convicted clearly