## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| _____ | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | Crim. Action No. 21-24-1 (TNM) |
| v. | ) | |
| | ) | |
| ROBERT GIESWEIN, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

### RESPONSE TO GOVERNMENT'S SENTENCING MEMORANDUM

Robert Gieswein, through counsel, respectfully submits this Response to the government's Sentencing Memorandum (ECF No. 147). Specifically, Mr. Gieswein submits this response to demonstrate the following: 1) the government exaggerates the evidence; 2) USSG §3A1.4 does not apply, and the government's request for an upward variance is unjustified and contradicts its admission of the appropriate guideline range in this case; and 3) the cases upon which the government relies in its request, both for an upward departure and to justify a sentence for the amount of time it requests, are easily distinguishable for many reasons. This Court should not seriously consider the government's request, and for each of the reasons set forth in Mr. Gieswein's Memorandum a sentence of time served is appropriate, constitutes a just punishment, and avoids unwarranted disparities.

### I.     The Government Exaggerates the Evidence

First, the government mischaracterizes the evidence in this case and Mr. Gieswein's actions. For example, the government states that the evidence "leaves no doubt that [Mr. Gieswein's] intentions were to be violent on that day," but then later concedes that before the emotions of the moment on January 6 took over, Mr. Gieswein gave a videorecorded interview on

January 5, 2021, in which he stated that he "there's not a whole lot I can do as an individual, but I would think to make sure that both sides stay peaceful." Gov. Memo at 5. The government also spends great time in its memorandum mentioning the bat that Mr. Gieswein possessed, but fails to make clear that it is never alleged Mr. Gieswein used or attempted to use this bat against any individual. Further, the government concedes that it has absolutely no evidence that Mr. Gieswein traveled to Washington D.C. with any weapon—whether the bat, aerosol spray, or any other— casting serious doubt on its argument "that [Mr. Gieswein's] intentions were to be violent on that day." Gov. Memo at 2.

Further, the government does not give sufficient focus on the actual effect of the relatively minor injuries Mr. Gieswein caused to any officers on January 6. While Mr. Gieswein takes full responsibility for his actions, the extent of injuries suffered as a result of Mr. Gieswein's actions is relevant. In this case, the government concedes that "Officer N.V. received treatment from a nurse's station, but he did not go to the hospital or have x-rays taken. He could not definitively say whether Gieswein … caused [his] injuries." Gov. Memo at 18. Further, the government concedes that the individuals who claimed to have suffered injuries as a result of Mr. Gieswein's actions on January 6, who are identified and known, have not claimed to have any losses as a result of bodily injury sustained on January 6, 2021. *See* Gov. Memo at 36 n.17.

## II.     The Government's Request for an Upward Variance Is Unjustified, and USSG §3A1.4 Does Not Apply

Next, the government argues that the facts here "justify a significant upward variance from the sentencing range prescribed by the U.S. Sentencing Guidelines." Gov. Memo at 2. However, the government has already previously stated to this Court, based on this same exact evidence and information that was always available to it, "that a sentence within the Estimated Guidelines Range [of 41 to 51 months] would constitute a reasonable sentence in light of all of the factors set forth

in 18 U.S.C. § 3553(a)[.]" *See* ECF No. 137. While Mr. Gieswein does not dispute that the government reserved the right to request an upward variance in the plea agreement, the government's argument that the facts here "justify a significant upward variance" must be viewed with skepticism when it has already conceded that the facts here justify a sentence even as low as 41 months and that the sentence range is "a reasonable sentence in light of all of the factors set forth in 18 U.S.C. § 3553(a)[.]"

In sum, the government argues that the Guidelines "simply do not reflect" the intent and actions of Mr. Giewsein which "manifested in assaults on law enforcement officers simply trying to maintain order[.]" Gov. Memo at 25. This argument is simply incorrect. Mr. Gieswein pleaded guilty to offenses of assaulting law enforcement officers, which requires intent, and the Sentencing Guidelines account for his admission of guilt to these actions. Accordingly, an upward variance is inappropriate.

The government also argues that the Court should apply the USSG §3A1.4 terrorism enhancement. Mr. Gieswein's actions do not come close to meeting the terrorism enhancement. The government's request for an upward departure under the terrorism enhancement for Mr. Gieswein spraying an aerosol irritant and attempting to punch one officer should be easily rejected offhand as absurd. Of course, the government does not cite a single case in which any district judge has applied the terrorism enhancement to a January 6 defendant like Mr. Gieswein who engaged in no pre-planning, brought no weapons to Washington D.C., who was not part of any extremist organization, and who caused only minor physical injuries. Indeed, as the government concedes, this Court previously declined to apply the enhancement, finding that "the enhancement [] suggests a level of planning and premeditation that is not shown" in a case where the defendant threw a device lit on fire into a tunnel filled with police. Gov. Memo at 27. That same lack of planning and

premeditation is demonstrated in this case where Mr. Gieswein traveled to Washington, D.C., alone, with no weapons, and stated the day before that he was there in hopes that both sides stay "peaceful."

In support of the upward departure, the government cites to a single case: *United States v. Rhodes*, et. al., No. 22-cr-15 (APM). *Rhodes* is completely unlike the case here. *Rhodes* involved "the stockpiling of weapons in Virginia in case they were needed," and "the founder and leader of the Oath Keepers," which is "one of the largest antigovernment militia groups in U.S. history."[1] Given the incredible and extreme facts in that case Mr. Rhodes was convicted of seditious conspiracy, along with many other serious felonies, and sentenced to *two hundred sixteen* months' incarceration, as compared to Mr. Gieswein's recommended guideline range which begins at forty-one months. To compare *Rhodes* to this matter is simply incredible.

### III.    The Cases Upon Which the Government Relies Are Easily Distinguishable

In arguing that a sentence of 60 months would avoid unwanted sentencing disparities, the government cites to multiple cases that are significantly different from Mr. Gieswein.

The government first cites *United States v. Robert Morss*, No. 21-cr-40, where a sentence of 66 months was imposed. *Morss* was convicted of five felonies, including obstructing an official proceeding, and the circumstances of that case were so severe that the government requested a sentence of *109 months' incarceration*, nearly double the amount of time that it is requesting in this case. *See* ECF No. 146-1. Thus, the government essentially is telling this Court that it should issue a sentence for Mr. Gieswein similarly to a defendant that it believed should be sentenced twice as harshly as Mr. Gieswein.

---

[1]      Whitehurst, Lindsay, *Who are the Oath Keepers, and why are members on trial?*, ASSOCIATED PRESS (Oct. 3, 2021), available at https://www.pbs.org/newshour/politics/who-are-the-oath-keepers-and-why-are-members-on-trial.

The government then cites the defendant in *United States v. Sandlin*, 21-cr-88 (DLF), who, just like Morss, was convicted not just of assaulting an officer, but also of conspiring to obstruct an official proceeding. *See* ECF No. 146-1. Further, as the government admits, Sandlin brought "knives, bear spray, and a pistol to the D.C. area," whereas Mr. Gieswein did not bring a single weapon to the D.C. area.

The government next cites *United States v. Robertson*, 21-cr-34 (CRC), where the defendant was convicted of *six* felonies, did not accept responsibility but rather went to trial, was a Virginia Police officer, and destroyed his phone to conceal evidence. The government absurdly argues that merely because it cannot locate Mr. Gieswein's phone, their circumstances are the same. Of course, the government knows that the circumstances in *Robertson* are vastly different from the circumstances here, which is why it requested 96 months of incarceration for Robertson.

Finally, the government cites *United States v. Pruitt*, 1:21-CR-00023 (JK), where the defendant and Mr. Gieswein share absolutely zero similar charges, and where the defendant, unlike Mr. Gieswein, was a member of the Proud Boys. *See* Gov. Memo at 35.

Thus, none of the cases the government cites come close to demonstrating that a sentence of 60 months would not create sentencing disparities. For the reasons explained in Mr. Gieswein's memorandum, a sentence below the guideline range would avoid sentencing disparities.

## IV.    The Government Spends No Time Discussing Mr. Gieswein's History or Characteristics

Finally, despite its 37 pages of argument, the government essentially ignores this factor, devoting merely two sentences to Mr. Gieswein's History and Characteristics and stating in conclusory fashion that it "weighed this information." Gov. Memo at 29. For the reasons explained in Mr. Gieswein's memorandum, his history and characteristics create significant weight in favor of a downward variance.

**CONCLUSION**

Mr. Gieswein does not dispute that he took assaultive actions while being swept up in the emotions of January 6 and succumbing to mob mentality. It is precisely this reason and the actions that the government describes in its memorandum that Mr. Gieswein has already been incarcerated for almost two and a half years. The recommended sentencing range, starting as low as 41 months—which the government concedes is reasonable—already accounts for the actions that the government is attempting to focus on in its memorandum. What that sentencing range does not account for is the information undersigned provided this Court in its own sentencing memorandum. For those reasons, undersigned respectfully requests a sentence of time served. Respectfully submitted.

Dated: June 21, 2023

/s/ Blake Weiner
Blake A. Weiner, VSB # 94087
BLAKE WEINER LAW, PLLC
1806 Summit Avenue, Suite 300
Richmond, VA 23230
Telephone: (804)-482-1465
Email: bweiner@blakeweinerlaw.com
*Attorney for Robert Gieswein*